## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |
|---|---|
| In re | Chapter 11 |
| ALDRICH PUMP LLC, *et al.*,[1] | Case No. 20-30608 (JCW) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR ORDER DIRECTING
## SUBMISSION OF PERSONAL INJURY QUESTIONNAIRES BY
## PENDING MESOTHELIOMA AND LUNG CANCER CLAIMANTS

Through this motion (the "Motion"), debtors Aldrich Pump LLC ("Aldrich") and Murray Boiler LLC ("Murray") (collectively, the "Debtors") request that the Court enter an order under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[2] substantially in the form attached hereto as Exhibit A, directing all persons with mesothelioma or lung cancer claims against one or both of the Debtors to complete and submit a personal injury questionnaire in the form attached hereto as Exhibit B (each, a "Questionnaire") by December 31, 2020. The Questionnaire seeks basic information about such claims, including claimants' asserted exposures to asbestos-containing products and claims related thereto. In many ways, the Questionnaire simply acts in lieu of a bar date process at this time for asbestos claimants. Similar questionnaires have been approved by numerous courts in asbestos-related and other mass tort chapter 11 cases, including within this District and Circuit.

---

[1]    The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Aldrich Pump LLC (2290) and Murray Boiler LLC (0679). The Debtors' address is 800-E Beaty Street, Davidson, North Carolina 28036.

[2]    Pursuant to Local Bankruptcy Rule 2004-1(b), the Debtors hereby certify that they offered to confer with counsel for the Official Committee of Asbestos Personal Injury Claimants (the "ACC") regarding the proposed examination of claimants through the Questionnaire. Counsel for the ACC was informed of the date that this Motion would be filed, and the Debtors did not receive a response to the request to meet and confer prior to the stated Motion filing date.

## PRELIMINARY STATEMENT

The Debtors' goal in this proceeding is to establish a trust pursuant to a plan of reorganization under section 524(g) of title 11 of the United States Code (the "Bankruptcy Code") to fairly and efficiently address asbestos-related claims. The Questionnaires will provide basic information that will help determine the number and value of current asbestos claims against the Debtors, which information can then be used in connection with the negotiation, formulation, solicitation, and confirmation of a section 524(g) plan.

In the last three calendar years before the Petition Date, roughly 95% of Aldrich's and Murray's payments to asbestos claimants respectively related to mesothelioma and lung cancer claims. The Debtors lack various information necessary to assess the potential merit and value of those claims for the reasons described herein. Accordingly, the Debtors seek an order requiring all persons who, as of June 18, 2020 (the "Petition Date"), asserted, or could have asserted, a mesothelioma or lung cancer claim against either Debtor (collectively, the "Mesothelioma and Lung Cancer Claimants") to submit to the Debtors by December 31, 2020 responses to the Questionnaire.[3] The Questionnaire, which has been narrowly tailored, requests basic information from a claimant, including:

(i)     the status of the claim (*e.g.*, pending, withdrawn, etc.) (Part 1);

(ii)    the name and address of the claimant or injured party, if different (Parts 2 and 3);

(iii)   the claimant's law firm or law firms (Part 4);

(iv)    the type of disease alleged by the claimant and date of first diagnosis (Part 5);

(iv)    facts supporting an allegation of exposure to asbestos-containing components in equipment manufactured by either Debtor (Part 6A);

---

[3]     The Debtors have historically resolved some claims against them without those claims having been filed as lawsuits in the tort system. The Questionnaire would be directed to all pending Mesothelioma and Lung Cancer Claimants and their counsel, regardless of whether they have filed a lawsuit in the tort system.

(v)     the claimant's exposures to other asbestos-containing products (Part 6B);

(vi)    the claimant's asserted economic losses (Part 7); and

(vii)   the claimant's recoveries from other parties (Part 8).

## JURISDICTION

1.      This Court has subject matter jurisdiction to consider this matter pursuant to

28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue

for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      The Debtors' objective in these cases is to bring about a rational and permanent

resolution to the asbestos litigation against them under section 524(g) of the Bankruptcy Code in

a manner beneficial to both the Debtors and legitimate claimants.  Experience in similar cases

has shown that the most difficult and time consuming challenge to a successful resolution under

section 524(g) is reaching agreement on the value of asbestos pending claims against the debtor

and which may be asserted against the debtor in the future.  The information sought through this

Motion is directly relevant to the first issue.  The Questionnaire sought by the Motion requests

that Mesothelioma and Lung Cancer Claimants provide basic information about their asserted

claims.  While the Debtors could elicit the same information through a bar date process and

discovery on claimants in connection therewith, the Debtors believe that the Questionnaires

process sought in the Motion is a more streamlined process than would exist pursuant to a bar

date motion.

**A.      The Questionnaire Comfortably Falls Within the Scope of Bankruptcy Rule 2004.**

3.      Bankruptcy Rule 2004(a) ("Rule 2004") provides that "[o]n motion of any party in

interest, the court may order the examination of any entity."  A debtor is a "party in interest"

entitled to seek discovery under Bankruptcy Rule 2004.  *See, e.g. In re Yahweh Ctr., Inc.*,

Case No. 16-04306 (JNC) 2017 WL 327473, at *1 (Bankr. E.D.N.C. Jan. 23, 2017) (granting a

debtor's Rule 2004 request).

      4.      Rule 2004 allows discovery of information that relates "to the liabilities . . . of the

debtor," including in a chapter 11 case to any matter relevant "to the formulation of a plan."  Fed.

R. Bankr. P. 2004(b).  Rule 2004 discovery relating to claims asserted against a debtor—as

sought here—therefore "comfortably falls within the allowed limits under Rule 2004(b)."  *In re*

*Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008) (United States

Trustee entitled to seek Rule 2004 discovery from Countrywide Home Loans regarding the

computation of its bankruptcy claims in multiple chapter 13 debtors' bankruptcy cases).[4]

**B.**      **The Questionnaire Seeks Information Relevant to Each Asbestos Claim.**

      5.      The information requested in the Questionnaire will assist the Debtors in

assessing the asbestos claims being asserted against them.  Under applicable state law, each

Mesothelioma and Lung Cancer Claimant has the burden of proving, among other things, both

exposure to asbestos legally attributable to equipment manufactured by a Debtor and that such

exposure was a substantial contributing cause of his or her disease.  *See, e.g.*, *Restatement*

*(Second) of Torts* § 433B; *Thacker v. UNR Indus., Inc.*, 603 N.E.2d 449, 455 (Ill. 1992); *Bostic v.*

*Georgia-Pacific Corp.*, 439 S.W.3d 332, 338 (Tex. 2014).  The Questionnaire requires claimants

to provide all known information supporting such alleged exposures so that the Debtors may

assess whether, and the extent to which, such claimants may be entitled to compensation in these

cases.

---

[4]      *See also In re Romas*, 458 B.R. 275, 279 (Bankr. D.S.C. 2011) (denying motion to quash Rule 2004 examination sought to verify that creditor had "filed an accurate and substantiated Proof of Claim"); *Matter of Sutera*, 141 B.R. 539, 541 (Bankr. D. Conn. 1992) ("It is well settled that a Rule 2004 examination is a proper procedure to inquire into the basis for a filed proof of claim."); *In re Arkin-Medo, Inc.*, 44 B.R. 138, 140 (Bankr. S.D.N.Y. 1984) (allowing Rule 2004 examination of all facts and circumstances surrounding a disputed claim).

6. The Questionnaire also seeks information concerning a Mesothelioma and Lung Cancer Claimant's exposures to asbestos from non-Debtor asbestos-containing products (*see* Questionnaire, Part 6B). This information is relevant for at least two reasons. First, exposure to asbestos from other entities' products may fully explain a claimant's disease and demonstrate that the Debtors did not substantially contribute to such disease. Further, other asbestos exposures—or payments by other entities to settle claims from such exposures—impact a Debtor's share of any potential liability. Depending on the applicable state law, other responsible parties can be allocated shares of liability, and payments by these other parties can result in credits or offsets against any potential liability of a Debtor.[5]

**C.   The Debtors Currently Lack Critical Information Necessary to Fairly Evaluate and Value the Asbestos Claims Asserted Against Them.**

7. While most, but not all, current asbestos claimants have pending lawsuits against one or both of the Debtors—which are in various stages of discovery—in many cases the Debtors have little or no information as to the basis of liability asserted against a Debtor.

8. For instance, certain asbestos claims were filed in the months leading up to the Petition Date. In that timeframe, discovery as to those suits had not meaningfully progressed. For such claims, all the Debtors likely have is the complaint that initiated the claimant's case. An example of such a complaint that is filed in the tort system is attached hereto as <u>Exhibit C</u> (in 214 paragraph complaint naming 172 defendants, plaintiff provides only three short, general sentences setting forth alleged exposure-related facts supporting claims against all such

---

[5]      *See, e.g.,* Tex. Civ. Prac. & Rem. Code Ann. §§ 33.012(b) (Texas statute providing for reduction of judgment by liability shares attributed to others as well as payments by others); N.Y. Gen. Oblig. Law § 15-108(a) (New York statute providing for reduction of liability by the greater of liability shares attributed to others or payments by others); 740 Ill. Comp. Stat. Ann. 100/2(c) (provides for reduction in liability for settlement payments made by other parties); Fla. Stat. Ann. § 768.81(d)(3) (Florida statute providing that judgment should be entered against each party based on that "party's percentage of fault").

defendants).  As can be seen from such complaint, it provides the Debtors no meaningful

information on the asserted claim.  Complaints with such threadbare allegations are common in

the cases filed against the Debtors.

9.      In addition, many asbestos claims against the Debtors are not resolved through the

filing of a lawsuit, but rather through an informal exchange of relevant information.  Any

information about these claimants' exposures for which they allege the Debtors are responsible

would have been provided to the Debtors only when the claims were presented for settlement,

which did not occur for many claims prior to the Petition Date.  The Debtors, thus, have no

meaningful information about these claims.

10.      Finally, the Debtors lack information from Mesothelioma and Lung Cancer

Claimants concerning their recoveries from settlements with third party co-defendants or

bankruptcy trusts.  Fundamental bankruptcy law principles provide that a creditor is entitled to

only a single satisfaction of its claim.  As a result, allowed claims in a bankruptcy case must be

reduced to reflect settlement payments received from co-defendants on a common liability.

Further, such information is discoverable under federal[6] and state law[7], and generally occurs in

---

[6]      *See, e.g., White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 367 (N.D. Ill. 2001) (ordering disclosure
to defendant of plaintiffs' settlement agreement and accompanying agreements with co-defendant); *Bennett
v. La Pere*, 112 F.R.D. 136, 138 (D.R.I. 1986) (ordering disclosure to defendant hospital of confidential
settlement agreement between medical malpractice plaintiffs and defendant physicians); *Tanner v.
Johnston*, Case No. 11-00028 (TS), 2013 WL 121158, at *1 (D. Utah Jan. 8, 2013) (ordering disclosure to
defendant of plaintiffs' confidential settlement agreement with co-defendants).

[7]      *See, e.g. In re Univar USA, Inc.,* 311 S.W.3d 175, 179 (Tex. App. Beaumont 2010, no writ) (co-defendants'
settlements are relevant to a remaining nonsettling defendant, both "to determine the amount of its
settlement credit [under Texas law] after a trial is completed, and . . . before trial, to determine whether any
settlement demand being made is reasonable when compared to the likely outcome of a trial."); *see
also* Tex. R. Civ. P. 192.3(g) ("[a] party may obtain discovery of the existence and contents of any relevant
portions of a settlement agreement"); *Perez v. State Indus., Inc.*, 578 So.2d 1018, 1019 (La. Ct. App. 1991)
(reversing a trial court denial of a motion to compel disclosure of a settlement agreement on the grounds
that the scope of discovery "is not limited to information which would be admissible at trial.").

asbestos cases when the final valuation of the claim is being considered in association with a

judgment.  Clearly, information on amounts that a claimant has received from other sources

(both co-defendants and section 524(g) trusts established by co-defendants) is ultimately relevant

to accurately assessing the appropriate value of asbestos claims against the Debtors.

**D.      Even When the Debtors Have Some Information on the Basis of a Claim, That Information is Incomplete.**

11.      For claims subject to lawsuits that have been pending against the Debtors for

some time, the Debtors may have some information as to the alleged basis by a claimant of

liability of a Debtor.  As of the Petition Date, these claims were in various stages of discovery.

However, the Debtors do not know whether the information they have as to the alleged basis for

a claim by an asbestos claimant is the complete universe of information on which such claimant

relies.  Further, by the time that the Questionnaires will be due, claimants will have engaged in

approximately another 6 months of claim investigation and preparation since the Petition Date of

which the Debtors have no visibility.  This additional claim development may produce new

information on which a claimant may wish to rely in asserting a claim against a Debtor.[8]

**E.      The Questionnaire Process Will Help Determine Whether, as the Debtors Believe, Many Existing Asbestos Claims Against the Debtors Have Been Abandoned.**

12.      Many asbestos claims against the Debtors have been pending for several years

with little activity, although, to the Debtors' knowledge, they have not technically been

dismissed.  As a result, the Debtors think it is likely that these claims have been abandoned.  The

---

[8]      Since such discovery also will continue even after the Questionnaires are submitted, the Questionnaire
requires that the Mesothelioma and Lung Cancer Claimants timely supplement their responses as they
become aware of additional information responsive to the Questionnaire, similar to the requirement of
Federal Rule 26(e).  *See* Fed. R. Civ. P. 26(e) ("In General.  A party who has made a disclosure under
Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--
must supplement or correct its disclosure or response:  (A) in a timely manner if the party learns that in
some material respect the disclosure or response is incomplete or incorrect, and if the additional or
corrective information has not otherwise been made known to the other parties during the discovery process
or in writing; or (B) as ordered by the court.").

Questionnaire process will help determine whether or not such claims are still being pursued by

simply requiring such claimants to so indicate in the Questionnaire. If the claimant indicates that

it is no longer pursuing the claim, the claimant is not required to provide any further substantive

information in the Questionnaire. In the *Garlock* case, the questionnaire process determined that

thousands of claims pending in the tort system against Garlock were no longer actually being

pursued.

**F.    Courts Have Routinely Approved Questionnaires Similar to that Sought Herein in
       Other Mass Tort Bankruptcies.**

13.    Courts in numerous mass tort bankruptcy cases have ordered current claimants to

submit questionnaires similar to that sought herein.

14.    In the Fourth Circuit's seminal *A.H. Robins* case, which involved the debtor's

liabilities relating to the Dalkon Shield intrauterine device, the lower court ordered more than

300,000 claimants to submit a questionnaire describing the "claimant's use of the Dalkon Shield,

such as dates of insertion and removal, the type of injury alleged and the names of physicians or

clinics visited by the claimant." *In re A.H. Robins Co., Inc.*, 862 F.2d 1092, 1093

(4th Cir. 1988). The court then ordered a sample of approximately 7,500 claimants to answer a

more detailed 50-page questionnaire, covering topics that included the claimant's use of the

Dalkon Shield; reasons for removing the product; use of other methods of contraception; general

medical condition and problems allegedly caused by the Dalkon Shield; warnings the claimant

had received from doctors and others; claims filed against parties other than A.H. Robins and

recoveries from those parties; and damages. *See In re A.H. Robins Co., Inc.*, 880 F.2d 694, 699

(4th Cir. 1989).

15.    In the asbestos context, questionnaires have been approved by courts in several

prior asbestos cases. *See, e.g.*, *In re W.R. Grace & Co.*, Case No. 01-01139 (JKF) (Bankr. D.

Del. 2005) (Dkt. 9301); *In re G-I Holdings Inc.*, Case No. 01-30135 (RG) (Bankr. D.N.J. 2008)

(Dkt. 8078); *In re USG Corp.*, Case No. 01-02094 (Bankr. D. Del. 2005) (JKF) (Dkt. 61); *In re*

*Specialty Products Holding Corp.*, Case No. 10-11780 (JKF) (Bankr. D. Del. 2011) (Dkt. 1466).

16.     As a result, questionnaires are now a common feature of asbestos cases, including

in this District.  The *Garlock* case is instructive.  In that case Judge Hodges ordered

approximately 5,800 claimants with pending mesothelioma claims against the debtors to respond

to a 24-page questionnaire.  *See Order Authorizing the Debtors To Issue Questionnaire to*

*Holders of Pending Mesothelioma Claims and Governing the Confidentiality of Information*

*Provided in Responses*, Dkt. 1390 (attached as Exhibit D).  The questionnaire included inquiries

related to the claimants' (1) occupational history and diagnosis, (2) locations of alleged

exposures to debtor products and the identity of those products, (3) exposures to non-debtor

products, (4) prior or pending litigation relating to their mesothelioma, and (5) and non-litigation

claims, including claims submitted to bankruptcy trusts.  *See id.*  Subsequently, Judge Hodges

granted the Garlock debtors' motions to issue supplemental questionnaires that required a sample

of mesothelioma claimants to provide additional information.  The court first ordered

471 claimants to either provide the exposure findings from any scientist retained by the claimant

or to provide more detailed information regarding the alleged frequency, duration, and proximity

of their exposures to Garlock and non-Garlock asbestos-containing products.  *See Order*

*Authorizing Debtors To Issue Supplemental Exposure Questionnaire and Governing*

*Confidentiality of Information Provided in Responses*, Dkt. 2337 (attached as Exhibit E).  The

court also ordered a sample of 1,000 mesothelioma claimants to provide information regarding

their recoveries from tort defendants and bankruptcy trusts.[9]  *See* Supplemental Settlement Payment Questionnaire, attached as an exhibit to *Order Authorizing Debtors to Issue Supplemental Settlement Payment Questionnaire and Governing the Confidentiality of Information Provided in Responses*, In re Garlock Sealing Techs. LLC, Case No. 10-31607 (Bankr. W.D.N.C. 2012) (Dkt. 2338) (attached as <u>Exhibit G</u>).  The court acknowledged that these questions about exposures and aggregate recoveries should have been included in the original questionnaire sent to all pending claimants.[10]

**G.    Appropriate Confidentiality Will be Maintained in the Questionnaire Process.**

17.    Finally, the proposed order approving the Questionnaire contains confidentiality and use restrictions, as well as destruction requirements, that mirror those ordered in the most recent cases where questionnaires were approved, including the *Garlock* case.  The proposed order requires the parties to keep the Questionnaires confidential, restricts their use to these cases, provides that full Social Security numbers, medical information, and other sensitive information may not be introduced in open court, and requires destruction of Questionnaire responses within one year after substantial consummation of a confirmed plan of reorganization. These provisions will protect the confidentiality of any sensitive information Mesothelioma and Lung Cancer Claimants provide through the Questionnaire process.

<u>**NOTICE**</u>

18.    This Motion has been provided to: (a) the Office of the United States Bankruptcy Administrator for the Western District of North Carolina; (b) counsel to the ACC; (c) counsel to the proposed future claimants' representative; (d) counsel to the Debtors' non-debtor affiliates,

---

[9]    Transcript of May 17, 2012 Hearing, *In re Garlock Sealing Techs. LLC, et al.*, Case No. 10-31607 (Bankr. W.D.N.C. 2012), at 34 (excerpts attached as <u>Exhibit F</u>).

[10]    *See* <u>Exhibit F</u> at 34 (Judge Hodges concluding "the balance that I struck earlier was at the wrong place.").

Trane Technologies Company LLC and Trane U.S. Inc.; and (e) the other parties on the Service List established by the *Order Establishing Certain Notice, Case Management, and Administrative Procedures* [Dkt. 123]. Notice of this Motion has been provided to all known counsel to the Mesothelioma and Lung Cancer Claimants. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **NO PRIOR REQUEST**

19.     No prior request for the relief sought herein has been made to this Court or any other court.

Dated: August 28, 2020
     Charlotte, North Carolina

Respectfully submitted,

*/s/ John R. Miller, Jr.*
C. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
RAYBURN COOPER & DURHAM, P.A.
227 West Trade Street, Suite 1200
Charlotte, North Carolina  28202
Telephone:  (704) 334-0891
Facsimile:   (704) 377-1897
E-mail:   rrayburn@rcdlaw.net
          jmiller@rcdlaw.net

-and-

Brad B. Erens (IL Bar No. 06206864)
Mark A. Cody (IL Bar No. 6236871)
Caitlin K. Cahow (IL Bar No. 6317676)
JONES DAY
77 West Wacker
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:   (312) 782-8585
E-mail:  bberens@jonesday.com
        macody@jonesday.com
        ccahow@jonesday.com
(Admitted *pro hac vice*)

-and-

Gregory M. Gordon (TX Bar No. 08435300)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
E-mail: gmgordon@jonesday.com
(Admitted *pro hac vice*)

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**EXHIBIT A**

NAI-1514163240

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| ALDRICH PUMP LLC, *et al.*,[1] | Case No. 20-30608 (JCW) |
| Debtors. | (Jointly Administered) |

**ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING**
**SUBMISSION OF PERSONAL INJURY QUESTIONNAIRES BY**
**PENDING MESOTHELIOMA AND LUNG CANCER CLAIMANTS**
**AND GOVERNING THE CONFIDENTIALITY OF RESPONSES**

This matter came before the Court on *Debtors' Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires By Pending Mesothelioma and Lung Cancer Claimants* [Dkt. No. __] (the "Motion").  Based upon a review of the Motion, the further submissions of the parties, the evidence presented, and the arguments of counsel, the Court concludes that the Debtors should be permitted to take discovery from pending mesothelioma and lung cancer claimants through the mechanism of a personal injury questionnaire for use in negotiating, formulating, soliciting, and confirming a plan of

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Aldrich Pump LLC (2290) and Murray Boiler LLC (0679).  The Debtors' address is 800-E Beaty Street, Davidson, North Carolina 28036.

reorganization, subject to the terms and conditions of this Order, and hereby ORDERS,

ADJUDGES, AND DECREES that:

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157.

2.      The Motion is GRANTED on the terms and conditions set forth in this Order.

3.      The Aldrich Pump LLC and Murray Boiler LLC Mesothelioma and Lung Cancer

Claim Questionnaire (the "Questionnaire") attached to this Order as Exhibit A and incorporated

herein by reference is approved; *provided, however,* that modifications to the form may be made

without further Order of the Court on the written consent of the Debtors and the Official

Committee of Asbestos Personal Injury Claimants (the "ACC") (the "Parties").  The

Questionnaire seeks evidence that is relevant to negotiation, formulation, solicitation, and

confirmation of a plan of reorganization.

4.      Every person who alleges a claim against the Debtors based on a diagnosis of

mesothelioma or lung cancer on or before June 18, 2020 allegedly caused by asbestos-containing

products for which the Debtors or their predecessors-in-interest, the former Ingersoll-Rand

Company, a New Jersey corporation ("Old IR") and Trane U.S. Inc. ("Old Trane") is responsible

(for purposes of this Order, a "Pending Mesothelioma or Lung Cancer Claimant") is required to

complete and return the Questionnaire, pursuant to the deadlines set forth in paragraph 5 below.

5.      The following deadlines and requirements shall apply:

a.      On or before October 1, 2020, KCC, the Debtors' claims agent

(the "Claims Agent") shall serve the Questionnaire, via direct U.S. mail,

on counsel of record for all Pending Mesothelioma and Lung Cancer

Claimants indicated as such in Debtors' claims database.  The Debtors

shall provide counsel with a unique paper copy of the Questionnaire for each mesothelioma and lung cancer claimant in the Debtors' claims database with a claim status of "open."  The Debtors shall also serve a blank copy of the Questionnaire on any other counsel who have ever represented an asbestos claimant against the Debtors.  The Debtors shall directly serve Pending Mesothelioma and Lung Cancer Claimants indicated as such in Debtors' claims database and who are not represented by counsel if the identities and addresses of those claimants are known.  The Debtors shall promptly file a certificate of service and provide the ACC and the FCR with an electronic copy of the service list.

b.      Responses to the Questionnaire, whether in electronic or paper form, including all attachments thereto, and all trust claim forms submitted by Pending Mesothelioma and Lung Cancer Claimants pursuant to the Questionnaire or obtained from any asbestos personal injury trust ("Trust") pursuant to the optional authorization form incorporated in the Questionnaire,[2] are referred to below as "Questionnaire Responses".

c.      All Pending Mesothelioma and Lung Cancer Claimants may submit their Questionnaire Responses and any attachments in paper form or by uploading electronic copies of the responses through a secure website to be established by the Claims Agent.

d.      If a Pending Mesothelioma or Lung Cancer Claimant chooses to submit the Questionnaire Response and any attachments through the secure

---

[2]    The authorization form is set forth as Exhibit 1 to the Questionnaire and is entitled "Claimants' Optional Authorization for Debtors' Counsel to Obtain Trust Records."  It is referred to below in this Order as the "Authorization".

website, he or she shall complete and submit the Questionnaire Response

no later than December 31, 2020.

e.     If a Pending Mesothelioma or Lung Cancer Claimant chooses to submit

the Questionnaire Response and any attachments in paper form, he or she

shall complete and submit the Questionnaire Response and deposit it and

any attachments in the U.S. Mail (prepaid) so that it is received by the

Claims Agent by December 31, 2020, addressed to KCC Aldrich PIQ

Forms, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245.

Any Pending Mesothelioma or Lung Cancer Claimant whose counsel

receives a unique, marked paper form from the Claims Agent must use it

or the corresponding PDF form if submitting electronically.  The Claims

Agent shall send fillable PDF forms to any law firms requesting them.  All

Pending Mesothelioma and Lung Cancer Claimants submitting

Questionnaire Responses in paper form are permitted and encouraged to

provide attachments in electronic format, where feasible.

f.     The Claims Agent shall provide all Questionnaire Responses to the

Parties, their respective bankruptcy counsel and special counsel (the

"Bankruptcy Counsel"), and their respective retained asbestos claims

experts (the "Experts").  In addition, any futures claim representative in

these cases (the "FCR") and the FCR's advisors shall be entitled to access

to Questionnaire Responses.

g.     No Questionnaire Responses shall be disseminated or disclosed, whether

in written or electronic form, to any person other than (i) the Parties, the

Parties' Bankruptcy Counsel and the Parties' Experts; (ii) the FCR and the FCR's advisors; and (iii) any party-in-interest who obtains a right of access to Questionnaire Responses by an order issued pursuant to paragraph 18 of this Order (an "Intervenor"); (iv) any employees, agents, representatives, consulting or testifying experts, or members of their staff of the foregoing entities in subparts (i)-(iii) who are personally involved in rendering services in connection with these bankruptcy cases; (iv) any person who testifies at a deposition or hearing in connection with these bankruptcy cases, and for whose examination or cross-examination reference to a Questionnaire Response is relevant; (v) third-party service companies providing outside photocopying, graphic production services, or litigation support services to counsel or experts in connection with these bankruptcy cases and who need access to Questionnaire Responses to provide such services; (vi) the Claims Agent and any of its employees, agents, or representatives rendering services in connection with these bankruptcy cases; (vii) the Court, including secretaries, judicial assistants, law clerks, and other clerical staff; and (viii) court reporters, stenographers, or videographers who record deposition or other testimony in connection with these bankruptcy cases and who need access to Questionnaire Responses to provide such services; *provided, however,* that the right of access to Questionnaire Responses hereby conferred on the foregoing persons is subject to the conditions precedent set forth in paragraph 5.h. immediately below.

h.      Any person exercising a right of access to Questionnaire Responses granted by this Order shall thereby consent, and be deemed to consent, to be bound by this Order and shall thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue of this Court for any dispute pertaining to the interpretation or enforcement of this Order. Without limitation of the generality of the foregoing sentence, as a condition of the right of access to Questionnaire Responses conferred by paragraph 5.g. above, every entity described in subparts (ii) through (vi) of paragraph 5.g. shall execute a joinder in the form annexed to this Order as Exhibit B.1 or Exhibit B.2.  Exhibit B.1 shall be executed on the part of corporations, partnerships, companies, or firms whose employees, representatives, or agents will receive access to Questionnaire Responses in the performance of the firm's duties with respect to these bankruptcy cases.  Exhibit B.2 shall be signed in an individual capacity by individuals (such as witnesses or self-employed experts) who receive a right of access to Questionnaire Responses under paragraph 5.g. above in their individual capacities, rather than as employees, agents, or representatives of a firm.

i.      Any Intervenor shall be deemed subject to all of the obligations and restrictions applicable to the Parties under this Order.  Any Intervenor shall have access to the Questionnaire Responses only to the extent specified by the Bankruptcy Court and subject to such terms and conditions as the Bankruptcy Court may impose by further order.

j.      The Debtors are authorized to serve subpoenas under Bankruptcy

Rule 9016 on the Trusts listed in the Authorization forms, and their claims

processing facilities, to obtain claim forms and any other materials

submitted by claimants to the Trusts pursuant to Authorizations returned

as part of Questionnaire Responses.  The subpoenas may request claim

forms submitted to the Trusts or claims processing facilities by

(i) claimants matching the full social security number of the claimant or

Injured Party contained in the Authorization, and (ii) claimants matching

the claimant or Injured Party last name and last four digits of the social

security number in the Authorization.  An electronic signature on the

Authorization through an electronic portal established to receive

Questionnaire Responses shall be treated as equivalent to a physical

signature.  The Trusts and claims processing facilities shall not be subject

to any actions, claims, or demands by claimants or any other parties as a

result of their good faith compliance with this Order, the subpoenas, and

the matching protocol contained therein.

6.      Pending Mesothelioma and Lung Cancer Claimants shall be under a duty to

timely supplement their Questionnaire Responses consistent with Rule 26(e)(1) of the Federal

Rules of Civil Procedure.  This requirement means that any Mesothelioma and Lung Cancer

Claimant shall supplement his or her Questionnaire Response if he or she learns that in some

material respect the disclosure or response is incomplete or incorrect, and if the additional or

corrective information has not otherwise been made known to the Debtors.  The duty to

supplemental Questionnaire Responses is not limited to documents or information existing prior

to an initial or prior response but, rather, includes any additional information without reference to the date of its existence.

7.      Questionnaire Responses shall be confidential and treated as such without need of any special designation by or on behalf of the responding Pending Mesothelioma and Lung Cancer Claimants.  Any entity granted access to Questionnaire Responses as provided in this Order must maintain the confidentiality of the same in a manner consistent with the obligations and restrictions imposed herein.

7.      Mesothelioma and Lung Cancer Claimants, the Parties, the FCR, and Intervenors shall have standing to enforce the protections afforded to Questionnaire Responses by this Order.

8.      As a precautionary measure, but not as a precondition to protection, the Claims Agent shall stamp any written Questionnaire Responses with the following legend: "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."

9.      Any entity that receives access to Questionnaire Responses as provided in this Order shall provide for physical, managerial, and electronic security thereof such that Questionnaire Responses are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission, and storage.

10.     The Questionnaire Responses, and any analyses, conclusions, summaries, excerpts, or redacted copies derived therefrom, and any knowledge obtained therefrom, shall be used only in connection with these bankruptcy cases absent further order of the Court.

11.     Neither Questionnaire Responses nor any analyses, conclusions, summaries, excerpts, or redacted copies derived therefrom may be (a) publicly disclosed except pursuant to this Order, (b) used as a disclosed or undisclosed source in any article, study, research, editorial,

publication, or scholarly work, or (c) incorporated into or merged with any preexisting database that is to be used or maintained for any purpose other than these bankruptcy cases.

12.     If Questionnaire Responses maintained or converted to electronic form are incorporated into or merged with any preexisting electronic information or database (a "Merged Database"), the Merged Database must itself be treated as confidential to the same extent as the underlying Questionnaire Responses themselves, and shall be subject to the same use restrictions that this Order imposes on the Questionnaire Responses themselves.

13.     Nothing in this Order shall restrict any person's right to make lawful use of:

a.     any discrete data set or materials that came into the possession of such person lawfully and free of any confidentiality obligation;

b.     any exhibit or other document that is placed on the public record in these bankruptcy cases in conformity with the restrictions set forth in paragraph 14 below, or any data or material that is or becomes publicly available other than by a breach of this Order; or

c.     any discrete data set or materials developed by or on behalf of such person independent of any Questionnaire Responses.

14.     In the event that, in the course of this bankruptcy case, any Party, the FCR, or Intervenor intends to offer into evidence or otherwise use Questionnaire Responses in connection with testimony, argument, or filings in the Bankruptcy Court, or any reviewing court, such Party or Intervenor may not divulge Questionnaire Responses except when the following conditions are met: (i) such information is relevant to these bankruptcy cases; (ii) there is no reasonable manner to use such information without disclosing Questionnaire Responses; and (iii) such Party, the FCR, or Intervenor has filed a proper motion to seal (a) Social Security numbers

(except last four digits), (b) dates of birth (except year), (c) names of identifiable minors (except

for their initials), (d) financial account numbers (except last four digits), and (e) medical

information (except claimed disease, such as 'pleural mesothelioma,' 'peritoneal mesothelioma,'

'asbestosis,' or 'lung cancer,' and diagnosis date).  Nothing herein shall prohibit an expert for any

Party, the FCR, or Intervenor from using or referring to Questionnaire Responses in such expert's

report, or testifying concerning Questionnaire Responses in open court, so long as such

testimony or report does not reveal the information described in categories (a) through (e) of the

previous sentence.

15.    In the event that an entity granted access to Questionnaire Responses pursuant to

this Order receives a subpoena, interrogatory, or other request for the production or disclosure of

any Questionnaire Response, in whole or in part, to a third party (a "Third-Party Discovery

Demand"), including a governmental or other regulatory body, such entity (a "Discovery

Target") shall provide prompt written notice of any such request or requirement to the

Mesothelioma or Lung Cancer Claimant or Mesothelioma or Lung Cancer Claimants who

provided the information requested, with copies to the Parties, the FCR, and any Intervenors, so

that any of them may seek a protective order or other appropriate remedy, if desired.  Pending a

timely effort to obtain such a protective order or other remedy to prevent the requested

production or disclosure, the Discovery Target shall interpose an objection to the Third-Party

Discovery Demand on the basis of this Order.  Nothing in this Order shall prohibit a Discovery

Target from complying in good faith with an order directing it to comply, in whole or in part,

with such Third-Party Discovery Demand, or require a Discovery Target to seek a stay of such

an order, or to appeal from such an order; *provided, however*, that any Discovery Target shall

exercise reasonable efforts to preserve the confidentiality of Questionnaire Responses produced

or disclosed pursuant to such an order, including, without limitation, by cooperating with any

Pending Mesothelioma or Lung Cancer Claimant, Party, or Intervenor who expresses an

intention to seek an appropriate protective order or other reliable assurance that confidential

treatment will be accorded the Questionnaire Responses.

16.     Within the one-year anniversary of the date of substantial consummation of a

confirmed Chapter 11 plan of reorganization for the Debtors (a "Plan"), each entity that has

received Questionnaire Responses shall destroy such Questionnaire Responses, including all

copies thereof, in a commercially reasonable manner and continue to be bound by the terms and

obligations imposed by this Order, and shall certify such destruction in writing to respective

counsel of record for Debtors, the ACC, and the FCR; *provided, however,* that the obligations of

this paragraph shall not apply to copies of pleadings and exhibits filed under seal with this Court,

or to file copies in the possession of counsel of record for the Mesothelioma and Lung Cancer

Claimants, for the Parties, the FCR, or for Intervenors of papers prepared in connection with

these bankruptcy cases (*e.g.*, pleadings, transcripts, interview or document summaries, internal

memoranda, written communications with professionals, experts, and witnesses, depositions and

exhibits thereto, court papers, and other papers prepared, created, or served in connection with

these bankruptcy cases); and *provided further* that the obligations of this paragraph may be

superseded and rendered inoperative if and to the extent that a confirmed Plan specifically

authorizes a particular entity to turn over Questionnaire Responses to an asbestos settlement trust

created pursuant to the Plan.

17.     When the Claims Agent serves the Questionnaire, a copy of this Order shall be

attached to the Questionnaire as an exhibit thereto.

18.    Any person who seeks relief from any provision of this Order in order to access any Questionnaire Response shall do so by motion in the Bankruptcy Court on notice to the Parties, the FCR, and any Mesothelioma and Lung Cancer Claimants potentially affected by the relief sought.  The movant shall bear the burden of showing good cause for the requested relief.

19.    This Court shall retain jurisdiction to interpret, apply, and enforce this Order to the full extent permitted by law.

This Order has been signed electronically.        United States Bankruptcy Court
The Judge's signature and Court's seal
appear at the top of the Order

## **EXHIBIT A**

**Questionnaire**

NAI-1514011964

**EXHIBIT B.1 TO ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING
SUBMISSION OF PERSONAL INJURY QUESTIONNAIRES BY PENDING
MESOTHELIOMA AND LUNG CANCER CLAIMANTS AND GOVERNING THE
CONFIDENTIALITY OF RESPONSES**

**Re:  *In re Aldrich Pump LLC, et al.*
Case No. 20-30608 (JCW)
United States Bankruptcy Court
for the Western District of North Carolina**

<u>*Instructions*</u>:   *This joinder must be executed by an authorized representative of any
corporation, partnership, company, or firm required to execute a joinder pursuant to
paragraph 5.h of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name
of employer*] ("**Employer**"), I and other employees, agents, and representatives of Employer may
be given access to Questionnaire Responses.  Each and every Questionnaire Response constitutes
confidential and protected information in connection with the above-referenced Order Pursuant
to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending
Mesothelioma and Lung Cancer Claimants and Governing the Confidentiality of Responses (the
"**Questionnaire Order**"), entered by the United States Bankruptcy Court for the Western
District of North Carolina (the "**Bankruptcy Court**") in the above-referenced Chapter 11 case.
Capitalized terms used in this Acknowledgment but not otherwise defined herein shall have the
meanings ascribed to them in the Questionnaire Order.

I have read the Questionnaire Order on behalf of Employer as part of performing its
duties to _____ [*write in name of the
Party or other client for whom Employer is rendering services in connection with the bankruptcy
case*].  I understand the conditions and obligations of confidentiality, and use restrictions, that the
Questionnaire Order makes applicable to Questionnaire Responses.  By my signature below,
Employer, for itself and all of its employees, agents, and representatives who receive access to
Questionnaire Responses, hereby accepts and agrees to be bound by, and to abide by, those
conditions, obligations, and restrictions.  On Employer's behalf, I represent that Employer has
made, or will make the Questionnaire Order and this joinder known in advance to all of
Employer's employees, agents, and representatives who are to receive access to Questionnaire
Responses, so that they will be on notice of Employer's duties in connection therewith and their
own responsibilities to ensure compliance with the Questionnaire Order.

Employer, its employees, agents, and representatives will not disclose any Questionnaire
Responses to any person not authorized by the Questionnaire Order, or further order of the
Bankruptcy Court, to receive such information.  They will not use Questionnaire Responses for
any purpose other than the bankruptcy case, except as may be specifically authorized by further
order of the Bankruptcy Court pursuant to paragraph 18 of the Questionnaire Order.

NAI-1514011964

Pursuant to paragraph 16 of the Questionnaire Order, Employer will destroy or cause to be destroyed all Questionnaire Responses within one year of the date of substantial consummation of a confirmed Chapter 11 plan of reorganization for the Debtors (the **"Plan"**), and will promptly certify such destruction in writing to counsel of record for the Debtors, the ACC, and the FCR, unless relieved of that obligation by a specific provision of the Plan authorizing Employer to turnover Questionnaire Responses to an asbestos settlement trust created pursuant to the Plan.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Questionnaire Order and this joinder and for no other purposes.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

**EXHIBIT B.2 TO ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING
SUBMISSION OF PERSONAL INJURY QUESTIONNAIRES BY PENDING
MESOTHELIOMA AND LUNG CANCER CLAIMANTS AND GOVERNING THE
CONFIDENTIALITY OF RESPONSES**

*In re Aldrich Pump LLC, et al.*
**Case No. 20-30608 (JCW)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>**Instructions**</u>:  *This joinder must be executed by any individual required to execute a joinder in
his or her individual capacity pursuant to paragraph 5.j. of the above-referenced Order (for
example, a self-employed expert or a witness).*

## A C K N O W L E D G E M E N T

I may be given access to certain confidential and protected information in connection
with the above-referenced Order Pursuant to Bankruptcy Rule 2004 Directing Submission of
Personal Injury Questionnaires by Pending Mesothelioma and Lung Cancer Claimants and
Governing the Confidentiality of Responses (the **"Questionnaire Order"**), entered by the United
States Bankruptcy Court for the Western District of North Carolina (the **"Bankruptcy Court"**)
in the above-referenced Chapter 11 case.

I have read the Questionnaire Order.  Capitalized terms used in this joinder but not
otherwise defined herein shall have the meanings ascribed to them in the Questionnaire Order.  I
understand the conditions and obligations of confidentiality, and use restrictions, that the
Questionnaire Order makes applicable to Questionnaire Responses and hereby accept and agree
to be bound by, and to abide by, those conditions, obligations, and restrictions.

I will not disclose any Questionnaire Responses to any person not authorized by the
Questionnaire Order, or further order of the Bankruptcy Court, to receive such information.  I
will not use Questionnaire Responses for any purpose other than the bankruptcy case, except as
may be specifically authorized by further order of the Bankruptcy Court pursuant to paragraph
18 of the Questionnaire Order.

Pursuant to paragraph 16 of the Questionnaire Order, I will destroy all Questionnaire
Responses within one year of the date of substantial consummation of a confirmed Chapter 11
plan of reorganization for the Debtors (the **"Plan"**), and will promptly certify such destruction in
writing to counsel of record for the Debtors, the ACC, and the FCR, unless relieved of that
obligation by a specific provision of the Plan authorizing me to turn over Questionnaire
Responses to an asbestos settlement trust created pursuant to the Plan.

I consent to the jurisdiction of the Bankruptcy Court for any action to enforce the terms of the Questionnaire Order and this joinder and for no other purposes.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

# **EXHIBIT B**

NAI-1514163240

## Aldrich Pump LLC and Murray Boiler LLC Personal Injury Claim Questionnaire

### PURPOSE OF QUESTIONNAIRE

The U.S. Bankruptcy Court for the Western District of North Carolina has authorized Aldrich Pump LLC and Murray Boiler LLC ("Aldrich" and "Murray" or the "Debtors") to issue this Questionnaire to every person who alleges a claim against Aldrich or Murray based on a diagnosis of mesothelioma or lung cancer on or before June 18, 2020 allegedly caused by Aldrich or Murray, or the former Ingersoll-Rand Company or Trane U.S. Inc. (a "Mesothelioma or Lung Cancer Claim").  The term Mesothelioma or Lung Cancer Claim includes the claims described above even if a lawsuit was not pending against the Debtors as of June 18, 2020.  Each person meeting these qualifications is referred to below in this Questionnaire as a "Personal Injury Claimant."

The Debtors are pursuing reorganization in a Chapter 11 case in the Bankruptcy Court, referred to as *In re Aldrich Pump LLC, et al.,* Case No. 20-30608 (Bankr. W.D.N.C.). The Bankruptcy Court has granted the Debtors' application to issue this Questionnaire.

The purpose of this Questionnaire is to obtain certain information about each Mesothelioma or Lung Cancer Claim with respect to the topics noted below. If you are a Personal Injury Claimant, you must provide accurate, complete, and timely responses to this Questionnaire.

All information provided in response to this Questionnaire will be treated as confidential. The uses and further disclosure of such information shall be restricted in accordance with the *Order Directing Submission of Personal Injury Questionnaires by Current Mesothelioma and Lung Cancer Claimants and Governing the Confidentiality and Use of Information Provided in Responses*, dated _____, 2020. A copy of that Order [Dkt. No. ____] is provided with this Questionnaire.

### ADMINISTRATOR INFORMATION

If you are a Personal Injury Claimant, you are directed to complete and submit this Questionnaire on or before December 31, 2020.

You may upload your completed Questionnaire responses and any attachments electronically through an electronic portal supported by KCC, whom the Debtors have retained as its Claims Administrator.  Access to this system and upload instructions are available through KCC's website for the Debtors at www.kccllc.net/aldrich/PIQ.  If you elect to upload your responses and any attachments electronically, please do so on the KCC system no later than December 31, 2020.

In the alternative, you have the option of submitting your completed Questionnaire responses and any attachments by mail. If this is your preference, please deposit your completed Questionnaire, along with any attachments, in the U.S. Mail (and include the required postage) so that it is received no later than December 31, 2020 by KCC at the address set forth below:

KCC Aldrich PIQ Forms
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

Each Mesothelioma or Lung Cancer Claimant listed as such in the Debtors' asbestos claims database has been provided a unique copy of this Questionnaire.  If you have been provided such a copy, you must provide your answers on it or through the electronic portal. Other Personal Injury Claimants should use blank copies of this Questionnaire to provide their responses (or use the electronic portal). In addition, if you answer by mail, you are permitted and encouraged to provide any attachments in electronic format (for example, on a CD or thumb drive), where feasible.

### LIST OF QUESTIONNAIRE SECTIONS AND INSTRUCTIONS

#### OCCUPATION, INDUSTRY, AND EQUIPMENT CODES

- For use in completing Part 6, this section contains reference codes for the occupations, industries and equipment with which you associate your alleged exposure to asbestos products.

#### PART 1: STATUS OF ALDRICH AND MURRAY CLAIMS

- Provide information about the status of the Personal Injury Claimant's claim(s) against Aldrich and Murray. If you are not, or no longer allege to be, a Personal Injury Claimant but received this preprinted Questionnaire, please answer this section and Parts 2, 3, and 4, but you are not required to answer the rest of the Questionnaire.

#### PARTS 2, 3, 4: INJURED PARTY INFORMATION, RELATED CLAIMANT INFORMATION, LAW FIRM INFORMATION

- In Part 2, provide identifying information for the person diagnosed with mesothelioma or lung cancer (the "Injured Party").

- Only complete Part 3 if the claimant (the plaintiff) is a "Related Claimant," rather than the Injured Party.  Provide identifying information for the Related Claimant, including the Related Claimant's relationship to the Injured Party.

  As used in this Questionnaire, the term "Related Claimant" means a person who is not the Injured Party but who is making a claim based on or derived from the Injured Party's mesothelioma or lung cancer, either in a representative capacity (e.g., the personal representative of the Injured Party's estate suing for the Injured Party's injuries), or in an independent capacity (e.g., a family member suing for his or her own losses based on the alleged personal injury to or wrongful death of the Injured Party).

  As used in this Questionnaire, "claimant" means the Pending Personal Injury Claimant, whether the Injured Party or the Related Claimant.

- In Part 4, provide contact information for the law firm that represents the claimant in responding to the Questionnaire.  Also provide the identity of any other law firm(s) that represents the claimant and/or is sharing in the contingent fee with respect to asbestos claims, whether in lawsuits, in making claims against trusts established to pay claims against bankrupt asbestos defendants ("Trusts"), or otherwise.

## PART 5: INFORMATION ON MESOTHELIOMA OR LUNG CANCER DIAGNOSIS

- For the Debtors to recognize a diagnosis, a claimant should submit at least one report from a qualified physician with information regarding the injured party's diagnosis.  Claimants may submit additional documentation, such as x-rays, lab tests and medical exam reports.  The submitted evidence should comply with recognized medical standards regarding testing methods, equipment and procedures.  The Debtors will not recognize a death certificate alone without accompanying pathology or autopsy findings.

  In addition, for the Debtors to recognize a diagnosis, the diagnosis must include the information below:

  <u>Mesothelioma</u> - A pathology or operative report that indicates a definitive diagnosis of mesothelioma.  The Debtors will not recognize a diagnosis of mesothelioma based on cytology alone, nor a clinical diagnosis of mesothelioma with no pathological evidence.

  <u>Lung cancer</u> - Either (1) a statement or report of a physical exam of the Injured Party by the physician providing the diagnosis of lung cancer that causally links the lung cancer to asbestos exposure or (2) a diagnosis of asbestos-related lung cancer by a board-certified pathologist or surgical pathologist that includes a diagnosis of an underlying bilateral asbestos-related non-malignant disease (i.e., bilateral asbestosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification) based upon (a) a chest x-ray read of 1/1 or higher by a certified B-reader, (b) a HRCT scan read by a qualified physician, or (c) a pathology report.

## PART 6: ALLEGED EXPOSURE

- In Part 6A, identify whether the claimant alleges the Injured Party was exposed to asbestos from asbestos-containing products for which Aldrich is alleged to be responsible. The products for which Aldrich is alleged to be responsible are the same products for which former Ingersoll-Rand Company was alleged to be responsible. Then, answer the questions with respect to the Injured Party's occupational and non-occupational alleged exposures to asbestos products which you allege are attributable to Aldrich equipment.
- In Part 6B, identify whether the claimant alleges the Injured Party was exposed to asbestos from asbestos-containing products for which Murray is alleged to be responsible. The products for which Murray is alleged to be responsible are the same products for which former Trane U.S. Inc. was alleged to be responsible. Then, answer the questions with respect to the Injured Party's occupational and non-occupational alleged exposures to asbestos products which you allege are attributable to Murray equipment.
- In Part 6C, answer the questions with respect to the Injured Party's occupational and non-occupational alleged exposures to asbestos unrelated to Aldrich and Murray.
- In Part 6, "secondary" or "household" exposure means alleged exposure when another person who worked with or around asbestos or asbestos-containing products (the "Primary Exposed Person") brought home asbestos fibers on his or her clothes. In the case of secondary exposure, list information for jobs and non-occupational contexts where primary exposure allegedly occurred and provide the required information regarding the Primary Exposed Person's alleged exposure.

## PART 7: INJURED PARTY'S ECONOMIC LOSS INFORMATION

- Provide the information requested in Part 7 regarding the Injured Party's alleged economic losses and dependents.

## PART 8: LITIGATION AND OTHER CLAIMS RELATED TO THE INJURED PARTY'S ALLEGED ASBESTOS EXPOSURE

- Provide the information requested in Part 8 regarding all payments received from Trusts and entities that are not Trusts (e.g., other defendants).
- Then, for every lawsuit based on the Injured Party's mesothelioma or lung cancer (or any other asbestos-related condition, whether or not Aldrich, Murray, Ingersoll-Rand Company or Trane U.S. Inc. was a defendant in the lawsuit), provide the requested information in Part 8A and complete Tables A, B, and C.
- The term "DWOP" in Tables A and C means "dismissed without payment." You should check this box if the claim was dismissed for any reason without a payment from the defendant.

## PART 9: CERTIFICATION

- Either the claimant or the claimant's attorney must sign the appropriate certification.

## PART 10: ATTACHMENT OF TRUST CLAIM FORMS

- The claimant must submit copies of all Trust claim forms submitted by or on behalf of the claimant or Injured Party to Trusts listed in Table B (or the electronic equivalent if submitted electronically), along with any attached documents such as deposition transcripts, affidavits, invoices, etc. Alternatively, the claimant may execute the authorization attached as Exhibit 1 for Aldrich and Murray to obtain the claim forms and their attachments directly from the Trusts.

## PART 11: OTHER CASE DOCUMENTS

- The claimant must attach copies of the following documents:
  - All depositions taken in any lawsuits listed in Part A that relate in any way to the Injured Party's alleged exposures to asbestos or asbestos-containing products.
  - All written discovery (including interrogatories and requests for admission) you or your attorney have answered on your behalf in any of the lawsuits listed in Part A.
  - All expert reports produced by any party in a lawsuit listed in Part A.
  - Social Security printout and copy of union or employment records relevant to the Injured Party's asbestos exposure (where available); and
  - Copy of medical records (or autopsy report) confirming diagnosis of mesothelioma or lung cancer.

**DUTY TO SUPPLEMENT**

- **The claimant is under a duty to timely supplement his or her responses to this Questionnaire if he or she learns that a prior response is in some material respect incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the Debtors.  The duty to supplement is not limited to providing documents or information that existed at the time of an initial or prior response but, rather, includes any additional information without reference to the date of its existence.  This would include, for example, new information learned about exposures to asbestos.**

**OCCUPATION AND INDUSTRY CODES**

*INSTRUCTIONS:* Use these Occupation and Industry codes when completing *PART 6: ALLEGED EXPOSURE*

### Occupation Codes

| Code | Occupation | Code | Occupation |
|------|-----------|------|-----------|
| **O-1** | Non-occupational / do-it-yourself (DIY) | | **Construction and Extraction Occupations** |
| | **Management Occupations** | O-43 | First-line supervisors and foremen of construction trades and extraction workers |
| O-2 | Industrial production managers | O-44 | Boilermakers |
| O-3 | Farmers, ranchers, and other agricultural managers | O-45 | Brickmasons, blockmasons, and stonemasons |
| O-4 | Construction managers | O-46 | Carpenters |
| O-5 | Architectural and engineering managers | O-47 | Carpet, floor, and tile installers and finishers |
| O-6 | Other management occupation (describe) | O-48 | Cement masons, concrete finishers, and terrazzo workers |
| | **Architecture and Engineering Occupations** | O-49 | Construction laborers |
| O-7 | Architects, except naval | O-50 | Paving, surfacing, and tamping equipment operators |
| O-8 | Agricultural engineers | O-51 | Drywall installers and ceiling tile installers |
| O-9 | Chemical engineers | O-52 | Drywall tapers/drywall finishers |
| O-10 | Civil engineers | O-53 | Electricians |
| O-11 | Environmental engineers | O-54 | Glaziers |
| O-12 | Marine engineers and naval architects | O-55 | Insulation workers |
| O-13 | Mechanical engineers | O-56 | Painters, construction and maintenance |
| O-14 | Petroleum engineers | O-57 | Paperhangers |
| O-15 | Engineers, all other | O-58 | Pipelayers, plumbers, pipefitters, and steamfitters |
| O-16 | Other architecture & engineering occupation | O-59 | Plasterers and stucco masons |
| | **Transportation Occupations** | O-60 | Roofers |
| O-17 | Chemical and hazardous materials transport operators | O-61 | Sheet metal workers |
| O-18 | Railroad brake, signal, and switch operators | O-62 | Structural iron and steel workers |
| O-19 | Locomotive engineers and operators | O-63 | Construction and building inspectors |
| O-20 | Other transportation (describe) | O-64 | Hazardous materials removal workers |
| | **Protective Service Occupations** | O-65 | Mining machine operators |
| O-21 | First-line supervisors or foremen of fire fighting and prevention workers | O-66 | Derrick, rotary drill, and service unit operators, for oil, gas, and mining |
| O-22 | Firefighters | O-67 | Crane and tower operators |
| O-23 | Other protective service occupation (describe) | O-68 | Hoist and winch operators |
| | **Installation, Maintenance, and Repair Occupations** | O-69 | Other construction and extraction occupations (describe) |
| O-24 | First-line supervisors, foremen or managers of mechanics, installers, and repairers | | **Production Occupations** |
| O-25 | Aircraft mechanics and service technicians | O-70 | First-line supervisors, foremen, or managers of production and operating workers |
| O-26 | Railroad mechanics and repairers | O-71 | Engine and other machine assemblers |
| O-27 | Automotive body and related repairers | O-72 | Structural metal fabricators and fitters |
| O-28 | Automotive service technicians and mechanics | O-73 | Crushing, grinding, polishing, mixing, and blending workers |
| O-29 | Bus and truck mechanics and diesel engine specialists | O-74 | Cutting workers |
| O-30 | Heavy vehicle and mobile equipment service technicians and mechanics | O-75 | Machinists |
| O-31 | Small engine mechanics | O-76 | Metal furnace operators, tenders, pourers, and casters |
| O-32 | Control and valve installers and repairers | O-77 | Welding, soldering, and brazing workers |
| O-33 | Heating, air conditioning, and refrigeration mechanics and installers | O-78 | Plating and coating machine setters, operators, and tenders, metal and plastic |
| O-34 | Industrial and refractory machinery mechanics | O-79 | Stationary engineers and boiler operators |
| O-35 | Maintenance and repair workers, general | O-80 | Chemical processing machine setters, operators, and tenders |
| O-36 | Maintenance workers, machinery | O-81 | Painting workers |
| O-37 | Millwrights | O-82 | Tire builders |
| O-38 | Manufactured building and mobile home installers | O-83 | Other machine operator |
| O-39 | Riggers | O-84 | Other production occupation (describe) |
| O-40 | Other installation, maintenance, and repair occupation (describe) | | **Other Occupations** |
| | **Life, Physical, and Social Science Occupations** | O-85 | Salespersons, cashiers, and clerks |
| O-41 | Chemical technicians and chemical laboratory technicians | O-86 | Janitors and building cleaners |
| O-42 | Other life, physical, and social scientists (describe) | O-87 | Other (describe) |

NAI-1514084469

## Naval Occupations

| Code | Occupation | Code | Occupation |
|------|-----------|------|-----------|
| N-1 | Aviation structural mechanic | N-15 | Gunner's mate |
| N-2 | Aviation support equipment technician | N-16 | Hull technician/Pipefitter/Shipfitter |
| N-3 | Boiler tender/Boiler technician/Boilerman | N-17 | Internal communications |
| N-4 | Boilers officer | N-18 | Machinery repairman |
| N-5 | Builder | N-19 | Machinist's mate |
| N-6 | Construction electrician | N-20 | Main engines officer |
| N-7 | Construction mechanic | N-21 | Main propulsion assistant |
| N-8 | Damage controlman/Damage control assistant | N-22 | Missile technician |
| N-9 | Electrical officer | N-23 | Molder |
| N-10 | Electrician's mate | N-24 | Opticalman |
| N-11 | Engineer officer/Chief engineer | N-25 | Ships serviceman |
| N-12 | Engineman | N-26 | Torpedoman's mate |
| N-13 | Equipment operator | N-27 | Utilitiesman |
| N-14 | Fireman/Fireman apprentice | N-28 | Other (describe) |

## Industry Codes

| Code | Industry | Code | Industry |
|------|----------|------|----------|
| I-1 | Non-occupational/do-it-yourself (DIY) | | Transportation |
| **Mining/extraction** | | I-19 | Truck transportation |
| I-2 | Asbestos mining | I-20 | Rail transportation |
| I-3 | Non-metallic mining other than asbestos | | |
| I-4 | Metal ore mining | | **Utilities and waste management services** |
| I-5 | Oil and gas extraction | I-21 | Electric and gas utilities and distribution |
| **Construction** | | I-22 | Water, sewer, steam, air-conditioning, heating, and irrigation systems |
| I-6 | Construction (residential) | I-23 | Sewage and water treatment facilities |
| I-7 | Construction (commercial) | I-24 | Asbestos abatement |
| I-8 | Construction (industrial) | | |
| I-9 | Municipal/infrastructure construction | | **Military** |
| **Manufacturing/repairing** | | I-25 | U.S. Navy |
| I-10 | Asbestos product manufacturing | I-26 | Other Armed Forces, Military Reserves, or National Guard Branch |
| I-11 | Textile, yarn, thread, fabric, and knitting mills/manufacturing | | **Other services and professionals** |
| I-12 | Pulp, paper, and paperboard mills/manufacturing | I-27 | Automotive repair and maintenance |
| I-13 | Chemical/petroleum refining | I-28 | Gasoline stations |
| I-14 | Cement, concrete, lime, and gypsum/drywall products manufacturing | I-29 | Commercial and industrial machinery and equipment repair and maintenance |
| I-15 | Blast furnaces and steel mills | I-30 | Architectural, engineering, and related services |
| I-16 | Iron, aluminum, and other metals foundries/mills/manufacturing | | **Other** |
| I-17 | Ship and boat building and repairing | I-31 | Other (describe; use for any other industry in categories above or in any other category) |
| I-18 | Motor vehicles and motor vehicle equipment manufacturing | | |

## EQUIPMENT CODES

*INSTRUCTIONS: Use these Equipment codes when completing PART 6: ALLEGED EXPOSURE*

### Aldrich Equipment Codes

| Code | Equipment Name | Equipment Also Known As |
|------|---------------|------------------------|
| P-01 | Ingersoll-Rand Compressor | |
| P-02 | Ingersoll-Rand Condenser | |
| P-03 | Ingersoll-Rand Pump | |
| P-04 | | Aldrich Pump |
| P-05 | | Cameron Pump |
| P-06 | | Ingersoll-Dresser Pump or IDP |
| P-07 | Ingersoll-Rand Turbine | |
| P-08 | | Dresser-Rand Turbine |
| P-09 | Ingersoll-Rand Drilling Equipment | |
| P-10 | | S&S Scoops |

| Code | Equipment Name | Equipment Also Known As |
|------|----------------|-------------------------|
| P-11 | Ingersoll-Rand Mining Equipment | |
| P-12 | | Lee Norse Mining Equipment |
| P-13 | | S&S Mining Equipment |
| P-14 | | Simmons-Rand Mining Equipment |

**Murray Equipment Codes**

| Code | Equipment Name | Equipment Also Known As |
|------|----------------|-------------------------|
| P-15 | American Blower Industrial Fans | |
| P-16 | American Standard Boiler | |
| P-17 | | Acme |
| P-18 | | American Radiator Company |
| P-19 | | American Radiator and Standard Sanitary |
| P-20 | | Arco |
| P-21 | | Arcofire |
| P-22 | | Arcoflash |
| P-23 | | Arcola |
| P-24 | | Arcoleader |
| P-25 | | Arcoliner |
| P-26 | | Electra |
| P-27 | | Empire |
| P-28 | | Exbrook |
| P-29 | | Fox |
| P-30 | | Ideal |
| P-31 | | Invincible |
| P-32 | | Ideal |
| P-33 | | Invincible |
| P-34 | | Magazine |
| P-35 | | Oakmont |
| P-36 | | Redflash |
| P-37 | | Severn |
| P-29 | | Standard |
| P-30 | | Sunbeam |
| P-31 | American Standard Furnace | |
| P-32 | American Standard Valves | |
| P-33 | | Arco |
| P-34 | | Belknap |
| P-35 | | Detroit Lubricants |
| P-36 | | D.T. Williams |
| P-37 | | Ideal |
| P-38 | Fox Furnace | |
| P-39 | Kewanee Boiler | |
| P-40 | Majestic Fireplace | |
| P-41 | Murray Boiler | |
| P-42 | Murray Turbine | |
| P-43 | Ross Heat Exchanger | |
| P-44 | Sunbeam Furnace | |
| P-45 | Trane Absorber | |
| P-46 | Trane Air Handling Unit | |
| P-47 | Trane Boiler | |
| P-48 | Trane Chiller | |
| P-49 | Trane Compressor | |
| P-50 | Trane Evaporator | |
| P-51 | Trane Furnace | |
| P-52 | Trane HVAC unit | |
| P-53 | Trane Radiator | |
| P-54 | Trane Refrigeration Unit | |
| P-55 | Trane Steam Traps | |
| P-56 | Trane Valves | |
| P-57 | Union Switch & Signal railroad signaling equipment | |
| P-58 | Union Switch & Signal railroad switching equipment | |
| P-59 | WABCO Railroad Compressor | |
| P-60 | WABCO Railroad brakes | |
| P-61 | | COBRA Railroad brake shoes |
| P-62 | WABCO Heavy mining equipment | |
| P-61 | | Le Tourneau heavy mining equipment |
| P-62 | WABCO Off-road vehicle equipment | |
| P-63 | | WABCO Haulpak trucks |

## PART 1: STATUS OF ALDRICH AND MURRAY CLAIMS

Select the status of your claim against Aldrich:

☐ Pending
☐ Would have been filed absent bankruptcy stay
☐ Dismissed or withdrawn
☐ Settled and paid       If so, amount of settlement with Aldrich/Old Ingersoll-Rand Company: $_____
☐ Settled and unpaid     If so, amount of settlement with Aldrich/Old Ingersoll-Rand Company: $_____
☐ Resolved by judgment   If so, amount of judgment against Aldrich/Old Ingersoll-Rand Company: $_____
☐ Not based on a diagnosis of mesothelioma or lung cancer
☐ I do not assert a claim against Aldrich

Select the status of your claim against Murray:

☐ Pending
☐ Would have been filed absent bankruptcy stay
☐ Dismissed or withdrawn
☐ Settled and paid       If so, amount of settlement with Murray/Old Trane U.S. Inc.: $_____
☐ Settled and unpaid     If so, amount of settlement with Murray/Old Trane U.S. Inc.: $_____
☐ Resolved by judgment   If so, amount of judgment against Murray/Trane U.S. Inc.: $_____
☐ Not based on a diagnosis of mesothelioma or lung cancer
☐ I do not assert a claim against Murray

If you did not check any of the yellow-shaded boxes in this Part 1, you may stop after completing Parts 2, 3, and 4 of this Questionnaire.

## PART 2: INJURED PARTY INFORMATION *(See instructions above for Part 2 for definition of "Injured Party")*

| Last Name: | First Name: | Middle Initial: | Suffix: | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|
| Sex (M/F): | Social Security Number: | Foreign Tax ID *(if applicable)*: | | Estate Tax ID *(if applicable)*: |
| City of Residence: | State of Residence: | Postal Code: | Country (if outside the US): | |
| Country of birth: | | Date immigrated to United States (if applicable): | | |

## PART 3: RELATED CLAIMANT INFORMATION *(if different than INJURED PARTY)* *(See instructions above for Part 3 for definition of "Related Claimant")*

| Last Name: | First Name: | Middle Initial: | Suffix: | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|
| Sex (M/F): | Social Security Number : | Foreign Tax ID *(if applicable)*: | | |
| City of Residence: | State of Residence: | Postal Code: | Country (if outside the US): | |
| Relationship to Injured Party: | | | | |
| Additional Related Claimants (use additional copies of this page to provide information above for such claimants): | | | | |

## PART 4: LAW FIRM INFORMATION

| Name of Firm Responding to Questionnaire: | | | |
|---|---|---|---|
| Firm Mailing or Street Address: | | | |
| Firm City: | Firm State: | Zip Code: | Phone No.: (Area Code) ###-#### |
| Name of Firm Contact: | | Email Address: | |
| Other Law Firms that represent Claimant with Respect to an asbestos-related claim (whether in lawsuits, in making claims against Trusts, or sharing, for any reason, in the contingent fee for legal services for any claim you are making related to asbestos: | | | |

**If, in response to Part 1, you did not check any box labeled "pending" or "would have been filed absent bankruptcy stay," you may stop here as you do not have to answer the remainder of this Questionnaire.  Conversely, if, in response to Part 1, you did check any box labeled "pending" or "would have been filed absent bankruptcy stay," please continue and respond to the remainder of this Questionnaire.**

## PART 5A: INFORMATION ON MESOTHELIOMA DIAGNOSIS

Has the Injured Party been diagnosed with Mesothelioma? (Y/N) _____

Date of first diagnosis of Mesothelioma (mm/dd/yyyy): _____

Type of Mesothelioma:   ☐ Pleural   ☐ Peritoneal   ☐ Other   If Other, identify: _____

Is the Injured Party deceased? (Y/N)_____
If so, Date of Death (mm/dd/yyyy): _____

Has the Injured Party been diagnosed with a different asbestos-related condition at any time? (Y/N): _____
If so, identify the condition: _____

## PART 5B: INFORMATION ON LUNG CANCER DIAGNOSIS

Has the Injured Party been diagnosed with Lung Cancer? (Y/N) _____
Date of first diagnosis of Lung Cancer (mm/dd/yyyy): _____
Has a licensed medical physician attributed the diagnosis of Lung Cancer to asbestos exposure? (Y/N):_____
If yes, what is the name of that licensed medical physician:_____
If yes, what was the date of the diagnosis attributing the lung cancer to asbestos exposure (mm/dd/yyyy):_____

Did the Injured Party ever smoke cigarettes? (Y/N):   _____
If so, during what period of time did the injured party smoke cigarettes (yyyy to yyyy):_____ to _____
If so, how many packs of cigarettes per day did the inured party smoke?:_____
Are there medical records that confirm the injured party's smoking history? (Y/N): _____

Is the Injured Party deceased? (Y/N)_____
If so, Date of Death (mm/dd/yyyy): _____
Has a licensed medical physician diagnosed the Injured Party with asbestosis? (Y/N):_____
If yes, was the diagnosis of asbestosis pathological? (Y/N):_____
If yes, what is the name of that licensed medical physician:_____
If yes, what was the date of the diagnosis of asbestosis (mm/dd/yyyy):_____

Has the Injured Party been diagnosed with any asbestos-related condition other than those above at any time? (Y/N): _____
If so, identify the condition: _____

## PART 6A: ALLEGED EXPOSURE TO ASBESTOS FROM ALDRICH EQUIPMENT

***INSTRUCTIONS:*** *Answer the questions regarding the Injured Party's alleged exposure to asbestos for which Aldrich is or was responsible ("Aldrich Exposure"). Complete a separate section for every job in which claimant alleges Aldrich Exposure, as well as any site where claimant alleges non-occupational Aldrich Exposure. Use as many copies of the following two pages as necessary to answer for all jobs and non-occupational sites where alleged Aldrich Exposure occurred and assign a number for each job or non-occupational site.* ***In the case of secondary exposure,*** *list information for job or non-occupational site where primary exposure allegedly occurred and provide the required information regarding the Primary Exposed Person's alleged exposure during the periods when the Secondary Exposed Person claims exposure.*

Does claimant allege Aldrich Exposure?    ☐ Yes ☐ No

### ALLEGED ALDRICH EXPOSURE – SITE #_____(one page per site; use additional pages if more than one site is at issue)

Type of alleged exposure (check one and only one):

☐ Occupational: Injured Party experienced Aldrich Exposure because of his or her job (whether full-time or part-time)
☐ Non-occupational: Injured Party experienced Aldrich Exposure for reasons unrelated to his or her job
☐ Secondary/Household: Injured Party alleges contact with someone who experienced Aldrich Exposure

For Secondary/Household, provide the following information:
Relationship between Injured Party and Primary Exposed Person:_____
How did the Injured Party allegedly come into contact with asbestos from the Primary Exposed Person? _____
During what period of time did the Injured Party come into contact with asbestos from the Primary Exposed Person (yyyy to yyyy) _____to_____

Site Type ☐ Industrial or Commercial  ☐ Residence of a Family Member or Acquaintance  ☐ Other _____ (describe)

☐ Personal Residence        ☐ Residence of a customer

Site Name (i.e. name and location of plant, refinery, etc.) *of alleged exposure (for Secondary claims, list sites where Primary Exposed Person was allegedly exposed):*

| City | State | Country | Employer (if applicable) |
|---|---|---|---|
| Occupation Code: (see codes on pages 4-5) | Industry Code: I- (see codes on page 5) | Start Date (mm/dd/yyyy) | End Date (mm/dd/yyyy) |
| Aldrich Exposure Start Date (mm/dd/yyyy) | Aldrich Exposure End Date (mm/dd/yyyy) | Frequency of Aldrich exposure alleged at this site (e.g., once, more than once but infrequently, a few times a year, monthly, weekly, daily, etc.): | |

Please check the Aldrich Equipment Codes that apply (see Codes on page 5)
☐ P-01, ☐ P-02, ☐ P-03, ☐ P04, ☐ P-05, ☐ P-06, ☐ P-07, ☐ P-08, ☐ P-09, P-10, ☐ P-11, ☐ P-12, ☐ P-13, ☐ P-14
Describe the activity that resulted in the asbestos exposure:

If you checked Equipment Code P-01 for Ingersoll-Rand Compressor, please check if you performed the following.
For every activity checked, note the frequency in the space provided.
☐ Personally removed asbestos-containing gaskets from Aldrich equipment

☐ Personally removed asbestos-containing packing from Aldrich equipment

☐ Personally replaced asbestos-containing gaskets from Aldrich equipment

☐ Personally replaced asbestos-containing packing from Aldrich equipment

☐ Worked in the presence of others removing or replacing asbestos-containing gaskets or packing from Aldrich equipment

Is the information you provided above as to Equipment Code P-01 within your personal knowledge (y/n)?

Is the information you provided above as to Equipment Code P-01 within the personal knowledge of another person (y/n)? If yes, please provide the name of that person:_____.

If you checked Equipment Code P-02 for Ingersoll-Rand Condenser, please check if you performed the following. For every activity checked, note the frequency in the space provided:
☐ Personally removed asbestos-containing gaskets from Aldrich equipment

☐ Personally removed asbestos-containing packing from Aldrich equipment

☐ Personally replaced asbestos-containing gaskets from Aldrich equipment

☐ Personally replaced asbestos-containing packing from Aldrich equipment

☐ Worked in the presence of others removing or replacing asbestos-containing gaskets or packing from Aldrich equipment

Is the information you provided above as to Equipment Code P-02 within your personal knowledge (y/n)?

Is the information you provided above as to Equipment Code P-02 within the personal knowledge of another person (y/n)? If yes, please provide the name of that person:_____.

---

If you checked Equipment Code P-03, P-04, P-05, P-06 for Ingersoll-Rand pump, please check if you performed the following.
For every activity checked, note the frequency in the space provided.

☐ Personally removed asbestos-containing gaskets from Aldrich equipment

☐ Personally removed asbestos-containing packing from Aldrich equipment

☐ Personally replaced asbestos-containing gaskets from Aldrich equipment

☐ Personally replaced asbestos-containing packing from Aldrich equipment

☐ Worked in the presence of others removing or replacing asbestos-containing gaskets or packing from Aldrich equipment

Is the information you provided above as to Equipment Code P-03, P-04, P-05, or P-06 within your personal knowledge (y/n)?

Is the information you provided above as to Equipment Code P-03, P-04, P-05, or P-06 within the personal knowledge of another person (y/n)? If yes, please provide the name of that person:_____.

---

If you checked Product Code P-07, P-08 for Ingersoll-Rand turbine, please check if you performed the following. For every activity checked, note the frequency in the space provided:

☐ Personally removed asbestos-containing gaskets from Aldrich equipment

☐ Personally removed asbestos-containing packing from Aldrich equipment

☐ Personally replaced asbestos-containing gaskets from Aldrich equipment

☐ Personally replaced asbestos-containing packing from Aldrich equipment

☐ Worked in the presence of others removing or replacing asbestos-containing gaskets or packing from Aldrich equipment

Is the information you provided above as to Equipment Code P-07 or P-08 within your personal knowledge (y/n)?

Is the information you provided above as to Equipment Code P-07 or P-08 within the personal knowledge of another person (y/n)? If yes, please provide the name of that person:_____.

---

If you checked Equipment Code P-09, P-10, P-11, P-12, P-13, P-14 for Ingersoll-Rand drilling/mining products, please check if you performed the following. For every activity checked, note the frequency in the space provided:

☐ Personally removed asbestos-containing gaskets from Aldrich equipment

☐ Personally removed asbestos-containing packing from Aldrich equipment

☐ Personally replaced asbestos-containing gaskets from Aldrich equipment

☐ Personally replaced asbestos-containing packing from Aldrich equipment

☐ Personally removed asbestos-containing friction products (brakes, clutches) from Aldrich equipment

☐ Personally replaced asbestos-containing friction products (brakes, clutches) from Aldrich equipment

☐ Worked in the presence of others removing or replacing asbestos-containing gaskets, packing, or friction products (brakes, clutches) from Aldrich equipment

Is the information you provided above as to Equipment Code P-09, P-10, P-11, P-12, P-13, or P-14 within your personal knowledge (y/n)?

Is the information you provided above as to Equipment Code P-09, P-10, P-11, P-12, P-13, or P-14 within the personal knowledge of another person (y/n)? If yes, please provide the name of that person:_____.

---

If you believe the Injured Party's exposure to asbestos for which you allege Aldrich is responsible falls outside the Equipment Codes outlined above, please explain in detail the facts and circumstances surrounding the Injured Party's alleged exposure to asbestos for which you believe Aldrich may be liable, whether or not those facts and circumstances are within your personal knowledge, and, if not, provide the name of the person that has personal knowledge as to the described facts and circumstances:

**PART 6B: ALLEGED EXPOSURE TO ASBESTOS FROM MURRAY EQUIPMENT**

*INSTRUCTIONS: Answer the question regarding the Injured Party's alleged exposure to asbestos for which Murray is or was responsible ("Murray Exposure"). Then, complete a separate section for every job in which claimant alleges Murray Exposure, as well as any site where claimant alleges non-occupational Murray Exposure. Use as many copies of the following two pages as necessary to answer for all jobs and non-occupational sites where alleged Murray Exposure occurred and assign a number for each job or non-occupational site. In the case of secondary exposure, list information for job or non-occupational site where primary exposure allegedly occurred and provide the required information regarding the Primary Exposed Person's alleged exposure during the periods when the Secondary Exposed Person claims exposure.*

Does claimant allege Murray Exposure?    ☐ Yes ☐ No

**ALLEGED MURRAY EXPOSURE – SITE #_____(one page per site; use additional pages if more than one site is at issue)**

Type of alleged exposure (check one and only one):

☐ Occupational: Injured Party experienced Murray Exposure because of his or her job (whether full-time or part-time)
☐ Non-occupational: Injured Party experienced Murray Exposure for reasons unrelated to his or her job
☐ Secondary/Household: Injured Party alleges contact with someone who experienced Murray Exposure

For Secondary/Household, provide the following information:
Relationship between Injured Party and Primary Exposed Person:_____
How did the Injured Party allegedly come into contact with asbestos from the Primary Exposed Person? _____
During what period of time did the Injured Party come into contact with asbestos from the Primary Exposed Person (yyyy to yyyy) _____ to _____

Site Type ☐ Industrial or Commercial  ☐ Residence of a Family Member or Acquaintance  ☐ Other _____ (describe)

☐ Personal Residence  ☐ Residence of a customer

Site Name (i.e. name of plant, refinery, etc.) *of alleged exposure (for Secondary claims, list sites where Primary Exposed Person was allegedly exposed):*

| City | State | Country | Employer (if applicable) |
|---|---|---|---|
| Occupation Code: (see codes on pages 4-5) | Industry Code: I- (see codes on page 5) | Start Date (mm/dd/yyyy) | End Date (mm/dd/yyyy) |
| Murray Exposure Start Date (mm/dd/yyyy) | Murray Exposure End Date (mm/dd/yyyy) | Frequency of Murray exposure alleged at this site (e.g., once, more than once but infrequently, a few times a year, monthly, weekly, daily, etc.): | |

Please check the Murray Equipment Codes that apply (see Codes on page 5-6)
☐ P-15  ☐ P-16  ☐ P-17  ☐ P-18  ☐ P-19  ☐ P-20  ☐ P-21  ☐ P-22  ☐ P-23  ☐ P-24  ☐ P-25  ☐ P-26  ☐ P-27  ☐ P-28  ☐ P-29  ☐ P-30  ☐ P-31  ☐ P-32  ☐ P-33  ☐ P-34  ☐ P-35  ☐ P-36  ☐ P-37  ☐ P-38  ☐ P-39  ☐ P-40  ☐ P-41  ☐ P-42  ☐ P-43  ☐ P-44  ☐ P-45  ☐ P-46  ☐ P-47  ☐ P-48  ☐ P-49  ☐ P-50  ☐ P-51  ☐ P-52  ☐ P-53  ☐ P-54  ☐ P-55  ☐ P-56  ☐ P-57  ☐ P-58  ☐ P-59  ☐ P-60  ☐ P-61  ☐ P-62  ☐ P-63

Describe the activity that resulted in the asbestos exposure:

If you checked Equipment Code P-15, or P-31 through P-56 please check if you performed the following. For every activity checked, note the frequency in the space provided.

☐ Personally removed asbestos-containing gaskets from Murray equipment

☐ Personally removed asbestos-containing packing from Murray equipment

☐ Personally replaced asbestos-containing gaskets from Murray equipment

☐ Personally replaced asbestos-containing packing from Murray equipment

☐ Worked in the presence of others removing or replacing asbestos-containing gaskets or packing from Murray equipment

Is the information you provided above as to Equipment Code P-15, or P-31 through P-56 within your personal knowledge (y/n)?

Is the information you provided above as to Equipment Code P-15, or P-31 through P-56 within the personal knowledge of another person (y/n)? If yes, please provide the name of that person:_____.

If you checked Equipment Code P-16 through P-30 for boiler, please check if you performed the following.
For every activity checked, note the frequency in the space provided.

☐ Personally removed asbestos-containing gaskets from Murray boiler equipment

☐ Personally removed asbestos-containing packing from Murray boiler equipment

□ Personally replaced asbestos-containing gaskets from Murray boiler equipment

□ Personally replaced asbestos-containing packing from Murray boiler equipment

□ Personally removed asbestos-containing thermal insulation from Murray boiler equipment originally installed prior to 1955

□ Personally replaced asbestos-containing thermal insulation from Murray boiler equipment originally installed prior to 1955

□ Worked in the presence of others removing or replacing asbestos-containing gaskets or packing from Murray boiler equipment or thermal insulation from Murray boiler equipment originally installed prior to 1955

Is the information you provided above as to Equipment Code P-16 through P-30 within your personal knowledge (y/n)?

Is the information you provided above as to Equipment Code P-16 through P-30 within the personal knowledge of another person (y/n)? If yes, please provide the name of that person:_____.

---

If you checked Equipment Code P-57 through P-63, please check if you performed the following.
For every activity checked, note the frequency in the space provided:

□ Personally removed asbestos-containing gaskets from Murray equipment

□ Personally removed asbestos-containing packing from Murray equipment

□ Personally replaced asbestos-containing gaskets from Murray equipment

□ Personally replaced asbestos-containing packing from Murray equipment

□ Personally removed asbestos-containing friction products (brakes, clutches) from Murray equipment

□ Personally replaced asbestos-containing friction products (brakes, clutches) from Murray equipment

□ Worked in the presence of others removing or replacing asbestos-containing gaskets, packing, or friction products from Murray equipment

Is the information you provided above as to Equipment Code P-57 through P-63 within your personal knowledge (y/n)?

Is the information you provided above as to Equipment Code P-57 through P-63 within the personal knowledge of another person (y/n)? If yes, please provide the name of that person:_____.

---

If you believe the Injured Party's exposure to asbestos for which you allege Murray is responsible falls outside the Equipment Codes outlined above, please explain in detail the facts and circumstances surrounding the Injured Party's alleged exposure to asbestos for which you believe Murray may be liable, whether or not those facts and circumstances are within your personal knowledge, and, if not, provide the name of the person that has personal knowledge as to the described facts and circumstances:

**PART 6C: ALLEGED EXPOSURE TO ASBESTOS FROM PRODUCTS UNRELATED TO ALDRICH AND MURRAY (one page per site; use additional pages if more than one site is at issue)**

*INSTRUCTIONS: In this section, identify each job or non-occupational site at which the Injured Party allegedly experienced asbestos exposure in any form for which you allege companies other than Aldrich and Murray are responsible ("Non-Aldrich and Non-Murray Exposure"). Use as many copies of this page as necessary to answer for all jobs and non-occupational sites where alleged Non-Aldrich and Non-Murray Exposure occurred and assign a number for each job or non-occupational site. In the case of secondary exposure, list information for job or non-occupational site where primary exposure allegedly occurred and provide the required information regarding the Primary Exposed Person's alleged exposure during the periods when the Secondary Exposed Person claims exposure.*

**NON-ALDRICH/NON-MURRAY EXPOSURE (JOB OR NON-OCCUPATIONAL SITE # ___)**

Type of alleged exposure (check one and only one):

☐ Occupational: Injured Party experienced Non-Aldrich and Non-Murray Exposure because of his or her job (whether full-time or part-time)

☐ Non-occupational: Injured Party experienced Non-Aldrich and Non-Murray Exposure for reasons unrelated to his or her job

☐ Secondary: Injured Party alleges contact with someone who experienced Non-Aldrich and Non-Murray Exposure

For Secondary, provide relationship between Injured Party and Primary Exposed Person: _____

How did the Injured Party allegedly come into contact with asbestos from the Primary Exposed Person? _____

During what period of time did the Injured Party allegedly come into contact with asbestos from the Primary Exposed Person? _____

| | | | |
|---|---|---|---|
| | | | |

Site Type  ☐ Industrial or Commercial   ☐ Residence of a Family Member or Acquaintance   ☐ Other _____ (describe)

☐ Personal Residence   ☐ Residence of a customer

Site Name (i.e., name and location of plant, refinery) of alleged Non-Aldrich and Non-Murray Exposure *(for Secondary claims, list sites where Primary Exposed Person was allegedly exposed)*::

| Employer (if applicable; for Secondary, list Primary Exposed Person employer): | City: | State: | Country: |
|---|---|---|---|
| | | | |
| | | | |

*Specify the Occupation Code, Industry Code (see p.4-5—if "Other," please describe), Start & End Dates, and Non-Aldrich and Non-Murray Exposure Dates for each occupation held during which claimant (or Primary Exposed Person) alleges Non-Aldrich or Non-Murray asbestos exposure at this site.*

| Occupation 1 Code: (see codes on pages 4-5) | Industry Code: I- (see codes on page 5) | Start Date: (__/__/____) | End Date: (__/__/____) | Non-Aldrich and Non-Murray Exposure Dates: (__/__/____)-(__/__/____) |
|---|---|---|---|---|
| Occupation 2: Code: | Industry Code: I- | Start Date: (__/__/____) | End Date: (__/__/____) | Non-Aldrich and Non-Murray Exposure Dates: (__/__/____)-(__/__/____) |
| Occupation 3: Code: - | Industry Code: I- | Start Date: (__/__/____) | End Date: (__/__/____) | Non-Aldrich and Non-Murray Exposure Dates: (__/__/____)-(__/__/____) |

Describe the activity, including the allegedly asbestos-containing product or products involved and how frequently each activity occurred, that resulted in Non-Aldrich and Non-Murray Exposure (for Secondary, list activity that resulted in exposure of Primary Exposed Person):

If not otherwise identified in attached documents and Trust claim forms, identify any asbestos or asbestos-containing products to which the Injured Party was exposed (e.g., insulation, cement, etc.) and the company that manufactured and/or supplied each product:

Is the information you provided as to this site as to the Injured Party's Non-Aldrich and Non-Murray exposure within your personal knowledge (y/n)?

Is the information you provided as to this site as to the Injured Party's Non-Aldrich and Non-Murray exposure within the personal knowledge of another person (y/n)? If yes, please provide the name of that person(s):_____.

NAI-1514084469

**PART 7: INJURED PARTY ECONOMIC LOSS INFORMATION**

**INSTRUCTIONS:** *Provide the following information. You do not need to use the Occupation and Industry Codes from pages 4-5.*

Was/Has the Injured Party retired? (Y/N): _____

If yes, date of retirement: (mm/dd/yyyy) _____

If *not retired*, answer the following for current activity; if *retired*, answer the following for activity at retirement date:

   Occupation: _____   Industry: _____   State: _____   County: _____

Was the Injured Party employed at the time of diagnosis? (Y/N): _____

*If yes, answer the following:*

   Occupation: _____   Industry: _____   State: _____   County: _____

   Planned date of retirement but for diagnosis: (mm/dd/yyyy) _____

   Did the Injured Party leave employment after the diagnosis? (Y/N) _____

   If yes, date on which Injured Party left employment: (mm/dd/yyyy) _____

Does the claimant allege lost wages, lost Social Security, or lost pension? (Y/N): _____   Amount: _____

Does the claimant allege lost household services? (Y/N): _____   Amount: _____

Does the claimant seek to recover medical expenses? (Y/N): _____   Amount: _____

Does the claimant allege any economic loss other than lost wages, lost household services, and medical expenses? (Y/N): _____

If yes, describe: _____   Amount: _____

The Injured Party's Current Marital Status: (check one)   ☐ Single, Never Married   ☐ Married   ☐ Divorced   ☐ Widowed   ☐ Marriage Annulled
☐ Legally Separated   ☐ Other: (specify) _____

If married, age of spouse: _____

*Please provide information on each non-spouse dependent*

| Dependent | Disabled? (Y/N) | Age | Dependent | Disabled? (Y/N) | Age |
|---|---|---|---|---|---|
| Dependent 1 | | | Dependent 4 | | |
| Dependent 2 | | | Dependent 5 | | |
| Dependent 3 | | | Dependent 6 | | |

**PART 8: LAWSUITS AND OTHER CLAIMS BASED ON THE INJURED PARTY'S MESOTHELIOMA OR LUNG CANCER (OR OTHER ASBESTOS-RELATED CONDITION)**

***INSTRUCTIONS:*** *Answer the questions regarding payments received by the claimant. Then, use additional copies of the following page **AND** associated **TABLE A** for **EACH LAWSUIT** seeking compensation based on the Injured Party's mesothelioma or lung cancer (or a separate lawsuit alleging another asbestos-related condition), whether or not (1) Aldrich or Murray was named as a defendant, or (2) the lawsuit remains pending. Use additional pages if more space is required.*

Provide the total aggregate payments received by the claimant from all Trusts on account of the Injured Party's mesothelioma or lung cancer:

Provide the total number of Trusts from which the claimant has received a payment on account of the Injured Party's mesothelioma or lung cancer:

Provide the total aggregate payments received by the claimant from all entities that are not Trusts, such as tort system defendants, on account of the Injured Party's asbestos claim:

Provide the total number of non-Trust entities from which the claimant has received a payment on account of the Injured Party's asbestos claim:

---

**PART 8A: LAWSUITS BASED ON THE INJURED PARTY'S MESOTHELIOMA OR LUNG CANCER (OR SEPARATE LAWSUIT BASED ON ANOTHER ASBESTOS-RELATED CONDITION)**

**LAWSUIT #_____ -of -_____   (For example, Lawsuit #1 of 3 related lawsuits. Use additional copies of this page to complete the section separately for each related lawsuit.)**

What is the capacity of the claimant *(select and fill out for all that apply)*?

☐ Injured Party                    ☐ Personal Representative/Executor          ☐ Dependent Child

☐ Spouse of Injured Party          ☐ Wrongful Death Claimant                   ☐ Other (please specify) _____

State  (list state): _____

Federal court? (Y/N): _____

What state county/subdivision or federal district court (fill in the blank):

_____

Case Number / Docket Number (fill in the blank): _____

Date first filed (mm/dd/yyyy): _____

Disease alleged in this lawsuit _____

**Trial Information**

Has this claim been resolved either in whole or in part by trial? (Y/N): _____

If yes, please provide further information about the trial:

    Was a verdict entered? (Y/N): _____

    If a verdict was entered, please provide further information about the verdict:

        When was the verdict entered? (mm/dd/yyyy): _____

        Was it a plaintiff verdict or a defense verdict? _____

        If a plaintiff verdict, please answer the following:

        Which defendants were found liable? _____

        What was the allocation of fault or damages? _____

        Was there a monetary award to plaintiff (Y/N)? _____

        If yes, what was the award of compensatory damages? _____

        Is the case on appeal? (Y/N) _____

    Complete ***attached TABLE A*** for all defendants named in this lawsuit

## TABLE A

### NAMED DEFENDANTS AGAINST WHICH A LAWSUIT FOR ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH HAS BEEN FILED

*"DWOP" means "dismissed without payment."*

**LAWSUIT # _____ -of- _____** *(fill in appropriate lawsuit # from PART 8A)*
**RELATED CASE NUMBER_____***(fill in appropriate Case Number from PART 8A)*

| Named Defendant | Claim Status | | | Payment Date (or, if not paid, Resolution Date) (mm/dd/yyyy) |
|---|---|---|---|---|
| 1 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 2 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 3 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 4 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 5 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 6 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 7 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 8 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 9 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 10 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 11 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 12 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 13 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 14 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 15 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 16 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 17 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 18 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 19 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 20 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 21 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 22 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 23 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 24 | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 25 | ☐ Pending | ☐ DWOP | ☐ Settled | |

Note: If more space is required, use additional pages

**PART 8B AND 8C: OTHER CLAIMS RELATED TO THE INJURED PARTY** *(Information About Claims against Bankruptcy Trusts and Other Entities)*

*INSTRUCTIONS: Complete attached Table B (claims against bankruptcy trusts) and attached Table C (claims against other entities not previously identified in Table A or Table B) for all such claims based on the Injured Party's mesothelioma, lung cancer or other asbestos-related condition. You must provide information relating to claims against Trusts and against other entities made by or on behalf of the claimant or the Injured Party. Use additional pages if more space is required.*

## TABLE B

## BANKRUPTCY TRUSTS AGAINST WHICH A CLAIM HAS BEEN FILED FOR ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH

| Trust Name | Claim Has Been Filed | Claim Status (check both if applicable) | Payment Date (or, if not paid, Resolution Date) (mm/dd/yyyy) |
|---|---|---|---|
| A&I Corporation Asbestos Bodily Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| ABB Lummus Global Inc. 524(g) Asbestos PI Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| A-Best Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| AC&S Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Amatex Asbestos Disease Trust Fund | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| APG Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| API, Inc. Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Armstrong World Industries Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| ARTRA 524(g) Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| ASARCO LLC Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Bartells Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Brauer 524(g) Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Burns and Roe Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| C. E. Thurston & Sons Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Celotex Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Christy Refractories Asbestos Personal Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Combustion Engineering 524(g) Asbestos PI Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Congoleum Plan Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| DII Industries, LLC Asbestos PI Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Durabla Manufacturing Company Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Eagle-Picher Industries Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Federal Mogul U.S. Asbestos Personal Injury Trust (FMP Sub-Fund) | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Federal Mogul U.S. Asbestos Personal Injury Trust (T&N Sub-Fund) | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Flintkote Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Forty-Eight Insulations Qualified Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Fuller-Austin Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| G-I Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |

| Trust | Yes/No | Approved/Paid | |
|-------|--------|---------------|---|
| Geo. V. Hamilton, Inc. Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| GST Settlement Facility | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| H. K. Porter Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Hercules Chemical Company, Inc. Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| J.T. Thorpe Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| JT Thorpe Company Successor Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Kaiser Asbestos Personal Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Keene Creditors Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Leslie Controls, Inc. Asbestos Personal Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Lykes Tort Claims Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| M. H. Detrick Company Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Manville Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Maremont Asbestos PI Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Metex Asbestos PI Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Motors Liquidation Company Asbestos Personal Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| NGC Bodily Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| North American Refractories Company Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Owens Corning Fibreboard Asbestos Personal Injury Trust (OC Sub-Fund) | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Owens Corning Fibreboard Asbestos Personal Injury Trust (FB Sub-Fund) | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Pittsburgh Corning Corporation Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Plant Insulation Company Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| PLI Disbursement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Plibrico Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Porter Hayden Bodily Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Quigley Company, Inc. Asbestos Personal Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Raytech Corporation Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Rock Wool Mfg Company Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Rutland Fire Clay Company Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Sepco Asbestos PI Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Shook & Fletcher Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Skinner Engine Co. Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| SPHC Asbestos Personal Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| State Insulation Corporation Asbestos PI Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Stone and Webster Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Swan Asbestos and Silica Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| T H Agriculture & Nutrition, LLC Industries Asbestos Personal Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Thorpe Insulation Company Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| United Gilsonite Laboratories Asbestos Personal Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |

| Trust | Yes/No | Approved/Paid | |
|---|---|---|---|
| United States Gypsum Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| United States Mineral Products Company Asbestos Personal Injury Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| UNR Asbestos-Disease Claims Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Utex Industries, Inc. Successor Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Wallace & Gale Company Asbestos Settlement Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Western MacArthur-Western Asbestos Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| WRG Asbestos PI Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Yarway Asbestos Personal Injury Trust | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Other Trust _____ | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |
| Other Trust _____ | ☐ Yes ☐ No | ☐ Approved ☐ Paid | |

NAI-1514084469

## TABLE C

OTHER ENTITIES AGAINST WHICH A CLAIM FOR ASBESTOS-RELATED PERSONAL INJURY OR WRONGFUL DEATH HAS BEEN OR PLANS TO BE ASSERTED (OUTSIDE OF JUDICIAL PROCEEDINGS OR TRUST PROCESSES ALREADY LISTED IN TABLES A AND B), INCLUDING THOSE ENTITIES AGAINST WHICH A LAW FIRM INTENDS TO ASSERT A CLAIM UNDER AN ADMINISTRATIVE AGREEMENT

| Company or Other Party | Claim Status | | | Payment Date (or, if not paid, Resolution Date) (mm/dd/yyyy) |
|---|---|---|---|---|
| 1. Bestwall LLC (Georgia-Pacific) | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 2. DBMP LLC (CertainTeed) | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 3. Kaiser Gypsum | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 4. Paddock Enterprises LLC (Owens-Illinois) | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 5. Fairbanks Company | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 6. ON Marine Services Company LLC (Oglebay Norton Co.) | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 7. Duro Dyne National Corp. | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 8. Reilly Benton Co. Inc. | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 9. Imerys Talc America | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 10. Frazier | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 11. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 12. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 13. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 14. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 15. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 16. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 17. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 18. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 19. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 20. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 21. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 22. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| 23. Other Entity: _____ | ☐ Pending | ☐ DWOP | ☐ Settled | |
| Note: If more space is required, use additional pages. | | | | |

| PART 9: CLAIM CERTIFICATION |
|---|

***INSTRUCTIONS:*** This certification must be signed by either the Injured Party/Related Claimant or by the attorney for such party but need not be signed by both.

**If Completed By Claimant:**

I swear, under penalty of perjury, that, to the best of my knowledge, I have provided full and complete responses, and included all information available to me, to the questions propounded herein, and all of the information contained in the foregoing responses to this Personal Injury Claim Questionnaire is true, accurate and complete as of the date hereof.

_____          _____

Signature                                                                               Date

_____

Print Name

**If Completed By Attorney:**

I acknowledge that by submitting the foregoing responses to this Personal Injury Claim Questionnaire on behalf of my client, I am making the certifications contained in Rule 9011(b) of the Federal Rules of Bankruptcy Procedure.

_____          _____

Signature                                                                               Date

_____          _____

Print Name                                                                          Law Firm

| PART 10: TRUST CLAIM FORMS |
|---|

Attach copies of all Trust claim forms submitted by or on behalf of the claimant or Injured Party to Trusts listed in Table B, as well as all attachments to such claim forms, such as deposition transcripts, affidavits, invoices, etc. Alternatively, the claimant may execute the form attached as Exhibit 1 to authorize a law firm representing Aldrich and Murray to obtain from Trusts any claim forms submitted to a Trust by or on behalf of the claimant or Injured Party, as well as any attached documents. This requirement applies to claim forms submitted to one or more Trusts (or the equivalent information as to trust claims that you filed with trusts electronically).

| PART 11: OTHER CASE DOCUMENTS |
|---|

Attach copies of the following documents:

a.  All depositions taken in any lawsuits listed in Part A that relate in any way to the Injured Party's alleged exposures to asbestos or asbestos-containing products.

b.  All written discovery (including interrogatories and requests for admission) you or your attorney have answered on your behalf in any the lawsuits listed in part A.

c.  All expert reports produced by any party in a lawsuit listed in Part A.

d.  Social Security printout and copy of union or employment records relevant to the Injured Party's asbestos exposure (where available).

e.  Copy of medical records (as defined) confirming diagnosis of mesothelioma or lung cancer.

**Exhibit 1: Claimants' Optional Authorization for Debtors' Counsel to Obtain Trust Records**

TO WHOM IT MAY CONCERN:

The Claimant named below hereby authorizes each Trust listed in the attachment hereto to provide a copy of any claim form submitted to such Trust, as well as all documents attached to the form by or on behalf of such Claimant (or the equivalent information as to Trust claims filed with Trusts electronically), to the law firms of Jones Day and Evert Weathersby Houff in their capacities as counsel to Aldrich Pump LLC, et al., in its chapter 11 case, docketed as Case No. 20--BK-30608 (Bankr. W.D.N.C.) (the "Bankruptcy Case") at the addresses below:

David Torborg                         Michael Evert
Jones Day                             Evert Weathersby Houff
51 Louisiana Avenue                   3455 Peachtree Road NE, Suite 1550
Washington, D.C. 20001                Atlanta, GA 30326
dtorborg@jonesday.com                 cmevert@ewhlaw.com

The Claimant has elected to provide this Authorization pursuant to the *Order Authorizing the Debtors to Issue Questionnaire to Holders of Pending Mesothelioma and Lung Cancer Claims and Governing the Confidentiality and Use of Information Provided in Responses*, entered in the Bankruptcy Case on _____, 2020 [Dkt. No. ___] (the "Questionnaire Order"). The Claimant expressly reserves his or her right to all of the protections of the Questionnaire Order, including, without limitation, the restrictions set forth therein on the uses and disclosure of "Confidential Questionnaire Information." Except for the limited disclosure permitted by this Authorization, the Claimant does not waive, but expressly asserts, his or her rights under any confidentiality provisions applicable under the bankruptcy plan of reorganization, Trust agreement, or Trust distribution procedures under which any given Trust was created or operates.

This Authorization does not permit any Trust to release any information whatsoever, other than a copy of any claim form submitted to any of the listed Trusts by or on behalf of the Claimant (or the equivalent information as to Trust claims filed with Trusts electronically), as well as any attached documents such as deposition transcripts, affidavits, invoices, etc. Without limiting the generality of the foregoing two sentences, the Authorization does not permit any Trust to release information concerning the status of any claim, settlement of any claim, or payment of any claim.

Name of Claimant: _____

Claimant Social Security No.: _____

Name of Injured Party: _____

Injured Party Social Security No.: _____

Signature of Claimant or attorney authorized to execute this document for Claimant:

_____

Name of signing attorney, if applicable: _____
Date: _____

Attachment: List of Asbestos Settlement Trusts

NAI-1514084469

## Attachment to Exhibit 1: List of Trusts Referenced in Claimants' Optional Authorization for Debtors' Counsel to Obtain Trust Records

| Trusts | |
|---|---|
| A&I Corporation Asbestos Bodily Injury Trust | NGC Bodily Injury Trust |
| ABB Lummus Global Inc. 524(g) Asbestos PI Trust | North American Refractories Company Asbestos Personal Injury Settlement Trust |
| A-Best Asbestos Settlement Trust | Owens Corning Fibreboard Asbestos Personal Injury Trust (OC Sub-Fund) |
| AC&S Asbestos Settlement Trust | Owens Corning Fibreboard Asbestos Personal Injury Trust (FB Sub-Fund) |
| Amatex Asbestos Disease Trust Fund | Pittsburgh Corning Corporation Asbestos Personal Injury Settlement Trust |
| APG Asbestos Trust | Plant Insulation Company Asbestos Settlement Trust |
| API, Inc. Asbestos Settlement Trust | PLI Disbursement Trust |
| Armstrong World Industries Asbestos Personal Injury Settlement Trust | Plibrico Asbestos Trust |
| ARTRA 524(g) Asbestos Trust | Porter Hayden Bodily Injury Trust |
| ASARCO LLC Asbestos Personal Injury Settlement Trust | Quigley Company, Inc. Asbestos Personal Injury Trust |
| Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust | Raytech Corporation Asbestos Personal Injury Settlement Trust |
| Bartells Asbestos Settlement Trust | Rock Wool Mfg Company Asbestos Trust |
| Brauer 524(g) Asbestos Trust | Rutland Fire Clay Company Asbestos Trust |
| Burns and Roe Asbestos Personal Injury Settlement Trust | Sepco Asbestos PI Trust |
| C. E. Thurston & Sons Asbestos Trust | Shook & Fletcher Asbestos Settlement Trust |
| Celotex Asbestos Settlement Trust | Skinner Engine Co. Asbestos Trust |
| Christy Refractories Asbestos Personal Injury Trust | SPHC Asbestos Personal Injury Trust |
| Combustion Engineering 524(g) Asbestos PI Trust | State Insulation Corporation Asbestos PI Trust |
| Congoleum Plan Trust | Stone and Webster Asbestos Trust |
| DII Industries, LLC Asbestos PI Trust | Swan Asbestos and Silica Settlement Trust |
| Durabla Manufacturing Company Asbestos Trust | T H Agriculture & Nutrition, LLC Industries Asbestos Personal Injury Trust |
| Eagle-Picher Industries Personal Injury Settlement Trust | Thorpe Insulation Company Asbestos Personal Injury Settlement Trust |
| Federal Mogul U.S. Asbestos Personal Injury Trust (FMP Sub-Fund) | United Gilsonite Laboratories Asbestos Personal Injury Trust |
| Federal Mogul U.S. Asbestos Personal Injury Trust (T&N Sub-Fund) | United States Gypsum Asbestos Personal Injury Settlement Trust |
| Flintkote Asbestos Trust | United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust |
| Forty-Eight Insulations Qualified Settlement Trust | United States Mineral Products Company Asbestos Personal Injury Settlement Trust |
| Fuller-Austin Asbestos Settlement Trust | UNR Asbestos-Disease Claims Trust |
| G-I Asbestos Settlement Trust | Utex Industries, Inc. Successor Trust |
| Geo. V. Hamilton, Inc. Asbestos Trust | Wallace & Gale Company Asbestos Settlement Trust |
| GST Settlement Facility | Western MacArthur-Western Asbestos Trust |
| H. K. Porter Asbestos Trust | WRG Asbestos PI Trust |
| Hercules Chemical Company, Inc. Asbestos Trust | Yarway Asbestos Personal Injury Trust |
| J.T. Thorpe Settlement Trust | |
| JT Thorpe Company Successor Trust | |
| Kaiser Asbestos Personal Injury Trust | |
| Keene Creditors Trust | |
| Leslie Controls, Inc. Asbestos Personal Injury Trust | |
| Lykes Tort Claims Trust | |
| M. H. Detrick Company Asbestos Trust | |
| Manville Personal Injury Settlement Trust | |
| Maremont Asbestos PI Trust | |
| Metex Asbestos PI Trust | |
| Motors Liquidation Company Asbestos Personal Injury Trust | |

# **EXHIBIT C**

NAI-1514163240

**Supreme Court of Pennsylvania**
**Court of Common Pleas**
**Civil Cover Sheet**
BEAVER _____ **County**

| For Prothonotary Use Only: |
| --- |
| Docket No: |
| 11548 - 2019 |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
| --- | --- |
| Richard J. Shiel, Sr., and Darlene Shiel | A.O. Smith Corporation, et al. |

Are money damages requested? ☒ Yes   ☐ No

Dollar Amount Requested:
(check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

Is this a *Class Action Suit?*   ☐ Yes   ☒ No

Is this an *MDJ Appeal?*   ☐ Yes   ☒ No

Name of Plaintiff/Appellant's Attorney:  Leif J. Ocheltree, Esq.

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case:**   Place an "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE.* If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other:

**MASS TORT**
- ☒ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:

*Updated 1/1/2011*

# FORM OF COVER SHEET FOR COMPLAINT

Court of Common Pleas of Beaver County
Civil Division
## Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| | *11548-2019* |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Richard J. Shiel, Sr., and Darlene Shiel, his wife | A.O. Smith Corporation, et al., |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** PLEASE SEE ATTACHMENT |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |

| TOTAL NO. OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION | |
|---|---|---|---|
| 2 | 172 | [X] Complaint | [ ] Notice of Appeal |
| | | [ ] Writ of Summons | [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | CASE TYPE | | |
|---|---|---|---|
| [ ] $25,000 or Less | [ ] Motor Vehicle | [ ] Mortgage Foreclosure | [ ] Partition |
| | [ ] Medical Malpractice | [ ] Ejectment | [ ] Declaratory Judgment |
| [X] Over $25,000 | [ ] Other Professional Liability | [ ] Statutory Appeals | [ ] Replevin |
| | [ ] Product Liability | [ ] Quiet Title | [X] Asbestos |
| | [ ] Other _____ | | [ ] Domestic Relations |
| | | | [ ] Divorce |
| | | | [ ] Custody |

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: (or Pro Se Litigant)

Papers may be served at the address set forth below

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY (OR PRO SE LITIGANT) | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Leif J. Ocheltree, Esq. (Goldberg, Persky & White, P.C.) | 11 Stanwix Street, Ste. 1800 Pittsburgh, PA 15222 |

| PHONE NUMBER | FAX NUMBER | EMAIL ADDRESS |
|---|---|---|
| 412-471-3980 | 412-471-8308 | JNelson@gpwlaw.com |

| SIGNATURE | SUPREME COURT IDENTIFICATION NO. | DATE |
|---|---|---|
| | 163508 | 11/19/2019 |

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
CIVIL DIVISION

## INITIAL CASE MANAGEMENT CONFERENCE ORDER

CASE NO: 2019-11548

RICHARD J. SHEIL, SR., AND DARLENE SHEIL

** *VERSUS* **

A.O. SMITH CORPORATION, ETAL

The above-captioned case is scheduled for an initial case management
conference before Judge ROSS, JAMES J. on February 24, 2020
at a time to be set by future Scheduling Order in Courtroom 6. The
attorneys and/or *pro se* litigants must be prepared to advise the Court of their intentions
with regard to discovery and pursuit of the case. The Court will set a schedule based
upon the discussions at this conference. This conference will not be continued absent a
motion for continuance, with good cause shown, presented in Civil Motions Court of this
Court held as listed in the court calendar. **It shall be the responsibility of plaintiffs
counsel to serve a copy of this Order to all counsel/parties. If this is an appeal from a
Magistrate District Judge decision, it shall be the responsibility of the appellants counsel
or the appellant to serve a copy of this Order to all counsel/parties.**

It shall be the responsibility of all parties to complete and file with the Court
the Civil Case Summary Form provided in the Local Rule of Civil Procedure 301A.

NANCY WERME
PROTHONOTARY
BEAVER COUNTY, PA

2019 NOV 19 PM 1: 07

FILED OR ISSUED

BY THE COURT,

James J. Ross

11/19/2019                   J.

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

CIVIL DIVISION - ASBESTOS

RICHARD J. SHIEL, SR. AND DARLENE
SHIEL, HIS WIFE,

          Plaintiffs,

VS.

A.O. SMITH CORPORATION,
A.R. WILFLEY & SONS, INC.,
ABB, INC., as successor to Brown Boveri
(Individually and as successor-in-interest to ITE
IMPERIAL CO f/k/a ITE CIRCUIT BREAKER
COMPANY),
AECOM ENERGY & CONSTRUCTION, INC.,
f/k/a URS Energy & Construction, Inc., f/k/a
Catalytic Construction Company,
AIR & LIQUID SYSTEMS CORPORATION,
successor-by merger to Buffalo Pumps, Inc.,
AIRTEK, INC.,
AJAX MAGNETHERMIC CORPORATION,
ALCOA, INC., f/k/a Aluminum Company
of America,
ALFA LAVAL, INC.,
ALLIED GLOVE CORPORATION,
AMERON INTERNATIONAL CORPORATION,
successor-in-interest to Bondstrand,
AMETEK, INC., as successor-in-interest to
Haveg Industries, Inc.,
ARMSTRONG INTERNATIONAL, INC.,
ARMSTRONG PUMPS, INC.,
ATLAS INDUSTRIES, INC.,
ATWOOD & MORRILL, d/b/a Weir Valves and
Controls USA, Inc.,
AURORA PUMPS,
BAKER HUGHES, a GE Company, LLC,
BEAZER EAST, INC., in its own right
and as successor to Koppers, Co., Inc.,
and other related companies, including
Thiem Corporation, Beazer USA, Inc., and
Beazer, PLC,

GD No. 11548-2019

Code: 012

JURY TRIAL DEMANDED

**COMPLAINT IN CIVIL ACTION**

Filed on behalf of Plaintiffs

Counsel of Record for this Party:

Leif J. Ocheltree, Esquire
PA ID No. 163508

GOLDBERG PERSKY & WHITE, PC

11 Stanwix Street, Suite 1800
Pittsburgh, PA 15222
(412) 471-3980

Firm #744

NANCY WERME
PROTHONOTARY
BEAVER COUNTY, PA
2019 NOV 19 PH 1:06
FILED OR ISSUED

BECHTEL CORPORATION,
BLUE M CORPORATION,
BMI REFRACTORY SERVICES, INC.,
BORGWARNER MORSE TEC LLC,
BRAND INSULATIONS, INC.,
BRYAN STEAM, LLC,
BURNHAM, LLC,
BW/IP, INC.,
CAMERON INTERNATIONAL CORPORATION, f/k/a
Cooper Cameron Corporation,
CARMEUSE LIME &STONE, INC.,
CARRIER CORPORATION,
CARVER PUMP COMPANY,
CASHCO, INC.,
CBS CORPORATION, f/k/a Viacom Inc.,
as Successor by Merger to CBS Corp, f/k/a
Westinghouse Electric Corporation,
CEMLINE CORPORATION,
CERTAINTEED CORPORATION,
CHICAGO PNEUMATIC TOOL COMPANY, LLC,
CLARK EQUIPMENT COMPANY,
CLARK RELIANCE CORPORATION, and its
division Jerguson Gage and Valve,
CLEAVER-BROOKS f/k/a AQUA-CHEM,
CLYDE UNION, INC., d/b/a Clyde Union Pumps,
individually and as successor-by-merger to Union
Pump Company,
COLUMBUS MCKINNON CORP.,
successor-by-merger to Lift Tech International, Inc.,
and its Shaw-Box Hoist Division,
COOPER INDUSTRIES, INC.,
CORNING INCORPORATED, on behalf of its former
Corhart Refractories business division,
CRANE COMPANY, INC.,
DANA COMPANIES, LLC,
DEZURIK, INC.,
DBMP LLC,
DONALD McKAY SMITH, Inc.,
DRAVO CORPORATION,
E.E. ZIMMERMAN COMPANY,
EATON CORPORATION, as successor-in-interest
to Cutler-Hammer, Inc., n/k/a Eaton Electrical Inc.,
ECODYNE CORPORATION,
EICHLEAY CORPORATION,
ELECTROLUX HOME PRODUCTS INC., f/k/a
WCI Outdoor Products, Inc.,

2

ELLIOTT COMPANY, f/k/a Elliott Turbomachinery Co.,
EVOQUA WATER TECHNOLOGIES, INC.,
FLOWSERVE CORPORATION, f/k/a
Durametallic Corporation,
FLOWSERVE CORPORATION, f/k/a Duriron Company, Inc.,
FLOWSERVE US, INC., solely as successor to
Nordstrom Audco, Edward Valves Inc., Nordstrom Valves, Inc.,
and Rockwell Manufacturing Company,
FLOWSERVE US, INC., f/k/a Flowserve FSD Corp.,
successor to Valtek International,
FLSMIDTH DORR-OLIVER, INC., as successor-
in-interest to Keeler/Dorr-Oliver Boiler Company,
FLSMIDTH, INC., f/k/a Fuller Company,
FLUOR CONSTRUCTORS INTERNATIONAL a/k/a
Fluor Corporation,
FLUOR CORPORATION,
FLUOR ENTERPRISES, INC.,
FMC CORPORATION,
FOSECO, INC.,
FOSTER WHEELER LLC,
GARDNER DENVER, INC.,
GENERAL ELECTRIC COMPANY,
GENTEX CORPORATION,
GENUINE PARTS COMPANY,
GOULD ELECTRONICS, INC., f/k/a GD-TEK, INC.,
GOULDS PUMPS, LLC,
GREENE TWEED & COMPANY,
GRINNELL, LLC,
GUARD LINE, INC,
HAMWORTHY PEABODY COMBUSTION, INC.,
HONEYWELL, INC.,
HONEYWELL  INTERNATIONAL, INC., f/k/a Allied
Signal, Inc., as successor-in-interest to the Bendix
Corporation,
HONEYWELL INTERNATIONAL, INC., f/k/a
Allied Signal, Inc., in its own right and as successor-in-interest
to Allied Corporation (Wilputte Coke Oven Division), and as
successor-in-interest to Allied Chemical (Wilputte Coke Oven
Division), and as successor-in-interest to Wilputte Coke Oven
Corporation,
HOWDEN NORTH AMERICA, INC., f/k/a
Howden Buffalo, Inc.,
HUNTER SALES CORPORATION,
I.U. NORTH AMERICA, INC., as successor by
merger to The Garp Company, formerly known as

3

The Gage Company, formerly known as
Pittsburgh Gage and Supply Company,
IMO INDUSTRIES, INC., f/k/a IMO Delaval, Inc,,
f/k/a DeValco Corporation Inc., f/k/a
DeLaval Turbine, Inc.,
INDUCTOTHERM INDUSTRIES, INC.,
INDUSTRIAL HOLDINGS CORPORATION,
f/k/a Carborundum Corporation,
INDUSTRIAL RUBBER PRODUCTS,
INGERSOLL-RAND CORPORATION,
INSUL COMPANY, INC.,
ITT INDUSTRIES, INC.,
J-M MANUFACTURING COMPANY, INC.,
J.M. FOSTER, INC.,
JOHNSON CONTROLS, INC.,
JOY GLOBAL SURFACE MINING, INC., f/k/a
P&H Mining Equipment, f/k/a Harnischfeger Corporation,
JOY GLOBAL UNDERGROUND MINING, LLC, f/k/a
Joy Technologies, Inc.,
LINDBERG,
LINDBERG MPH,
M.S. JACOBS & ASSOCIATES, INC.,
MAGNETEK, INC.,
MALLINCKRODT US HOLDINGS, LLC,
McCARLS, INC.,
MCJUNKIN REDMAN CORPORATION, f/k/a
MRC Global (US), Inc.,
MCMASTER CARR SUPPLY,
MCNEIL (OHIO) CORPORATION,
McWANE, INC.,
MET-PRO CORPORATION, and its Dean Pump brand,
d/b/a Met-Pro Global Pump Solutions,
METROPOLITAN LIFE INSURANCE COMPANY,
f/k/a Metropolitan Insurance Company,
MILWAUKEE VALVE COMPANY,
MINE SAFETY APPLIANCE COMPANY,
MINNOTTE CONTRACTING CORPORATION,
MORGAN ENGINEERING SYSTEMS, INC.,
MOYNO, INC.,
MUELLER CO., LLC,
MUELLER STEAM SPECIALTY,
MW CUSTOM PAPERS, LLC a/k/a MEAD,
NAGLE PUMPS, INC.,
NORTEK GLOBAL HVAC, LLC, as successor by
merger to Reznor, LLC,
NORTH AMERICAN MANUFACTURING CO.,

4

OGLEBAY NORTON COMPANY,
a/k/a Oglebay Norton Engineered Materials, a/k/a
ON Marine Services, Inc., and its division,
The Ferro Engineering Division,
OSRAM SYLVANIA, INC., in its own right, and
as successor-in-interest to GTE Products Corporation, The
Clark Controller Company and A.O. Smith Corporation,
PNEUMO ABEX, LLC, as successor-in-interest
to Abex Corporation,
POWER PIPING COMPANY,
RCH NEW CO, II LLC, f/k/a Robertson Ceco
Corporation, an alleged successor to H.H. Robertson
Company,
READING CRANE AND ENGINEERING COMPANY,
RESCO HOLDINGS, L.L.C. as successor to the
M.W. Kellogg Company,
RESEARCH-COTTRELL, INC., n/k/a AWT AIR COMPANY, INC.,
REUNION INDUSTRIES, INC.,
RHEEM MANUFACTURING COMPANY,
RILEY POWER, INC., f/k/a Riley Stoker Corporation,
ROBBINS & MYERS, INC.,
ROBINSON FANS, INC.,
RUST ENGINEERING & CONSTRUCTION, INC.,
f/k/a Treco Construction Services f/k/a the Rust
Engineering Company,
SAINT-GOBAIN ABRASIVES, INC.,
f/k/a Norton Company,
SAUER, INC.,
SCHNEIDER ELECTRIC USA, INC., f/k/a Square D Company,
SEALING DEVICES, INC.,
SIMAKAS COMPANY, INC.,
SPIRAX SARCO, INC.,
SPX COOLING TECHNOLOGIES, INC., f/k/a Marley
Cooling Technologies, Inc., f/k/a The Marley Cooling
Tower Company,
STERLING FLUID SYSTEMS (USA), LLC,
SULZER PUMPS SOLUTIONS, INC.
f/k/a AHLSTROM PUMPS, LLC,
SUNBEAM PRODUCTS, INC., as success-in-interest
to Sunbeam Corporation,
SUNDYNE CORPORATION,
SURFACE COMBUSTION,
SWINDELL-DRESSLER INTERNATIONAL COMPANY,
TENOVA INC., f/k/a Tenova Core Inc., f/k/a
Techint Technologies, Inc., f/k/a Core Furnace Systems Corp.,
as successor-in-interest to Salem Furnace Company,

5

THE GOODYEAR TIRE & RUBBER COMPANY,
THE GORMAN-RUPP COMPANY,
THE NASH ENGINEERING COMPANY,
THE WILLIAM POWELL COMPANY,
THERMO ELECTRIC COMPANY,
THIEM CORPORATION, and its Division,
Universal Refractories,
TRANE U.S. INC., f/k/a American Standard Corporation,
f/k/a American Radiator & Standard Sanitary, in its
own right and as successor to Westinghouse Airbrake
and/or WABCO,
TUTHILL CORPORATION,
UNIFLOW MANUFACTURING COMPANY,
UNION CARBIDE CORPORATION,
UNITED CONVEYOR CORPORATION,
UNITED STATES STEEL CORPORATION,
VELAN VALVE CORPORATION,
VIKING PUMP, INC.,
WARREN PUMPS, LLC,
WASHINGTON GROUP INTERNATIONAL
f/k/a Raytheon Engineers and Constructors, Inc.,
and all its domestic subsidiaries including The
Badger Company, Inc.,
WATSON McDANIEL COMPANY,
WATTS REGULATOR CO.,
WEIL-McLAIN COMPANY,
WHEELABRATOR AIR POLLUTION CONTROL, INC.,
WT/HRC CORPORATION, f/k/a Whiting Corporation,
WTI RUST HOLDINGS, INC.,
YORK INTERNATIONAL CORPORATION,
YUBA HEAT TRANSFER LLC,
ZURN INDUSTRIES, a/k/a Erie City Iron Works,
            Defendants.

# IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY, PENNSYLVANIA

## CIVIL DIVISION - ASBESTOS

RICHARD J. SHIEL, SR. AND DARLENE SHIEL, HIS WIFE

GD No.

Plaintiffs,

Code: 12

JURY TRIAL DEMANDED

VS.

A.O. SMITH CORP., et al.,

Defendants.

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

<u>IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.</u>

LAWYER REFERRAL SERVICE
BEAVER COUNTY BAR ASSOCIATION
798 TURNPIKE STREET
BEAVER, PA 15009
TELEPHONE: (724) 728-4888

7

# COMPLAINT IN CIVIL ACTION

1.      The plaintiffs, RICHARD J. SHIEL, SR. AND DARLENE SHIEL, are individuals residing at 3117 Bradbury Drive, Aliquippa, PA 15001.

2.      The defendant, A.O. SMITH CORPORATION, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in Milwaukee, Wisconsin and is qualified to do business in the Commonwealth of Pennsylvania.

3.      The defendant, A.R. WILFLEY & SONS, INC., is a corporation incorporated under the laws of the State of Colorado, with its principal place of business located in Englewood, California, and is qualified to do business in the Commonwealth of Pennsylvania.

4.      The defendant, ABB, INC. as successor to Brown Boveri (Individually and as successor-in-interest to ITE IMPERIAL CO f/k/a ITE CIRCUIT BREAKER COMPANY), is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Connecticut, and is qualified to do business in the Commonwealth of Pennsylvania.

5.      The defendant, AECOM ENERGY & CONSTRUCTION, INC., f/k/a URS Energy & Construction, Inc., f/k/a Catalytic Construction Company, is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in Greenwood Village, Colorado, and is qualified to do business in the Commonwealth of Pennsylvania.

6.      The defendant, AIR & LIQUID SYSTEMS CORPORATION, successor by merger to Buffalo Pumps, is a corporation incorporated under the law of the Commonwealth of Pennsylvania, having its principal place of business in Rochester Hills, Michigan, and is qualified to do business in the Commonwealth of Pennsylvania.

8

7.     The Defendant, AIRTEK, INC., is a corporation incorporated under the law of the Commonwealth of Pennsylvania, having its principal place of business in Irwin, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

8.     The defendant, AJAX MAGNETHERMIC CORPORATION, is a corporation incorporated under the law of the State of Delaware, having its principal place of business in located in the State of Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

9.     The defendant, ALCOA, INC., f/k/a Aluminum Company of America, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

10.     The defendant, ALFA LAVAL, INC., is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business in Richmond, Virginia, and is qualified to do business in the Commonwealth of Pennsylvania.

11.     The defendant, ALLIED GLOVE CORPORATION, is a corporation incorporated under the law of the State of Delaware, having its principal place of business in Milwaukee, Wisconsin, and is qualified to do business in the Commonwealth of Pennsylvania.

12.     The defendant, AMERON INTERNATIONAL CORPORATION, successor-in-interest to Bondstrand, is a corporation incorporated under the law of the State of Delaware, having its principal place of business in Houston, Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

13.     The defendant, AMETEK, INC., successor-in-interest to Haveg Industries, Inc., is a corporation incorporated under the law of the State of Delaware, having its principal place

9

of business in Berwyn, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

14.    The defendant, ARMSTRONG INTERNATIONAL, INC., is a corporation incorporated under the laws of the State of Michigan, having its principal place of business in Three Rivers, Michigan and is qualified to do business in the Commonwealth of Pennsylvania.

15.    The defendant, ARMSTRONG PUMPS, INC., is a corporation having its principal place of business located in Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

16.    The defendant, ATLAS INDUSTRIES, INC. is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Carnegie, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

17.    The defendant, ATWOOD & MORRILL CO., INC., d/b/a Weir Valves and Controls USA, Inc., is a corporation incorporated under the laws of the State of Massachusetts, with its principal place of business located in the State of Massachusetts, and is qualified to do business in the Commonwealth of Pennsylvania.

18.    The defendant, AURORA PUMPS, is a corporation having its principal place of business in the Commonwealth of Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

19.    The defendant, BAKER HUGHES, a GE Company, LLC, is a corporation incorporated under the laws of the State of DE with its primary place of business located in Houston, Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

20.    The defendant, BEAZER EAST, INC., in its own right and as successor to
Koppers Company, Inc., and other related companies including Thiem Corporation, Beazer
USA, Inc., and Beazer PLC, is a corporation incorporated under the laws of the State of
Delaware, having its principal place of business located in Pittsburgh, Pennsylvania, and is
qualified to do business in the Commonwealth of Pennsylvania.

21.    The Defendant, BECHTEL CORPORATION is a corporation incorporated under
the laws of the State of Nevada with its primary place of business located in San Francisco,
California, and is qualified to do business in the Commonwealth of Pennsylvania.

22.    The Defendant, BLUE M CORPORATION, is a corporation with its primary
place of business located in Riverside, MI and is qualified to do business in the Commonwealth
of Pennsylvania.

23.    The defendant, BMI REFRACTORY SERVICES, INC., is a corporation
incorporated under the laws of the State of Delaware, having its principal place of business
located in Dover, Delaware, and is qualified to do business in the Commonwealth of
Pennsylvania.

24.    The Defendant, BORG-WARNER CORPORATION, is a corporation incorporated
under the laws of the State of Delaware, having its principal place of business located in Chicago,
Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

25.    The defendant, BRAND INSULATIONS, INC., is a corporation incorporated
under the laws of the State of Illinois having its principal place of business in the State of
Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

26.    The defendant, BRYAN STEAM, LLC, is a corporation incorporated under the
laws of the State of Delaware having its principal place of business in Peru, Indiana and is

11

qualified to do business in the Commonwealth of Pennsylvania.

27. The defendant, BURNHAM, LLC, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Lancaster, Pennsylvania and is qualified to do business in the Commonwealth of Pennsylvania.

28. The defendant, BW/IP, INC., is a corporation incorporated under the laws of the State of Delaware having its principal place of business in the State of Texas and is qualified to do business in the Commonwealth of Pennsylvania.

29. The defendant, CAMERON INTERNATIONAL CORPORATION, f/k/a Cooper Cameron Corporation, is a corporation incorporated under the laws of the State of Delaware with its primary place of business located in Houston, Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

30. The Defendant, CARMEUSE LIME & STONE, INC., is a corporation incorporated under the laws of the State of Delaware, with its primary place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

31. The Defendant, CARRIER CORPORATION, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Hartford, Connecticut, and is qualified to do business in the Commonwealth of Pennsylvania.

32. The defendant, CARVER PUMP COMPANY, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Iowa, and is qualified to do business in the Commonwealth of Pennsylvania.

33. The defendant, CASHCO, INC., is a corporation having its principal place of business in Ellsworth, Kansas, and is qualified to do business in the Commonwealth of Pennsylvania.

34. The defendant, CBS CORPORATION, f/k/a Viacom Inc, as Successor by Merger to CBS Corp. f/k/a Westinghouse Electric Corporation, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in New York, New York and is qualified to do business in the Commonwealth of Pennsylvania.

35. The Defendant, CEMLINE CORPORATION, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Cheswick, Pennsylvania and is qualified to do business in the Commonwealth of Pennsylvania

36. The defendant, CERTAINTEED CORPORATION, is a corporation incorporated under the laws of the State of Maryland, having its principal place of business located in Valley Forge, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

37. The defendant, CHICAGO PNEUMATIC TOOL COMPANY, LLC, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Rock Hill, South Carolina, and is qualified to do business in the Commonwealth of Pennsylvania.

38. The defendant, CLARK EQUIPMENT COMPANY, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in West Fargo, North Dakota, and is qualified to do business in the Commonwealth of Pennsylvania.

39.     The defendant, CLARK RELIANCE CORPORATION, and its division Jerguson Gage and Valve, is a corporation incorporated under the laws of the State of Delaware, with its primary place of business located in Strongsville, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

40.     The defendant, CLEAVER-BROOKS f/k/a AQUA-CHEM, is a corporation having its principal place of business in Milwaukee, Wisconsin, and is qualified to do business in the Commonwealth of Pennsylvania.

41.     The defendant, CLYDE UNION, INC., d/b/a Clyde Union Pumps, individually and as successor-by-merger to Union Pump Company, is a corporation incorporated under the laws of the State of Michigan, with its principal place of business in Battle Creek, Michigan, and is qualified to do business in the Commonwealth of Pennsylvania.

42.     The defendant, COLUMBUS MCKINNON CORP., success-by-merger to Lift Tech International Inc., and its Shaw-Box Hoist Division, is a corporation incorporated under the laws of the State of New York, having its principal place of business located in the State of New York, and is qualified to do business in the Commonwealth of Pennsylvania.

43.     The defendant, COOPER INDUSTRIES, INC., is a corporation incorporated under the laws of the State of Ohio having its principal place of business located in the State of Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

44.     The defendant, CORNING INCORPORATED, on behalf of its former Corhart Refractories business division, is a corporation incorporated under the laws of the State of New York, having its principal place of business located in Corning, New York, and is qualified to do business in the Commonwealth of Pennsylvania.

45. The defendant, CRANE COMPANY, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Stamford, Connecticut, and is qualified to do business in the Commonwealth of Pennsylvania.

46. The Defendant, DANA COMPANIES, LLC, is a corporation having its principal place of business located in Toledo, Ohio and is qualified to do business in the Commonwealth of Pennsylvania.

47. The defendant, DEZURIK, INC., is a corporation incorporated under the laws of the State of Kansas, having its principal place of business located in Ellsworth, Kansas, and is qualified to do business in the Commonwealth of Pennsylvania.

48. The defendant, DBMP, LLC, is a corporation incorporated under the laws of the State of North Carolina, having its principal place of business located in Malvern, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

49. The defendant, DONALD MCKAY SMITH, INC., is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in Westlake, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

50. The defendant, DRAVO CORPORATION, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

51. The defendant, E.E. ZIMMERMAN COMPANY, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

52. The defendant, EATON CORPORATION, as successor-in-interest to Cutler-Hammer, Inc., n/k/a Eaton Electrical Inc., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Cleveland, Ohio and is qualified to do business in the Commonwealth of Pennsylvania.

53. The Defendant, ECODYNE CORPORATION, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Wilmington, Delaware and is qualified to do business in the Commonwealth of Pennsylvania.

54. The defendant, EICHLEAY CORPORATION, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

55. The defendant, ELECTROLUX HOME PRODUCTS INC., f/k/a WCI Outdoor Products, Inc., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Charlotte, North Carolina, and is qualified to do business in the Commonwealth of Pennsylvania.

56. The defendant, ELLIOTT COMPANY, f/k/a Elliott Turbomachinery Co., is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Jeannette, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

57. The defendant, EVOQUA WATER TECHNOLOGIES, INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Warrendale, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

58.     The defendant, FLOWSERVE CORPORATION, f/k/a Durametallic Corporation, is a corporation incorporated under the laws of the State of Michigan, having its principal place of business located in Kalamazoo, Michigan, and is qualified to do business in the Commonwealth of Pennsylvania.

59.     The defendant, FLOWSERVE CORPORATION, f/k/a Duriron Company, Inc., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in the State of Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

60.     The defendant, FLOWSERVE US, INC., solely as successor to Nordstrom Audco, Inc., Edward Valves Inc., Nordstrom Valves, Inc., and Rockwell Manufacturing Company, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in the State of Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

61.     The defendant, FLOWSERVE U.S., INC., f/k/a Flowserve FSD Corporation, successor to Valtek International, is a corporation incorporated under the laws of Delaware, having its principal place of business located in the State of Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

62.     The defendant, FLSMIDTH DORR-OLIVER, INC., as successor-in-interest to Keeler/Dorr-Oliver Boiler Company, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in the State of Utah, and is qualified to do business in the Commonwealth of Pennsylvania.

63.     The defendant, FLSMIDTH, INC., f/k/a Fuller Company, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business

17

located in Bethlehem, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

64. The defendant, FLUOR CONSTRUCTORS INTERNATIONAL a/k/a Fluor Corporation, is a corporation incorporated under the laws of the State of California, having its principal place of business located in the State of Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

65. The defendant, FLUOR CORPORATION, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Irving, Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

66. The defendant, FLUOR ENTERPRISES, INC., is a corporation incorporated under the laws of the State of California, having its principal place of business located in Irving, Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

67. The defendant, FMC CORPORATION, is a corporation incorporated under the laws of Delaware, having its principal place of business located in the Philadelphia, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

68. The defendant, FOSECO, INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Bellmawr, New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

69. The defendant, FOSTER WHEELER LLC., is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business in Livingston, New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

70. The defendant, GARDNER DENVER, INC., is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located

18

in Philadelphia, Pennsylvania and is qualified to do business in the Commonwealth of Pennsylvania.

71.    The defendant, GENERAL ELECTRIC COMPANY, is a corporation incorporated under the laws of the State of New York, having its principal place of business located in Fairfield, Connecticut and is qualified to do business in the Commonwealth of Pennsylvania.

72.    The defendant, GENTEX CORPORATION, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Commonwealth of Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

73.    The Defendant, GENUINE PARTS COMPANY, is a corporation incorporated under the laws of the State of Georgia, having its principal place of business located in Atlanta, and is qualified to do business in the Commonwealth of Pennsylvania.

74.    The defendant, GOULD ELECTRONICS, INC., f/k/a GD-TEK, INC., is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in Eastlake, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

75.    The defendant, GOULDS PUMPS, LLC, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in the State of Delaware, and is qualified to do business in the Commonwealth of Pennsylvania.

76.    The defendant, GREENE TWEED & COMPANY, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business

located in Kulpsville, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

77.     The defendant, GRINNELL LLC., is a corporation incorporated under the laws of the state of Mississippi having its principal place of business located in Upper Saddle River, New Jersey and is qualified to do business in the Commonwealth of Pennsylvania.

78.     The defendant, GUARD LINE, INC, is a corporation incorporated under the laws of the State of Texas, having its principal place of business located in Atlanta, Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

79.     The defendant, HAMWORTHY PEABODY COMBUSTION, INC., is a corporation incorporated under the laws of the State of New York, having its principal place of business located in Wichita, Kansa, and is qualified to do business in the Commonwealth of Pennsylvania.

80.     The defendant, HONEYWELL, INC., is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business located in Morristown, New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

81.     The defendant, HONEYWELL INTERNATIONAL f/k/a Allied Signal, Inc. f/k/a Allied Corporation successor-in-interest to Bendix Corporation., is a corporation incorporated under the laws of the State of Delaware having its principal place of business located in Morris Plains, New Jersey and is qualified to do business in the Commonwealth of Pennsylvania.

82.     The defendant, HONEYWELL INTERNATIONAL, INC., f/k/a Allied Signal, Inc., in its own right and as successor-in-interest to Allied Corporation (Wilputte Coke Oven Division), and as successor-in-interest to Allied Chemical (Wilputte Coke Oven Division), and

as successor-in-interest to Wilputte Coke Oven Corporation, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

83. The defendant, HOWDEN NORTH AMERICA, INC., f/k/a Howden Buffalo, Inc., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in South Carolina, and is qualified to do business in the Commonwealth of Pennsylvania.

84. The defendant, HUNTER SALES CORPORATION, , is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Bethel Park, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

85. The defendant, I.U. NORTH AMERICA, INC., as successor by merger to The Garp Company, formerly known as The Gage Company, formerly known as Pittsburgh Gage and Supply Company, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Wilmington, Delaware and is qualified to do business in the Commonwealth of Pennsylvania.

86. The defendant, IMO INDUSTRIES, INC., f/k/a IMO DeLaval, Inc., f/k/a DeValco Corporation Inc., f/k/a DeLaval Turbine, Inc. is a corporation incorporated under the laws of the state of New York, having its principal place of business located in New York, and is qualified to do business in the Commonwealth of Pennsylvania.

87. The defendant, INDUCTOTHERM INDUSTRIES, INC., is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business

21

located in Rancocas, New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

88.     The defendant, INDUSTRIAL HOLDINGS CORPORATION, f/k/a Carborundum Corporation, is a corporation incorporated under the laws of the State of New York, having its principal place of business located in the State of New York, and is qualified to do business in the Commonwealth of Pennsylvania.

89.     The defendant, INDUSTRIAL RUBBER PRODUCTS, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

90.     The defendant, INGERSOLL-RAND CORPORATION, is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business located in Cleveland, Ohio and is qualified to do business in the Commonwealth of Pennsylvania.

91.     The defendant, INSUL COMPANY, INC., is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in East Palestine, Ohio and is qualified to do business in the Commonwealth of Pennsylvania.

92.     The defendant, ITT INDUSTRIES, INC., is a corporation incorporated under the laws of the State of Mississippi having its principal place of business located in Upper Saddle River, New Jersey and is qualified to do business in the Commonwealth of Pennsylvania.

93.     The defendant, J-M MANUFACTURING COMPANY, INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Los Angeles, California, and is qualified to do business in the Commonwealth of Pennsylvania.

22

94. The defendant, J.M. FOSTER, INC., is a corporation incorporated under the laws of the State of Indiana, having its principal place of business located in Gary, Indiana, and is qualified to do business in the Commonwealth of Pennsylvania.

95. The defendant, JOHNSON CONTROLS, INC., and all subsidiaries and related companies including, but not limited to, York International Corporation, is a corporation incorporated under the laws of the State of Wisconsin, having its principal place of business located in Milwaukee, Wisconsin, and is qualified to do business in the Commonwealth of Pennsylvania.

96. The defendant, JOY GLOBAL SURFACE MINING, INC., f/k/a P&H Mining Equipment, f/k/a Harnischfeger Corporation, is a corporation incorporated under the laws of the State of Delaware having its principal place of business located in Milwaukee, Wisconsin and is qualified to do business in the Commonwealth of Pennsylvania.

97. The defendant, JOY GLOBAL UNDERGROUND MINING, LLC, f/k/a Joy Technologies, Inc., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in the Commonwealth of Pennsylvania and is qualified to do business in the Commonwealth of Pennsylvania.

98. The defendant, LINDBERG, is a Delaware Corporation with its principal place of business located in Charlotte, North Carolina, and at times material hereto, was qualified to do business in the Commonwealth of Pennsylvania.

99. The defendant, LINDBERG MPH, is a corporation with its primary place of business located in Riverside, MI and is qualified to do business in the Commonwealth of Pennsylvania.

100.    The defendant, M.S. JACOBS & ASSOCIATES, INC., is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

101.    The Defendant, MAGNETEK, INC., is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in the State of Tennessee.

102.    The defendant, MALLINCKRODT US HOLDINGS, LLC, is a corporation incorporated under the laws of the State of Missouri, having its principal place of business located in St. Louis, Missouri, and is qualified to do business in the Commonwealth of Pennsylvania.

103.    The defendant, MCCARLS INC., is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Beaver Falls, Pennsylvania and is qualified to do business in the Commonwealth of Pennsylvania.

104.    The defendant, MCJUNKIN REDMAN CORPORATION, f/k/a MRC Global (US) Inc., is a corporation incorporated under the laws of the State of West Virginia, having its principal place of business located in the State of West Virginia, and is qualified to do business in the Commonwealth of Pennsylvania.

105.    The defendant, MCMASTER CARR SUPPLY, is a corporation incorporated in the State of Illinois, with its primary place of business located in Aurora, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

106.    The defendant, MCNEIL (OHIO) CORPORATION, is a corporation incorporated under the laws of the State of Minnesota, with a primary place of business located

in Minneapolis, MN, and is qualified to do business in the Commonwealth of Pennsylvania.

107. The Defendant, McWANE, INC., and its Manchester Tank Division, is a corporation incorporated under the laws of the State of DE, with its principal place of business located in Franklin, TN, and is qualified to do business in the Commonwealth of Pennsylvania.

108. The Defendant, MET-PRO CORPORATION, and its Dean Pump brand, doing business as Met-Pro Global Pump Solutions, is a corporation incorporated under the laws of the State of Pennsylvania, having its principal place of business located in Harleysville, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

109. The defendant, METROPOLITAN LIFE INSURANCE COMPANY, f/k/a Metropolitan Insurance Company., is a corporation incorporated under the laws of the State of New York having its principal place of business located in New York and is qualified to do business in the Commonwealth of Pennsylvania.

110. The defendant, MILWAUKEE VALVE COMPANY., is a corporation incorporated under the laws of the State of Wisconsin having its principal place of business located in Wisconsin and is qualified to do business in the Commonwealth of Pennsylvania.

111. The defendant, MINE SAFETY APPLIANCE COMPANY, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

112. The defendant, MINNOTTE CONTRACTING CORPORATION., is a corporation incorporated under the Commonwealth of Pennsylvania having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

113. The defendant, MORGAN ENGINEERING SYSTEMS, INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Cleveland, Ohio and is qualified to do business in the Commonwealth of Pennsylvania.

114. The Defendant, MOYNO, INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Springfield, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

115. The defendant, MUELLER CO., LLC, is a corporation incorporated under the laws of the State of Delaware having its principal place of business located in Atlanta, Georgia, and is qualified to do business in the Commonwealth of Pennsylvania.

116. The defendant, MUELLER STEAM SPECIALTY, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in the State of North Carolina, and is qualified to do business in the Commonwealth of Pennsylvania.

117. The defendant, MW CUSTOM PAPERS, LLC a/k/a MEAD, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in Richmond, Virginia, and is qualified to do business in the Commonwealth of Pennsylvania.

118. The defendant, NAGLE PUMPS, INC., is a corporation incorporated under the laws of the state of Illinois, having its principal place of business located in Chicago Heights, Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

119. The defendant, NORTEK GLOBAL HVAC, LLC, as successor by merger to Reznor, LLC, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in O'Fallon, Missouri, and is qualified to do business in the

Commonwealth of Pennsylvania.

120. The defendant, NORTH AMERICAN MANUFACTURING CO., is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in Cleveland, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

121. The defendant, OGLEBAY NORTON COMPANY, a/k/a Oglebay Norton Engineered Materials, a/k/a ON Marine Services, Inc., and its division The Ferro Engineering Division, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Ohio and is qualified to do business in the Commonwealth of Pennsylvania.

122. The defendant, OSRAM SYLVANIA, INC., in its own right and as successor-in-interest to GTE Products Corporation, The Clark Controller Company and A.O. Smith Corporation, is a corporation incorporated under the laws of the State of Ohio, having its principal place of business in Cleveland, Ohio and is qualified to do business in the Commonwealth of Pennsylvania.

123. The defendant, PNEUMO ABEX, LLC, as successor-in-interest to Abex Corporation, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Hampton, New Hampshire, and is qualified to do business in the Commonwealth of Pennsylvania.

124. The defendant, POWER PIPING COMPANY, Commonwealth of Pennsylvania, having its principal place of business in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

125. The defendant, RCH NEW CO, II LLC, f/k/a Robertson Ceco Corporation, an alleged successor to H.H. Robertson Company, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Philadelphia, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

126. The defendant, READING CRANE AND ENGINEERING COMPANY, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business in Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

127. The defendant, RESCO HOLDINGS, L.L.C. as successor to the M.W. Kellogg Company, is a limited liability company incorporated under the laws of the State of Delaware, having its principal place of business in Houston, Texas, and is qualified to do business in the Commonwealth of Pennsylvania.

128. The defendant, RESEARCH-COTTRELL, INC., n/k/a AWT AIR COMPANY, INC., is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business in Palm Desert, California, and is qualified to do business in the Commonwealth of Pennsylvania.

129. The defendant, REUNION INDUSTRIES, INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

130. The defendant, RHEEM MANUFACTURING COMPANY, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business in Atlanta, Georgia, and is qualified to do business in the Commonwealth of Pennsylvania.

131. The defendant, RILEY POWER, INC., f/k/a Riley Stoker Corporation, is a corporation incorporated under the laws of the State of Massachusetts, having its principal place of business located in the State of Michigan and is qualified to do business in the Commonwealth of Pennsylvania.

132. The defendant, ROBBINS & MYERS, INC., is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in Dayton, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

133. The defendant, ROBINSON FANS, INC., is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Zelienople, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

134. The defendant, RUST ENGINEERING & CONSTRUCTION, INC., f/k/a Treco Construction Services f/k/a the Rust Engineering Company, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Birmingham, Alabama, and is qualified to do business in the Commonwealth of Pennsylvania.

135. The defendant, SAINT-GOBAIN ABRASIVES, INC., f/k/a Norton Company, is a corporation incorporated under the laws of the State of Massachusetts, having its principal place of business located in Worchester, Massachusetts, and is qualified to do business in the Commonwealth of Pennsylvania.

136. The defendant, SAUER, INC., is a corporation incorporated under the laws of the Commonwealth of Pennsylvania having its principal place of business located in West Pittsburgh, Pennsylvania and is qualified to do business in the Commonwealth of Pennsylvania.

29

137.    The defendant, SCHNEIDER ELECTRIC USA, INC. f/k/a Square D, is a corporation incorporated under the laws of the State of Illinois having its principal place of business located in Palatine, Illinois and is qualified to do business in the Commonwealth of Pennsylvania.

138.    The defendant, SEALING DEVICES, INC., is a corporation incorporated under the laws of the State of New York, having its principal place of business located in Lancaster, New York, and is qualified to do business in the Commonwealth of Pennsylvania.

139.    The defendant, SIMAKAS COMPANY, INC., is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Mars, Pennsylvania and is qualified to do business in the Commonwealth of Pennsylvania.

140.    The defendant, SPIRAX SARCO, INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Blythwood, South Carolina, and is qualified to do business in the Commonwealth of Pennsylvania.

141.    The defendant, SPX COOLING TECHNOLOGIES, INC., f/k/a Marley Cooling Technologies, Inc., f/k/a The Marley Cooling Tower Company, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in the State of North Carolina, and is qualified to do business in the Commonwealth of Pennsylvania.

142.    The defendant, STERLING FLUID SYSTEMS (USA), LLC, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Indianapolis, Indiana, and is qualified to do business in the Commonwealth of Pennsylvania.

143.    The Defendant, SULZER PUMPS SOLUTIONS, INC. f/k/a AHLSTROM

PUMPS, LLC., is a corporation incorporated under the laws of the State of Delaware having its

principal place of business located in Easley, South Carolina, and is qualified to do business in

the Commonwealth of Pennsylvania.

144.    The defendant, SUNBEAM PRODUCTS, INC., as success-in-interest to

Sunbeam Corporation, is a corporation incorporated under the laws of the State of Delaware,

with its principal place of business located in the State of Texas, and is qualified to do business

in the Commonwealth of Pennsylvania.

145.    The defendant, SUNDYNE CORPORATION, is a corporation incorporated

under the laws of the State of Delaware, with its principal place of business located in the State

of Colorado, and is qualified to do business in the Commonwealth of Pennsylvania.

146.    The defendant, SURFACE COMBUSTION, is a corporation incorporated under

the laws of the State of Ohio, with its principal place of business located in the State of Ohio,

and is qualified to do business in the Commonwealth of Pennsylvania.

147.    The defendant, SWINDELL-DRESSLER INTERNATIONAL COMPANY, is a

corporation incorporated under the laws of the State of Delaware, having its principal place of

business located in Coraopolis, Pennsylvania, and is qualified to do business in the

Commonwealth of Pennsylvania.

148.    The defendant, TENOVA INC., f/k/a Tenova Core Inc., f/k/a Techint

Technologies, Inc., f/k/a Core Furnace Systems Corp., as successor-in-interest to Salem

Furnace Company, is a corporation incorporated under the laws of the Commonwealth of

Pennsylvania, having its principal place of business located in Coraopolis, Pennsylvania, and is

qualified to do business in the Commonwealth of Pennsylvania.

149. The defendant, THE GOODYEAR TIRE & RUBBER COMPANY, is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in Akron, Ohio, and is qualified to do business in the Commonwealth of Pennsylvania.

150. The Defendant, THE GORMAN-RUPP COMPANY, is a corporation incorporated under the laws of the State of OH, with its primary place of business located in Mansfield, OH, and is qualified to do business in the Commonwealth of Pennsylvania.

151. The defendant, THE NASH ENGINEERING COMPANY, is a corporation incorporated under the laws of the State of Connecticut, having its principal place of business located in Yarmouth, Maine, and is qualified to do business in the Commonwealth of Pennsylvania.

152. The defendant, THE WILLIAM POWELL COMPANY, is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in the State of Ohio and is qualified to do business in the Commonwealth of Pennsylvania.

153. The defendant, THERMO ELECTRIC COMPANY, is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business located in Saddle Brook, New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

154. The defendant, THIEM CORPORATION, and its Division, Universal Refractories, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Oak Creek, Wisconsin and is qualified to do business in the Commonwealth of Pennsylvania.

155. The defendant, TRANE U.S. INC., f/k/a American Standard Corporation f/k/a

32

American Radiator & Standard Sanitary, in its own right and as successor to Westinghouse Airbrake and/or WABCO, is a corporation incorporated under the law of the State of Delaware, having its principal place of business in Piscataway, New Jersey, and is qualified to do business in the Commonwealth of Pennsylvania.

156. The defendant, TUTHILL CORPORATION, is a corporation incorporated under the laws of the State of Delaware, having its primary place of business located in Burr Ridge, Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

157. The defendant, UNIFLOW MANUFACTURING COMPANY, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Erie, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

158. The defendant, UNION CARBIDE CORPORATION, is a corporation incorporated under the laws of the State of New York, having its principal place of business located in Danbury, Connecticut, and is qualified to do business in the Commonwealth of Pennsylvania.

159. The defendant, UNITED CONVEYOR CORPORATION, and its Linde Division, is a corporation incorporated under the laws of the State of Illinois, having its principal place of business located in the State of Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

160. The defendant, UNITED STATES STEEL CORPORATION, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

161. The defendant, VELAN VALVE CORPORATION, is a corporation incorporated under the laws of the State of New York, having its principal place of business located in the State of Vermont, and is qualified to do business in the Commonwealth of Pennsylvania.

162. The defendant, VIKING PUMP, INC., is a corporation incorporated under the laws of the State of Delaware having its principal place of business located in Cedar Falls, Louisiana, and is qualified to do business in the Commonwealth of Pennsylvania.

163. The defendant, WARREN PUMPS, LLC, is a corporation incorporated under the laws of the State of Delaware having its principal place of business located in Hamilton, New Jersey and is qualified to do business in the Commonwealth of Pennsylvania.

164. The defendant, WASHINGTON GROUP INTERNATIONAL, f/k/a Raytheon Engineers and Constructors, Inc. and all its domestic subsidiaries, including The Badger Company Inc., is a corporation incorporated under the laws of the state of Massachusetts, having its principal place of business located in Pittsburgh, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

165. The defendant, WATSON McDANIEL COMPANY, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, having its principal place of business located in Pottstown, Pennsylvania, and is qualified to do business in the Commonwealth of Pennsylvania.

166. The Defendant, WATTS REGULATOR CO., is a corporation incorporated under the laws of the State of Massachusetts, having its principal place of business located in North Andover, Massachusetts, and is qualified to do business in the Commonwealth of Pennsylvania.

167. The defendant, WEIL-MCLAIN COMPANY, is a corporation incorporated under the laws of the State of Indiana, having its principal place of business located in Indiana, and is qualified to do business in the Commonwealth of Pennsylvania.

168. The defendant, WHEELABRATOR AIR POLLUTION CONTROL, INC., is a corporation incorporated under the laws of the State of West Virginia, having its principal place of business located in the State of West Virginia, and is qualified to do business in the Commonwealth of Pennsylvania.

169. The defendant, WT/HRC CORPORATION, f/k/a Whiting Corporation, is a corporation incorporated under the laws of the State of Illinois, having its principal place of business located in Illinois, and is qualified to do business in the Commonwealth of Pennsylvania.

170. The defendant, WTI RUST HOLDINGS, INC., is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Hampton, New Hampshire, and is qualified to do business in the Commonwealth of Pennsylvania.

171. The defendant, YORK INTERNATIONAL CORPORATION, is a Delaware corporation with its principal place of business located in Milwaukee, WI, and is qualified to do business in the Commonwealth of Pennsylvania.

172. The defendant, YUBA HEAT TRANSFER LLC, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in Tulsa, Oklahoma, and is qualified to do business in the Commonwealth of Pennsylvania.

173. The defendant, ZURN INDUSTRIES, a/k/a Erie City Iron Works, is a corporation incorporated under the laws of the Commonwealth of Pennsylvania having its

principal place of business located in Erie, Pennsylvania and is qualified to do business in the Commonwealth of Pennsylvania.

174. The plaintiff, Richard J. Shiel, Sr., worked at J&L Steel in Aliquippa, PA from 1966 to 1985, as a Laborer, Millwright, and in the Multicraft Group.

175. Mr. Shiel worked part time as a Laborer at Sarracino Auto Sales in Burgettstown, PA for a few years in the late 1950s/early 1960s, and has performed auto work on his personal automobiles throughout his life.

176. Mr. Shiel served his country in the United States Navy from 1963 to 1966. Mr. Shiel is not bringing any claims in the instant complaint for exposure to asbestos-containing products during his service in the United States Navy.

177. During a portion of the time set forth above, while employed as set forth above, Mr. Shiel was exposed to and did inhale asbestos dust and asbestos fibers, which caused the conditions as hereinafter set forth, resulting in Plaintiffs impairment.

178. Plaintiff suffers from mesothelioma.

179. Mr. Shiel's mesothelioma was diagnosed on November 13, 2019. Mr. Shiel was unaware of and could not discover the nature and cause of said mesothelioma before November 13, 2019.

**COUNT I**
**STRICT LIABILITY**

180. The Defendant corporations or their predecessors in interest, at all times relevant, engaged in one or more of the following activities involving asbestos and other ingredients in their materials: the mining, milling, manufacturing, distributing, supplying and/or selling asbestos materials and other dangerous ingredients and products.

181.     At all times pertinent hereto, the Defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of said Defendants.

182.     As a direct and proximate result of the inhalation of the fibers and dusts contained in the products of Defendants and/or their predecessors-in-interest, Mr. Shiel contracted the diseases set forth herein.

183.     The condition of Mr. Shiel is a direct and proximate result of the Defendants' manufacture, and/or production, and/or distribution, and/or supply and/or sale of products containing asbestos and other dangerous ingredients which were inherently, excessively, and ultra-hazardously dangerous to Mr. Shiel and/or lacked elements necessary to make them safe for their intended uses.

184.     Mr. Shiel's disease as set forth herein with associated complications was directly and proximately caused by the acts of the Defendants acting through their agents, servants and employees and the Defendants are liable therefore, jointly and severally, to Mr. Shiel for their breach of duty imposed by Section 402A of the Restatement (Second) of Torts,

WHEREFORE, Plaintiffs have been damaged and claims damages of the Defendants, jointly and severally, in an amount in excess of the arbitration jurisdiction of the Court of Common Pleas of Beaver County, Pennsylvania.

## COUNT II
## NEGLIGENCE BY MANUFACTURERS, SUPPLIERS AND/OR CONTRACTORS

185.     Plaintiffs incorporate the aforementioned paragraphs by reference as though fully set forth herein.

186.     The condition of Mr. Shiel is a direct and proximate result of the negligence of the Defendants, both jointly and severally, in that they manufactured, and/or supplied, and/or

sold, and/or used, and/or installed, and/or specified, and/or recommended, and/or removed products containing asbestos and other dangerous ingredients, which products Defendants knew, or in the exercise of reasonable care, should have known, were inherently, excessively, and ultra-hazardously dangerous to Mr. Shiel.

187.    Defendants acted in such a manner which was willful, wanton, gross and in total disregard for the health and safety of individuals that might foreseeably be exposed to dust from such asbestos-containing products.

188.    Defendants, individually, together and/or as a group, have possessed since 1929 medical and scientific data which indicated that asbestos-containing insulation and other materials were hazardous to health. Prompted by pecuniary motives, the Defendants, individually, together and/or as a group, willfully and wantonly ignored and/or failed to act upon said medical and scientific data. Rather, they conspired together to deceive the public in several aspects: by controlling industry-supported research in a manner inconsistent with the health and safety interest of users and consumers; by successfully tainting reports of medical and scientific data appearing in industry and medical literature; by suppressing the dissemination of certain medical and scientific information relating to the harmful effects of exposure to said products; and by prohibiting the publication of certain scientific and medical articles. Such conspiratorial activities deprived the users, mechanics, laborers and installers of Defendants' said products of the opportunity to determine whether or not they would expose themselves to the unreasonably dangerous asbestos products of said Defendants. As a direct and proximate result of the aforesaid actions, Mr. Shiel was exposed as alleged and contracted the diseases set forth herein.

189.    As a direct and proximate result of the actions of the Defendants as aforesaid, and inhalation of asbestos fibers from Defendant's products, Mr. Shiel has suffered severe and serious injuries. He suffers from mesothelioma, an asbestos-related disease, severe pain, and discomfort.

WHEREFORE, Plaintiffs have been damaged and claims damages of the Defendants, jointly and severally, in an amount in excess of the arbitration jurisdiction of the Court of Common Pleas of Beaver County, Pennsylvania.

### COUNT III
### LOSS OF CONSORTIUM

190.    Plaintiff-Wife incorporates the aforementioned paragraphs by reference as though fully set forth herein.

191.    As a direct and proximate result of the carelessness, negligence and/or recklessness of the Defendants and of the aforesaid injuries to her husband, the Plaintiff-wife has been damaged as follows:

   a.   Plaintiff-Wife has been and will continue to be deprived of the services, society and companionship of her husband;

   b.   Plaintiff-Wife has been required to spend money for medicine, medical care, nursing, hospital and surgical attention, medical appliances and household care for the treatment of her husband;

   c.   Plaintiff-Wife has been and will continue to be deprived of the earnings of her husband.

WHEREFORE, Plaintiff-Wife DARLENE SHIEL, has been damaged and claims damages of the Defendants, jointly and severally, in an amount in excess of the arbitration jurisdiction of the Court of Common Pleas of Beaver County, Pennsylvania.

## COUNT IV
## AGAINST METROPOLITAN LIFE

192.    Plaintiff incorporates the aforementioned paragraphs by reference hereto as fully set forth herein.

193.    In or about the year 1930, and at various times prior and subsequent thereto, up to and including the present time, Defendant Metropolitan Life Insurance Company undertook and assumed a duty to provide the asbestos industry, the scientific community and company users of asbestos with information, inspections, instructions, supervision, recommendations, assistance, notices, reports, methods, findings, cautions, warnings, advice, designs, equipment, safeguards, guidance and services to properly, adequately and reasonably provide safe working conditions, all allegedly to preserve and protect the life, health and safety of employees exposed to asbestos, including Plaintiffs and their co-workers, and particularly to protect them from the dangerous and defective properties of asbestos, asbestos products and compounds and/or other dangerous substances at or about the workplace.

194.    Plaintiffs aver that various employers and their employees, including Mr. Shiel and scientists and others similarly situated, were dependent upon the undertakings of Metropolitan to preserve and protect the life, health and safety of individuals, including Plaintiffs, by not assisting the said companies in selling dangerous products.

195.    Metropolitan, by its active and passive negligence, failed to exercise the standard of care and skill it was obliged to exercise by reason of its aforesaid undertakings and assumption of duty, thereby causing, creating or permitting dangerous conditions and exposure

40

to dangerous and defective substances; and thereby failing to properly safeguard Plaintiffs and all others similarly situated.

196.    As a result of the aforesaid negligence of the Defendant Metropolitan, Plaintiffs were injured.

WHEREFORE, Plaintiffs, have been damaged and claims damages of the Defendants, jointly and severally, in an amount in excess of the arbitration jurisdiction of the Court of Common Pleas of Beaver County, Pennsylvania.

## COUNT V
## AGAINST METROPOLITAN LIFE

197.    Plaintiffs incorporate the above paragraphs by reference as if fully set forth herein.

198.    For a number of years, Metropolitan provided insurance coverage for various manufacturers of asbestos-containing products.

199.    For a number of years, Dr. A.J. Lanza served as assistant medical director of Metropolitan.

200.    At all times relevant, the activities of Dr. Lanza hereinafter described were undertaken as a servant, agent or employee of Metropolitan.

a.    Beginning in approximately 1934, Metropolitan Life Insurance Company and certain asbestos producers and manufacturers including Johns-Manville Corporation and Raybestos Manhattan, through their agents, Vandiver Brown, attorney J.C. Hobart, Sumner Simpson and J. Rohrbach, suggested to Dr. Anthony Lanza, as agent of Metropolitan Life Insurance Company, that Lanza publish a study on asbestos in which Lanza would affirmatively misrepresent material facts about asbestos exposure and concerning the seriousness of the

41

disease processes, asbestosis and related diseases. This was accomplished through intentional deletion of Lanza's feeling of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestos as causing diseases less serious than they really were known to be. As a result, Lanza's study was published in the medical literature in this misleading fashion in 1935. This fraudulent misrepresentation and fraudulent nondisclosure was motivated in part by a desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in disputes involving Metropolitan as insurer.

b. In 1936, American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, and United Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and could also control in what form such publications were to occur. This agreement gave these companies power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study, On numerous occasions thereafter, these companies together with Metropolitan, exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

c. On November 11, 1948, representatives of the following companies met at the headquarters of Johns-Manville Corporation; American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Inc., Thermoid Company, Union Asbestos and Rubber Company, United States Gypsum Company and Metropolitan. U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

d. At this November 11, 1948 meeting, these companies and Metropolitan decided to exert their influence to materially alter and misrepresent material facts about the substance of research previously started by Dr. Leroy Gardner at the Saranac Laboratories. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then existing standards of dust exposure for asbestos and asbestos products.

e. At this meeting, these companies and Metropolitan and subsequently their agent, Dr. Vorwald, intentionally and affirmatively determined that Dr. Gardner's work should be edited to delete material facts about the cancer causing propensity of asbestos and the health effects of asbestos on humans and to delete the critique of the dust standards. This was published, as altered, in the scientific literature. These companies and Metropolitan thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, scientists, and persons exposed to asbestos such as the Plaintiffs.

f.  As a direct result of the actions as described above, Dr. Gardner's edited work was published in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health in 1951 in a form that stressed those portions of Dr. Gardner's work that Metropolitan wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of risks, Metropolitan and the companies it joined with affirmatively and deliberately disseminated this misleading publication.

g.  Such action constituted a material affirmative misrepresentation of material facts involving Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

h.  In 1955, Johns-Manville, for itself and on behalf of Metropolitan, through their agent Kenneth Smith, caused to be published in the AMA Archives of Industrial Health, an article entitled "Pulmonary Disability In Asbestos Workers". This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material representation about the extent of the risk associated with asbestos inhalation.

i.  In 1955, the National Cancer Institute held a meeting at which Johns-Manville, individually and as an agent for Metropolitan, and A, Vorwald, as their agent, affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact,

44

Metropolitan was in secret possession of several studies which demonstrated that positive evidence did exist.

j. Metropolitan approved and ratified and furthered the previous acts of Johns-Manville, Raybestos Manhattan, and A.J. Lanza.

201. The acts of Metropolitan as described above, constitute a fraudulent concealment and/or a fraudulent misrepresentation which proximately caused injury to the Plaintiffs in the following manner:

a. Metropolitan intended the publication of false and misleading reports and/or the nondisclosure of documented reports of health hazards of asbestos, in order to:

i. Maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

ii. Assist in the continued pecuniary gain through the control and reduction of claims;

iii. Influence proposed legislation to regulate asbestos exposure;

iv. Provide a defense in law suits brought for injury resulting from asbestos disease.

b. Metropolitan intended reliance upon the published reports regarding the safety of asbestos and asbestos-related products.

c. Plaintiffs suffered injury as a direct and proximate result of the acts alleged herein.

202. Metropolitan has, as previously stated, altered, influenced, and created significant portions of medical literature which are false and misleading statements concerning the dangers of asbestos exposure and disease. In so doing, Metropolitan, and its aforesaid

agents, provided a body of medical literature which, when relied upon by persons investigating such literature, would have led to a false impression of the dangers of asbestos exposure.

203.    Additionally, the publication of such literature acted to inhibit the development of the literature and effectively delayed the dissemination of accurate knowledge of the dangers, Metropolitan owed a duty to the Plaintiffs, and the public as a whole, when contributing to the medical literature to do so in good faith and with the reasonable care expected of any professional contributing to such literature; Metropolitan's failure to do so is willful and wanton negligence and a separate intentional tort creating a duty to compensate the Plaintiffs for injuries sustained as a proximate contributing result of the actions of Metropolitan Life Insurance Company.

204.    As a direct and proximately result of the fraudulent concealment and/or fraudulent representation by Metropolitan and its agents, Mr. Shiel suffered the diseases, injuries and damages set forth in the foregoing paragraphs.

WHEREFORE, Plaintiffs have been damaged and claims damages of the Defendants, jointly and severally, in an amount in excess of the arbitration jurisdiction of the Court of Common Pleas of Beaver County, Pennsylvania.

### COUNT VI
### AIDING AND ABETTING AGAINST METROPOLITAN LIFE

205.    Plaintiffs incorporate the aforementioned paragraphs by reference hereto as fully set forth herein.

206.    Defendant, Metropolitan Life Insurance Company, individually and in concert with American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, United Gypsum

Company, Thermoid Company and others knowingly agreed and conspired among themselves to engage in a course of conduct that was reasonably likely to result in injury to Mr. Shiel.

207.    Defendant, Metropolitan Life Insurance Company, knew or should have known that the perversion of the scientific and medical literature as aforesaid would cause the harmful effects of asbestos exposure and would cause Mr. Shiel injury.

208.    Defendant, Metropolitan Life Insurance Company, gave substantial assistance and/or encouragement to the conspirators and this aided and abetted their sale of asbestos products in a defective and dangerous condition and their reduction and control of claims against them.

209.    The actions of Metropolitan Life Insurance Company make it liable to Plaintiffs pursuant to Section 876 of the Restatement of Torts (Second) since Metropolitan Life Insurance Company has acted in concert with others to cause harm to the Plaintiffs.

210.    As a direct and proximate result of the actions of Defendant, Metropolitan Life Insurance Company, Mr. Shiel suffered and will continue to suffer serious bodily injury; endured and will continue to endure great pain and suffering and mental anguish; incurred and will continue to incur medical expenses; lost earnings and earning capacity; and was otherwise damaged.

WHEREFORE, Plaintiffs have been damaged and claims damages of the Defendants, jointly and severally, in an amount in excess of the arbitration jurisdiction of the Court of Common Pleas of Beaver County, Pennsylvania.

**COUNT VII**
**MISREPRESENTATION AGAINST**
**METROPOLITAN LIFE INSURANCE COMPANY**

211. Plaintiff incorporates the aforementioned paragraphs by reference hereto as fully set forth herein.

212. The actions of Defendant Metropolitan Life Insurance Company as described above constituted conscious misrepresentation involving risk of physical harm and/or negligent misrepresentation involving risk of physical harm.

213. Metropolitan Life Insurance Company is liable to Plaintiffs for their injury pursuant to Section 310 and 311 of the Restatement of Torts (Second).

214. As a direct and proximate result of the actions of Defendant, Metropolitan Life Insurance Company, Mr. Shiel suffered and will continue to suffer serious bodily injury; endured and will continue to endure great pain and suffering and mental anguish; incurred and will continue to incur medical expenses; lost earnings and earning capacity; and was otherwise damaged.

WHEREFORE, Plaintiffs have been damaged and claims damages of the Defendants, jointly and severally, in an amount in excess of the arbitration jurisdiction of the Court of Common Pleas of Beaver County, Pennsylvania.

## CONCLUSION

For Plaintiff's injuries sustained as a direct and proximate result of exposure to asbestos dust as aforesaid, the Plaintiff demands the following relief in addition to any relief previously stated herein:

    a. Compensation for great pain, suffering and inconvenience;

    b. Compensation for Plaintiff's limitation and preclusion from performing normal activities;

    c. Compensation for great emotional distress;

d. Compensation for Plaintiff's loss of his general health, strength and vitality;

e. Compensation for medicine, medical care, nursing, hospital and surgical attention, medical appliances and household care;

f. Punitive and exemplary damages;

g. Any further relief found just and appropriate by the Court

**JURY TRIAL DEMANDED AS TO ALL COUNTS,**

Respectfully submitted,

GOLDBERG, PERSKY & WHITE, P.C.

By: _____

Leif J. Ogdeltree, Esquire
Attorneys for Plaintiffs

## VERIFICATION

I, RICHARD J. SHIEL, SR., hereby certify that the statements set forth in the foregoing COMPLAINT IN CIVIL ACTION are true and correct to the best of my knowledge, information and belief. The factual matters set forth therein are based upon information which has been furnished to my counsel, or which has been gathered by my counsel as it pertains to this lawsuit; that the language contained in the foregoing is that of counsel and not the undersigned; and, that to the extent that the contents of same is that of counsel the undersigned has relied upon counsel in making this verification.

I understand that this Verification is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn fabrication to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Date: 11/16/19

Richard J. Shiel, Sr.

## VERIFICATION

I, DARLENE SHIEL, hereby certify that the statements set forth in the foregoing COMPLAINT IN CIVIL ACTION are true and correct to the best of my knowledge, information and belief. The factual matters set forth therein are based upon information which has been furnished to my counsel, or which has been gathered by my counsel as it pertains to this lawsuit; that the language contained in the foregoing is that of counsel and not the undersigned; and, that to the extent that the contents of same is that of counsel the undersigned has relied upon counsel in making this verification.

I understand that this Verification is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn fabrication to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Date: 11/16/2019

_Darlene Shiel_

Darlene Shiel

# **EXHIBIT D**

NAI-1514163240



| FILED & JUDGMENT ENTERED |
| Steven T. Salata |
| Jun 21 2011 |
| Clerk, U.S. Bankruptcy Court |
| Western District of North Carolina |

_____
George R. Hodges
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

_____
)
In Re:                                              )        Chapter 11
)
GARLOCK SEALING TECHNOLOGIES        )        Case No. 10-31607
LLC, et al.                                         )
)
Debtors.[1]                                        )        Jointly Administered
_____)

### ORDER AUTHORIZING THE DEBTORS TO ISSUE QUESTIONNAIRE TO HOLDERS OF PENDING MESOTHELIOMA CLAIMS AND GOVERNING THE CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSES

This matter came before the Court on the Motion of the Debtors for an Order Pursuant to

Bankruptcy Rule 2004 Directing Submission of Information by Current Asbestos Mesothelioma

Claimants (Doc. No. 1006) (hereinafter, the "**Motion**"), the Memorandum of the Official

Committee of Asbestos Personal Injury Claimants in Opposition to Motion of the Debtors for an

Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Information by Current

Asbestos Mesothelioma Claimants (Docket No. 1076), Debtors' reply thereto (Docket No.

1151), Debtors' Memorandum in Support of Proposed Form of Mesothelioma Claim

Questionnaire (Docket No. 1290), and the Supplemental Response of the Official Committee of

_____
[1]   The Debtors in these jointly administered cases are Garlock Sealing Technologies LLC
("Garlock"), Garrison Litigation Management Group, Ltd., and the Anchor Packing
Company ("Anchor").

- 1 -

Asbestos Personal Injury Claimants Regarding a Questionnaire Directed to Current

Mesothelioma Claimants (Docket No. 1288). Based upon a review of the Motion, the further

submissions of the parties, the evidence presented, and the arguments of counsel, and for the

reasons stated on the record on February 17, April 28, May 12, and May 26, 2011, the Court

concludes that Debtors should be permitted to take discovery from pending mesothelioma

claimants through the mechanism of a personal injury questionnaire for use in estimating the

Debtors' aggregate liability for asbestos-related personal injury and wrongful death claims for

purposes of formulating a plan of reorganization (the "**Estimation Proceeding**"), subject to the

terms and conditions of this Order, and hereby ORDERS, ADJUDGES, AND DECREES that:

1.        This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157.

2.        The Motion is GRANTED IN PART and DENIED IN PART on the terms and

conditions set forth in this Order.

3.        The Mesothelioma Claim Questionnaire (the "**Questionnaire**") attached to this

Order as Exhibit A and incorporated herein by reference is approved; *provided, however,* that

modifications to the form may be made without further Order of the Court on the written consent

of the Debtors, the Official Committee of Asbestos Personal Injury Claimants (the

"**Committee**"), and the Future Claimants' Representative (the "**FCR**" and, collectively with the

Debtors and the Committee, the "**Estimation Parties**").

4.        Every person with a lawsuit pending against Garlock or Anchor as of June 5,

2010, for asbestos-related personal injury or wrongful death, who is indicated in Debtors'

records as of June 5, 2010 or June 7, 2011, as seeking compensation based on an assertion that

such person or another individual contracted mesothelioma as a result of use of and/or exposure

to an asbestos-containing product manufactured and/or sold and/or placed into the stream of
commerce by Garlock or Anchor (for purposes of this Order, "**Mesothelioma Claimants**"), is
required to complete and return the Questionnaire, pursuant to the deadlines set forth in
paragraph 5 below and subject to any objections asserted pursuant to paragraph 6 below.

    5.    The following deadlines and requirements shall apply:

    a.    On or before July 1, 2011, Debtors shall serve the Questionnaire, via
direct U.S. mail, on counsel of record for all Mesothelioma Claimants.
Debtors shall provide counsel with a unique paper copy of the
Questionnaire for each such Mesothelioma Claimant.  Debtors shall
directly serve Mesothelioma Claimants who are not represented by
counsel if the identities and addresses of those claimants are known.  The
Debtors shall promptly file a certificate of service and provide the
Committee and the FCR with an electronic copy of the service list.

    b.    Responses to the Questionnaire, whether in electronic or paper form,
including all attachments thereto, and all trust claim forms submitted by
Mesothelioma Claimants pursuant to the Questionnaire or obtained from
any trust pursuant to the optional authorization form incorporated in the
Questionnaire,[2] are referred to below as "**Questionnaire Responses.**"

    c.    All Mesothelioma Claimants may submit their Questionnaire responses
and any attachments in paper form or electronically through a website to

---

[2]    The authorization form is set forth as Exhibit 1 to the Questionnaire and is entitled
"Claimants' Optional Authorization for Debtors' Counsel to Obtain Trust Records."  It is
referred to below in this Order as the "**Authorization**."

be established by the Debtors' Claims Administrator, Rust Consulting

("**Rust**").

d. If a Mesothelioma Claimant chooses to submit the Questionnaire response

and any attachments electronically, he or she shall complete and submit

the Questionnaire on the Rust system no later than November 1, 2011.

e. If a Mesothelioma Claimant chooses to submit the Questionnaire response

and any attachments in paper form, he or she shall complete and submit

the Questionnaire and deposit it and any attachments in the U.S. Mail

(prepaid), postmarked no later than November 1, 2011, addressed to Rust

Consulting, Inc., P.O. Box 9999, Faribault, MN, 55021-9999.  Any

Mesothelioma Claimant who chooses to submit the Questionnaire

response and any attachments in paper form must use the unique, marked

paper form that Rust provides to counsel for such claimant. Rust shall

send unique, marked paper forms to all Mesothelioma Claimants in the

initial service package.  All Mesothelioma Claimants submitting

Questionnaire Responses in paper form are permitted and encouraged to

provide attachments in electronic format, where feasible.

f. Any executed Authorization submitted in response to the Questionnaire

(*see* note 2 above) shall expire and cease to be effective on the earlier of

July 31, 2012, or a date fixed by further order of the Bankruptcy Court.

Debtors shall not use any Authorization after the operative expiration date

thereof.

g.  Rust shall make all Questionnaire Responses readily open to examination in their entirety by the Estimation Parties, their respective bankruptcy counsel and special counsel named in the margin (the "**Bankruptcy Counsel**"),[3] and their respective retained claims estimators named in the margin (the "**Estimation Experts**").[4]

h.  Rust shall promptly create a database of the Questionnaire Responses; *provided, however,* that personnel for Debtors shall input into Rust's database information submitted in paper form.  Rust shall promptly provide copies of this database to the Estimation Parties, their respective Bankruptcy Counsel, and their respective retained Estimation Experts, and shall supplement those copies promptly if and when additional trust claim forms are obtained from trusts pursuant to any Authorization.

i.  No Questionnaire Responses shall be disseminated or disclosed, whether in written or electronic form, to any person other than (i) the Estimation Parties; (ii) any entity that becomes a party to the Estimation Proceeding by way of intervention pursuant to an order of the Bankruptcy Court (each, an "**Intervenor**"); (iii) any party in interest who obtains a right of access to Questionnaire Responses by an order issued pursuant to paragraph 18 of this Order; (iv) any law firm rendering legal services with respect to the Estimation Proceeding to any person described in the

---

[3]  For the Debtors, Robinson, Bradshaw & Hinson, P.A. and Rayburn, Cooper & Durham, P.A.; for the ACC, Caplin & Drysdale, Chartered and Moon Wright & Houston, PLLC; for the FCR, Orrick, Herrington & Sutcliffe LLP and Grier, Furr & Crisp, P.A.

[4]  For the Debtors:  Bates White, LLC; for the ACC, Legal Analysis Systems, Inc.; for the FCR, Hamilton, Rabinovitz & Associates, Inc.

preceding parts (i) through (iii) of this paragraph 5.i., and each such law

firm's employees, agents, and representatives who are personally involved

in rendering services in connection with the Estimation Proceeding; (v)

any Estimation Party or Intervenor's consulting or testifying experts, and

members of their staff, who are personally involved in rendering services

to an Estimation Party or Intervenor in connection with the Estimation

Proceeding; (vi) any person who testifies at a deposition or hearing in

connection with the Estimation Proceeding, and for whose examination or

cross-examination reference to a Questionnaire Response is relevant; (vii)

third-party service companies providing outside photocopying, graphic

production services, or litigation support services in connection with the

Estimation Proceeding; (viii) Rust and any of its employees, agents, or

representatives rendering services in connection with the Estimation

Proceeding; (ix) the Court, including secretaries, judicial assistants, law

clerks, and other clerical staff; and (x) court reporters, stenographers, or

videographers who record deposition or other testimony in connection

with the Estimation Proceeding; *provided, however,* that the right of

access to Questionnaire Responses hereby conferred on the foregoing

persons is subject to the conditions precedent set forth in paragraph 5.j.

immediately below.

j.     Any person exercising a right of access to Questionnaire Responses

granted by this Order shall thereby consent, and be deemed to consent, to

be bound by this Order and shall thereby submit, and be deemed to

submit, to the exclusive jurisdiction and venue of this Court for any

dispute pertaining to the interpretation or enforcement of this Order.

Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to Questionnaire Responses conferred by

paragraph 5.i. above, every entity described in subparts (ii) through (vii) of

paragraph 5.i. shall execute an Acknowledgment of Order and Agreement

to Be Bound in the form annexed to this Order as Exhibit B.1 or Exhibit

B.2.   Exhibit B.1 shall be executed on the part of corporations,

partnerships, companies, or firms whose employees, representatives, or

agents will receive access to Questionnaire Responses in the performance

of the firm's duties with respect to the Estimation Proceeding.  Exhibit B.2

shall be signed in an individual capacity by individuals (such as a

witnesses or self-employed experts) who receive a right of access to

Questionnaire Responses under paragraph 5.i above in their individual

capacities, rather than as employees, agents, or representatives of a firm.

k.     Any Intervenor shall be deemed subject to all of the obligations and

restrictions applicable to the Estimation Parties under this Order.  Any

Intervenor, and any party in interest who obtains such relief on motion

pursuant to paragraph 18 of this Order, shall have access to the

Questionnaire Responses only to the extent specified by the Bankruptcy

Court and subject to such terms and conditions as the Bankruptcy Court

may impose by further order.

6.     Any and all objections, procedural and substantive, that any Mesothelioma Claimant may have to the Questionnaire or to the inquiries set out therein are hereby fully preserved. Mesothelioma Claimants must indicate any objections, including their bases, on the form attached as Exhibit 2 to the Questionnaire (or, if the response is provided electronically, on the Rust electronic system).  Mesothelioma Claimants may not lodge objections by attaching or referring to documents. The consequences for failure to complete and timely submit the Questionnaire and any required attachments, and the process for litigating any objections, remain to be determined.

7.     Questionnaire Responses shall be confidential and treated as such without need of any special designation by or on behalf of the responding Mesothelioma Claimants.  Debtors' objections to such treatment are overruled.  Any entity granted access to Questionnaire Responses as provided in this Order must maintain the confidentiality of the same in a manner consistent with the obligations and restrictions imposed herein.

8.     Mesothelioma Claimants, Estimation Parties, and Intervenors shall have standing to enforce the protections afforded to Questionnaire Responses by this Order.

9.     As a precautionary measure, but not as a precondition to protection, Rust shall stamp any written Questionnaire Responses with the following legend: "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."

10.     Any entity that receives access to Questionnaire Responses as provided in this Order shall provide for physical, managerial and electronic security thereof such that Questionnaire Responses are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission and storage.  Should any unauthorized breach of the confidentiality of Questionnaire Responses occur, the entity whose

agents or representatives were involved in the breach shall notify the Estimation Parties and any Intervenor, as well as any Mesothelioma Claimants to which the subject information pertains, as soon as reasonably practicable, but not later than two (2) business days after such entity first becomes aware of such breach.

10.      Neither Questionnaire Responses, nor any analyses, conclusions, summaries, excerpts, or redacted copies derived therefrom, nor any knowledge obtained therefrom, shall be used for any purpose other than the Estimation Proceeding.

11.      Neither Questionnaire Responses nor any analyses, conclusions, summaries, excerpts, or redacted copies derived therefrom may be (a) publicly disclosed except pursuant to this Order, (b) used as a disclosed or undisclosed source in any article, study, research, editorial, publication or scholarly work, or (c) incorporated into or merged with any preexisting database that is to be used or maintained for any purpose other than the Estimation Proceeding.

12.      To the extent Questionnaire Responses are maintained in or converted to electronic form, they must be maintained in a separate file, database, or physical storage medium.  If Questionnaire Responses maintained or converted to electronic form are incorporated into or merged with any preexisting electronic information or database (a "**Merged Database**"), the Merged Database must itself be treated as confidential to the same extent as the underlying Questionnaire Responses themselves, shall be maintained in a separate file, database, or physical storage medium, and shall be subject to the same use restrictions that this Order imposes on the Questionnaire Responses themselves.

13.      Nothing in this Order shall restrict any person's right to make lawful use of:

a.      any discrete data set or materials that came into the possession of such person lawfully and free of any confidentiality obligation;

      b.     any exhibit or other document that is placed on the public record in the

Estimation Proceeding in conformity with the restrictions set forth in

paragraph 14 below, or any data or material that is or becomes publicly

available other than by a breach of this Agreement; or

      c.     any discrete data set or materials developed by or on behalf of such person

independent of any Questionnaire Responses.

14.     In the event that, in the course of the Estimation Proceeding, any Estimation Party

or Intervenor intends to offer into evidence or otherwise use Questionnaire Responses in

connection with testimony or filings in the Bankruptcy Court, or any reviewing court, such

Estimation Party or Intervenor may not divulge Questionnaire Responses except when the

following conditions are met: (i) such information is relevant to the Estimation Proceeding; (ii)

there is no reasonable manner to use such information in the Estimation Proceeding without

disclosing Questionnaire Responses; and (iii) such Estimation Party or Intervenor has first

utilized its best efforts to maintain the confidentiality of the Questionnaire Responses, including

by seeking an order, on notice to all other Estimation Parties and Intervenors and to the

Mesothelioma Claimants, which provides that such information shall be filed under seal,

redacted or reviewed by the Bankruptcy Court (or any other court) *in camera*, as appropriate, and

that any hearing, deposition or other proceeding be closed and limited to attendance by persons

who are subject to the terms of this Order.  Notwithstanding the foregoing, in the course of the

Estimation Proceeding and solely for the purposes thereof, an Estimation Party or Intervenor

may use in the Bankruptcy Court, or any reviewing court, summaries, analyses or copies derived

from Questionnaire Responses if such material is redacted so as not to reveal the name, social

security number, or other identifying detail of any individual Mesothelioma Claimant. Likewise,

nothing herein shall prohibit an expert for any Estimation Party or Intervenor from using or referring to Questionnaire Responses in such expert's report, or testifying concerning Questionnaire Responses, so long as such testimony or report does not reveal the name, social security number, or other identifying detail of any individual Mesothelioma Claimant.

15.     In the event that an entity granted access to Questionnaire Responses pursuant to this Order receives a subpoena, interrogatory, or other request for the production or disclosure of any Questionnaire Response, in whole or in part, to a third party (a "**Third-Party Discovery Demand**"), including a governmental or other regulatory body, such entity (a "**Discovery Target**") shall provide prompt written notice of any such request or requirement to the Mesothelioma Claimant or Mesothelioma Claimants who provided the information requested, with copies to the Estimation Parties and any Intervenors, so that any of them may seek a protective order or other appropriate remedy or waive compliance with the provisions of this Order.  Pending a timely effort to obtain such a protective order or other remedy to prevent the requested production or disclosure, or written waiver by the Mesothelioma Claimant, each of the Estimation Parties, and any Intervenors of the right to seek such an order or remedy, the Discovery Target shall interpose an objection to the Third-Party Discovery Demand on the basis of this Order.   Nothing in this Order shall prohibit a Discovery Target from complying in good faith with an order directing it to comply, in whole or in part, with such Third-Party Discovery Demand, or require a Discovery Target to seek a stay of such an order, or to appeal from such an order; *provided, however*, that any Discovery Target shall exercise reasonable efforts to preserve the confidentiality of Questionnaire Responses produced or disclosed pursuant to such an order, including, without limitation, by cooperating with any Mesothelioma Claimant, Estimation Party,

or Intervenor who expresses an intention to seek an appropriate protective order or other reliable

assurance that confidential treatment will be accorded the Questionnaire Responses.

16.     Within the one-year anniversary of the date of substantial consummation of a

confirmed Chapter 11 plan of reorganization for the Debtors (a "**Plan**"), each entity that has

received Questionnaire Responses shall destroy such Questionnaire Responses, including all

copies thereof, in a commercially reasonable manner and continue to be bound by the terms and

obligations imposed by this Order, and shall certify such destruction in writing to respective

counsel of record for the Debtors, the Committee, and the FCR ; *provided, however,* that the

obligations of this paragraph  shall not apply to copies of pleadings and exhibits filed under seal

with this Court, or to file copies in the possession of counsel of record for the Mesothelioma

Claimants, for the Estimation Parties, or for Intervenors of papers prepared in connection with

the Estimation Proceeding (*e.g.*, pleadings, transcripts, interview or document summaries,

internal memoranda, written communications with professionals, experts, and witnesses,

depositions and exhibits thereto, court papers, and other papers prepared, created, or served in

connection with the Estimation Proceeding); and *provided further* that the obligations of this

paragraph may be superseded and rendered inoperative if and to the extent that a confirmed Plan

specifically authorizes a particular entity to turn over Questionnaire Responses to an asbestos

settlement trust created pursuant to the Plan.

17.     When the Debtors serve the Questionnaire, a copy of this Order shall be attached

to the Questionnaire as an exhibit thereto.

18.     Any person who seeks relief from any provision of this Order shall do so by

motion in the Bankruptcy Court on notice to the Estimation Parties, any Intervenors, and

Mesothelioma Claimants determined by prior order of the Bankruptcy Court to be potentially

affected by the relief sought. The movant shall bear the burden of showing good cause for the requested relief. In considering whether that burden is met, and in tailoring or limiting any relief awarded, the Bankruptcy Court shall consider the following matters, among any other relevant factors and legitimate interests: (i) the Debtors have based their request for the Questionnaire on asserted discovery needs for the purposes of the Estimation Proceeding; (ii) the Questionnaire constitutes a hybrid form of discovery not contemplated by the usual rules of discovery under the Federal Rules of Civil Procedure and therefore not available in ordinary civil litigation; (iii) the Court has authorized the Questionnaire on the basis that it may be helpful and efficient for purposes of the Estimation Proceeding; (iv) Mesothelioma Claimants have a legitimate reliance interest in the provisions of this Order, including those provisions pertaining to the confidentiality and restricted uses of Questionnaire Responses; (v) the Bankruptcy Court and the Estimation Parties have legitimate interests in the efficient, fair, and expeditious conduct of the Estimation Proceeding; (vi) among the intended benefits of estimating the Debtors' asbestos-related liability in the aggregate for purposes of formulating a plan of reorganization is the avoidance of disputes that would implicate the due process rights of absent asbestos personal injury and wrongful death claimants.

19.     This Court shall retain jurisdiction to interpret, apply, and enforce this Order to the full extent permitted by law.

This Order has been signed electronically.                    United States Bankruptcy Court
The Judge's signature and court's seal
appear at the top of the Order

# Garlock Sealing Technologies LLC

**MESOTHELIOMA CLAIM QUESTIONNAIRE** ▬▬▬▬▬▬

FOR RUST USE ONLY

01

<<0123456789>>

**MAILING SUMMARY**

*0 1 2 3 4 5 6 7 8 9*

<<FIRM_NAME>>
<<ATTORNEY>>
<<ADDRESS_1>>
<<CITY>> <<STATE>> <<ZIPCODE>>

**MAIL DATE:** <<MAIL_DATE>>

**DUE DATE:** MONTH XX, 2011

**MAILED TO:** <<ATTY_NAME>>

**CLAIMANT:** <<CLAIMANT_NAME>>

☐ If the pre-printed address to the left is incorrect or out of date, **OR there is no pre-printed data**, check this box and provide your name and current address:

*0 1 2 3 4 5 6 7 8 9*

<<CLAIMANT_NAME>>

Firm Name: _____

Address: _____

City: _____

State: ____ ____    Zip Code: ____ ____ ____ ____ ____

## PURPOSE OF QUESTIONNAIRE

The U.S. Bankruptcy Court for the Western District of North Carolina has authorized Garlock Sealing Technologies LLC ("**Garlock**") and The Anchor Packing Company ("**Anchor**," and collectively with Garlock, the "**Debtors**") to issue this Questionnaire to every person with a lawsuit pending against Garlock or Anchor as of June 5, 2010, for asbestos-related personal injury or wrongful death, who is indicated in Debtors' records as of June 5, 2010 or June 7, 2011, as seeking compensation based on an assertion that such person or another individual contracted mesothelioma as a result of use of and/or exposure to an asbestos-containing product manufactured and/or sold and/or placed into the stream of commerce by Garlock or Anchor (a "**Pending Mesothelioma Claim**").

The Debtors are pursuing reorganization in jointly administered Chapter 11 cases in the Bankruptcy Court, referred to as *In re Garlock Sealing Technologies LLC, et al.*, Case No. 10-31607 (Bankr. W.D.N.C.). The Bankruptcy Court has granted the Debtors' application to issue this Questionnaire for purposes of estimating their aggregate liability for asbestos-related personal injury and wrongful death claims. The estimation is a contested matter in which the Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative are parties adverse to the Debtors.

The purpose of this form is to obtain complete and up to date information about each Pending Mesothelioma Claim with respect to the topics noted below. If you have a Pending Mesothelioma Claim, you must provide accurate, complete, and timely responses to this Questionnaire.

All information provided in response to this Questionnaire will be treated as confidential. The uses and further disclosure of such information shall be restricted in accordance with the Order Authorizing the Debtors to Issue Questionnaire to Holders of Pending Mesothelioma Claims and Governing the Confidentiality and Use of Information Provided in Responses, dated June ___, 2011. A copy of that Order [Dkt. No. ___] is attached as Exhibit 3 to the Questionnaire.

## ADMINISTRATOR INFORMATION

If you have a Pending Mesothelioma Claim against Garlock or Anchor, you are directed to complete and submit this Questionnaire on or before November 1, 2011.

You may submit your Questionnaire responses and any attachments electronically through the system supported by Rust Consulting, whom the Debtors have retained as their Claims Administrator. Access to this system and electronic filing instructions are available through the Rust Consulting website at [address]. If you elect to submit your responses and any attachments electronically, please complete and submit the Questionnaire on the Rust Consulting system no later than November 1, 2011.

In the alternative, you have the option of submitting your Questionnaire responses and any attachments by mail. If this is your preference, please deposit your completed Questionnaire, along with any attachments, in the U.S. Mail (prepaid) postmarked no later than November 1, 2011, addressed to:

### RUST CONSULTING, INC., P.O. BOX 2512, FARIBAULT, MN 55021-9512

Each Pending Mesothelioma Claimant has been provided a unique copy of this Questionnaire. If you answer by mail, you must answer on the unique copy of the Questionnaire provided for you. In addition, if you answer by mail, you are permitted and encouraged to provide any attachments in electronic format, where feasible.





## LIST OF CLAIM FORM SECTIONS AND INSTRUCTIONS

### OCCUPATION AND INDUSTRY CODES
- Contains reference codes for occupation and industry of exposure for use in completing Part 5. For U.S. Navy occupation codes, you may respond by attaching service records.

### PART 1: INJURED PARTY INFORMATION
- Provide identifying information for the Injured Party. As used in this Questionnaire, the term "Injured Party" means the individual whose alleged mesothelioma forms the basis for the Pending Mesothelioma Claim.

### PART 2: RELATED CLAIMANT INFORMATION
- Only complete this section if the claimant (the plaintiff) is a "Related Claimant," rather than the Injured Party.
- As used in this Questionnaire, the term "Related Claimant" means a person who is not the Injured Party but who is making a claim based on or derived from the Injured Party's mesothelioma, either in a representative capacity (e.g., the personal representative of the Injured Party's estate suing for the Injured Party's injuries), or in an independent capacity (e.g., a family member suing for his or her own losses based on the alleged wrongful death of the Injured Party).
- Related Claimant IDs (social security number or foreign tax ID) are only required if no ID is provided for the Injured Party or Injured Party's estate.

### PART 3: LAW FIRM INFORMATION
- Provide contact information for the law firm that represents the claimant in responding to the Questionnaire.

### PART 4: ALLEGED INJURY DIAGNOSIS INFORMATION
- Provide diagnosis information related to the alleged injury and/or death of the Injured Party.

### PART 5: EXPOSURE
- In Part 5A, identify any industrial, commercial or residential location where the claimant alleges exposure to Garlock or Anchor asbestos-containing products. Also, answer the questions concerning the nature of any Garlock/Anchor alleged exposure.
- In Part 5B, identify any industrial, commercial or residential location where the claimant alleges exposure to non-Garlock/Anchor asbestos-containing products.
- In Parts 5A and 5B, "secondary" exposure means alleged exposure through another person who was occupationally exposed (the "primary" exposure); an example is take-home exposure. In the case of secondary exposure, list information for the site where primary exposure occurred and provide the required information regarding the primarily exposed person's exposure.
- See below for "Option to Respond by Producing Documents".

### PART 6: LITIGATION AND OTHER CLAIMS RELATED TO THE INJURED PARTY'S ALLEGED ASBESTOS EXPOSURE
- Provide the information requested in Part 6A regarding any lawsuit filed by you or on your behalf based on the Injured Party's mesothelioma, or any other lawsuit based on the Injured Party's mesothelioma.
- If you have filed multiple lawsuits based on the Injured Party's mesothelioma, respond to Part 6A as to each lawsuit filed, whether or not all of those lawsuits named Garlock or Anchor as a defendant.
- Provide the information requested in Part 6B regarding claims against other parties and Trusts by you or on your behalf based on the Injured Party's mesothelioma.
- The term "DWOP" in Tables A and C means "dismissed without payment." You should check this box if the claim was dismissed for any reason without a payment from the defendant.
- See below for "Option to Respond by Producing Documents."

### OPTION TO RESPOND BY PRODUCING DOCUMENTS (APPLICABLE TO PART 5 AND PART 6)
- In lieu of providing a written response to Part 5A, Part 5B, Part 6A, or Part 6B, or any particular question included therein, you may submit verified complaints, interrogatory responses, deposition transcripts of plaintiffs and/or product identification witnesses, or bankruptcy trust claim forms that provide true and complete information responsive to the questions answered by this alternative means, as of the date you submit your response to this Questionnaire.
- You are required to certify that your response to this Questionnaire is true and complete as of the date it is submitted. Therefore, if you choose to respond to any question by attaching documents, you must still ensure that you have provided a true and complete response to the question. If, for example, you or your attorneys have learned additional responsive information since the document was created, you must provide that information in the Questionnaire form or by attaching additional documents, to ensure that your answer is true and complete.
- If, in lieu of a written response, you elect to submit any document longer than twenty pages, identify the document and the relevant part thereof, if this is readily known to you, or, in the alternative, submit only the relevant pages.

### PART 7: CERTIFICATION
- Either the claimant or the claimant's attorney must sign the appropriate certification.

### PART 8: ATTACHMENT OF TRUST CLAIM FORMS
- The claimant must submit copies of all Trust claim forms submitted by or on behalf of the claimant or Injured Party to Trusts listed in Table B (or the equivalent information as to Trust claims that you filed with Trusts electronically). Alternatively, the claimant may execute the authorization attached as Exhibit 1 for Garlock and Anchor to obtain the claim forms from the Trusts. This requirement applies only to claim forms submitted to one or more Trusts (or the equivalent information as to Trust claims that you filed with Trusts electronically). Although you must provide each complete Trust claim form, you are not required to provide attachments to Trust claim forms submitted in support of Trust claims and, if you choose to execute the authorization, you are not required to authorize Trusts to release attachments to Trust claim forms submitted in support of Trust claims.

If you object to any portion of any question in this Questionnaire, you must indicate your objection and its basis on the form attached as Exhibit 2. **You may not lodge objections by attaching or referring to documents.**



CLAIM QUESTIONNAIRE FOR: <<NAME>>

## OCCUPATION AND INDUSTRY CODES

*INSTRUCTIONS:* Use these Occupation and Industry codes when completing **PART 5: ALLEGED EXPOSURE**

### Occupation Codes

| CODE | OCCUPATION | CODE | OCCUPATION |
|------|-----------|------|-----------|
| O-01 | Non-occupational / residential / do-it-yourself (DIY) | O-31 | Insulator |
| O-02 | Air conditioning and heating installer / maintenance | O-32 | Iron worker |
| O-03 | Asbestos miner | O-33 | Joiner |
| O-04 | Asbestos plant worker / asbestos manufacturing worker | O-34 | Laborer |
| O-05 | Asbestos removal / abatement | O-35 | Longshoreman |
| O-06 | Asbestos sprayer / spray gun mechanic | O-36 | Machinist / machine operator |
| O-07 | Assembly line / factory / plant worker | O-37 | Millwright / mill worker |
| O-08 | Auto mechanic / bodywork / brake repairman | O-38 | Mixer / bagger |
| O-09 | Boilermaker | O-39 | Non-asbestos miner |
| O-10 | Boiler repairman | O-40 | Painter |
| O-11 | Boiler worker / cleaner / inspector / engineer / installer | O-41 | Pipefitter |
| O-12 | Building maintenance / building superintendent | O-42 | Plasterer |
| O-13 | Brake manufacturer / installer | O-43 | Plumber - install / repair |
| O-14 | Brick mason / layer / hod carrier | O-44 | Power plant operator |
| O-15 | Burner operator | O-45 | Professional (e.g., accountant, architect, physician) |
| O-16 | Carpenter / woodworker / cabinetmaker | O-46 | Railroad worker / carman / brakeman / machinist / conductor |
| O-17 | Chipper | O-47 | Refinery worker |
| O-18 | Clerical / office worker | O-48 | Remover / installer of gaskets |
| O-19 | Construction - general | O-49 | Rigger / stevedore / seaman |
| O-20 | Custodian / janitor in office / residential building | O-50 | Rubber / tire worker |
| O-21 | Custodian / janitor in plant / manufacturing facility | O-51 | Sandblaster |
| O-22 | Electrician / inspector / worker | O-52 | Sheet metal worker / sheet metal mechanic |
| O-23 | Engineer | O-53 | Shipfitter / shipwright / ship builder |
| O-24 | Firefighter | O-54 | Shipyard worker (mainland repair, maintenance) |
| O-25 | Fireman | O-55 | Steamfitter |
| O-26 | Flooring installer / tile installer / tile mechanic | O-56 | Steelworker |
| O-27 | Foundry worker | O-57 | Warehouse worker |
| O-28 | Furnace worker / repairman / installer | O-58 | Welder / blacksmith |
| O-29 | Glass worker | O-59 | [Intentionally Left Blank] |
| O-30 | Heavy equipment operator (includes truck, forklift, & crane) | O-60 | [Intentionally Left Blank] |
| | | O-61 | Other (describe) |



CLAIM QUESTIONNAIRE FOR: <<NAME>>



## Naval Occupation Codes

| CODE | OCCUPATION | CODE | OCCUPATION |
|------|------------|------|------------|
| N-1 | Boiler technician | N-10 | Instrumentman |
| N-2 | Boiler maker | N-11 | Molder |
| N-3 | Damage controlman | N-12 | Machinist's mate |
| N-4 | Electrician's mate | N-13 | Machinery repairman |
| N-5 | Engineman | N-14 | Opticalman |
| N-6 | Fireman | N-15 | Patternmaker |
| N-7 | Gas turbine system technician | N-16 | Pipe fitter |
| N-8 | Hull maintenance technician | N-17 | Other (describe) |
| N-9 | Interior communications electrician | | |

## Industry Codes

| CODE | INDUSTRY | CODE | INDUSTRY |
|------|----------|------|----------|
| I-01 | Residential / do-it-yourself (DIY) | I-12 | Non-asbestos products manufacturing |
| I-02 | Asbestos abatement / removal | I-13 | Petrochemical |
| I-03 | Aerospace / aviation | I-14 | Railroad |
| I-04 | Asbestos mining | I-15 | Shipyard-construction / repair |
| I-05 | Automotive | I-16 | Textile |
| I-06 | Chemical | I-17 | Tire / rubber |
| I-07 | Construction trades | I-18 | U.S. Navy |
| I-08 | Iron / steel | I-19 | Utilities |
| I-09 | Longshore | I-20 | Asbestos manufacture or milling |
| I-10 | Maritime | I-21 | [Intentionally Left Blank] |
| I-11 | Military (other than U.S. Navy) | I-22 | Other (describe) |
| | | I-23 | Unknown |

CLAIM QUESTIONNAIRE FOR: <<NAME>>

## PART 1: INJURED PARTY INFORMATION *(See instructions above for Part 1 for definition of "Injured Party")*

Last Name: _____ First Name: _____ Middle Initial: _____ Suffix: _____

Date of Birth (mm/dd/yyyy): ___ ___ / ___ ___ / ___ ___ ___ ___

Social Security Number : ___ ___ ___ - ___ ___ - ___ ___ ___ ___

Foreign Tax ID (if applicable): _____ Estate Tax ID (if applicable): _____

City of Residence: _____ State of Residence: _____ Postal Code: _____

Country (if outside the US): _____

## PART 2: RELATED CLAIMANT INFORMATION *(if different than INJURED PARTY)*

⟶ *See instructions above for Part 2 for definition of "Related Claimant"*

Last Name: _____ First Name: _____ Middle Initial: _____ Suffix: _____

Date of Birth (mm/dd/yyyy): ___ ___ / ___ ___ / ___ ___ ___ ___

⟶ *Related Claimant ID is only required if no ID is provided for the Injured Party or related estate*

Social Security Number : ___ ___ ___ - ___ ___ - ___ ___ ___ ___ Foreign Tax ID (if applicable): _____

City of Residence: _____ State of Residence: _____ Postal Code: _____

Country (if outside the US): _____

## PART 3: RESPONDING LAW FIRM INFORMATION

Name of Firm: _____

Firm Mailing or Street Address: _____

Firm City: _____ Firm State: ___ ___ Zip Code: ___ ___ ___ ___ ___

Phone No.: ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

Name of Firm Contact: _____

Email Address: _____ @ _____ . _____

## PART 4: MESOTHELIOMA DIAGNOSIS INFORMATION

⟶ **INSTRUCTIONS:** *Check all that apply*

1. Date of first diagnosis of Mesothelioma: ___ ___ / ___ ___ / ___ ___ ___ ___

2. Name of doctor making first diagnosis (fill in blank): _____

3. Is the Injured Party deceased? ☐ Yes ☐ No

⟶ If "Yes", Date of Death: ___ ___ / ___ ___ / ___ ___ ___ ___

4. Was autopsy performed? ☐ Yes ☐ No



CLAIM QUESTIONNAIRE FOR: <<NAME>>

## PART 5A: ALLEGED EXPOSURE TO GARLOCK/ANCHOR PRODUCTS

*INSTRUCTIONS: Complete for every site where claimant alleges exposure to Garlock or Anchor product. "Secondary" exposure means alleged exposure through another person who was occupationally exposed (the "primary" exposure); an example is take-home exposure. In the case of secondary exposure, list information for the site where primary exposure occurred and provide the required information regarding the primarily exposed person's exposure.*

*Use additional pages if more space is required. If you wish to produce documents instead of providing a written response, see "Option to Respond by Producing Documents" on page 2 above, and follow the instructions set forth there.*

### ALLEGED ASBESTOS EXPOSURE TO GARLOCK OR ANCHOR PRODUCTS (SITE 1)

**1** Type of Exposure:

☐ Occupational ☐ Non-Occupational ☐ Bystander ☐ Secondary: _____
*provide relationship to occupationally exposed person*

**2** Site Name *(i.e. name of plant, refinery, etc.)*:

**3** Unions of which Injured Party *(or occupationally exposed person)* was a member during employment:

**4**
| City | State | Country | Employer *(if applicable)* |
|---|---|---|---|
| | | | |

**5** Occupation Code : O- or N- *(if Industry is U.S. Navy; you may respond by attaching service records) (see codes on **page 4**; if "Other," describe))*

**6** Industry Code : I- *(see codes on pages 3 and 4; if "Other," describe)*

**7** Start Date: ___ ___ / ___ ___ / ___ ___    End Date: ___ ___ / ___ ___ / ___ ___

**8** List Garlock and Anchor asbestos-containing products to which the Injured Party was allegedly exposed at this site

**9** Please indicate the nature of the Injured Party's *(or occupationally exposed person's)* alleged exposure to asbestos from Garlock or Anchor products at this site *(check all that apply)*:

☐ Personally cut asbestos-containing gaskets

☐ Personally cut asbestos-containing packing

☐ Personally removed asbestos-containing gaskets

☐ Personally removed asbestos-containing packing

☐ Worked at a site where Garlock or Anchor asbestos-containing products were cut or removed by others

☐ Worked in or around areas where Garlock or Anchor asbestos-containing products were cut or removed by others

☐ Other *(please specify)*: _____



CLAIM QUESTIONNAIRE FOR: <<NAME>>

## ALLEGED ASBESTOS EXPOSURE TO GARLOCK OR ANCHOR PRODUCTS (SITE 2)

**1**   Type of Exposure:

☐ Occupational   ☐ Non-Occupational   ☐ Bystander   ☐ Secondary: _____
*provide relationship to occupationally exposed person*

**2**   Site Name *(i.e. name of plant, refinery, etc.)*:

**3**   Unions of which Injured Party *(or occupationally exposed person)* was a member during employment:

**4**

| City | State | Country | Employer *(if applicable)* |
|------|-------|---------|----------------------------|

**5**   Occupation Code : O- or N- *(if Industry is U.S. Navy; you may respond by attaching service records) (see codes on **page 4**; if "Other," describe))*

**6**   Industry Code : I- *(see codes on pages 3 and 4; if "Other," describe)*

**7**   Start Date:

___ ___ / ___ ___ / ___ ___

End Date:

___ ___ / ___ ___ / ___ ___

**8**   List Garlock and Anchor asbestos-containing products to which the Injured Party was allegedly exposed at this site

**9**   Please indicate the nature of the Injured Party's *(or occupationally exposed person's)* alleged exposure to asbestos from Garlock or Anchor products at this site *(check all that apply)*:

☐ Personally cut asbestos-containing gaskets

☐ Personally cut asbestos-containing packing

☐ Personally removed asbestos-containing gaskets

☐ Personally removed asbestos-containing packing

☐ Worked at a site where Garlock or Anchor asbestos-containing products were cut or removed by others

☐ Worked in or around areas where Garlock or Anchor asbestos-containing products were cut or removed by others

☐ Other *(please specify)*: _____



CLAIM QUESTIONNAIRE FOR: <<NAME>>

## ALLEGED ASBESTOS EXPOSURE TO GARLOCK OR ANCHOR PRODUCTS (SITE 3)

**1** Type of Exposure:

☐ Occupational ☐ Non-Occupational ☐ Bystander ☐ Secondary: _____

*provide relationship to occupationally exposed person*

**2** Site Name *(i.e. name of plant, refinery, etc.):*

**3** Unions of which Injured Party *(or occupationally exposed person)* was a member during employment:

**4**

| City | State | Country | Employer *(if applicable)* |
|------|-------|---------|---------------------------|
|      |       |         |                           |

**5** Occupation Code : O- or N- *(if Industry is U.S. Navy; you may respond by attaching service records) (see codes on **page 4**; if "Other," describe))*

**6** Industry Code : I- *(see codes on pages 3 and 4; if "Other," describe)*

**7** Start Date:

____ ____ / ____ ____ / ____ ____

End Date:

____ ____ / ____ ____ / ____ ____

**8** List Garlock and Anchor asbestos-containing products to which the Injured Party was allegedly exposed at this site

**9** Please indicate the nature of the Injured Party's *(or occupationally exposed person's)* alleged exposure to asbestos from Garlock or Anchor products at this site *(check all that apply):*

☐ Personally cut asbestos-containing gaskets

☐ Personally cut asbestos-containing packing

☐ Personally removed asbestos-containing gaskets

☐ Personally removed asbestos-containing packing

☐ Worked at a site where Garlock or Anchor asbestos-containing products were cut or removed by others

☐ Worked in or around areas where Garlock or Anchor asbestos-containing products were cut or removed by others

☐ Other *(please specify):* _____





## PART 5B: ALLEGED EXPOSURE TO PRODUCTS OTHER THAN GARLOCK/ANCHOR PRODUCTS

*INSTRUCTIONS: Complete for every site where claimant alleges exposure to asbestos products other than Garlock or Anchor products. "Secondary" exposure means alleged exposure through another person who was occupationally exposed (the "primary" exposure); an example is take-home exposure. In the case of secondary exposure, list information for the site where primary exposure occurred and provide the required information regarding the primarily exposed person's exposure.*

*Use additional pages if more space is required. If you wish to produce documents instead of providing a written response, see "Option to Respond by Producing Documents" on page 2 above, and follow the instructions set forth there.*

### ALLEGED ASBESTOS EXPOSURE TO PRODUCTS OR AT LOCATIONS NOT INVOLVING GARLOCK OR ANCHOR (SITE 1)

**1**  Type of Exposure:

☐ Occupational   ☐ Non-Occupational   ☐ Bystander   ☐ Secondary: _____
*provide relationship to occupationally exposed person*

**2**  Site Name *(i.e. name of plant, refinery, etc.)*:

**3**

| City | State | Country | Employer *(if applicable)* |
|------|-------|---------|----------------------------|
|      |       |         |                            |

**4**  Occupation Code : O- or N- *(if Industry is U.S. Navy; you may respond by attaching service records) (see codes on page 4; if "Other," describe))*

**5**  Industry Code : I- *(see codes on pages 3 and 4; if "Other," describe)*

**6**  Start Date:                                   End Date:

___ ___ / ___ ___ / ___ ___            ___ ___ / ___ ___ / ___ ___

**7**  Describe the activity that resulted in asbestos exposure:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____



CLAIM QUESTIONNAIRE FOR: <<NAME>>

## ALLEGED ASBESTOS EXPOSURE TO PRODUCTS OR AT LOCATIONS NOT INVOLVING GARLOCK OR ANCHOR (SITE 2)

**1**  Type of Exposure:

☐ Occupational   ☐ Non-Occupational   ☐ Bystander   ☐ Secondary: _____

*provide relationship to occupationally exposed person*

**2**  Site Name *(i.e. name of plant, refinery, etc.)*:

**3**

| City | State | Country | Employer *(if applicable)* |
|------|-------|---------|----------------------------|
|      |       |         |                            |

**4**  Occupation Code : O- or N- *(if Industry is U.S. Navy; you may respond by attaching service records) (see codes on page 4; if "Other," describe))*

**5**  Industry Code : I- *(see codes on pages 3 and 4; if "Other," describe)*

**6**  Start Date: ___ ___ / ___ ___ / ___ ___        End Date: ___ ___ / ___ ___ / ___ ___

**7**  Describe the activity that resulted in asbestos exposure:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____



CLAIM QUESTIONNAIRE FOR: <<NAME>>

## ALLEGED ASBESTOS EXPOSURE TO PRODUCTS OR AT LOCATIONS NOT INVOLVING GARLOCK OR ANCHOR (SITE 3)

**1** Type of Exposure:

☐ Occupational ☐ Non-Occupational ☐ Bystander ☐ Secondary: _____
*provide relationship to occupationally exposed person*

**2** Site Name *(i.e. name of plant, refinery, etc.)*:

**3**
| City | State | Country | Employer *(if applicable)* |

**4** Occupation Code : O- or N- *(if Industry is U.S. Navy; you may respond by attaching service records) (see codes on page 4; if "Other," describe))*

**5** Industry Code : I- *(see codes on pages 3 and 4; if "Other," describe)*

**6** Start Date: ___ ___ / ___ ___ / ___ ___    End Date: ___ ___ / ___ ___ / ___ ___

**7** Describe the activity that resulted in asbestos exposure:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____





## PART 6A: LITIGATION RELATED TO THE INJURED PARTY *(Information about Asbestos Lawsuits Filed)*

*INSTRUCTIONS: Use additional copies of this page AND associated TABLE A for EACH LAWSUIT related to the Injured Party, whether or not (1) Garlock or Anchor was named as a defendant, or (2) the lawsuit remains pending. Use additional pages if more space is required. If you wish to produce documents instead of providing a written response, see "Option to Respond by Producing Documents" on page 2 above, and follow the instructions set forth there.*

LAWSUIT ## _____ -of - _____

**(For example, Lawsuit #1 of 3 related lawsuits. Use additional copies of this page to complete the section separately for each related lawsuit.)**

**1**

What is the capacity of the claimant *(select and fill out for all that apply)*?

☐ Injured Party
☐ Personal Representative/Executor
☐ Dependent Child
☐ Spouse of Injured Party
☐ Wrongful Death Claimant
☐ Other *(please specify)*: _____

State *(list state)*: ____ ____

Federal court?: ☐ Yes ☐ No

What state county/subdivision or federal district court *(fill in the blank)*: _____

Case Number / Docket Number *(fill in the blank)*: _____

Date first filed: ____ ____ / ____ ____ / ____ ____

- Was the claimant's deposition taken? ☐ Yes ☐ No

- Was any product identification witness deposed, including the claimant? ☐ Yes ☐ No

- Was any co-worker deposition taken? ☐ Yes ☐ No

**2**

Has this lawsuit been resolved either in whole or in part *(excluding Garlock and Anchor)*? ☐ Yes ☐ No

⟶    If yes: ☐ Whole? ☐ Part?

If the lawsuit has been resolved in whole or in part, excluding Garlock and Anchor, how was it resolved? *(check all that apply)*: ☐ Trial ☐ Settlement

⟶    **If resolved *(excluding Garlock and Anchor)* at least in part by trial**

- When was the trial?: ____ ____ / ____ ____ / ____ ____

- Was there a plaintiff verdict? ☐ Yes ☐ No

- Is the case on appeal? ☐ Yes ☐ No

- Which defendants were found liable? _____

_____

_____

_____

_____

_____

_____



CLAIM QUESTIONNAIRE FOR: <<NAME>>

*Part 6A continued:*

→ **If resolved** *(excluding Garlock and Anchor)* **at least in part by trial:**

- Was there a monetary award to plaintiff?: ☐ Yes ☐ No

- What was the award of compensatory damages? $ _ _ _ , _ _ _ . _ _

- Has any judgment been satisfied? ☐ Yes ☐ No

- What was the allocation of fault or damages? _____

**2** _____

_____

_____

_____

_____

_____

**3** Complete **attached Table A** for all defendants named in this lawsuit

---

## PART 6B: OTHER CLAIMS RELATED TO THE INJURED PARTY *(Information About Claims against Bankruptcy Trusts and Other Entities)*

**INSTRUCTIONS:** *Complete attached Table B (claims against bankruptcy trusts) and attached Table C (claims against other entities not previously identified in Table A or Table B) for all such claims based on the Injured Party's mesothelioma. You must provide information relating to claims against Trusts and against other entities made by or on behalf of the claimant or the Injured Party. Use additional pages if more space is required. If you wish to produce documents instead of providing a written response, see "Option to Respond by Producing Documents" on page 2 above, and follow the instructions set forth there.*





## TABLE A

**NAMED DEFENDANTS AGAINST WHICH A LAWSUIT FOR ASBESTOS-RELATED
PERSONAL INJURIES OR WRONGFUL DEATH HAS BEEN FILED**

**If you wish to produce documents instead of providing a written response, see "Option to Respond by Producing Documents" on page 2 above, and follow the instructions set forth there.**

**LAWSUIT ##** _____ -of - _____ *(fill in appropriate lawsuit ## from PART 6)*

**RELATED CASE NUMBER** _____ *(fill in appropriate lawsuit ## from PART 6)*

| | Named Defendant | Claim Status | | |
|---|---|---|---|---|
| 1 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 2 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 3 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 4 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 5 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 6 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 7 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 8 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 9 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 10 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 11 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 12 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 13 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 14 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 15 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 16 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 17 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 18 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 19 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 20 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 21 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 22 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 23 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 24 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 25 | | ☐ Pending | ☐ DWOP | ☐ Settled |

Note: If more space is required, use additional pages

CLAIM QUESTIONNAIRE FOR: <<NAME>>



## TABLE B

### BANKRUPTCY TRUSTS AGAINST WHICH A CLAIM HAS BEEN FILED
### FOR ASBESTOS-RELATED PERSONAL INJURIES OR WRONGFUL DEATH

**If you wish to produce documents instead of providing a written response, see "Option to Respond by Producing Documents" on page 2 above, and follow the instructions set forth there.**

| | Trust Name | Claim Has Been Filed | | Claim Status *(check both if applicable)* | |
|---|---|---|---|---|---|
| 1 | A&I Corporation Asbestos Bodily Injury Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 2 | A-Best Asbestos Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 3 | AC&S Asbestos Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 4 | Amatex Asbestos Disease Trust Fund | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 5 | APG Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 6 | API, Inc. Asbestos Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 7 | Armstrong World Industries Asbestos Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 8 | ARTRA 524(g) Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 9 | ASARCO LLC Asbestos Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 10 | Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 11 | Bartells Asbestos Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 12 | Brauer 524(g) Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 13 | Burns and Roe Asbestos Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 14 | C. E. Thurston & Sons Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 15 | Celotex Asbestos Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 16 | Combustion Engineering 524(g) Asbestos PI Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 17 | Congoleum Plan Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 18 | DII Industries, LLC Asbestos PI Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 19 | Eagle-Picher Industries Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 20 | Federal Mogul U.S. Asbestos Personal Injury Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 21 | Forty-Eight Insulations Qualified Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 22 | Fuller-Austin Asbestos Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 23 | G-I Asbestos Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 24 | H. K. Porter Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 25 | Hercules Chemical Company, Inc. Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 26 | J.T. Thorpe Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 27 | JT Thorpe Company Successor Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 28 | Kaiser Asbestos Personal Injury Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 29 | Keene Creditors Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 30 | Lummus 524(g) Asbestos PI Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |

CLAIM QUESTIONNAIRE FOR: <<NAME>>

*Table B Continued:*

| | Trust Name | Claim Has Been Filed | | Claim Status *(check both if applicable)* | |
|---|---|---|---|---|---|
| 31 | Lykes Tort Claims Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 32 | M. H. Detrick Company Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 33 | Manville Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 34 | Muralo Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 35 | NGC Bodily Injury Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 36 | Owens Corning Fibreboard Asbestos Personal Injury Trust (OC Sub-Fund) | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 37 | Owens Corning Fibreboard Asbestos Personal Injury Trust (FB Sub-Fund) | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 38 | PLI Disbursement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 39 | Plibrico Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 40 | Porter Hayden Bodily Injury Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 41 | Raytech Corporation Asbestos Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 42 | Rock Wool Mfg Company Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 43 | Rutland Fire Clay Company Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 44 | Shook & Fletcher Asbestos Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 45 | Skinner Engine Co. Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 46 | Stone and Webster Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 47 | Swan Asbestos and Silica Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 48 | T H Agriculture & Nutrition, LLC Industries Asbestos Personal Injury Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 49 | Thorpe Insulation Company Asbestos Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 50 | United States Gypsum Asbestos Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 51 | United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 52 | United States Mineral Products Company Asbestos Personal Injury Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 53 | UNR Asbestos-Disease Claims Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 54 | Utex Industries, Inc. Successor Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 55 | Wallace & Gale Company Asbestos Settlement Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |
| 56 | Western MacArthur-Western Asbestos Trust | ☐ Yes | ☐ No | ☐ Approved | ☐ Paid |



CLAIM QUESTIONNAIRE FOR: <<NAME>>



## TABLE C

**OTHER ENTITIES AGAINST WHOM A CLAIM FOR ASBESTOS-RELATED PERSONAL INJURIES OR WRONGFUL DEATH HAS BEEN ASSERTED OUTSIDE OF JUDICIAL PROCEEDINGS OR TRUST PROCESSES**

**If you wish to produce documents instead of providing a written response, see "Option to Respond by Producing Documents" on page 2 above, and follow the instructions set forth there.**

| | Company or Other Party | Claim Status | | |
|---|---|---|---|---|
| 1 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 2 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 3 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 4 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 5 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 6 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 7 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 8 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 9 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 10 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 11 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 12 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 13 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 14 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 15 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 16 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 17 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 18 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 19 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 20 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 21 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 22 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 23 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 24 | | ☐ Pending | ☐ DWOP | ☐ Settled |
| 25 | | ☐ Pending | ☐ DWOP | ☐ Settled |

Note: If more space is required, use additional pages



CLAIM QUESTIONNAIRE FOR: <<NAME>>

## PART 7: CLAIM CERTIFICATION

*INSTRUCTIONS:* This certification must be signed by either the Injured Party/Related Claimant or by the attorney for such party but need not be signed by both.

⟶ **If Completed By Claimant:**

I swear, under penalty of perjury, that, to the best of my knowledge, all of the information contained in the foregoing responses to this Mesothelioma Claim Questionnaire is true, accurate and complete as of the date hereof.

Signature: _____     Date: ___ ___ / ___ ___ / ___ ___

Print Name: _____

⟶ **If Completed By Attorney:**

I acknowledge that by submitting the foregoing responses to this Mesothelioma Claim Questionnaire on behalf of my client, I am making the certifications contained in Rule 9011(b) of the Federal Rules of Bankruptcy Procedure.

Signature: _____     Date: ___ ___ / ___ ___ / ___ ___

Print Name: _____

## PART 8: TRUST CLAIM FORMS

Attach copies of all Trust claim forms submitted by or on behalf of the claimant or Injured Party to Trusts listed in Table B. Alternatively, the claimant may execute the form attached as Exhibit 1 to authorize a law firm representing Garlock, Anchor, and their co-debtor Garrison Litigation Management Group, Ltd. to obtain from Trusts any claim forms submitted to a Trust by or on behalf of the claimant or Injured Party. This requirement applies only to claim forms submitted to one or more Trusts (or the equivalent information as to trust claims that you filed with trusts electronically). Although you must provide each complete Trust claim form, you are not required to provide attachments to Trust claim forms submitted in support of Trust claims and, if you choose to execute the authorization, you are not required to authorize Trusts to release attachments to Trust claim forms submitted in support of Trust claims.

## Exhibit 1: Claimants' Optional Authorization for Debtors' Counsel to Obtain Trust Records

TO WHOM IT MAY CONCERN:

The Claimant named below hereby authorizes each Trust listed in the attachment hereto to provide a copy of any claim form submitted to such Trust by or on behalf of such Claimant (or the equivalent information as to Trust claims filed with Trusts electronically) to the law firm of Robinson, Bradshaw & Hinson, P.A. ("Robinson Bradshaw") in its capacity as counsel to Garlock Sealing Technologies LLC, Garrison Litigation Management Group, Ltd., and/or The Anchor Packing Company in their jointly administered chapter 11 cases, docketed as Case No. 10-BK-31607 (Bankr. W.D.N.C.) (the "Bankruptcy Cases").

The Claimant has elected to provide this Authorization pursuant to the Order Authorizing the Debtors to Issue Questionnaire to Holders of Pending Mesothelioma Claims and Governing the Confidentiality and Use of Information Provided in Responses, entered in the Bankruptcy Cases on June ___, 2011 [Dkt. No. ____] (the "Questionnaire Order"). The Claimant expressly reserves his or her right to all of the protections of the Questionnaire Order, including without limitation the restrictions set forth therein on the uses and disclosure of Questionnaire Responses (as defined therein). Except for the limited disclosure permitted by this Authorization, the Claimant does not waive, but expressly asserts, his or her rights under any confidentiality provisions applicable under the bankruptcy plan of reorganization, Trust agreement, or Trust distribution procedures under which any given Trust was created or operates.

This Authorization does not permit any Trust to release any information whatsoever, other than a copy of any claim form submitted to any of the listed Trusts by or on behalf of the Claimant (or the equivalent information as to Trust claims filed with Trusts electronically). The Authorization does not extend to attachments to Trust claim forms submitted in support of Trust claims (such as affidavits, deposition transcripts, invoices, or the like). Without limiting the generality of the foregoing two sentences, the Authorization does not permit any Trust to release information concerning the status of any claim, settlement of any claim, or payment of any claim.

This Authorization expires on July 31, 2012.

Name of Claimant: _____

Social Security No.: ___ ___ ___ - ___ ___ - ___ ___ ___ ___

Signature of Claimant or attorney authorized to execute this document for Claimant: _____

Name of signing attorney, if applicable: _____

Date: ___ ___ / ___ ___ / ___ ___

Attachment: List of Asbestos Settlement Trusts



CLAIM QUESTIONNAIRE FOR: <<NAME>>



# Attachment to Exhibit 1: List of Trusts Referenced in Claimants' Optional Authorization for Debtors' Counsel to Obtain Trust Records

| TRUSTS | |
|---|---|
| A&I Corporation Asbestos Bodily Injury Trust | Owens Corning Fibreboard Asbestos Personal Injury Trust (OC Sub-Fund) |
| A-Best Asbestos Settlement Trust | Owens Corning Fibreboard Asbestos Personal Injury Trust (FB Sub-Fund) |
| AC&S Asbestos Settlement Trust | PLI Disbursement Trust |
| Amatex Asbestos Disease Trust Fund | Plibrico Asbestos Trust |
| APG Asbestos Trust | Porter Hayden Bodily Injury Trust |
| API, Inc. Asbestos Settlement Trust | Raytech Corporation Asbestos Personal Injury Settlement Trust |
| Armstrong World Industries Asbestos Personal Injury Settlement Trust | Rock Wool Mfg Company Asbestos Trust |
| ARTRA 524(g) Asbestos Trust | Rutland Fire Clay Company Asbestos Trust |
| ASARCO LLC Asbestos Personal Injury Settlement Trust | Shook & Fletcher Asbestos Settlement Trust |
| Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust | Skinner Engine Co. Asbestos Trust |
| Bartells Asbestos Settlement Trust | Stone and Webster Asbestos Trust |
| Brauer 524(g) Asbestos Trust | Swan Asbestos and Silica Settlement Trust |
| Burns and Roe Asbestos Personal Injury Settlement Trust | T H Agriculture & Nutrition, LLC Industries Asbestos Personal Injury Trust |
| C. E. Thurston & Sons Asbestos Trust | Thorpe Insulation Company Asbestos Personal Injury Settlement Trust |
| Celotex Asbestos Settlement Trust | United States Gypsum Asbestos Personal Injury Settlement Trust |
| Combustion Engineering 524(g) Asbestos PI Trust | United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust |
| Congoleum Plan Trust | United States Mineral Products Company Asbestos Personal Injury Settlement Trust |
| DII Industries, LLC Asbestos PI Trust | UNR Asbestos-Disease Claims Trust |
| Eagle-Picher Industries Personal Injury Settlement Trust | Utex Industries, Inc. Successor Trust |
| Forty-Eight Insulations Qualified Settlement Trust | Wallace & Gale Company Asbestos Settlement Trust |
| Fuller-Austin Asbestos Settlement Trust | Western MacArthur-Western Asbestos Trust |
| G-I Asbestos Settlement Trust | |
| H. K. Porter Asbestos Trust | |
| Hercules Chemical Company, Inc. Asbestos Trust | |
| J.T. Thorpe Settlement Trust | |
| JT Thorpe Company Successor Trust | |
| Kaiser Asbestos Personal Injury Trust | |
| Keene Creditors Trust | |
| Lummus 524(g) Asbestos PI Trust | |
| Lykes Tort Claims Trust | |
| M. H. Detrick Company Asbestos Trust | |
| Manville Personal Injury Settlement Trust | |
| Muralo Trust | |
| NGC Bodily Injury Trust | |

CLAIM QUESTIONNAIRE FOR: <<NAME>>



## Exhibit 2: Objections

| | PART | QUESTION | BASIS FOR OBJECTION |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |

**Exhibit 3: Order Authorizing Issuance of Questionnaire and Governing Disclosure and Use of Information Provided in Response to the Questionnaire**

CLAIM QUESTIONNAIRE FOR: <<NAME>>


## COPY OF PART 5A: ALLEGED EXPOSURE TO GARLOCK/ANCHOR PRODUCTS

*Additional Site Number:* _____

| ALLEGED ASBESTOS EXPOSURE TO GARLOCK OR ANCHOR PRODUCTS |
|---|

**1** Type of Exposure:

☐ Occupational  ☐ Non-Occupational  ☐ Bystander  ☐ Secondary: _____
*provide relationship to occupationally exposed person*

**2** Site Name *(i.e. name of plant, refinery, etc.)*:

**3** Unions of which Injured Party *(or occupationally exposed person)* was a member during employment:

**4**

| City | State | Country | Employer *(if applicable)* |
|---|---|---|---|

**5** Occupation Code : O- or N- *(if Industry is U.S. Navy; you may respond by attaching service records) (see codes on **page 4**; if "Other," describe))*

**6** Industry Code : I- *(see codes on pages 3 and 4; if "Other," describe)*

**7** Start Date:                              End Date:

___ ___ / ___ ___ / ___ ___          ___ ___ / ___ ___ / ___ ___

**8** List Garlock and Anchor asbestos-containing products to which the Injured Party was allegedly exposed at this site

**9** Please indicate the nature of the Injured Party's *(or occupationally exposed person's)* alleged exposure to asbestos from Garlock or Anchor products at this site *(check all that apply)*:

☐ Personally cut asbestos-containing gaskets

☐ Personally cut asbestos-containing packing

☐ Personally removed asbestos-containing gaskets

☐ Personally removed asbestos-containing packing

☐ Worked at a site where Garlock or Anchor asbestos-containing products were cut or removed by others

☐ Worked in or around areas where Garlock or Anchor asbestos-containing products were cut or removed by others

☐ Other *(please specify)*: _____



## COPY OF PART 5B: ALLEGED EXPOSURE TO PRODUCTS OTHER THAN GARLOCK/ANCHOR PRODUCTS

*Additional Site Number:* _____

| **ALLEGED ASBESTOS EXPOSURE TO PRODUCTS OR AT LOCATIONS NOT INVOLVING GARLOCK OR ANCHOR** |
|---|

**1**   Type of Exposure:

☐ Occupational ☐ Non-Occupational ☐ Bystander ☐ Secondary: _____
*provide relationship to occupationally exposed person*

**2**   Site Name *(i.e. name of plant, refinery, etc.)*:

**3**

| City | State | Country | Employer *(if applicable)* |
|---|---|---|---|

**4**   Occupation Code : O- or N- *(if Industry is U.S. Navy; you may respond by attaching service records) (see codes on **page 4**; if "Other," describe))*

**5**   Industry Code : I- *(see codes on pages 3 and 4; if "Other," describe)*

**6**   Start Date: ____ ____ / ____ ____ / ____ ____     End Date: ____ ____ / ____ ____ / ____ ____

**7**   Describe the activity that resulted in asbestos exposure:

**EXHIBIT B.1 TO ORDER AUTHORIZING THE DEBTORS TO ISSUE QUESTIONNAIRE TO HOLDERS OF MESOTHELIOMA CLAIMS AND GOVERNING THE CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSES**

Re:  *In re Garlock Sealing Technologies LLC, et al.,*
Case No. 10-BK-31607 (Jointly Administered)
United States Bankruptcy Court
for the Western District of North Carolina

*Instructions:*  *This Acknowledgment must be executed by an authorized representative of any corporation, partnership, company, or firm required to execute an Acknowledgment pursuant to paragraph 5.j. of the above-referenced Order.*

# A C K N O W L E D G E M E N T

On behalf of my employer, _____ [*write in name of employer*] ("**Employer**"), I and other employees, agents, and representatives of Employer may be given access to Questionnaire Responses.  Each and every Questionnaire Response constitutes confidential and protected information in connection with the above-referenced Order Authorizing the Debtors to Issue Questionnaire to Holders of Mesothelioma Claims and Governing the Confidentiality of Information Provided in Responses (the "**Questionnaire Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced jointly-administered Chapter 11 cases.  Capitalized terms used in this Acknowledgment but not otherwise defined herein shall have the meanings ascribed to them in the Questionnaire Order.

I have read the Questionnaire Order on behalf of Employer  as part of performing its duties to  _____ [*write in name of the Estimation Party or other client for whom Employer is rendering services in connection with the Estimation Proceeding*].  I understand the conditions and obligations of confidentiality, and use restrictions, that the Questionnaire Order makes applicable to Questionnaire Responses.  By my signature below, Employer, for itself and all of its employees, agents, and representatives who receive access to Questionnaire Responses, hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and restrictions.  On Employer's behalf, I represent that Employer has made, or will make the Questionnaire Order and this Acknowledgment known in advance to all of Employer's employees, agents, and representatives who are to receive access Questionnaire Responses, so that they will be on notice of Employer's duties in connection therewith and their own responsibilities to ensure compliance with the Questionnaire Order.

Employer, its employees, agents, and representatives will not disclose any Questionnaire Responses to any person not authorized by the Questionnaire Order, or further order of the Bankruptcy Court, to receive such information.  They will not use Questionnaire Responses for

[i]

any purpose other than the Estimation Proceeding, except as may be specifically authorized by further order of the Bankruptcy Court pursuant to paragraph 18 of the Questionnaire Order.

Pursuant to paragraph 16 of the Questionnaire Order, Employer will destroy or cause to be destroyed all Questionnaire Responses within one year of the date of substantial consumption of a confirmed Chapter 11 plan of reorganization for the Debtors (the "**Plan**"), and will promptly certify such destruction in writing to counsel of record for the Debtors, the Committee, and the FCR, unless relieved of that obligation by a specific provision of the Plan authorizing Employer to turnover Questionnaire Responses to an asbestos settlement trust created pursuant to the Plan.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Questionnaire Order and this Acknowledgment and for no other purposes.

I represent that I am duly authorized to execute this Acknowledgment on behalf of Employer.

By: _____
Print Name: _____
Title: _____
Employer: _____
Address: _____
_____
Dated: _____
Relationship to Employer: _____

[ii]

**EXHIBIT B.2 TO ORDER AUTHORIZING THE DEBTORS TO ISSUE
QUESTIONNAIRE TO HOLDERS OF MESOTHELIOMA CLAIMS AND GOVERNING
THE CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSES**

**Re:  *In re Garlock Sealing Technologies LLC, et al.,*
Case No. 10-BK-31607 (Jointly Administered)
United States Bankruptcy Court
for the Western District of North Carolina**

<u>*Instructions*</u>*:  This Acknowledgment must be executed by any individual required to execute
an Acknowledgment in his or her individual capacity pursuant to the paragraph 5.j. of the
above-referenced Order (for example, a self-employed expert or a witness).*

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced Order Authorizing the Debtors to Issue Questionnaire to Holders of
Mesothelioma Claims and Governing the Confidentiality of Information Provided in Responses
(the "**Questionnaire Order**"), entered by the United States Bankruptcy Court for the Western
District of North Carolina (the "**Bankruptcy Court**") in the above-referenced jointly-
administered Chapter 11 cases.

I have read the Questionnaire Order.  Capitalized terms used in this Acknowledgment but
not otherwise defined herein shall have the meanings ascribed to them in the Questionnaire
Order.  I understand the conditions and obligations of confidentiality, and use restrictions, that
the Questionnaire Order makes applicable to Questionnaire Responses and hereby accept and
agree to be bound by, and to abide by, those conditions, obligations, and restrictions.

I will not disclose any Questionnaire Responses to any person not authorized by the
Questionnaire Order, or further order of the Bankruptcy Court, to receive such information.  I
will not use Questionnaire Responses for any purpose other than the Estimation Proceeding,
except as may be specifically authorized by further order of the Bankruptcy Court pursuant to
paragraph 18 of the Questionnaire Order.

Pursuant to paragraph 16 of the Questionnaire Order, I will destroy all Questionnaire
Responses within one year of the date of substantial consummation of a confirmed Chapter 11
plan of reorganization for the Debtors (the "**Plan**"), and will promptly certify such destruction in
writing to counsel of record for the Debtors, the Committee, and the FCR, unless relieved of that
obligation by a specific provision of the Plan authorizing me to turn over Questionnaire
Responses to an asbestos settlement trust created pursuant to the Plan.

I consent to the jurisdiction of the Bankruptcy Court for any action to enforce the terms of the Questionnaire Order and this Acknowledgment and for no other purposes.

By: _____

Print Name: _____

Title: _____

Address: _____

_____

Dated: _____

**<u>EXHIBIT E</u>**

NAI-1514163240



FILED & JUDGMENT ENTERED
Steven T. Salata

Jun 29 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_George R Hodges_

George R. Hodges
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

|  |  |
|---|---|
| IN RE: | Case No. 10-BK-31607 |
| GARLOCK SEALING TECHNOLOGIES LLC, et al., | Chapter 11 |
| Debtors.[1] | Jointly Administered |

## ORDER AUTHORIZING DEBTORS TO ISSUE
## SUPPLEMENTAL EXPOSURE QUESTIONNAIRE AND GOVERNING
## <u>CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSES</u>

This matter came before the Court on the Motion of Debtors for Supplemental Exposure

Questionnaire (Docket No. 2130) (hereinafter, the "**Motion**"). Based upon a review of the

Motion, the submissions of the parties, the evidence presented, and the arguments of counsel, the

Court concludes that Debtors should be permitted to take discovery from certain pending

mesothelioma claimants through the mechanism of a supplemental questionnaire for use in

estimating Debtors' aggregate liability for asbestos-related personal injury and wrongful death

claims pursuant to the Order for Estimation of Mesothelioma Claims (Docket No. 2102) (the

---

[1] The debtors in these jointly administered cases are Garlock Sealing Technologies LLC; Garrison
Litigation Management Group, Ltd.; and The Anchor Packing Company (hereinafter "Garlock" or
"Debtors").

- 1 -

"**Estimation Proceeding**"), subject to the terms and conditions of this Order, and hereby

ORDERS, ADJUDGES, AND DECREES that:

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157.

2.      The Motion is GRANTED on the terms and conditions set forth in this Order.

3.      The Supplemental Exposure Questionnaire attached to this Order as **Exhibit A**

and incorporated herein by reference is approved.

4.      The persons listed on **Exhibit B** to this Order (for purposes of this Order,

"Exposure Sample Claimants") are required to complete and return the Supplemental Exposure

Questionnaire, pursuant to the deadlines set forth below.

5.      The following deadlines and requirements shall apply:

   a.   On or before June 29, 2012, Debtors shall serve individually marked copies of the

        Supplemental Exposure Questionnaire, via direct U.S. mail, on counsel of record

        for all Exposure Sample Claimants. The Supplemental Exposure Questionnaires

        shall contain the claimant's Rust ID number for purposes of linking the response

        to any previous response to the Questionnaire, and claimants shall use the

        individually marked copies to make their response. Responses to the

        Supplemental Exposure Questionnaire are referred to below as "Questionnaire

        Responses."

   b.   Exposure Sample Claimants shall submit their responses to the Supplemental

        Exposure Questionnaire to the Debtors in paper form, postmarked no later than

        July 31, 2012, addressed to Richard Worf, Robinson, Bradshaw & Hinson, P.A.,

        101 N. Tryon St., Suite 1900, Charlotte, NC, 28246.

c.  Debtors shall make all Questionnaire Responses available promptly in electronic format to counsel for the Official Committee of Asbestos Personal Injury Claimants (the "Committee") and the Future Claimants' Representative (the "FCR") (together with the Debtors, the "Estimation Parties").

d.  No Questionnaire Responses shall be disseminated or disclosed, whether in written or electronic form, to any person other than (i) the Estimation Parties; (ii) any entity that becomes a party to the Estimation Proceeding by way of intervention pursuant to an order of the Bankruptcy Court (each, an "**Intervenor**"); (iii) any party in interest who obtains a right of access to Questionnaire Responses by an order issued pursuant to paragraph 18 of this Order; (iv) any law firm rendering legal services with respect to the Estimation Proceeding to any person described in the preceding parts (i) through (iii) of this paragraph 5.d., and each such law firm's employees, agents, and representatives who are personally involved in rendering services in connection with the Estimation Proceeding; (v) any Estimation Party or Intervenor's consulting or testifying experts, and members of their staff, who are personally involved in rendering services to an Estimation Party or Intervenor in connection with the Estimation Proceeding; (vi) any person who testifies at a deposition or hearing in connection with the Estimation Proceeding, and for whose examination or cross-examination reference to a Questionnaire Response is relevant; (vii) third-party service companies providing outside photocopying, graphic production services, or litigation support services in connection with the Estimation Proceeding; (viii) the Court, including secretaries, judicial assistants, law clerks, and other clerical

staff; and (ix) court reporters, stenographers, or videographers who record

deposition or other testimony in connection with the Estimation Proceeding;

*provided, however,* that the right of access to Questionnaire Responses hereby

conferred on the foregoing persons is subject to the conditions precedent set forth

in paragraph 5.e. immediately below.

e.  Any person exercising a right of access to Questionnaire Responses granted by

this Order shall thereby consent, and be deemed to consent, to be bound by this

Order and shall thereby submit, and be deemed to submit, to the exclusive

jurisdiction and venue of this Court for any dispute pertaining to the interpretation

or enforcement of this Order. Without limitation of the generality of the foregoing

sentence, as a condition of the right of access to Questionnaire Responses

conferred by paragraph 5.d. above, every entity described in subparts (ii) through

(vii) of paragraph 5.d. shall execute an Acknowledgement of Order and

Agreement to Be Bound in the form annexed to this Order as Exhibit C.1 or

Exhibit C.2. Exhibit C.1 shall be executed on the part of corporations,

partnerships, companies, or firms whose employees, representatives, or agents

will receive access to Questionnaire Responses in the performance of the firm's

duties with respect to the Estimation Proceeding. Exhibit C.2 shall be signed in an

individual capacity by individuals (such as a witness or self-employed experts)

who receive a right of access to Questionnaire Responses under paragraph 5.d.

above in their individual capacities, rather than as employees, agents, or

representatives of a firm.

f.   Any Intervenor shall be deemed subject to all of the obligations and restrictions applicable to the Estimation Parties under this Order. Any Intervenor, and any party in interest who obtains such relief on motion pursuant to paragraph 18 of this Order, shall have access to the Questionnaire Responses only to the extent specified by the Bankruptcy Court and subject to such terms and conditions as the Bankruptcy Court may impose by further order.

g.   Exposure Sample Claimants must indicate any objections, including their bases, on the form attached as Exhibit 1 to the Supplemental Exposure Questionnaire.

6.   When the Debtors serve the Supplemental Exposure Questionnaire, a copy of this Order shall be attached to the Questionnaire as an exhibit thereto.

7.   Questionnaire Responses shall be confidential and treated as such without need of any special designation by or on behalf of the responding claimants. Debtors' objections to such treatment are overruled. Any entity granted access to Questionnaire Responses as provided in this Order must maintain the confidentiality of the same in a manner consistent with the obligations and restrictions imposed herein.

8.   Claimants, Estimation Parties, and Intervenors shall have standing to enforce the protections afforded to Questionnaire Responses by this Order.

9.   As a precautionary measure, but not as a precondition to protection, counsel for the Debtors shall stamp Questionnaire Responses with the following legend: "CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER."

10.   Any entity that receives access to Questionnaire Responses as provided in this Order shall provide for physical, managerial and electronic security thereof such that Questionnaire Responses are reasonably maintained and secured, ensuring that they are safe

- 5 -

from unauthorized access or use during utilization, transmission and storage. Should any unauthorized breach of the confidentiality of Questionnaire Responses occur, the entity whose agents or representatives were involved in the breach shall notify the Estimation Parties and any Intervenor, as well as any claimants to which the subject information pertains, as soon as reasonably practicable, but not later than two (2) business days after such entity first becomes aware of such breach.

11.     Neither Questionnaire Responses, nor any analyses, conclusions, summaries, excerpts, redacted copies derived therefrom, nor any knowledge obtained therefrom, shall be used for any purpose other than the Estimation Proceeding.

12.     Neither Questionnaire Responses nor any analyses, conclusions, summaries, excerpts, or redacted copies derived therefrom may be (a) publicly disclosed except pursuant to this Order, (b) used as a disclosed or undisclosed source in any article, study, research, editorial, publication or scholarly work, or (c) incorporated into or merged with any preexisting database that is to be used or maintained for any purpose other than the Estimation Proceeding.

13.     To the extent Questionnaire Responses are maintained in or converted to electronic form, they must be maintained in a separate file, database, or physical storage medium. If Questionnaire Responses maintained or converted to electronic form are incorporated into or merged with any preexisting electronic information or database (a "**Merged Database**"), the Merged Database must itself be treated as confidential to the same extent as the underlying Questionnaire Responses themselves, shall be maintained in a separate file, database, or physical storage medium, and shall be subject to the same use restrictions that this Order imposes on the Questionnaire Responses themselves.

14.     Nothing in this Order shall restrict any person's right to make lawful use of:

a.   any discrete data set or materials that came into the possession of such person
lawfully and free of any confidentiality obligation;

b.   any exhibit or other document that is placed on the public record in the Estimation
Proceeding in conformity with the restrictions set forth in paragraph 15 below, or
any data or material that is or becomes publicly available other than by a breach
of this Order; or

c.   any discrete data set or materials developed by or on behalf of such person
independent of any Questionnaire Responses.

15.     In the event that, in the course of the Estimation Proceeding, any Estimation Party

or Intervenor intends to offer into evidence or otherwise use Questionnaire Responses in

connection with testimony or filings in the Bankruptcy Court, or any reviewing court, such

Estimation Party or Intervenor may not divulge Questionnaire Responses except when the

following conditions are met: (i) such information is relevant to the Estimation Proceeding; (ii)

there is no reasonable manner to use such information in the Estimation Proceeding without

disclosing Questionnaire Responses; and (iii) such Estimation Party or Intervenor has first

utilized its best efforts to maintain the confidentiality of the Questionnaire Responses, including

by seeking an order, on notice to all other Estimation Parties and Intervenors and to the Exposure

Sample Claimants, which provides that such information shall be filed under seal, redacted or

reviewed by the Bankruptcy Court (or any other court) *in camera*, as appropriate, and that any

hearing, deposition or other proceeding be closed and limited to attendance by persons who are

subject to the terms of this Order. Notwithstanding the foregoing, in the course of the Estimation

Proceeding and solely for the purposes thereof, an Estimation Party or Intervenor may use in the

Bankruptcy Court, or any reviewing court, summaries, analyses or copies derived from

Questionnaire Responses if such material is redacted so as not to reveal the name, social security

number, or other identifying detail of any individual Exposure Sample Claimant. Likewise,

nothing herein shall prohibit an expert for any Estimation Party or Intervenor from using or

referring to Questionnaire Responses in such expert's report, or testifying concerning

Questionnaire Responses, so long as such testimony or report does not reveal the name, social

security number, or other identifying detail of any individual Exposure Sample Claimant.

16.     In the event that an entity granted access to Questionnaire Responses pursuant to

this Order receives a subpoena, interrogatory, or other request for the production or disclosure of

any Questionnaire Response, in whole or in part, to a third party (a "**Third-Party Discovery**

**Demand**"), including a governmental or other regulatory body, such entity (a "**Discovery**

**Target**") shall provide prompt written notice of any such request or requirement to the claimant

or claimants who provided the information requested, with copies to the Estimation Parties and

any Intervenors, so that any of them may seek a protective order or other appropriate remedy or

waive compliance with the provisions of this Order. Pending a timely effort to obtain such a

protective order or other remedy to prevent the requested production or disclosure, or written

waiver by the claimant, each of the Estimation Parties, and any Intervenors of the right to seek

such an order or remedy, the Discovery Target shall interpose an objection to the Third-Party

Discovery Demand on the basis of this Order. Nothing in this Order shall prohibit a Discovery

Target from complying in good faith with an order directing it to comply, in whole or in part,

with such Third-Party Discovery Demand, or require a Discovery Target to seek a stay of such

an order, or to appeal from such an order; *provided, however*, that any Discovery Target shall

exercise reasonable efforts to preserve the confidentiality of Questionnaire Responses produced

or disclosed pursuant to such an order, including, without limitation, by cooperating with any

Exposure Sample Claimant, Estimation Party, or Intervenor who expresses an intention to seek an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Questionnaire Responses.

17. Within the one-year anniversary of the date of substantial consummation of a confirmed Chapter 11 plan of reorganization for the Debtors (a "**Plan**"), each entity that has received Questionnaire Responses shall destroy such Questionnaire Responses, including all copies thereof, in a commercially reasonable manner and continue to be bound by the terms and obligations imposed by this Order, and shall certify such destruction in writing to respective counsel of record for the Debtors, the Committee, and the FCR; *provided, however,* that the obligations of this paragraph shall not apply to copies of pleadings and exhibits filed under seal with this Court, or to file copies in the possession of counsel of record for the Exposure Sample Claimants, for the Estimation Parties, or for Intervenors of papers prepared in connection with the Estimation Proceeding (*e.g.*, pleadings, transcripts, interview or document summaries, internal memoranda, written communications with professionals, experts, and witnesses, depositions and exhibits thereto, court papers, and other papers prepared, created, or served in connection with the Estimation Proceeding); and *provided further* that the obligations of this paragraph may be superseded and rendered inoperative if and to the extent that a confirmed Plan specifically authorizes a particular entity to turn over Questionnaire Responses to an asbestos settlement trust created pursuant to the Plan.

18. Any person who seeks relief from any provision of this Order shall do so by motion in the Bankruptcy Court on notice to the Estimation Parties, any Intervenors, and Exposure Sample Claimants determined by prior order of the Bankruptcy Court to be potentially affected by the relief sought. The movant shall bear the burden of showing good cause for the

requested relief. In considering whether that burden is met, and in tailoring or limiting any relief

awarded, the Bankruptcy Court shall consider the following matters, among any other relevant

factors and legitimate interests: (i) the Debtors have based their request for the Supplemental

Exposure Questionnaire on asserted discovery needs for the purposes of the Estimation

Proceeding; (ii) the Questionnaire constitutes a hybrid form of discovery not contemplated by the

usual rules of discovery under the Federal Rules of Civil Procedure and therefore not available in

ordinary civil litigation; (iii) the Court has authorized the Supplemental Exposure Questionnaire

on the basis that it may be helpful and efficient for purposes of the Estimation Proceeding; (iv)

claimants have a legitimate reliance interest in the provisions of this Order, including those

provisions pertaining to the confidentiality and restricted uses of the Questionnaire Responses;

(v) the Bankruptcy Court and the Estimation Parties have legitimate interests in the efficient, fair,

and expeditious conduct of the Estimation Proceeding; (vi) among the intended benefits of

estimating the Debtors' asbestos-related liability in the aggregate is the avoidance of disputes

that would implicate the due process rights of absent asbestos personal injury and wrongful death

claimants.

19.      This Court shall retain jurisdiction to interpret, apply, and enforce this Order to

the full extent permitted by law.

This Order has been signed electronically.                    United States Bankruptcy Court
The Judge's signature and court's seal
appear at the top of the Order.

# EXHIBIT A

# Garlock Sealing Technologies LLC Supplemental Exposure Questionnaire

<<FIRM_NAME>>
<<ATTORNEY>>
<<ADDRESS_1>>
<<CITY>> <<STATE>> <<ZIPCODE>>

<<CLAIMANT_NAME>>
<<RUST_ID>>

**MAILING SUMMARY**
MAIL DATE: <<MAIL_DATE>>
DUE DATE: July 31, 2012
MAILED TO: <<ATTY_NAME>>
CLAIMANT: <<CLAIMANT_NAME>>

If the pre-printed address above is incorrect or out of date, OR there is no pre-printed data, provide your name and current address:

Firm Name: _____
Address: _____
City: _____ State: ___ ___   Zip Code: ____ ____ ____ ____ ____

## PURPOSE OF SUPPLEMENTAL EXPOSURE QUESTIONNAIRE

The U.S. Bankruptcy Court for the Western District of North Carolina has authorized Garlock Sealing Technologies LLC ("**Garlock**") to issue this Supplemental Exposure Questionnaire to certain persons who have alleged that such person or another individual contracted mesothelioma as a result of use of and/or exposure to an asbestos containing product manufactured and/or sold and/or placed into the stream of commerce by Garlock.

The Debtors are pursuing reorganization in jointly administered Chapter 11 cases in the Bankruptcy Court, referred to as *In re Garlock Sealing Technologies LLC, et al.*, Case No. 10-31607 (Bankr. W.D.N.C.). The Bankruptcy Court has granted the Debtors' application to issue this Supplemental Exposure Questionnaire for purposes of estimating their aggregate liability for asbestos-related personal injury and wrongful death claims. The estimation is a contested matter in which the Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative are parties adverse to the Debtors.

The purpose of this Supplemental Exposure Questionnaire is to obtain information pertaining to certain additional topics not covered by the Questionnaire (the "Initial Questionnaire") you previously received pursuant to the Order Authorizing the Debtors to Issue Questionnaire to Holders of Pending Mesothelioma Claims and Governing the Confidentiality and Use of Information Provided in Responses, dated June 21, 2011 (Docket No. 1390).

A copy of the Order Authorizing Debtors to Issue Supplemental Exposure Questionnaire and Governing the Confidentiality and Use of Information Provided in Responses (Docket No. _____) (the "Order") is attached hereto as **Ex. 1**. If your name is on **Exhibit B** to the Order you are required to provide a true and complete response to this Supplemental Exposure Questionnaire, sign the certification, and return it to the address below postmarked no later than **July 31, 2012.**

## WHERE TO SEND YOUR SUPPLEMENTAL EXPOSURE QUESTIONNAIRE

If you are subject to the Order, you must return a true and complete response to this Supplemental Exposure Questionnaire, in paper form and with all required attachments, postmarked no later than July 31, 2012 to the following address:

Richard C. Worf
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon St., Suite 1900
Charlotte, NC  28246
(704) 377-8135

## INSTRUCTIONS

The purpose of this Supplemental Exposure Questionnaire is to quantify your alleged exposure to asbestos from contact with Garlock products and your cumulative lifetime exposure to asbestos from all other sources. It consists of a request for production of documents, and a series of questions about your asbestos exposure.

In **Part 1**, provide identifying information for the Injured Party for whom the mesothelioma claim against Garlock has been made. The purpose of Part 1 is to identify your response and permit the parties to match your response to your response to the Initial Questionnaire.

In **Part 2**, answer the questions in the Supplemental Exposure Questionnaire. If you can respond fully and completely to all parts of Question 1 (requesting quantification by a scientist in fiber/cc-years and explaining the scientist's methodology for reaching that answer), you do not need to respond to Question 2. If you cannot respond fully and completely to all parts of Question 1, proceed to Question 2. Question 2 asks various questions concerning how you encountered asbestos products.

**Part 3** requires you to attach certain documents from any litigation seeking compensation as a result of the mesothelioma of the alleged Injured Party. To the extent not already provided in response to the Initial Questionnaire, provide a copy of all depositions taken, discovery you or your attorney has answered on your behalf, and all expert reports produced by any party, including you, in any proceeding seeking compensation as a result of the mesothelioma of the alleged Injured Party.

Finally, execute the certification in **Part 4**. Either the claimant or the claimant's attorney must sign the appropriate certification.

**Definitions:**

For purposes of this Supplemental Exposure Questionnaire:

"Injured Party" means the alleged injured party whose alleged contact with Garlock products is the basis for the claim asserted in this proceeding.

"Asbestos Source" means any product, raw material, or other substance from which asbestos exposure occurred or is alleged to have occurred.

"Exposure Scientist" means a person with expertise in estimating cumulative exposure to asbestos.

**If you object to any portion of any question in this Supplemental Exposure Questionnaire, you must indicate your objection and its basis on the form attached as Exhibit 1.**

| **PART 1: INJURED PARTY INFORMATION** |
|---|
| Last Name: |
| First Name: |
| Middle Initial: |
| Social Security Number: |

| **PART 2: EXPOSURE QUESTIONS** |
|---|
| *INSTRUCTIONS:* Begin with Question 1. If you can respond fully and completely to all parts of Question 1, proceed to Part 3. If you cannot respond fully and completely to all parts of Question 1, proceed to Question 2. |

| **QUESTION 1** |
|---|
| a. Has the claimant engaged an Exposure Scientist to quantify the Injured Party's lifetime asbestos exposure? (Yes/No) _____<br><br>If the answer to subpart (a) is "yes," proceed to subparts (b) through (f). If "no," proceed to Question 2. |
| b. What is the Exposure Scientist's estimation of the Injured Party's total fiber/cc-years of exposure from all Asbestos Sources? In answering this question, you must include all Asbestos Sources, not merely the sources which can be identified by the name brand or manufacturer of the specific products. |
| c. What is the Exposure Scientist's estimation of the Injured Party's total fiber/cc-years of exposure that originated from asbestos in Garlock products? |

Case 20-30608   Doc 2337   Filed 06/29/20   Entered 06/29/20 14:02:35   Desc Main
Document   Page 170 of 238

d. What methodology did the Exposure Scientist use to compute the Injured Party's fiber/cc-years of exposure?

e. What data was provided to the Exposure Scientist which he or she used to estimate the Injured Party's exposures?

f. If the estimation is supported by the written report of the Exposure Scientist, provide a copy of that report with your answers to these questions.

| QUESTION 2 |
|---|

***INSTRUCTIONS:*** Answer Question 2 only if you cannot respond fully and completely to all parts of Question 1.

To answer Question 2, first complete **Table 1** for *each* job site where the Injured Party was exposed to asbestos. If the Injured Party had more than five such job sites, you may list only the five job sites where the Injured Party spent the most cumulative time.

Then, complete a separate **Table 2** for *each* job title the Injured Party had at every job site for which you complete Table 1 and *each* Asbestos Source to which the Injured Party was exposed at that site while the Injured Party held that job title.

For example, if the Injured Party worked at Site 1, had Job Titles X and Y, and was exposed to Asbestos Source A during Job Title X and Asbestos Sources B and C during Job Title Y, you would complete Table 1 for Site 1, and three copies of Table 2: one for Job Title X/Asbestos Source A, one for Job Title Y/Asbestos Source B; and one for Job Title Y/Asbestos Source C.

Make additional copies of Tables 1 and 2 as needed.

**Table 1.** *Complete Table 1 for each Job Site where the Injured Party was exposed to asbestos. If the Injured Party held more than two Job Titles at a Job Site, complete only for the two Job Titles where the Injured Party spent the most cumulative time. Make additional copies of Table 1 as necessary.*

**Job Site # ____ of ____.**

Site Name: _____

Site Address: _____

Name of Employer: _____

Job Title 1: _____

Beginning date for Job Title 1: _____

End date for Job Title 1: _____

Job Duties (include all job duties, regardless of whether Injured Party was exposed to asbestos during such duties):

_____

_____

Percentage of Time Spent Outdoors and Indoors While Holding Job Title 1:
Outdoors: _____   Indoors: _____

Job Title 2: _____

Beginning date for Job Title 2: _____

End date for Job Title 2: _____

Job Duties (include all job duties, regardless of whether Injured Party was exposed to asbestos during such duties):

_____

_____

Percentage of Time Spent Outdoors and Indoors While Holding Job Title 2:
Outdoors: _____   Indoors: _____

| **Table 2.** *Complete for each Asbestos Source to which the Injured Party was exposed while holding each Job Title at each Job Site. Make additional copies of Table 2 as necessary.* |
|---|
| **Job Site # ___ of ___, Job Title # ___ of ___, Asbestos Source # ___ of ___.** |
| a. Nature of Asbestos Source. *Examples of Asbestos Sources include asbestos pipe-covering, block insulation, blankets, felt, raw asbestos, fireproofing, joint compound, gaskets, packing, brakes, and cement.* <br><br> _____ |
| b. Was the Injured Party exposed to this Asbestos Source during his entire tenure? (yes/no) _____ <br><br> If no: Start Date: _____ <br><br> End Date: _____ |
| c. What activity was being conducted on or with the Asbestos Source? *Examples of activities include installing, mixing, sanding, cutting, and pouring. Provide the nature of the activity performed on the Asbestos Source regardless of whether the Injured Party was performing the activity.* |
| d. If known, what was the product name, manufacturer, and seller of each product constituting a portion of that type of Asbestos Source, and the relative percentage that each product constituted of the Injured Party's total exposure to products of that type (i.e., Johns-Manville 30%, Pittsburgh Corning 70%)? |
| e. Did the Injured Party work directly (hands-on) with the Asbestos Source? If so, provide the task or job duty the Injured Party was performing while doing so and the specific activity being conducted on or with the asbestos-containing product constituting the Asbestos Source. |

f. Did the Injured Party have indirect or bystander contact with the Asbestos Source through work around the Asbestos Source that did not include hands-on work with the product? If so, provide the task or job duty the Injured Party was performing while doing so, and the typical distance the Injured Party worked from the Asbestos Source.

g. If the Injured Party worked both directly with and indirectly (or as a bystander) around the Asbestos Source, state the percentage of time the contact with the Asbestos Source was direct as opposed to indirect (bystander).

h. How many days per year did the Injured Party work with or around the Asbestos Source?

i. How many times during a typical day did the Injured Party perform the task or job duty that resulted in contact with the Asbestos Source? If applicable, you may state that the contact was continuous throughout a typical day on which it occurred. *For example, if a pipefitter used a hammer to remove insulation from a pipe flange, and typically worked on two flanges on a day when he did that work, the answer would be "two." If a laborer was doing insulation tear out, and typically did so all day on the days assigned, the answer would be "continuous."*

j. If contact with an Asbestos Source was not continuous throughout the day, state the typical duration of the task or job duty resulting in contact (whether direct or indirect) with the Asbestos Source. *For example, if the Injured Party typically repaired brakes three times a day on a day when he was assigned brake repair, and did so on average for 40 minutes each time, the answer would be 40 minutes, not 120.*

k. If respiratory protection was used by the Injured Party during any portion of contact with an Asbestos Source, state (a) the kind of respiratory protection used, (b) the frequency with which respiratory protection was used (expressed as a percentage of the number of times the Injured Party performed the task or job duty), (c) a description of the portion of the task or job duty during which it was used, and (d) the percentage of the task or job duty constituted of the typical duration of that overall task or job duty. *Examples of respiratory protection include full-face respirator, half-face respirator, dust mask.*

l. If other controls were used or in place during any portion of contact with the Asbestos Source, state (a) the kind of controls, (b) the frequency with which the controls were used (expressed as a percentage of the number of times the Injured Party performed the task or job duty), (c) a description of the portion of the task or job duty during which the controls were used, and (d) the percentage that portion of the task or job duty constituted of the typical duration of that overall task or job duty. *Examples of controls include local exhaust ventilation, wet methods, etc.*

m. If you claim an Asbestos Source was asbestos-containing gaskets or packing, state (a) the names of the manufacturers or brands of all gaskets or packing used, and (b) the relative percentage of each that was used. If one or more manufacturers or brands are unknown, state for that manufacturer or brand "unknown."

n. If you claim an Asbestos Source was asbestos-containing gaskets or packing, state the number of asbestos-containing gaskets or packing the Injured Party cut or removed during a typical year when that activity was performed.

- 10 -

o. If you claim an Asbestos Source was asbestos-containing gaskets or packing, (a) describe the fluids or media transported in the pipes or through the equipment in which the products were used, (b) specify by manufacturer or product name the gaskets or packing used with each fluid or media, and (c) state the percentage of the gaskets or packing that each manufacturer's products constituted of the gaskets or packing used for each fluid or media.

| PART 3: PRODUCTION OF DOCUMENTS |
| --- |

Attach copies of the following documents from any litigation seeking compensation as a result of the mesothelioma of the alleged Injured Party:

    a. All depositions taken
    b. All discovery you or your attorney have answered on your behalf
    c. All expert reports produced by any party, including you.

| PART 4:  CERTIFICATION |
| --- |

***INSTRUCTIONS:*** This certification must be signed by either the claimant or the claimant's attorney but need not be signed by both.

**If Completed By Claimant:**

I swear, under penalty of perjury, that, to the best of my knowledge, all of the information contained in this Supplemental Exposure Questionnaire is true, accurate and complete as of the date hereof.


_____   _____

Signature                                                                                                              Date


_____

Print Name

**If Completed By Attorney:**

I acknowledge that by submitting the foregoing responses to this Supplemental Exposure Questionnaire on behalf of my client, I am making the certifications contained in Rule 9011(b) of the Federal Rules of Bankruptcy Procedure.


_____   _____

Signature                                                                                                              Date


_____

Print Name

**Exhibit 1: Objections**

| Part | Question | Basis for Objection |
|------|----------|---------------------|
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |

Case 20-31607   Doc 2337   Filed 06/29/21   Entered 06/29/21 10:23:30   Desc Main
Document    Page 29 of 41

# EXHIBIT B

EXPOSURE SAMPLE CLAIMANTS

| | Plaintiff name | Law firm |
|---|---|---|
| 1 | FIORE, JAMES E SR (DEC) | ANAPOL SCHWARTZ WEISS COHAN FELDMAN & SMALLEY |
| 2 | HENNING, WILLIAM | ANAPOL SCHWARTZ WEISS COHAN FELDMAN & SMALLEY |
| 3 | REED, EDWARD | ANAPOL SCHWARTZ WEISS COHAN FELDMAN & SMALLEY |
| 4 | WEYMAN, LESLIE & MARGARET | ANAPOL SCHWARTZ WEISS COHAN FELDMAN & SMALLEY |
| 5 | LUNA, ABUNDIO | BAILEY PERIN BAILEY |
| 6 | KRIVICIC, CARLO | BELLUCK & FOX |
| 7 | MAZUR, JOSEPH FRANCIS (DEC) | BELLUCK & FOX |
| 8 | PARSONS, RICHARD | BELLUCK & FOX |
| 9 | POTTER, LAWRENCE IRVING | BELLUCK & FOX |
| 10 | ROWND, ROBERT CHARLES (DEC) | BELLUCK & FOX |
| 11 | SEIER, EDWARD J (DEC) | BELLUCK & FOX |
| 12 | MARTELLO, VINCENT SR (DEC) | BERRY & MUNN |
| 13 | COLLINS, DONALD (DEC) | BEVAN & ASSOCIATES |
| 14 | WIGAL, DELBERT (DEC) | BEVAN & ASSOCIATES |
| 15 | BARAGAR, JAMES | BRAYTON PURCELL |
| 16 | BUTTARS, JEAROLD (DEC) | BRAYTON PURCELL |
| 17 | COLLINS, LESTER (DEC) | BRAYTON PURCELL |
| 18 | COX, JACK (DEC) | BRAYTON PURCELL |
| 19 | CRONIN, RAYMOND C (DEC) | BRAYTON PURCELL |
| 20 | HILTON, MARK | BRAYTON PURCELL |
| 21 | HOLBROOK, CLIFFORD (DEC) | BRAYTON PURCELL |
| 22 | KELL, ROGER (DEC) | BRAYTON PURCELL |
| 23 | MURPHY, CORNELIUS (DEC) | BRAYTON PURCELL |
| 24 | RABENER, MICHAEL (DEC) | BRAYTON PURCELL |
| 25 | ROBERTS, JON | BRAYTON PURCELL |
| 26 | BEAVER, HAROLD ADOLPHUS | BRENT COON & ASSOCIATES |
| 27 | BROWN, RAYMOND (DEC) | BRENT COON & ASSOCIATES |
| 28 | BUSH, ROBERT W | BRENT COON & ASSOCIATES |
| 29 | CARDOZA, ELIZABETH (DEC) | BRENT COON & ASSOCIATES |
| 30 | CHURCH, ROBERT FREDERICK (DEC) | BRENT COON & ASSOCIATES |
| 31 | CHURCH, WILLIAM LEWIS (DEC) | BRENT COON & ASSOCIATES |
| 32 | CLEVENGER, JAMES ROBERT (DEC) | BRENT COON & ASSOCIATES |
| 33 | DAVIS, DONALD (DEC) | BRENT COON & ASSOCIATES |
| 34 | DAZZO, JOSEPH | BRENT COON & ASSOCIATES |
| 35 | DUNAGAN, DOUGLAS E (DEC) | BRENT COON & ASSOCIATES |
| 36 | EWING, ROBERT | BRENT COON & ASSOCIATES |
| 37 | FITZPATRICK, KEVIN D SR | BRENT COON & ASSOCIATES |
| 38 | GRAGG, ROBERT | BRENT COON & ASSOCIATES |
| 39 | GRAPENTHIN, LARRY W (DEC) | BRENT COON & ASSOCIATES |
| 40 | HAIRSTON, RAYMOND | BRENT COON & ASSOCIATES |
| 41 | HILL, WILLIAM HOWARD (DEC) | BRENT COON & ASSOCIATES |
| 42 | HINZ, ORVAL JOSEPH (DEC) | BRENT COON & ASSOCIATES |
| 43 | JACKSON, EDWIN DALLAS (DEC) | BRENT COON & ASSOCIATES |
| 44 | JONES, ALICE R & VERNON | BRENT COON & ASSOCIATES |

EXPOSURE SAMPLE CLAIMANTS

| | Plaintiff name | Law firm |
|---|---|---|
| 45 | KUHN, CLETUS EDWARD SR (DEC) | BRENT COON & ASSOCIATES |
| 46 | LAY, ARTHUR L JR (DEC) | BRENT COON & ASSOCIATES |
| 47 | LUMPKIN, J D VERNON | BRENT COON & ASSOCIATES |
| 48 | MEIER, NEVA JO | BRENT COON & ASSOCIATES |
| 49 | MENA, MARK ERIC | BRENT COON & ASSOCIATES |
| 50 | MEREDITH, BUFORD | BRENT COON & ASSOCIATES |
| 51 | NAGY, ALEX | BRENT COON & ASSOCIATES |
| 52 | PAUL, THOMAS GEORGE (DEC) | BRENT COON & ASSOCIATES |
| 53 | PELFREY, JOHNIE D JR | BRENT COON & ASSOCIATES |
| 54 | REGEN, JOHN THOMAS | BRENT COON & ASSOCIATES |
| 55 | RIENIETS, MELVIN ARNOLD (DEC) | BRENT COON & ASSOCIATES |
| 56 | SEAY, EVERETT ARTHUR (DEC) | BRENT COON & ASSOCIATES |
| 57 | SPELLMAN, VICTOR JAMES SR (DEC | BRENT COON & ASSOCIATES |
| 58 | BROWN, CLARK | BROOKMAN ROSENBERG BROWN & SANDLER |
| 59 | DEMARCO, ALBERTA ADR(SALVATORE | BROOKMAN ROSENBERG BROWN & SANDLER |
| 60 | DIRETTO, RUTHANN | BROOKMAN ROSENBERG BROWN & SANDLER |
| 61 | GALLUPPI, GIDIO (DEC) | BROOKMAN ROSENBERG BROWN & SANDLER |
| 62 | GEIST, WILLIAM | BROOKMAN ROSENBERG BROWN & SANDLER |
| 63 | MORRISEY, JOAN | BROOKMAN ROSENBERG BROWN & SANDLER |
| 64 | TRAINER, RONALD | BROOKMAN ROSENBERG BROWN & SANDLER |
| 65 | SAMMARTINO, ARMANDO A | BROWN & GOULD |
| 66 | BETZNER, WILLIAM P | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 67 | CONNER, EDWARD GLENN (DEC) | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 68 | LABUDA, VINCENT | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 69 | LATINI, RICHARD L | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 70 | MURPHEY, MOSES C | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 71 | REMENSNYDER, ROBERT J (DEC) | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 72 | COYNE, THOMAS I | CASCINO VAUGHAN |
| 73 | SERCI, JOSEF (DEC) | CASCINO VAUGHAN |
| 74 | GULICK, ALLAN | CLAPPER PATTI SCHWEIZER & MASON |
| 75 | GVOZDENOVIC, ZIVA | CLAPPER PATTI SCHWEIZER & MASON |
| 76 | KELLEY, DAVID W | CLAPPER PATTI SCHWEIZER & MASON |
| 77 | NAMES, JACK (DEC) | CLAPPER PATTI SCHWEIZER & MASON |
| 78 | SNELL, RORY | CLAPPER PATTI SCHWEIZER & MASON |
| 79 | EISLER, LEROY | COADY LAW FIRM |
| 80 | MACLEAN, DONALD A | COADY LAW FIRM |
| 81 | CHAVAN, GARY R | COHEN PLACITELLA & ROTH |
| 82 | DEUBER, ARMAND | COHEN PLACITELLA & ROTH |
| 83 | HOEY, JAMES (DEC) | COHEN PLACITELLA & ROTH |
| 84 | WALTER, ROBERT | COHEN PLACITELLA & ROTH |
| 85 | CHAFFEE, ROBERT L | COONEY & CONWAY |
| 86 | CORNELL, LAWRENCE G | COONEY & CONWAY |
| 87 | DHM, BARBARA RAPER (DEC) | COONEY & CONWAY |
| 88 | DOERR, DOROTHY (DEC) | COONEY & CONWAY |

EXPOSURE SAMPLE CLAIMANTS

| | Plaintiff name | Law firm |
|---|---|---|
| 89 | FECH, WILLIAM | COONEY & CONWAY |
| 90 | FILION, ARTHUR (DEC) | COONEY & CONWAY |
| 91 | FREEMAN, MARILYN | COONEY & CONWAY |
| 92 | HAYES, HAROLD | COONEY & CONWAY |
| 93 | HEJZA, ROGER | COONEY & CONWAY |
| 94 | HUTCHINSON, JOE LOUIS | COONEY & CONWAY |
| 95 | JURGETO, RONALD | COONEY & CONWAY |
| 96 | KARAS, BRUCE | COONEY & CONWAY |
| 97 | KINNEAR, DONALD (DEC) | COONEY & CONWAY |
| 98 | LEVIEUX, GREGORY | COONEY & CONWAY |
| 99 | MCCLUSKIE, ROBERT | COONEY & CONWAY |
| 100 | MURPHY, THOMAS | COONEY & CONWAY |
| 101 | MURRAY, GEORGE (DEC) | COONEY & CONWAY |
| 102 | NELSON, MAXWELL (DEC) | COONEY & CONWAY |
| 103 | NORDIN, WAYNE (DEC) | COONEY & CONWAY |
| 104 | NOVOSEL, MICHAEL | COONEY & CONWAY |
| 105 | PANFILIO, JAMES | COONEY & CONWAY |
| 106 | PRITCHETT, NOBLE | COONEY & CONWAY |
| 107 | RAGLAND, PAUL | COONEY & CONWAY |
| 108 | REHBEIN, FREDERICK | COONEY & CONWAY |
| 109 | SANK, HOWARD (DEC) | COONEY & CONWAY |
| 110 | SCHAEFFER, EVELYN | COONEY & CONWAY |
| 111 | STEWART, ROBERT | COONEY & CONWAY |
| 112 | STOECKER, MARY (DEC) | COONEY & CONWAY |
| 113 | SYROWIK, LEONARD R (DEC) | COONEY & CONWAY |
| 114 | WAGGONER, ELDO (DEC) | COONEY & CONWAY |
| 115 | WALKER, REID | COONEY & CONWAY |
| 116 | DUNCAN, ENOCH (DEC) | CORY WATSON CROWDER & DEGARIS |
| 117 | RINIER, JOHN HENRY JR | CORY WATSON CROWDER & DEGARIS |
| 118 | WALKER, JACK R SR (DEC) | CUMBEST CUMBEST HUNTER & MCCORMICK |
| 119 | DUPRIEST, RONALD | DELUCA & NEMEROFF LLP |
| 120 | CURBY, JOHN O (DEC) | DOMNICK & SHEVIN |
| 121 | PARKS, MARTIN A (DEC) | DUBOSE LAW FIRM |
| 122 | CANNON, LEO | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 123 | DEEMS, ROWLAND (DEC) | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 124 | DORRER, ROBERT A | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 125 | HAMMER, IRVING (DEC) | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 126 | HENSHAW, MAURICE (DEC) | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 127 | KONING, FREDERICK H (DEC) | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 128 | KUDRNA, FRANK J SR (DEC) | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 129 | REINDL, THOMAS M | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 130 | ROBERTS, MICHAEL (DEC) | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 131 | ROCHLIN, ABRAHAM (DEC) | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 132 | SMART, JANE | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |

EXPOSURE SAMPLE CLAIMANTS

| | Plaintiff name | Law firm |
|---|---|---|
| 133 | ST HILAIRE, RALPH F JR | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 134 | STRONG, FRED E | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 135 | TOMLIN, ROBERT W (DEC) | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 136 | WALKER, FREDDIE L | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 137 | PAULUS, WILLIAM (DEC) | EDDINS LAW FIRM |
| 138 | MURPHY, PAUL (DEC) | EMBRY & NEUSNER |
| 139 | BROOKS, VICTOR | FLEMING & ASSOCIATES |
| 140 | OXFORD, J C (DEC) | FLEMING & ASSOCIATES |
| 141 | POJAR, CLIFFORD | FLEMING & ASSOCIATES |
| 142 | SMITH, JEANNE | FLEMING & ASSOCIATES |
| 143 | BAILEY, VERNON G JR (DEC) | GLASSER & GLASSER |
| 144 | CRAIG, WILLIAM K SR | GLASSER & GLASSER |
| 145 | HARMAN, WILLIAM W | GLASSER & GLASSER |
| 146 | LYONS, PATRICK J | GLASSER & GLASSER |
| 147 | PETERS, RICHARD E (DEC) | GLASSER & GLASSER |
| 148 | SCHOLES, CALLIE SUE | GLASSER & GLASSER |
| 149 | BORING, GARY W | GOLDBERG PERSKY & WHITE |
| 150 | DIEHL, JOHN (DEC) | GOLDBERG PERSKY & WHITE |
| 151 | HEARD, JOHN (DEC) | GOLDBERG PERSKY & WHITE |
| 152 | LOCKMAN, HELEN | GOLDBERG PERSKY & WHITE |
| 153 | PAVLIK, ALBERT H SR | GOLDBERG PERSKY & WHITE |
| 154 | PUTT, GENE | GOLDBERG PERSKY & WHITE |
| 155 | SABOL, GEORGE P | GOLDBERG PERSKY & WHITE |
| 156 | SAUERS, BERNARD F (DEC) | GOLDBERG PERSKY & WHITE |
| 157 | SCHIRRA, RITA C. | GOLDBERG PERSKY & WHITE |
| 158 | SHAW, PHILLIP E (DEC) | GOLDBERG PERSKY & WHITE |
| 159 | SHERMAN, FRANK V (DEC) | GOLDBERG PERSKY & WHITE |
| 160 | SMITH, RALPH E | GOLDBERG PERSKY & WHITE |
| 161 | STEWART, ROBERT E | GOLDBERG PERSKY & WHITE |
| 162 | YETTER, RONALD B | GOLDBERG PERSKY & WHITE |
| 163 | BROSS, VALDIS D | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 164 | MIZE, CLIFTON E (DEC) | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 165 | STANEK, EUGENE G | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 166 | ANDERSON, WILLIAM | GORI JULIAN & ASSOCIATES |
| 167 | BROOKS, SCOTT J | GORI JULIAN & ASSOCIATES |
| 168 | BRUNER, DALE L (DEC) | GORI JULIAN & ASSOCIATES |
| 169 | BURGER, TIMOTHY JAY | GORI JULIAN & ASSOCIATES |
| 170 | CATRAMBONE, DOMENICK | GORI JULIAN & ASSOCIATES |
| 171 | CONSOLE, ALDO | GORI JULIAN & ASSOCIATES |
| 172 | DILLBECK, VICTOR LEE | GORI JULIAN & ASSOCIATES |
| 173 | DORATO, EDWARDO J | GORI JULIAN & ASSOCIATES |
| 174 | ERDMANN, MARCELLA (DEC) | GORI JULIAN & ASSOCIATES |
| 175 | GLASS, WILLIAM G (DEC) | GORI JULIAN & ASSOCIATES |
| 176 | GRAHAM, KELLEY (DEC) | GORI JULIAN & ASSOCIATES |

EXPOSURE SAMPLE CLAIMANTS

| | Plaintiff name | Law firm |
|---|---|---|
| 177 | HUFF, J L (DEC) | GORI JULIAN & ASSOCIATES |
| 178 | KIRN, SOPHIA | GORI JULIAN & ASSOCIATES |
| 179 | LAMAE, ROBERT L SR | GORI JULIAN & ASSOCIATES |
| 180 | LOCKWOOD, HOWARD (DEC) | GORI JULIAN & ASSOCIATES |
| 181 | LODEN, BENNY (DEC) | GORI JULIAN & ASSOCIATES |
| 182 | MASON, JOSEPH R SR (DEC) | GORI JULIAN & ASSOCIATES |
| 183 | MCGRUDER, AARON | GORI JULIAN & ASSOCIATES |
| 184 | MCMILLAN, ALFRED DEAN (DEC) | GORI JULIAN & ASSOCIATES |
| 185 | MENDEZ, JUAN A (DEC) | GORI JULIAN & ASSOCIATES |
| 186 | RAMSEY, JAMES (DEC) | GORI JULIAN & ASSOCIATES |
| 187 | REEVES, J V | GORI JULIAN & ASSOCIATES |
| 188 | SEAL, GILBERT T | GORI JULIAN & ASSOCIATES |
| 189 | STOCKTON, KENNETH | GORI JULIAN & ASSOCIATES |
| 190 | TIGNER, PATRICIA A (DEC) | GORI JULIAN & ASSOCIATES |
| 191 | WAGNER, AUDREY | GORI JULIAN & ASSOCIATES |
| 192 | WEBER, JAKOB A | GORI JULIAN & ASSOCIATES |
| 193 | WELCH, SAM | GORI JULIAN & ASSOCIATES |
| 194 | YOUNG, FRED | GORI JULIAN & ASSOCIATES |
| 195 | ZANKL, AUDREY M (DEC) | GORI JULIAN & ASSOCIATES |
| 196 | BARNES, BENNIE (DEC) | HAROWITZ & TIGERMAN LLP |
| 197 | LOPEZ, THOMAS (DEC) | HAROWITZ & TIGERMAN LLP |
| 198 | ROSE, DEBORAH K (DECD) | HARTLEY & O'BRIEN |
| 199 | RUSSOW, DONALD C (DECD) | HARTLEY & O'BRIEN |
| 200 | WILLIAMS, KEITH E (DEC) | HARVIT & SCHWARTZ |
| 201 | BRAUN, LARRY (DEC) | HISSEY KIENTZ & HERRON PLLC |
| 202 | JENKINS, CHARLES L (DEC) | HISSEY KIENTZ & HERRON PLLC |
| 203 | COBB, ALFRED A JR (DEC) | HOSSLEY EMBRY |
| 204 | TORREGANO, LOUIS PATRICK | HOWARD & REED |
| 205 | TURCHEN, JOSEPH A | JACOBS & CRUMPLAR |
| 206 | RICHARDS, TIMOTHY SR | KELLEY & FERRARO |
| 207 | CALDWELL, TASHA | LAW OFFICES OF PETER G ANGELOS |
| 208 | CASTAGNA, BART | LAW OFFICES OF PETER G ANGELOS |
| 209 | COX, PHILIP V | LAW OFFICES OF PETER G ANGELOS |
| 210 | HAMILTON, ELIZABETH F (DEC) | LAW OFFICES OF PETER G ANGELOS |
| 211 | KASSIN, RICHARD | LAW OFFICES OF PETER G ANGELOS |
| 212 | KOPIE, PATRICIA | LAW OFFICES OF PETER G ANGELOS |
| 213 | LIRAKIS, STEVE | LAW OFFICES OF PETER G ANGELOS |
| 214 | MILLER, WAYNE R | LAW OFFICES OF PETER G ANGELOS |
| 215 | MITCHELL, HELEN T (DEC) | LAW OFFICES OF PETER G ANGELOS |
| 216 | OCHS, KENNETH (DEC) | LAW OFFICES OF PETER G ANGELOS |
| 217 | RAPONE, PASQUALE | LAW OFFICES OF PETER G ANGELOS |
| 218 | RICKARD, R B (DEC) | LAW OFFICES OF PETER G ANGELOS |
| 219 | ROWE, THOMAS R | LAW OFFICES OF PETER G ANGELOS |
| 220 | SWINNEY, NORVAL | LAW OFFICES OF PETER G ANGELOS |

EXPOSURE SAMPLE CLAIMANTS

|  | Plaintiff name | Law firm |
|---|---|---|
| 221 | TABB, GEORGE W (DEC) | LAW OFFICES OF PETER G ANGELOS |
| 222 | MOORE, WILLIAM W (DEC) | LEVIN PAPANTONIO |
| 223 | ULIBARRI, THOMAS J (DEC) | LEVIN PAPANTONIO |
| 224 | WEBB, GEORGE FRANK | LEVIN PAPANTONIO |
| 225 | BAKER, KENNETH (DEC) | LEVIN SIMES KAISER & GORNICK |
| 226 | CALANDE, WILLIAM | LEVIN SIMES KAISER & GORNICK |
| 227 | ESTES, R L | LEVIN SIMES KAISER & GORNICK |
| 228 | HERNANDEZ, ROBERT (DEC) | LEVIN SIMES KAISER & GORNICK |
| 229 | INCE, ALICE FAYE (DEC) | LEVIN SIMES KAISER & GORNICK |
| 230 | LONGSTREET, NORMAN | LEVIN SIMES KAISER & GORNICK |
| 231 | QUINTINO, LEOPOLD | LEVIN SIMES KAISER & GORNICK |
| 232 | STAYTON, EDWARD (DEC) | LEVIN SIMES KAISER & GORNICK |
| 233 | VANDERHYDE, DAVID | LEVIN SIMES KAISER & GORNICK |
| 234 | WHITMAN, LOVELL (DEC) | LEVIN SIMES KAISER & GORNICK |
| 235 | BIGLEY, DONALD WAYNE | LEVY PHILLIPS & KONIGSBERG |
| 236 | CORTHELL, OTIS (DEC) | LEVY PHILLIPS & KONIGSBERG |
| 237 | EICHEN, GEORGE | LEVY PHILLIPS & KONIGSBERG |
| 238 | ELLIS, GRACE ANN DARNELL | LEVY PHILLIPS & KONIGSBERG |
| 239 | FREY, GENE SR | LEVY PHILLIPS & KONIGSBERG |
| 240 | KNAPP, ROLAND (DEC) | LEVY PHILLIPS & KONIGSBERG |
| 241 | MELLACE, JOSEPHINE (DEC) | LEVY PHILLIPS & KONIGSBERG |
| 242 | MUELLER, HAROLD ROBERT (DEC) | LEVY PHILLIPS & KONIGSBERG |
| 243 | NAGEL, JAMES | LEVY PHILLIPS & KONIGSBERG |
| 244 | NAPOTNIK, JACOB | LEVY PHILLIPS & KONIGSBERG |
| 245 | STILLWAGON, FRANCIS RICHARD | LEVY PHILLIPS & KONIGSBERG |
| 246 | BAPTISTE, FRANCIS (DEC) | LOCKS LAW FIRM |
| 247 | CECCORULLI, LOUIS | LOCKS LAW FIRM |
| 248 | CLARK, JOHN J JR (DEC) | LOCKS LAW FIRM |
| 249 | CONLON, MICHAEL P | LOCKS LAW FIRM |
| 250 | CONLON, ROBERT W (DEC) | LOCKS LAW FIRM |
| 251 | DEENEY, JANE | LOCKS LAW FIRM |
| 252 | DUFFY, GEORGE F (DEC) | LOCKS LAW FIRM |
| 253 | PINIERO, MARGARET (DEC) DANIEL | LOCKS LAW FIRM |
| 254 | ROSS, SCOTT (DEC) | MADEKSHO LAW FIRM |
| 255 | GUTIERREZ, AGUSTIN JR (DEC) | MANDELBROT LAW FIRM |
| 256 | WOOD, NORWOOD SHELTON | MARTIN & JONES |
| 257 | WOODALL, JOHN JAMES | MARTIN & JONES |
| 258 | STERLING, ALBERT JR (DEC) | MARTZELL & BICKFORD |
| 259 | BUNDY, EDWARD | MAUNE RAICHLE HARTLEY FRENCH & MUDD |
| 260 | HARRIS, JUDITH | MAUNE RAICHLE HARTLEY FRENCH & MUDD |
| 261 | KOWCHECK, REGIS F | MAUNE RAICHLE HARTLEY FRENCH & MUDD |
| 262 | SHRAMEK, ROBERT | MAUNE RAICHLE HARTLEY FRENCH & MUDD |
| 263 | ADOLINE, HAROLD GENE | MAZUR & KITTEL |
| 264 | BENNETT, HENRY W (DEC) | MAZUR & KITTEL |

EXPOSURE SAMPLE CLAIMANTS

| | Plaintiff name | Law firm |
|---|---|---|
| 265 | BERGMAN, DELORES G (DEC) | MAZUR & KITTEL |
| 266 | HART, PAUL | MAZUR & KITTEL |
| 267 | MILLS, WAYNE E | MAZUR & KITTEL |
| 268 | ROGERS, EDWARD JOHN | MAZUR & KITTEL |
| 269 | SMETANKA, CATHERINE | MAZUR & KITTEL |
| 270 | KNIGHT, HORATIO | MCTEAGUE HIGBEE |
| 271 | RICHARD, EMILE JOSEPH | MCTEAGUE HIGBEE |
| 272 | VANAKION, LEONARD FRANK | MICHAEL B SERLING |
| 273 | BERRY, FRED R (DEC) | MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL |
| 274 | CARTER, DREWRY WILLIAM | MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL |
| 275 | CHANDLER, ALDEN H | MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL |
| 276 | DOWDY, BERNARD F SR (DEC) | MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL |
| 277 | MARCUS, HENRY F JR (DEC) | MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL |
| 278 | ADAMS, BRUCE (DEC) | MOTLEY RICE |
| 279 | ANDREOLI, BENITO J | MOTLEY RICE |
| 280 | HENSLEY, JEROME | MOTLEY RICE |
| 281 | HICKS, DONALD MILTON (DEC) | MOTLEY RICE |
| 282 | RAYNOR, ROBERT L | MOTLEY RICE |
| 283 | WILSON, GORDON (DEC) | MOTLEY RICE |
| 284 | BYER, ROBERT M | NICHOLL_ PETER T |
| 285 | HUNT, CLIFFORD EARL & FLORA | NIX PATTERSON & ROACH |
| 286 | BANYCKY, HELEN | O'BRIEN LAW FIRM L.L.C |
| 287 | BUSSARD, NORMAN A (DEC) | O'BRIEN LAW FIRM L.L.C |
| 288 | DUNCAN, CHARLES (DEC) | O'BRIEN LAW FIRM L.L.C |
| 289 | FIELDS, LAWSON H (DEC) | O'BRIEN LAW FIRM L.L.C |
| 290 | FRIDMANSKI, ROBERT J | O'BRIEN LAW FIRM L.L.C |
| 291 | LAMB, RICHARD W (DEC) | O'BRIEN LAW FIRM L.L.C |
| 292 | LAPPIN, JOHN A | O'BRIEN LAW FIRM L.L.C |
| 293 | OLDHAM, EMMA J | O'BRIEN LAW FIRM L.L.C |
| 294 | QUICK, KAREN (DEC) | O'BRIEN LAW FIRM L.L.C |
| 295 | RILEY, JUANITA | O'BRIEN LAW FIRM L.L.C |
| 296 | SKAGGS, W CARL | O'BRIEN LAW FIRM L.L.C |
| 297 | WATTS, VIRGIL L (DEC) | O'BRIEN LAW FIRM L.L.C |
| 298 | WHITMAN, ROBERT E (DEC) | O'BRIEN LAW FIRM L.L.C |
| 299 | WINTERMANN, MAURICE | O'BRIEN LAW FIRM L.L.C |
| 300 | BURRIS, WILLIAM O | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 301 | MASON, LAWRENCE R (DEC) | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 302 | PILAND, WILLIAM M | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 303 | SMITH, G BERNARD JR | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 304 | WALKER, ROBERT L | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 305 | BARRETT, BRUCE P | PAUL & HANLEY |
| 306 | CLARK, GEORGE S | PAUL & HANLEY |
| 307 | MITCHELL, DANIEL L | PAUL & HANLEY |
| 308 | NIELSEN, JOHN C (DEC) | PAUL & HANLEY |

EXPOSURE SAMPLE CLAIMANTS

| | Plaintiff name | Law firm |
|---|---|---|
| 309 | REYNOLDS, MAURICE (DEC) | PAUL & HANLEY |
| 310 | TURNER, ARTHUR | PAUL & HANLEY |
| 311 | BARTON, JOHN W | PROVOST UMPHREY LAW FIRM |
| 312 | CUTLER, JACK | PROVOST UMPHREY LAW FIRM |
| 313 | GREEN, ROY | PROVOST UMPHREY LAW FIRM |
| 314 | GROS, ANDREW ANTHONY (DEC) | PROVOST UMPHREY LAW FIRM |
| 315 | MILES, ROGER (DEC) | PROVOST UMPHREY LAW FIRM |
| 316 | OSBORNE, MICHAEL | PROVOST UMPHREY LAW FIRM |
| 317 | PAGE, J C (DEC) | PROVOST UMPHREY LAW FIRM |
| 318 | SANDELLA, JAMES (DEC) | PROVOST UMPHREY LAW FIRM |
| 319 | WAGNER, BOYD L (DEC) | PROVOST UMPHREY LAW FIRM |
| 320 | BELLOMY, JOHN (DEC) | REYES O'SHEA & COLOCA |
| 321 | CROUSE, JAMES W (DEC) | REYES O'SHEA & COLOCA |
| 322 | FRENCH, JOE H & DOROTHY | REYES O'SHEA & COLOCA |
| 323 | NEVITT, JOSEPH A JR | REYES O'SHEA & COLOCA |
| 324 | SMITH, EDWARD L (DEC) | REYES O'SHEA & COLOCA |
| 325 | EAKER, JOSEPH W JR | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 326 | HAMMOND, DEBORAH S (DEC) | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 327 | HARTLEY, KIRK I SR (DEC) | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 328 | HOOKS, MARSHALL J | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 329 | JORDAN, RAYMOND | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 330 | MIDDLETON, MARGUERITE M (DEC) | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 331 | SHERER, ROBERT C | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 332 | SNELLINGS, CHARLES R (DEC) | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 333 | CARLO, FRANK H (DEC) | ROBERT E SWEENEY COMPANY |
| 334 | MILLER, CLIFFORD | ROBERT PEIRCE & ASSOCIATES |
| 335 | SMITH, HARRY R JR (DEC) | SALES TILLMAN & WALLBAUM |
| 336 | BOCEK, MILDRED | SAVILLE & FLINT |
| 337 | HEBERT, DURWOOD C (DEC) | SAVILLE & FLINT |
| 338 | TORRES-PADRON, AMADO | SAVILLE & FLINT |
| 339 | MAISANO, MICHAEL | SAVINIS D'AMICO & KANE |
| 340 | SPALDING, ROBERT | SCHROETER GOLDMARK & BENDER |
| 341 | GRABOWSKI, JOHN | SHEIN LAW CENTER |
| 342 | TELLER, CHARLES J | SHEIN LAW CENTER |
| 343 | ANDRESS, JAMES (DEC) | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 344 | ARMSTRONG, EARL A (DEC) | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 345 | BOWLER, RUTH | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 346 | COOK, NAOMI | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 347 | DUNKERLY, CHARLES (DEC) | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 348 | HALLEY, MARY (DEC) | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 349 | HAMILTON, ROBERT | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 350 | JENSEN, HANS SR (DEC) | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 351 | MCGREW, KAREN | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 352 | MUNN, WILLIAM (DEC) | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |

EXPOSURE SAMPLE CLAIMANTS

| | Plaintiff name | Law firm |
|---|---|---|
| 353 | NIEDER, ROBERT (DEC) | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 354 | SCHROEDER, CHARLES | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 355 | WHITBECK, GERALD | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 356 | GRAY, GEORGE | SIMON GREENSTONE PANATIER BARTLETT |
| 357 | SORBOM, NILS (DEC) | SIMON GREENSTONE PANATIER BARTLETT |
| 358 | SPIVEY, CARL B (DEC) | SIMON GREENSTONE PANATIER BARTLETT |
| 359 | BUCKNER, DOROTHY | SUMMERS & WYATT |
| 360 | LEHMAN, ROBERT G (DEC) | TERRELL HOGAN |
| 361 | STAIER, JOSEPH E JR | TERRELL HOGAN |
| 362 | WHATLEY, JAMES JR | THE BOGDAN LAW FIRM |
| 363 | CARVER, CHARLES RICHARD (DEC) | THE DEATON LAW FIRM |
| 364 | ANDERSON, CLIFFORD L | THE LANIER LAW FIRM |
| 365 | ANGELIS, FERDINAND E (DEC) | THE LANIER LAW FIRM |
| 366 | BEBEE, GEORGE | THE LANIER LAW FIRM |
| 367 | BEEKMAN, LARRY | THE LANIER LAW FIRM |
| 368 | BINGHAM, DARRELL | THE LANIER LAW FIRM |
| 369 | BOISCLAIR, ROLAND (DEC) | THE LANIER LAW FIRM |
| 370 | BRAESE, RICHARD (DEC) | THE LANIER LAW FIRM |
| 371 | BROADUS, JAMES (DEC) | THE LANIER LAW FIRM |
| 372 | BROWN, WILLIAM | THE LANIER LAW FIRM |
| 373 | BUSH, LLOYD D. | THE LANIER LAW FIRM |
| 374 | COLLINS, BILLY E (DEC) | THE LANIER LAW FIRM |
| 375 | D'AMELIO, ALFRED | THE LANIER LAW FIRM |
| 376 | DUNNAM, RAYFORD | THE LANIER LAW FIRM |
| 377 | DURANTE, CLEMENT (DEC) | THE LANIER LAW FIRM |
| 378 | ELLIOTT, SHIRLEY (DEC) | THE LANIER LAW FIRM |
| 379 | FLAHERTY, KEVIN (DEC) | THE LANIER LAW FIRM |
| 380 | GARLAND, GLENN W | THE LANIER LAW FIRM |
| 381 | GEORGE, JAMES T (DEC) | THE LANIER LAW FIRM |
| 382 | GIRARD, FRANK (DEC) | THE LANIER LAW FIRM |
| 383 | GLICK, EVA JEAN | THE LANIER LAW FIRM |
| 384 | GLOWKA, STANLEY JR (DEC) | THE LANIER LAW FIRM |
| 385 | JUNGHANS, MARK S | THE LANIER LAW FIRM |
| 386 | KIDD, DENNIS R | THE LANIER LAW FIRM |
| 387 | LONGSTREET, PHILLIP (DEC) | THE LANIER LAW FIRM |
| 388 | MALLORY, RALPH T JR (DEC) | THE LANIER LAW FIRM |
| 389 | MCDANIELS, LARRY | THE LANIER LAW FIRM |
| 390 | MCNAMARA, DANIEL J | THE LANIER LAW FIRM |
| 391 | MONTGOMERY, BARBARA | THE LANIER LAW FIRM |
| 392 | MORROW, JOHNIE | THE LANIER LAW FIRM |
| 393 | MOSLEY, DAVID | THE LANIER LAW FIRM |
| 394 | NICHOLS, GREGORY EDWARD | THE LANIER LAW FIRM |
| 395 | OAKE, VICTOR B | THE LANIER LAW FIRM |
| 396 | ORTEGA, DAMIAN T | THE LANIER LAW FIRM |

EXPOSURE SAMPLE CLAIMANTS

|  | Plaintiff name | Law firm |
|---|---|---|
| 397 | PARADIS, EDMUND | THE LANIER LAW FIRM |
| 398 | PARROTT, ROBERT | THE LANIER LAW FIRM |
| 399 | PICK, RAYMOND | THE LANIER LAW FIRM |
| 400 | POWERS, JAMES | THE LANIER LAW FIRM |
| 401 | RATLIFF, SPARREL | THE LANIER LAW FIRM |
| 402 | RENDON, EMILIO (DEC) | THE LANIER LAW FIRM |
| 403 | SHAW, ROBERT | THE LANIER LAW FIRM |
| 404 | SIMMONS, ROSE (DEC) | THE LANIER LAW FIRM |
| 405 | SINDA, WALTER | THE LANIER LAW FIRM |
| 406 | SMALARZ, JOHN F (DEC) | THE LANIER LAW FIRM |
| 407 | SMYSER, ROBERT L | THE LANIER LAW FIRM |
| 408 | SOMMER, GEORGE | THE LANIER LAW FIRM |
| 409 | STRICKLAND, JAMES E | THE LANIER LAW FIRM |
| 410 | TURNER, LOWELL (DEC) | THE LANIER LAW FIRM |
| 411 | WADSWORTH, GEORGE E JR | THE LANIER LAW FIRM |
| 412 | WEST, JIMMY RAY (DEC) | THE LANIER LAW FIRM |
| 413 | WHITE, GEORGE W JR (DEC) | THE LANIER LAW FIRM |
| 414 | WOLIVER, CAM (DEC) | THE LANIER LAW FIRM |
| 415 | WOOD, ROBERT L | THE LANIER LAW FIRM |
| 416 | YOUNG, JAMES E | THE LANIER LAW FIRM |
| 417 | ZAMEROSKI, JOHN (DEC) | THE LANIER LAW FIRM |
| 418 | BROWN, WILLIAM A (DEC) | THE LIPMAN LAW FIRM |
| 419 | FRIDAY, YVONNE (DEC) | THE LIPMAN LAW FIRM |
| 420 | LORENZ, DAVID LARRY (DEC) | THE LIPMAN LAW FIRM |
| 421 | SNYDER, LOUISE (DEC) | THE LIPMAN LAW FIRM |
| 422 | BISGAARD, SOREN | THE SHEPARD LAW FIRM |
| 423 | D'ANDREA, FREDRICK | THE SHEPARD LAW FIRM |
| 424 | SNOW, JAMES J (DEC) | THE SHEPARD LAW FIRM |
| 425 | JOHNSON, CLYDE L (DEC) | THE SUTTER LAW FIRM |
| 426 | BANKS, EDWIN M (DEC) | THORNTON & NAUMES |
| 427 | BELLEGARDE, ROLAND (DEC) | THORNTON & NAUMES |
| 428 | DAVIS, JOHN E | THORNTON & NAUMES |
| 429 | MASON, DOUGLAS W SR | THORNTON & NAUMES |
| 430 | MILNER, RICHARD M (DEC) | THORNTON & NAUMES |
| 431 | NORBUT, JOSEPH J (DEC) | THORNTON & NAUMES |
| 432 | PLASSE, ROGER R | THORNTON & NAUMES |
| 433 | SPELLBERG, MICHAEL J (DEC) | THORNTON & NAUMES |
| 434 | STEWARD, JOHN L (DEC) | THORNTON & NAUMES |
| 435 | BEIREMANN, HARRY | WATERS & KRAUS |
| 436 | BOUDREAUX, LLOYD J JR (DEC) | WATERS & KRAUS |
| 437 | CHABOUDY, ROBERT (DEC) | WATERS & KRAUS |
| 438 | DELLINGER, DOUGLAS | WATERS & KRAUS |
| 439 | DEMERSSEMAN, CLEON J (DEC) | WATERS & KRAUS |
| 440 | MITCHELL, JUDITH | WATERS & KRAUS |

EXPOSURE SAMPLE CLAIMANTS

| | Plaintiff name | Law firm |
|---|---|---|
| 441 | TALBOTT, WILLIAM (DEC) | WATERS & KRAUS |
| 442 | ZERDA, KENNETH V (DEC) | WATERS & KRAUS |
| 443 | BONELLI, NANCY | WEITZ & LUXENBERG |
| 444 | COLACHINO, LOUIS C (DEC) | WEITZ & LUXENBERG |
| 445 | COPPOLA, FRANK J (DEC) | WEITZ & LUXENBERG |
| 446 | DEITZ, CHARLES D | WEITZ & LUXENBERG |
| 447 | FRASIER, CLYDE | WEITZ & LUXENBERG |
| 448 | HAUCK, EDWARD J (DEC) | WEITZ & LUXENBERG |
| 449 | KLIMBACK, JAMES F | WEITZ & LUXENBERG |
| 450 | MILLER, EDWARD (DEC) | WEITZ & LUXENBERG |
| 451 | RYAN, WILLIAM F (DEC) | WEITZ & LUXENBERG |
| 452 | UHE, DONALD | WEITZ & LUXENBERG |
| 453 | WHITAKER, DONALD | WEITZ & LUXENBERG |
| 454 | CINQUEMANI, SALVATORE (DEC) | WILENTZ GOLDMAN & SPITZER |
| 455 | DIGIAIMO, FRANK SR (DEC) | WILENTZ GOLDMAN & SPITZER |
| 456 | GRIOLI, ANTONIO (DEC) | WILENTZ GOLDMAN & SPITZER |
| 457 | LEROUX, THOMAS B (DEC) | WILENTZ GOLDMAN & SPITZER |
| 458 | MASSARO, ANTHONY | WILENTZ GOLDMAN & SPITZER |
| 459 | MCGOWAN, JAMES | WILENTZ GOLDMAN & SPITZER |
| 460 | MOTTERSHEAD, GEORGE (DEC) | WILENTZ GOLDMAN & SPITZER |
| 461 | RIDGWAY, ALAN J (DEC) | WILENTZ GOLDMAN & SPITZER |
| 462 | RODRIGUEZ, JUAN (DEC) | WILENTZ GOLDMAN & SPITZER |
| 463 | ROMAN, JOSEPH SR | WILENTZ GOLDMAN & SPITZER |
| 464 | SHAW, ROBERT A (DEC) | WILENTZ GOLDMAN & SPITZER |
| 465 | SIEGEL, ISRAEL DR | WILENTZ GOLDMAN & SPITZER |
| 466 | SIEGEL, NORMAN | WILENTZ GOLDMAN & SPITZER |
| 467 | SLIVKA, GEORGE (DEC) | WILENTZ GOLDMAN & SPITZER |
| 468 | SWEENEY, HUGH D | WILENTZ GOLDMAN & SPITZER |
| 469 | VENIER, ANDREW J | WILENTZ GOLDMAN & SPITZER |
| 470 | WOOD, ALLEN | WILENTZ GOLDMAN & SPITZER |
| 471 | SCOTT, JAMES B | WISE & JULIAN |

# EXHIBIT C

**EXHIBIT C.1 TO ORDER AUTHORIZING DEBTORS TO ISSUE SUPPLEMENTAL
EXPOSURE QUESTIONNAIRE AND GOVERNING CONFIDENTIALITY OF
INFORMATION PROVIDED IN RESPONSES**

**Re:** *In re Garlock Sealing Technologies LLC, et al.,*
**Case No. 10-BK-31607 (Jointly Administered)**
**United States Bankruptcy Court
for the Western District of North Carolina**

<u>*Instructions*</u>*:  This Acknowledgment must be executed by an authorized representative of any corporation, partnership, company, or firm required to execute an Acknowledgment pursuant to paragraph 5.e. of the above-referenced Order.*

# A C K N O W L E D G E M E N T

On behalf of my employer, _____ [*write in name of employer*] ("**Employer**"), I and other employees, agents, and representatives of Employer may be given access to Questionnaire Responses. Each and every Questionnaire Response constitutes confidential and protected information in connection with the above- referenced Order Authorizing Debtors to Issue Supplemental Exposure Questionnaire and Governing Confidentiality of Information Provided in Responses (the "**Questionnaire Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced jointly-administered Chapter 11 cases. Capitalized terms used in this Acknowledgment but not otherwise defined herein shall have the meanings ascribed to them in the Questionnaire Order.

I have read the Questionnaire Order on behalf of Employer as part of performing its duties to _____ [*write in name of the Estimation Party or other client for whom Employer is rendering services in connection with the Estimation Proceeding*]. I understand the conditions and obligations of confidentiality, and use restrictions, that the Questionnaire Order makes applicable to Questionnaire Responses. By my signature below, Employer, for itself and all of its employees, agents, and representatives who receive access to Questionnaire Responses, hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and restrictions. On Employer's behalf, I represent that Employer has made, or will make the Questionnaire Order and this Acknowledgment known in advance to all of Employer's employees, agents, and representatives who are to receive access to Questionnaire Responses, so that they will be on notice of Employer's duties in connection therewith and their own responsibilities to ensure compliance with the Questionnaire Order.

Employer, its employees, agents, and representatives will not disclose any Questionnaire Responses to any person not authorized by the Questionnaire Order, or further order of the Bankruptcy Court, to receive such information. They will not use Questionnaire Responses for any purpose other than the Estimation Proceeding, except as may be specifically authorized by further order of the Bankruptcy Court pursuant to paragraph 18 of the Questionnaire Order.

Pursuant to paragraph 17 of the Questionnaire Order, Employer will destroy or cause to be destroyed all Questionnaire Responses within one year of the date of substantial consummation of a confirmed Chapter 11 plan of reorganization for the Debtors (the "**Plan**"), and will promptly certify such destruction in writing to counsel of record for the Debtors, the Committee, and the FCR, unless relieved of that obligation by a specific provision of the Plan authorizing Employer to turn over Questionnaire Responses to an asbestos settlement trust created pursuant to the Plan.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Questionnaire Order and this Acknowledgment and for no other purposes.

I represent that I am duly authorized to execute this Acknowledgment on behalf of Employer.

By: _____
Print Name: _____
Title: _____
Employer: _____
Address: _____
_____
Dated: _____
Relationship to Employer: _____

**EXHIBIT C.2 TO ORDER AUTHORIZING DEBTORS TO ISSUE SUPPLEMENTAL
EXPOSURE QUESTIONNAIRE AND GOVERNING CONFIDENTIALITY OF
INFORMATION PROVIDED IN RESPONSES**

**Re:** *In re Garlock Sealing Technologies LLC, et al.,*
**Case No. 10-BK-31607 (Jointly Administered)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

**Instructions:**  *This Acknowledgment must be executed by any individual required to execute
an Acknowledgment in his or her individual capacity pursuant to the paragraph 5.e. of the
above-referenced Order (for example, a self-employed expert or a witness).*

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced Order Authorizing Debtors to Issue Supplemental Exposure
Questionnaire and Governing Confidentiality of Information Provided in Responses (the
"**Questionnaire Order**"), entered by the United States Bankruptcy Court for the Western
District of North Carolina (the "**Bankruptcy Court**") in the above-referenced jointly-
administered Chapter 11 cases.

I have read the Questionnaire Order. Capitalized terms used in this Acknowledgment but
not otherwise defined herein shall have the meanings ascribed to them in the Questionnaire
Order. I understand the conditions and obligations of confidentiality, and use restrictions, that the
Questionnaire Order makes applicable to Questionnaire Responses and hereby accept and agree
to be bound by, and to abide by, those conditions, obligations, and restrictions.

I will not disclose any Questionnaire Responses to any person not authorized by the
Questionnaire Order, or further order of the Bankruptcy Court, to receive such information. I will
not use Questionnaire Responses for any purpose other than the Estimation Proceeding, except as
may be specifically authorized by further order of the Bankruptcy Court pursuant to paragraph
18 of the Questionnaire Order.

Pursuant to paragraph 17 of the Questionnaire Order, I will destroy all Questionnaire
Responses within one year of the date of substantial consummation of a confirmed Chapter 11
plan of reorganization for the Debtors (the "**Plan**"), and will promptly certify such destruction in
writing to counsel of record for the Debtors, the Committee, and the FCR, unless relieved of that
obligation by a specific provision of the Plan authorizing me to turn over Questionnaire
Responses to an asbestos settlement trust created pursuant to the Plan.

Case 20-30608    Doc 237    Filed 06/29/20    Entered 06/29/20 14:02:35    Desc Main
Document      Page 195 of 238

     I consent to the jurisdiction of the Bankruptcy Court for any action to enforce the terms of the Questionnaire Order and this Acknowledgment and for no other purposes.

By: _____

Print Name: _____

Title: _____

Address: _____

_____

Dated: _____

# **EXHIBIT F**

NAI-1514163240

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In the matter of:                    )
                                     )
GARLOCK SEALING TECHNOLOGIES, LLC,)  No. 10-31607
et al.,                              )  Jointly Administered
                                     )  Charlotte, NC
        Debtors.                     )  May 17, 2012, 9:31 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GEORGE R. HODGES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

Garland S. Cassada
Jonathan C. Krisko
Richard C. Worf, Jr.
Robinson, Bradshaw & Hinson
101 North Tryon Street, Suite 1900
Charlotte, NC 28246

John R. Miller, Jr.
Rayburn, Cooper & Durham, P.A.
227 West Trade Street, Suite 1200
Charlotte NC, 28202-1672

Electronic Recorder
Operator:                    Julia Adams/Tara Salmons

Transcriber:                 Patricia Basham
                             6411 Quail Ridge Drive
                             Bartlett, TN  38135
                             9O1-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

34

1          Thank you, Your Honor.

2          THE COURT: Okay.  I think I ought to allow this

3  discovery, both as to the settlement information and the

4  exposure and proximity data.  I think this is largely my fault

5  and perhaps the slow learning curve that I presented to you

6  all, but I think the balance that I struck earlier was at the

7  wrong place.  This information appears to me to be necessary

8  for the debtors to prepare their case and not designed just for

9  the purpose of delaying things.

10          The samples appear reasonably limited and I think this

11  is an appropriate way to eliminate some degree of speculation

12  from the formula that they plan to present.

13          I will say, just so it is clear, that I am not making

14  any determination on the viability of Garlock's legal liability

15  approach.  I am just saying that I think they ought to have an

16  opportunity to present that approach with this data available

17  to them.

18          I also do not propose to – or I will say this ruling

19  should be without prejudice to individuals who are affected

20  having the right to object on additional grounds individual to

21  them and would suggest that perhaps we give a relatively short

22  time to object and a little more time to answer if it's

23  possible.  I would hate to give a certain period of time for

24  people to respond and have them file objections on the last day

25  or something like that.  That just delays everything.  So I

Garlock/5-17-12

35

1    will leave it to you all to try to work out details of time

2    limits and that kind of thing, but I will order that this

3    discovery go forward in the fashion that you have outlined it

4    to the samples that you all have selected and see where we go

5    from there, I guess.

6         Okay.

7         MR. CASSADA: Thank you, Your Honor.  We will prepare

8    an order and we will discuss it with Mr. Guy and Mr. Swett.

9         THE COURT: All right.  Then let's go next, I guess, to

10   the trust, was the third part of your –

11        MR. CASSADA: Yes.  Thank you, Your Honor.  And, again,

12   we likewise prepared a slide show that will streamline our

13   presentation and we won't repeat what has been included in the

14   brief.

15        Your Honor may recall that we filed some time ago a

16   motion to get a large amount of information from a large number

17   of trusts.  That motion was filed a year and a half ago, and it

18   was continued many times and eventually it was put in suspense

19   and the court ruled or held that Garlock could schedule that

20   motion or asked that that motion be scheduled for a hearing at

21   an appropriate time.

22        The current motion on the table, Your Honor, also

23   seeks trust data.  It is some of the same information that was

24   requested in the motion that we filed back in the fall of 2010

25   that drew so much fire from the committee and the futures rep

Garlock/5-17-12

## **EXHIBIT G**

NAI-1514163240



FILED & JUDGMENT ENTERED
Steven T. Salata

Jun 29 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| IN RE: | Case No. 10-BK-31607 |
| GARLOCK SEALING TECHNOLOGIES LLC, et al., | Chapter 11 |
| Debtors.[1] | Jointly Administered |

### ORDER AUTHORIZING DEBTORS TO ISSUE SUPPLEMENTAL SETTLEMENT PAYMENT QUESTIONNAIRE AND GOVERNING THE CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSES

This matter came before the Court on Debtors' Motion for Supplemental Settlement Payment Questionnaire (Docket No. 2132) (hereinafter, the "**Motion**"). Based upon a review of the Motion, the submissions of the parties, the evidence presented, and the arguments of counsel, the Court concludes that Debtors should be permitted to take settlement payment discovery from certain pending mesothelioma claimants through the mechanism of a supplemental questionnaire for use in estimating Debtors' aggregate liability for asbestos-related personal injury and wrongful death claims pursuant to the Order for Estimation of Mesothelioma Claims (Docket

---

[1] The debtors in these jointly administered cases are Garlock Sealing Technologies LLC; Garrison Litigation Management Group, Ltd.; and The Anchor Packing Company (hereinafter "Garlock" or "Debtors").

- 1 -

Case 10-31607   Doc 2338   Filed 06/29/20   Entered 06/29/20 14:02:35   Desc Main
Document   Page 202 of 238

No. 2102) (the "**Estimation Proceeding**"), subject to the terms and conditions of this Order, and hereby ORDERS, ADJUDGES, AND DECREES that:

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157.

2.      The Motion is GRANTED on the terms and conditions set forth in this Order.

3.      The Supplemental Settlement Payment Questionnaire attached to this Order as **Exhibit A** and incorporated herein by reference is approved.

4.      The persons listed on **Exhibit B** to this Order (for purposes of this Order, "Sample Claimants") are required to complete and return the Supplemental Settlement Payment Questionnaire, pursuant to the deadlines set forth below.

5.      The following deadlines and requirements shall apply:

   a.   On or before June 29, 2012, Debtors shall serve individually marked copies of the Supplemental Settlement Payment Questionnaire, via direct U.S. mail, on counsel of record for all Sample Claimants. The Supplemental Settlement Payment Questionnaires shall contain the claimant's Rust ID number for purposes of linking the response to any previous response to the Questionnaire, and claimants shall use the individually marked copies to make their response. Responses to the Supplemental Settlement Payment Questionnaire are referred to below as "Questionnaire Responses."

   b.   Sample Claimants shall submit their responses to the Supplemental Settlement Payment Questionnaire to the Debtors in paper form, postmarked no later than July 31, 2012, addressed to Richard Worf, Robinson, Bradshaw & Hinson, P.A., 101 N. Tryon St., Suite 1900, Charlotte, NC, 28246.

Case 20-30608  Doc 2358  Filed 06/29/22  Entered 06/29/22 10:26:31  Desc Main
Document  Page 3 of 38

c. Debtors shall make all Questionnaire Responses available promptly in electronic format to counsel for the Official Committee of Asbestos Personal Injury Claimants (the "Committee") and the Future Claimants' Representative (the "FCR") (together with the Debtors, the "Estimation Parties").

d. No Questionnaire Responses shall be disseminated or disclosed, whether in written or electronic form, to any person other than (i) the Estimation Parties; (ii) any entity that becomes a party to the Estimation Proceeding by way of intervention pursuant to an order of the Bankruptcy Court (each, an "**Intervenor**"); (iii) any party in interest who obtains a right of access to Questionnaire Responses by an order issued pursuant to paragraph 18 of this Order; (iv) any law firm rendering legal services with respect to the Estimation Proceeding to any person described in the preceding parts (i) through (iii) of this paragraph 5.d., and each such law firm's employees, agents, and representatives who are personally involved in rendering services in connection with the Estimation Proceeding; (v) any Estimation Party or Intervenor's consulting or testifying experts, and members of their staff, who are personally involved in rendering services to an Estimation Party or Intervenor in connection with the Estimation Proceeding; (vi) any person who testifies at a deposition or hearing in connection with the Estimation Proceeding, and for whose examination or cross-examination reference to a Questionnaire Response is relevant; (vii) third-party service companies providing outside photocopying, graphic production services, or litigation support services in connection with the Estimation Proceeding; (viii) the Court, including secretaries, judicial assistants, law clerks, and other clerical

staff; and (ix) court reporters, stenographers, or videographers who record deposition or other testimony in connection with the Estimation Proceeding; *provided, however,* that the right of access to Questionnaire Responses hereby conferred on the foregoing persons is subject to the conditions precedent set forth in paragraph 5.e. immediately below.

e.  Any person exercising a right of access to Questionnaire Responses granted by this Order shall thereby consent, and be deemed to consent, to be bound by this Order and shall thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue of this Court for any dispute pertaining to the interpretation or enforcement of this Order. Without limitation of the generality of the foregoing sentence, as a condition of the right of access to Questionnaire Responses conferred by paragraph 5.d. above, every entity described in subparts (ii) through (vii) of paragraph 5.d. shall execute an Acknowledgement of Order and Agreement to Be Bound in the form annexed to this Order as Exhibit C.1 or Exhibit C.2. Exhibit C.1 shall be executed on the part of corporations, partnerships, companies, or firms whose employees, representatives, or agents will receive access to Questionnaire Responses in the performance of the firm's duties with respect to the Estimation Proceeding. Exhibit C.2 shall be signed in an individual capacity by individuals (such as a witness or self-employed experts) who receive a right of access to Questionnaire Responses under paragraph 5.d. above in their individual capacities, rather than as employees, agents, or representatives of a firm.

     f.    Any Intervenor shall be deemed subject to all of the obligations and restrictions

applicable to the Estimation Parties under this Order. Any Intervenor, and any

party in interest who obtains such relief on motion pursuant to paragraph 18 of

this Order, shall have access to the Questionnaire Responses only to the extent

specified by the Bankruptcy Court and subject to such terms and conditions as the

Bankruptcy Court may impose by further order.

     g.    Sample Claimants must indicate any objections, including their bases, on the form

attached as Exhibit 1 to the Supplemental Settlement Payment Questionnaire.

6.     When the Debtors serve the Supplemental Settlement Payment Questionnaire, a

copy of this Order shall be attached to the Questionnaire as an exhibit thereto.

7.     Questionnaire Responses shall be confidential and treated as such without need of

any special designation by or on behalf of the responding claimants. Any entity granted access to

Questionnaire Responses as provided in this Order must maintain the confidentiality of the same

in a manner consistent with the obligations and restrictions imposed herein.

8.     Claimants, Estimation Parties, and Intervenors shall have standing to enforce the

protections afforded to Questionnaire Responses by this Order.

9.     As a precautionary measure, but not as a precondition to protection, counsel for

the Debtors shall stamp Questionnaire Responses with the following legend:

"CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER."

10.     Any entity that receives access to Questionnaire Responses as provided in this

Order shall provide for physical, managerial and electronic security thereof such that

Questionnaire Responses are reasonably maintained and secured, ensuring that they are safe

from unauthorized access or use during utilization, transmission and storage. Should any

unauthorized breach of the confidentiality of Questionnaire Responses occur, the entity whose

agents or representatives were involved in the breach shall notify the Estimation Parties and any

Intervenor, as well as any claimants to which the subject information pertains, as soon as

reasonably practicable, but not later than two (2) business days after such entity first becomes

aware of such breach.

11.     Neither Questionnaire Responses, nor any analyses, conclusions, summaries,

excerpts, redacted copies derived therefrom, nor any knowledge obtained therefrom, shall be

used for any purpose other than the Estimation Proceeding.

12.     Neither Questionnaire Responses nor any analyses, conclusions, summaries,

excerpts, or redacted copies derived therefrom may be (a) publicly disclosed except pursuant to

this Order, (b) used as a disclosed or undisclosed source in any article, study, research, editorial,

publication or scholarly work, or (c) incorporated into or merged with any preexisting database

that is to be used or maintained for any purpose other than the Estimation Proceeding.

13.     To the extent Questionnaire Responses are maintained in or converted to

electronic form, they must be maintained in a separate file, database, or physical storage

medium. If Questionnaire Responses maintained or converted to electronic form are incorporated

into or merged with any preexisting electronic information or database (a "**Merged Database**"),

the Merged Database must itself be treated as confidential to the same extent as the underlying

Questionnaire Responses themselves, shall be maintained in a separate file, database, or physical

storage medium, and shall be subject to the same use restrictions that this Order imposes on the

Questionnaire Responses themselves.

14.     Nothing in this Order shall restrict any person's right to make lawful use of:

a.  any discrete data set or materials that came into the possession of such person lawfully and free of any confidentiality obligation;

b.  any exhibit or other document that is placed on the public record in the Estimation Proceeding in conformity with the restrictions set forth in paragraph 15 below, or any data or material that is or becomes publicly available other than by a breach of this Order; or

c.  any discrete data set or materials developed by or on behalf of such person independent of any Questionnaire Responses.

15.   In the event that, in the course of the Estimation Proceeding, any Estimation Party or Intervenor intends to offer into evidence or otherwise use Questionnaire Responses in connection with testimony or filings in the Bankruptcy Court, or any reviewing court, such Estimation Party or Intervenor may not divulge Questionnaire Responses except when the following conditions are met: (i) such information is relevant to the Estimation Proceeding; (ii) there is no reasonable manner to use such information in the Estimation Proceeding without disclosing Questionnaire Responses; and (iii) such Estimation Party or Intervenor has first utilized its best efforts to maintain the confidentiality of the Questionnaire Responses, including by seeking an order, on notice to all other Estimation Parties and Intervenors and to the Sample Claimants, which provides that such information shall be filed under seal, redacted or reviewed by the Bankruptcy Court (or any other court) *in camera*, as appropriate, and that any hearing, deposition or other proceeding be closed and limited to attendance by persons who are subject to the terms of this Order. Notwithstanding the foregoing, in the course of the Estimation Proceeding and solely for the purposes thereof, an Estimation Party or Intervenor may use in the Bankruptcy Court, or any reviewing court, summaries, analyses or copies derived from

Questionnaire Responses if such material is redacted so as not to reveal the name, social security

number, or other identifying detail of any individual Sample Claimant. Likewise, nothing herein

shall prohibit an expert for any Estimation Party or Intervenor from using or referring to

Questionnaire Responses in such expert's report, or testifying concerning Questionnaire

Responses, so long as such testimony or report does not reveal the name, social security number,

or other identifying detail of any individual Sample Claimant.

16.    In the event that an entity granted access to Questionnaire Responses pursuant to

this Order receives a subpoena, interrogatory, or other request for the production or disclosure of

any Questionnaire Response, in whole or in part, to a third party (a "**Third-Party Discovery**

**Demand**"), including a governmental or other regulatory body, such entity (a "**Discovery**

**Target**") shall provide prompt written notice of any such request or requirement to the claimant

or claimants who provided the information requested, with copies to the Estimation Parties and

any Intervenors, so that any of them may seek a protective order or other appropriate remedy or

waive compliance with the provisions of this Order. Pending a timely effort to obtain such a

protective order or other remedy to prevent the requested production or disclosure, or written

waiver by the claimant, each of the Estimation Parties, and any Intervenors of the right to seek

such an order or remedy, the Discovery Target shall interpose an objection to the Third-Party

Discovery Demand on the basis of this Order. Nothing in this Order shall prohibit a Discovery

Target from complying in good faith with an order directing it to comply, in whole or in part,

with such Third-Party Discovery Demand, or require a Discovery Target to seek a stay of such

an order, or to appeal from such an order; *provided, however*, that any Discovery Target shall

exercise reasonable efforts to preserve the confidentiality of Questionnaire Responses produced

or disclosed pursuant to such an order, including, without limitation, by cooperating with any

Sample Claimant, Estimation Party, or Intervenor who expresses an intention to seek an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Questionnaire Responses.

17.     Within the one-year anniversary of the date of substantial consummation of a confirmed Chapter 11 plan of reorganization for the Debtors (a "**Plan**"), each entity that has received Questionnaire Responses shall destroy such Questionnaire Responses, including all copies thereof, in a commercially reasonable manner and continue to be bound by the terms and obligations imposed by this Order, and shall certify such destruction in writing to respective counsel of record for the Debtors, the Committee, and the FCR; *provided, however,* that the obligations of this paragraph shall not apply to copies of pleadings and exhibits filed under seal with this Court, or to file copies in the possession of counsel of record for the Sample Claimants, for the Estimation Parties, or for Intervenors of papers prepared in connection with the Estimation Proceeding (*e.g.*, pleadings, transcripts, interview or document summaries, internal memoranda, written communications with professionals, experts, and witnesses, depositions and exhibits thereto, court papers, and other papers prepared, created, or served in connection with the Estimation Proceeding); and *provided further* that the obligations of this paragraph may be superseded and rendered inoperative if and to the extent that a confirmed Plan specifically authorizes a particular entity to turn over Questionnaire Responses to an asbestos settlement trust created pursuant to the Plan.

18.     Any person who seeks relief from any provision of this Order shall do so by motion in the Bankruptcy Court on notice to the Estimation Parties, any Intervenors, and Sample Claimants determined by prior order of the Bankruptcy Court to be potentially affected by the relief sought. The movant shall bear the burden of showing good cause for the requested relief.

- 9 -

In considering whether that burden is met, and in tailoring or limiting any relief awarded, the Bankruptcy Court shall consider the following matters, among any other relevant factors and legitimate interests: (i) the Debtors have based their request for the Supplemental Settlement Payment Questionnaire on asserted discovery needs for the purposes of the Estimation Proceeding; (ii) the Questionnaire constitutes a hybrid form of discovery not contemplated by the usual rules of discovery under the Federal Rules of Civil Procedure and therefore not available in ordinary civil litigation; (iii) the Court has authorized the Supplemental Settlement Payment Questionnaire on the basis that it may be helpful and efficient for purposes of the Estimation Proceeding; (iv) claimants have a legitimate reliance interest in the provisions of this Order, including those provisions pertaining to the confidentiality and restricted uses of the Questionnaire Responses; (v) the Bankruptcy Court and the Estimation Parties have legitimate interests in the efficient, fair, and expeditious conduct of the Estimation Proceeding; (vi) among the intended benefits of estimating the Debtors' asbestos-related liability in the aggregate is the avoidance of disputes that would implicate the due process rights of absent asbestos personal injury and wrongful death claimants.

19.     This Court shall retain jurisdiction to interpret, apply, and enforce this Order to the full extent permitted by law.

This Order has been signed electronically.          United States Bankruptcy Court
The Judge's signature and court's seal
appear at the top of the Order.

- 10 -

# EXHIBIT A

# Garlock Sealing Technologies LLC Supplemental Settlement Payment Questionnaire

<<FIRM_NAME>>
<<ATTORNEY>>
<<ADDRESS_1>>
<<CITY>> <<STATE>> <<ZIPCODE>>

<<CLAIMANT_NAME>>
<<RUST_ID>>

**MAILING SUMMARY**
MAIL DATE: <<MAIL_DATE>>
DUE DATE: July 31, 2012
MAILED TO: <<ATTY_NAME>>
CLAIMANT: <<CLAIMANT_NAME>>

If the pre-printed address above is incorrect or out of date, OR there is no pre-printed data, provide your name and current address:

Firm Name: _____
Address: _____
City: _____   State: ___ ___   Zip Code: ____ ____ ____ ____ ____

## PURPOSE OF SUPPLEMENTAL SETTLEMENT PAYMENT QUESTIONNAIRE

The U.S. Bankruptcy Court for the Western District of North Carolina has authorized Garlock Sealing Technologies LLC ("**Garlock**") to issue this Supplemental Settlement Payment Questionnaire to certain persons who have alleged that such person or another individual contracted mesothelioma as a result of use of and/or exposure to an asbestos containing product manufactured and/or sold and/or placed into the stream of commerce by Garlock.

The Debtors are pursuing reorganization in jointly administered Chapter 11 cases in the Bankruptcy Court, referred to as *In re Garlock Sealing Technologies LLC, et al.*, Case No. 10-31607 (Bankr. W.D.N.C.). The Bankruptcy Court has granted the Debtors' application to issue this Supplemental Settlement Payment Questionnaire for purposes of estimating their aggregate liability for asbestos-related personal injury and wrongful death claims. The estimation is a contested matter in which the Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative are parties adverse to the Debtors.

The purpose of this Supplemental Settlement Payment Questionnaire is to obtain information pertaining to aggregate payments received from Trust and non-Trust sources on account of the Injured Party's mesothelioma. It supplements the Questionnaire (the "Initial Questionnaire") you previously received pursuant to the Order Authorizing the Debtors to Issue Questionnaire to Holders of Pending Mesothelioma Claims and Governing the Confidentiality and Use of Information Provided in Responses, dated June 21, 2011 (Docket No. 1390).

A copy of the Order Authorizing Debtors to Issue Supplemental Settlement Payment Questionnaire and Governing the Confidentiality and Use of Information Provided in Responses (Docket No. _____) (the "Order") is attached hereto as **Ex. 1**. If your name is on **Exhibit B** to the Order you are required to provide a true and complete response to this Supplemental Settlement Payment Questionnaire, sign the certification, and return it to the address below postmarked no later than **July 31, 2012.**

## WHERE TO SEND YOUR SUPPLEMENTAL SETTLEMENT PAYMENT QUESTIONNAIRE

If you are subject to the Order, you must return a true and complete response to this Supplemental Settlement Payment Questionnaire, in paper form and with all required attachments, postmarked no later than July 31, 2012 to the following address:

Richard C. Worf
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon St., Suite 1900
Charlotte, NC  28246
(704) 377-8135

## INSTRUCTIONS

The purpose of this Supplemental Settlement Payment Questionnaire is to obtain certain information concerning aggregate payments received on account of the Injured Party's mesothelioma.

In **Part 1**, provide information to identify the Injured Party. This will permit the parties in this case to identify your response and match it to your Initial Questionnaire.

**Part 2** consists of a single question with four parts:

**a. Total Payments from Trusts**
Provide the total aggregate payments received by the claimant (or related claimant) on account of the Injured Party's mesothelioma, from all Trusts. A "Trust" is any entity established by a bankruptcy court under section 524(g) or other law to pay the asbestos liabilities of a former asbestos defendant.

**b. Total Trusts Making Payments**
Provide the total number of Trusts from which the claimant (or related claimant) has received a payment on account of the Injured Party's mesothelioma.

**c. Total Payments from Non-Trusts**
Provide the total aggregate payments received by the claimant (or related claimant) on account of the Injured Party's mesothelioma, from all entities that are not Trusts, such as tort system defendants.

**d. Total Non-Trusts Making Payments**
Provide the total number of non-Trusts from which the claimant (or related claimant) has received a payment on account of the Injured Party's mesothelioma.

Finally, execute the certification in **Part 3**. Either the claimant or the claimant's attorney must sign the appropriate certification.

For purposes of this Supplemental Settlement Payment Questionnaire, "Injured Party" means the alleged injured party whose alleged contact with Garlock products is the basis for the claim asserted in this proceeding.

A "related claimant" means a person who is not the Injured Party but who is making a claim based on

or derived from the Injured Party's mesothelioma, either in a representative capacity (e.g., the personal representative of the Injured Party's estate suing for the Injured Party's injuries), or in an independent capacity (e.g., a family member suing for his or her own losses based on the alleged wrongful death of the Injured Party).

**If you object to any portion of any question in this Supplemental Settlement Payment Questionnaire, you must indicate your objection and its basis on the form attached as Exhibit 1.**

| PART 1: INJURED PARTY INFORMATION |
|---|
| Last Name: |
| First Name: |
| Middle Initial: |
| Social Security Number: |

| PART 2 |
|---|
| **INSTRUCTIONS:** Provide full and complete answers to the following questions. |
| a. Provide the total aggregate payments received by the claimant (or related claimant) on account of the Injured Party's mesothelioma, from all Trusts. |
| b. Provide the total number of Trusts from which the claimant (or related claimant) has received a payment on account of the Injured Party's mesothelioma. |
| c. Provide the total aggregate payments received by the claimant (or related claimant) on account of the Injured Party's mesothelioma, from all entities that are not Trusts, such as tort system defendants. |
| d. Provide the total number of non-Trusts from which the claimant (or related claimant) has received a payment on account of the Injured Party's mesothelioma. |

| PART 3:  CERTIFICATION |
|---|

*INSTRUCTIONS:* This certification must be signed by either the claimant or the claimant's attorney but need not be signed by both.

**If Completed By Claimant:**

I swear, under penalty of perjury, that, to the best of my knowledge, all of the information contained in this Supplemental Settlement Payment Questionnaire is true, accurate and complete as of the date hereof.

_____          _____

Signature                                                                                    Date


_____

Print Name

**If Completed By Attorney:**

I acknowledge that by submitting the foregoing responses to this Supplemental Settlement Payment Questionnaire on behalf of my client, I am making the certifications contained in Rule 9011(b) of the Federal Rules of Bankruptcy Procedure.

_____          _____

Signature                                                                                    Date


_____

Print Name

Case 20-30608   Doc 2358   Filed 06/29/20   Entered 06/29/20 14:02:35   Desc Main
Document   Page 217 of 238

**Exhibit 1: Objections**

| Part | Question | Basis for Objection |
|------|----------|---------------------|
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |
|      |          |                     |

Case 20-31607   Doc 2358   Filed 06/29/22   Entered 06/29/22 10:26:51   Desc Main
Document   Page 18 of 38

# EXHIBIT B

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 1 | CAUDEL, STANLEY | ANANIA BANDKLAYDER BAUMGARTEN |
| 2 | BUMBAUGH, DANIEL O | ANAPOL SCHWARTZ WEISS COHAN FELDMAN & SMALLEY |
| 3 | HENNING, WILLIAM | ANAPOL SCHWARTZ WEISS COHAN FELDMAN & SMALLEY |
| 4 | POOLE, JOHN J | ANAPOL SCHWARTZ WEISS COHAN FELDMAN & SMALLEY |
| 5 | LEBOUEF, FLOYD R | BAGGETT MCCALL BURGESS WATSON & GAUGHAN |
| 6 | EDWARDS, BARBARA JANE | BAILEY PERIN BAILEY |
| 7 | ALVAREZ, RICARDO | BARON & BUDD |
| 8 | ATKINSON, DONALD V | BARON & BUDD |
| 9 | BARNHART, ROBERT EDMOND | BARON & BUDD |
| 10 | BOND, WILLIAM DALE | BARON & BUDD |
| 11 | BOUDREAUX, CHARLES JOSEPH | BARON & BUDD |
| 12 | CARTER, WILLIAM | BARON & BUDD |
| 13 | COLAPIETRO, LOUIS | BARON & BUDD |
| 14 | CONWAY, MICHAEL E | BARON & BUDD |
| 15 | DELAHANTY, RICHARD | BARON & BUDD |
| 16 | DEROWITSCH, CHARLES W | BARON & BUDD |
| 17 | DRIVER, KENNETH W | BARON & BUDD |
| 18 | FORD, I D | BARON & BUDD |
| 19 | GAINES, JOHN PATRICK | BARON & BUDD |
| 20 | GARRETT, COLLIN KEITH | BARON & BUDD |
| 21 | GILMOUR, GEORGE M | BARON & BUDD |
| 22 | HIPP, BILLY JOE SR | BARON & BUDD |
| 23 | HODDER, THURMAN | BARON & BUDD |
| 24 | HUBER, JAMES DOUGLASS | BARON & BUDD |
| 25 | JULIANO, JOHN | BARON & BUDD |
| 26 | KAZAKOFF, GEORGE W | BARON & BUDD |
| 27 | KINNEY, STEVEN A | BARON & BUDD |
| 28 | KINZER, RUSSELL LAWRENCE | BARON & BUDD |
| 29 | KUNKEL, ALICE MAY | BARON & BUDD |
| 30 | MARCUM, KAREN LUA | BARON & BUDD |
| 31 | MOHR, HEINRICH | BARON & BUDD |
| 32 | OHSIEK, RALPH JAMES | BARON & BUDD |
| 33 | OLSEN, MERILYN JAY | BARON & BUDD |
| 34 | PINAMONTI, MARION LENARD | BARON & BUDD |
| 35 | PITALO, ANTHONY PETER | BARON & BUDD |
| 36 | REED, FLOYD NORMAN | BARON & BUDD |
| 37 | SHEPHERD, BILLY | BARON & BUDD |
| 38 | YOUNG, DANIEL RAYMOND | BARON & BUDD |
| 39 | BEENICK, THOMAS MICHAEL | BELLUCK & FOX |
| 40 | BELL, ROY EDWARD | BELLUCK & FOX |
| 41 | CHRISTIE, DONALD J | BELLUCK & FOX |
| 42 | COONS, VINCENT WARDEN | BELLUCK & FOX |
| 43 | FRANCK, JOHN EDWARD | BELLUCK & FOX |
| 44 | GOLDSTEIN, SIDNEY | BELLUCK & FOX |
| 45 | HUFF, E LEE | BELLUCK & FOX |
| 46 | KASVEN, IRENE | BELLUCK & FOX |
| 47 | KORNWEISER, KERMAN | BELLUCK & FOX |
| 48 | MARTIN, WILLIAM | BELLUCK & FOX |
| 49 | MAZER, MICHAEL JR | BELLUCK & FOX |
| 50 | MCCORMICK, GORDON A | BELLUCK & FOX |
| 51 | MILES, BERTRAND M | BELLUCK & FOX |
| 52 | MOORS, GERALD | BELLUCK & FOX |
| 53 | PARSONS, RICHARD | BELLUCK & FOX |
| 54 | RAYMOND, IRVING | BELLUCK & FOX |
| 55 | RUDGE, JAMES | BELLUCK & FOX |
| 56 | SEIER, EDWARD J | BELLUCK & FOX |
| 57 | SPENCER, HAZEL IRENE | BELLUCK & FOX |
| 58 | TALL, DONALD ERIC | BELLUCK & FOX |
| 59 | TODD, VICTOR A | BELLUCK & FOX |
| 60 | VERDE, DIANA MARY | BELLUCK & FOX |
| 61 | WALTON, JOHN | BELLUCK & FOX |
| 62 | WILLIAMS, ROBERT | BELLUCK & FOX |
| 63 | ANDERSON, EARL | BEVAN & ASSOCIATES |
| 64 | GARCIA, ALEX | BEVAN & ASSOCIATES |
| 65 | GILCHRIST, CHARLES | BEVAN & ASSOCIATES |
| 66 | GLUECK, JEROME | BEVAN & ASSOCIATES |
| 67 | HALL, EUGENE | BEVAN & ASSOCIATES |
| 68 | LINDSEY, NELLY | BEVAN & ASSOCIATES |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 69 | MARTINEZ, MAXIMIANO JR | BEVAN & ASSOCIATES |
| 70 | STEINKER, JEROME | BEVAN & ASSOCIATES |
| 71 | TRAUTT, BEVERLY A | BEVAN & ASSOCIATES |
| 72 | ZGANJAR, ROBERT | BEVAN & ASSOCIATES |
| 73 | BARTLEY, JOHN A | BIFFERATO GENTILOTTI |
| 74 | BROWN, L M | BIFFERATO GENTILOTTI |
| 75 | GRALICK, JOSEPH | BIFFERATO GENTILOTTI |
| 76 | MEDEIROS, ROBERT | BIFFERATO GENTILOTTI |
| 77 | PAVLICK, JOHN JR | BIFFERATO GENTILOTTI |
| 78 | PETREE, HAROLD | BIFFERATO GENTILOTTI |
| 79 | SIMONIS, FRANICS | BIFFERATO GENTILOTTI |
| 80 | OLSON, REGINALD | BOECHLER_ JEANETTE T |
| 81 | ROBERTSON, JAMES LEROY | BOECHLER_ JEANETTE T |
| 82 | BAUCOM, PATRICIA & EARL C | BRANCH LAW FIRM |
| 83 | BELLACK, PHYLLIS | BRAYTON PURCELL |
| 84 | BLACK, JUDITH D | BRAYTON PURCELL |
| 85 | BURNETT, KENNETH | BRAYTON PURCELL |
| 86 | COLLINS, LESTER | BRAYTON PURCELL |
| 87 | CRONIN, RAYMOND C | BRAYTON PURCELL |
| 88 | EWING, BAXTER RAY | BRAYTON PURCELL |
| 89 | FERNANDEZ, JOSEPH | BRAYTON PURCELL |
| 90 | FONG, SHERMAN | BRAYTON PURCELL |
| 91 | GOATES, MAX | BRAYTON PURCELL |
| 92 | LOUGHTON, JON | BRAYTON PURCELL |
| 93 | REECE, ARVIN | BRAYTON PURCELL |
| 94 | ST JEOR, ELDON C | BRAYTON PURCELL |
| 95 | THOMPSON, NORMAN LEE | BRAYTON PURCELL |
| 96 | WADE, RUBY | BRAYTON PURCELL |
| 97 | BAKER, FURMAN | BRENT COON & ASSOCIATES |
| 98 | BARTUS, FELIX FRANCIS | BRENT COON & ASSOCIATES |
| 99 | BEAVER, HAROLD ADOLPHUS | BRENT COON & ASSOCIATES |
| 100 | BERG, HAROLD E JR | BRENT COON & ASSOCIATES |
| 101 | BRYAN, DAVID | BRENT COON & ASSOCIATES |
| 102 | CHURCH, WILLIAM LEWIS | BRENT COON & ASSOCIATES |
| 103 | DAWSON, WILLIAM H | BRENT COON & ASSOCIATES |
| 104 | DAZZO, JOSEPH | BRENT COON & ASSOCIATES |
| 105 | DUNAGAN, DOUGLAS E | BRENT COON & ASSOCIATES |
| 106 | DYKE, JOSEPH HENRY | BRENT COON & ASSOCIATES |
| 107 | DYKE, JOSEPH HENRY | BRENT COON & ASSOCIATES |
| 108 | FREEMAN, HORACE TALMADGE | BRENT COON & ASSOCIATES |
| 109 | GALLAGHER, JOSEPH THOMAS | BRENT COON & ASSOCIATES |
| 110 | HART, VICTOR C | BRENT COON & ASSOCIATES |
| 111 | HENDERSON, MARCUS EUGENE | BRENT COON & ASSOCIATES |
| 112 | HILL, ROBERT STANTON JR & CHER | BRENT COON & ASSOCIATES |
| 113 | HILL, WILLIAM HOWARD | BRENT COON & ASSOCIATES |
| 114 | HINZ, ORVAL JOSEPH | BRENT COON & ASSOCIATES |
| 115 | HOULETTE, CHARLES WILLIAM JR | BRENT COON & ASSOCIATES |
| 116 | JOHNSON, HAROLD L | BRENT COON & ASSOCIATES |
| 117 | KEYS, KATHERINE B | BRENT COON & ASSOCIATES |
| 118 | KNYFE, ARTHUR & JEANETTE | BRENT COON & ASSOCIATES |
| 119 | MAGUIRE, JOSEPH NORMAN | BRENT COON & ASSOCIATES |
| 120 | MATTE, JOSEPH ZANNET | BRENT COON & ASSOCIATES |
| 121 | MILLER, HARRISON M | BRENT COON & ASSOCIATES |
| 122 | MORALES, SERGIO G | BRENT COON & ASSOCIATES |
| 123 | MUHAMMAD, YAHYA SALAAM | BRENT COON & ASSOCIATES |
| 124 | NAGY, ALEX | BRENT COON & ASSOCIATES |
| 125 | RAY, ELIZABETH | BRENT COON & ASSOCIATES |
| 126 | RICHARDS, HARVEY | BRENT COON & ASSOCIATES |
| 127 | ROBINSON, ELDEN VENARD | BRENT COON & ASSOCIATES |
| 128 | SAVOY, GEORGE JOSEPH JR | BRENT COON & ASSOCIATES |
| 129 | THEER, GEORGE PAUL | BRENT COON & ASSOCIATES |
| 130 | THOMPSON, ALLEN E L | BRENT COON & ASSOCIATES |
| 131 | VIDRIOS, EDWARD | BRENT COON & ASSOCIATES |
| 132 | WOOD, BILL LEWIS | BRENT COON & ASSOCIATES |
| 133 | BELL, LARRY | BROOKMAN ROSENBERG BROWN & SANDLER |
| 134 | CHARNOKI, JOSEPH J | BROOKMAN ROSENBERG BROWN & SANDLER |
| 135 | DIRETTO, RUTHANN | BROOKMAN ROSENBERG BROWN & SANDLER |
| 136 | FURLAN, LOUIS F | BROOKMAN ROSENBERG BROWN & SANDLER |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 137 | GEIST, WILLIAM | BROOKMAN ROSENBERG BROWN & SANDLER |
| 138 | HIGLEY, THOMAS E | BROOKMAN ROSENBERG BROWN & SANDLER |
| 139 | JANNIE, WILLIAM | BROOKMAN ROSENBERG BROWN & SANDLER |
| 140 | KING, JAMES | BROOKMAN ROSENBERG BROWN & SANDLER |
| 141 | KOEK, HENDRIK | BROOKMAN ROSENBERG BROWN & SANDLER |
| 142 | MCADOO, CHARLES | BROOKMAN ROSENBERG BROWN & SANDLER |
| 143 | MONTE, JOSEPH & ELEANOR | BROOKMAN ROSENBERG BROWN & SANDLER |
| 144 | MORRISEY, JOAN | BROOKMAN ROSENBERG BROWN & SANDLER |
| 145 | OTT, LAWRENCE PATRICK | BROOKMAN ROSENBERG BROWN & SANDLER |
| 146 | PHILLIPS, JOSEPH | BROOKMAN ROSENBERG BROWN & SANDLER |
| 147 | QUAY, DONALD | BROOKMAN ROSENBERG BROWN & SANDLER |
| 148 | SWEENEY, JOSEPH | BROOKMAN ROSENBERG BROWN & SANDLER |
| 149 | TYLER, JOHN M | BROWN & GOULD |
| 150 | STREBLER, GERALD | BUCKINGHAM DOOLITTLE & BURROUGHS |
| 151 | BUSSEY, WILLIAM W | BUTLER WOOTEN OVERBY PEARSON FRYHOFER & DAUGHTERY |
| 152 | PETERS, HENRY R | CAREY DANIS & LOWE |
| 153 | DODSON, JAMES A | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 154 | HAMMERS, NORBERT | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 155 | LATINI, RICHARD L | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 156 | LEITERA, ANTHONY | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 157 | NOLL, ALLEN F | CAROSELLI BEACHLER MCTIERNAN & CONBOY |
| 158 | COYNE, THOMAS I | CASCINO VAUGHAN |
| 159 | LORITZ, JOHN | CASCINO VAUGHAN |
| 160 | PEHLKE, FRANK | CASCINO VAUGHAN |
| 161 | PENDER, JOHN D | CASCINO VAUGHAN |
| 162 | PRATT, FREDRICK N | CASEY GERRY REED & SCHENK |
| 163 | DALEY, RICHARD | CICONTE & WASSERMAN LLC |
| 164 | FRIEND, DICK | CLAPPER PATTI SCHWEIZER & MASON |
| 165 | MERINO, ALPHONSO LEO | CLAPPER PATTI SCHWEIZER & MASON |
| 166 | MORTENSON, RAMONA | CLAPPER PATTI SCHWEIZER & MASON |
| 167 | SCHECHINGER, DENNIS HENRY | CLAPPER PATTI SCHWEIZER & MASON |
| 168 | SNELL, RORY | CLAPPER PATTI SCHWEIZER & MASON |
| 169 | VANDEMARK, LOWELL | COADY LAW FIRM |
| 170 | GLOCK, CHARELS F | COHEN PLACITELLA & ROTH |
| 171 | HOEY, JAMES | COHEN PLACITELLA & ROTH |
| 172 | LEWIS, THOMAS | COHEN PLACITELLA & ROTH |
| 173 | LOSITO, ANTHONY | COHEN PLACITELLA & ROTH |
| 174 | SAVARESE, KAREN | COHEN PLACITELLA & ROTH |
| 175 | TULLIO, ANNE | COHEN PLACITELLA & ROTH |
| 176 | MURPHY, DONALD | COOKE & MARCIS LLP |
| 177 | ANDERSON, WARREN | COONEY & CONWAY |
| 178 | BERRY, JOHN | COONEY & CONWAY |
| 179 | BERRY, MICHAEL | COONEY & CONWAY |
| 180 | BOGGS, DONALD | COONEY & CONWAY |
| 181 | CHRISTIANSON, RICHARD | COONEY & CONWAY |
| 182 | CORNELL, LAWRENCE G | COONEY & CONWAY |
| 183 | GEREG, DIANE | COONEY & CONWAY |
| 184 | GRAHAM, SMEDLEY | COONEY & CONWAY |
| 185 | GROH, ROBERT EST OF | COONEY & CONWAY |
| 186 | HEJZA, ROGER | COONEY & CONWAY |
| 187 | HILLYER, CHARLES | COONEY & CONWAY |
| 188 | HUTCHINSON, JOE LOUIS | COONEY & CONWAY |
| 189 | JURGETO, RONALD | COONEY & CONWAY |
| 190 | KINDT, HAROLD | COONEY & CONWAY |
| 191 | KLING, BLAIR | COONEY & CONWAY |
| 192 | LENNOX, GERALD | COONEY & CONWAY |
| 193 | LEVIEUX, GREGORY | COONEY & CONWAY |
| 194 | LUDGATIS, RICHARD | COONEY & CONWAY |
| 195 | LUNDBORG, LEONARD | COONEY & CONWAY |
| 196 | MCCLUSKIE, ROBERT | COONEY & CONWAY |
| 197 | MISER, WILLIAM | COONEY & CONWAY |
| 198 | MURPHY, JOHN | COONEY & CONWAY |
| 199 | PALMA, JOHN C | COONEY & CONWAY |
| 200 | RAGLAND, PAUL | COONEY & CONWAY |
| 201 | RAMEY, CLOVIS | COONEY & CONWAY |
| 202 | ROBINSON, RANDY J | COONEY & CONWAY |
| 203 | ROSAS, MIGUEL | COONEY & CONWAY |
| 204 | SANK, HOWARD | COONEY & CONWAY |

# SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 205 | STEWART, ROBERT R | COONEY & CONWAY |
| 206 | TUZZOLINO, JOSEPH SR | COONEY & CONWAY |
| 207 | VAN SLYKE, GEORGE | COONEY & CONWAY |
| 208 | WALKER, RALPH | COONEY & CONWAY |
| 209 | WILLIAMS, DONALD R | COONEY & CONWAY |
| 210 | WIRTH, JOHN | COONEY & CONWAY |
| 211 | MILLER, WAYNE | CORY WATSON CROWDER & DEGARIS |
| 212 | SHEPHERD, DAYTON | CORY WATSON CROWDER & DEGARIS |
| 213 | WALKER, JACK R SR | CUMBEST CUMBEST HUNTER & MCCORMICK |
| 214 | DUPRIEST, RONALD | DELUCA & NEMEROFF LLP |
| 215 | SNYDER, ALAN | DELUCA & NEMEROFF LLP |
| 216 | CALAMIA, CARL J SR | DIDRIKSEN LAW FIRM |
| 217 | ROGERS, JIMMIE SR | DILLON, JOHN F |
| 218 | BATCH, GARY | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 219 | BELL, PETER | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 220 | BERK, WALTER | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 221 | BROOKSHIER, CLYDE | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 222 | BUTZKY, LEON | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 223 | CLAY, TROY | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 224 | COHORST, LEONARD A | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 225 | COUSINO, GLEN | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 226 | DOMBROWSKI, JENNIE | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 227 | FRANCOEUR, ARMAND | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 228 | GERLEY, VICTOR SR | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 229 | GOETZ, EUGENE F | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 230 | GROSS, ALBERT | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 231 | HOWARD, WILLIAM | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 232 | KANICKI, KATHLEEN M | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 233 | KEARNEY, JAMES | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 234 | KEPLAR, ROBERT | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 235 | LEHOTAY, JOSEPH | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 236 | MELOCK, KAREN | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 237 | MILLER, WILLIAM CHARLES | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 238 | NASTRI, ANTHONY | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 239 | PERKINS, EPPS CORNELL SR | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 240 | PEZANKO, RITA | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 241 | PIZZOLA, DOMINICK J | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 242 | RIEMANN, DUANE | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 243 | ROBERTS, MICHAEL | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 244 | ROCHLIN, ABRAHAM | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 245 | SCHELP, HENRY | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 246 | WARD, JANICE | EARLY LUCARELLI SWEENEY & MEISENKOTHEN |
| 247 | CRAWFORD, DONALD LLOYD | EDWARD O MOODY |
| 248 | HATLEY, JIM | EDWARD O MOODY |
| 249 | REED, CARLA | EDWARD O MOODY |
| 250 | BAILEY, LORING | EMBRY & NEUSNER |
| 251 | ZEMA, JOHN | EMBRY & NEUSNER |
| 252 | ABBOTT, ROBERT C SR | FLEMING & ASSOCIATES |
| 253 | CORDOVA, GEORGE | FLEMING & ASSOCIATES |
| 254 | DREMEL, DONALD W | FLEMING & ASSOCIATES |
| 255 | FILARECKI, WILLIAM | FLEMING & ASSOCIATES |
| 256 | HULSE, STEVEN P | FLEMING & ASSOCIATES |
| 257 | JORDAN, GERALD | FLEMING & ASSOCIATES |
| 258 | KIRKS, WILBERT | FLEMING & ASSOCIATES |
| 259 | MCKEITHAN, SARAH MARGARET | FLEMING & ASSOCIATES |
| 260 | MOORE, SHERRIE | FLEMING & ASSOCIATES |
| 261 | POJAR, CLIFFORD | FLEMING & ASSOCIATES |
| 262 | PURSLEY, GEORGE O | FLEMING & ASSOCIATES |
| 263 | SHIBLES, JEROME | FLEMING & ASSOCIATES |
| 264 | THUNE, GERALD | FLEMING & ASSOCIATES |
| 265 | WOOD, PAUL L | FLEMING & ASSOCIATES |
| 266 | RAMSEY, MACK LEON & JOHNNIE P | FRILOT L.L.C. |
| 267 | MILES, DON HERSHEL | G PATTERSON KEAHEY |
| 268 | SMITH, ROBERT L | G PATTERSON KEAHEY |
| 269 | STANDEN, MARY | G PATTERSON KEAHEY |
| 270 | CRAIG, JOHN C JR | GALIHER DEROBERTIS & ONO |
| 271 | RIO, BARNEY | GALIHER DEROBERTIS & ONO |
| 272 | SAKAMOTO, ERNEST | GALIHER DEROBERTIS & ONO |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 273 | BURGET, DEAN M | GEORGE & SIPES |
| 274 | HAYNES, TERRY FRANKLIN | GEORGE & SIPES |
| 275 | KERN, DONALD R | GEORGE & SIPES |
| 276 | BAILEY, VERNON G JR | GLASSER & GLASSER |
| 277 | HARMAN, WILLIAM W | GLASSER & GLASSER |
| 278 | JOHNSON, WALTER H | GLASSER & GLASSER |
| 279 | LYONS, PATRICK J | GLASSER & GLASSER |
| 280 | MORRIS, O D | GLASSER & GLASSER |
| 281 | SCHOLES, CALLIE SUE | GLASSER & GLASSER |
| 282 | SHARP, KENNETH JOHN | GLASSER & GLASSER |
| 283 | ANDES, PATRICIA A | GOLDBERG PERSKY & WHITE |
| 284 | ATHANAS, NIKOLAOS J | GOLDBERG PERSKY & WHITE |
| 285 | BARKER, JOHN E JR | GOLDBERG PERSKY & WHITE |
| 286 | BURDITT, BYRON W | GOLDBERG PERSKY & WHITE |
| 287 | CERSOSIMO, RUSSELL VINCENT & J | GOLDBERG PERSKY & WHITE |
| 288 | CHERRY, NICHOLAS J | GOLDBERG PERSKY & WHITE |
| 289 | DIEHL, JOHN | GOLDBERG PERSKY & WHITE |
| 290 | FITING, ROGER P | GOLDBERG PERSKY & WHITE |
| 291 | GALARDE, EDITH M | GOLDBERG PERSKY & WHITE |
| 292 | HALA, JOHN J | GOLDBERG PERSKY & WHITE |
| 293 | HEARD, JOHN | GOLDBERG PERSKY & WHITE |
| 294 | HOFELZER, RALPH | GOLDBERG PERSKY & WHITE |
| 295 | KING, JOHN R | GOLDBERG PERSKY & WHITE |
| 296 | LINDSAY, VICTOR WILLIAM | GOLDBERG PERSKY & WHITE |
| 297 | MILLER, FRANKLIN | GOLDBERG PERSKY & WHITE |
| 298 | NAGY, GEORGE A | GOLDBERG PERSKY & WHITE |
| 299 | NAYLOR, DONALD E | GOLDBERG PERSKY & WHITE |
| 300 | PULLEN, RICHARD H | GOLDBERG PERSKY & WHITE |
| 301 | PUTT, GENE | GOLDBERG PERSKY & WHITE |
| 302 | RAY, JOSEPH P | GOLDBERG PERSKY & WHITE |
| 303 | SEIGFRIED, WILLIAM | GOLDBERG PERSKY & WHITE |
| 304 | SHAW, PHILLIP E | GOLDBERG PERSKY & WHITE |
| 305 | SMERECHENSKY, STEPHEN | GOLDBERG PERSKY & WHITE |
| 306 | STEFANOS, FRANK | GOLDBERG PERSKY & WHITE |
| 307 | SULLIVAN, WILLIAM L | GOLDBERG PERSKY & WHITE |
| 308 | WALL, LEONARD | GOLDBERG PERSKY & WHITE |
| 309 | WIGAL, JOHN A SR | GOLDBERG PERSKY & WHITE |
| 310 | ZENGEL, JOSEPH EARL | GOLDBERG PERSKY & WHITE |
| 311 | CANNON, JOHN | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 312 | CHANEY, ROBERT M | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 313 | CLOUD, DONNA MARIE | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 314 | COMBS, GLENNA | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 315 | FULLMER, JACOB L | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 316 | HENLEY, PATSYE R | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 317 | JAASKELA, WAINO | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 318 | LAW, ROBERT M | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 319 | LINDEN, SANDRA | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 320 | MC CARTHY, MARGARET | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 321 | NISI, LOIS JEAN | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 322 | ORTA, PEDRO | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 323 | PERKINS, BLANNIE | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 324 | SMITH, PAUL W | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 325 | SODA, CARL | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 326 | THORNBURG, HAROLD D | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 327 | WILSON, PAUL K | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 328 | YEOMANS, WILLIAM E | GOLDENBERG HELLER ANTOGNOLI & ROWLAND |
| 329 | GONZALES, BERINGO | GOODMAN MEAGHER & ENOCH |
| 330 | O'CONNOR, WILLIAM | GOODMAN MEAGHER & ENOCH |
| 331 | ARENT, DOUGLAS | GORI JULIAN & ASSOCIATES |
| 332 | BAXTER, WILLIAM | GORI JULIAN & ASSOCIATES |
| 333 | BENJAMIN, LARRY | GORI JULIAN & ASSOCIATES |
| 334 | BENNETT, MICHAEL | GORI JULIAN & ASSOCIATES |
| 335 | CANTRELL, WILLARD | GORI JULIAN & ASSOCIATES |
| 336 | CARDENAS, RAYSA | GORI JULIAN & ASSOCIATES |
| 337 | CARTER, PAULINE | GORI JULIAN & ASSOCIATES |
| 338 | CONNOR, MARGARET R | GORI JULIAN & ASSOCIATES |
| 339 | CREEL, EDWARD H JR | GORI JULIAN & ASSOCIATES |
| 340 | DAHLEM, JAMES A | GORI JULIAN & ASSOCIATES |

# SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 341 | DAVIDSON, SELMA DELOISE | GORI JULIAN & ASSOCIATES |
| 342 | DAVIS, LESTER | GORI JULIAN & ASSOCIATES |
| 343 | DELSART, GORDON | GORI JULIAN & ASSOCIATES |
| 344 | DORATO, EDWARDO J | GORI JULIAN & ASSOCIATES |
| 345 | DRAKE, NANCY ANN | GORI JULIAN & ASSOCIATES |
| 346 | FABINI, ALESA | GORI JULIAN & ASSOCIATES |
| 347 | FUNDERBURK, ROBERT | GORI JULIAN & ASSOCIATES |
| 348 | GATTO, LOUIS PAUL | GORI JULIAN & ASSOCIATES |
| 349 | GLASS, WILLIAM G | GORI JULIAN & ASSOCIATES |
| 350 | GRAVES, GLORIA | GORI JULIAN & ASSOCIATES |
| 351 | GRISANTI, RODNEY J | GORI JULIAN & ASSOCIATES |
| 352 | HUBBARD, VERLIE | GORI JULIAN & ASSOCIATES |
| 353 | HUFF, J L | GORI JULIAN & ASSOCIATES |
| 354 | INGHAM, DAN LEE | GORI JULIAN & ASSOCIATES |
| 355 | JOHNSON, RUSSELL D | GORI JULIAN & ASSOCIATES |
| 356 | KIRN, SOPHIA | GORI JULIAN & ASSOCIATES |
| 357 | KORNMAN, ROBIN | GORI JULIAN & ASSOCIATES |
| 358 | LANDIS, DENNIS | GORI JULIAN & ASSOCIATES |
| 359 | LAZOWSKI, PATRICIA | GORI JULIAN & ASSOCIATES |
| 360 | LEVERETT, KENNETH | GORI JULIAN & ASSOCIATES |
| 361 | MASON, JOSEPH R SR | GORI JULIAN & ASSOCIATES |
| 362 | MCGUIRE, ROGER | GORI JULIAN & ASSOCIATES |
| 363 | MCQUAIG, WILLIAM G | GORI JULIAN & ASSOCIATES |
| 364 | MENDEZ, JUAN A | GORI JULIAN & ASSOCIATES |
| 365 | MONTESANO, RONNEY | GORI JULIAN & ASSOCIATES |
| 366 | MULLIGAN, SIMONE | GORI JULIAN & ASSOCIATES |
| 367 | NEVES, JOHN | GORI JULIAN & ASSOCIATES |
| 368 | OSMULSKI, ROBERT | GORI JULIAN & ASSOCIATES |
| 369 | OSTROWSKI, ALICE | GORI JULIAN & ASSOCIATES |
| 370 | PARKDS, KIMBERLY | GORI JULIAN & ASSOCIATES |
| 371 | PATRICK, LARRY | GORI JULIAN & ASSOCIATES |
| 372 | POWELL, WILLIAM | GORI JULIAN & ASSOCIATES |
| 373 | RITZ, KRISTY M | GORI JULIAN & ASSOCIATES |
| 374 | SCHLOSSER, ARLAN | GORI JULIAN & ASSOCIATES |
| 375 | SCHULTZ, DONALD | GORI JULIAN & ASSOCIATES |
| 376 | STOCKTON, KENNETH | GORI JULIAN & ASSOCIATES |
| 377 | VINES, MARY | GORI JULIAN & ASSOCIATES |
| 378 | WEBER, JAKOB A | GORI JULIAN & ASSOCIATES |
| 379 | WELDON, CHARLES W JR | GORI JULIAN & ASSOCIATES |
| 380 | WILCOX, JOHN J JR | GORI JULIAN & ASSOCIATES |
| 381 | ZANKL, AUDREY M | GORI JULIAN & ASSOCIATES |
| 382 | ZELLNER, RAYMOND | GORI JULIAN & ASSOCIATES |
| 383 | SANTMIER, HARVEY J & EVA | HAMBURG RUBIN MULLLIN MAXWELL & LUPIN |
| 384 | LOPEZ, THOMAS | HAROWITZ & TIGERMAN LLP |
| 385 | REYNOLDS, EVEA MERLE | HAROWITZ & TIGERMAN LLP |
| 386 | SCHAB, GEORGE | HAROWITZ & TIGERMAN LLP |
| 387 | TROMPETER, KEVIN | HAROWITZ & TIGERMAN LLP |
| 388 | RUSSOW, DONALD C | HARTLEY & O'BRIEN |
| 389 | WILLIAMS, JIMMIE | HARTLEY LAW LLC |
| 390 | ALDERMAN, THEODORE R JR | HARVIT & SCHWARTZ |
| 391 | HOLTER, DAVID | HARVIT & SCHWARTZ |
| 392 | POST, LYNN NORMAN | HARVIT & SCHWARTZ |
| 393 | RODRIGUEZ, PEDRO R | HEARD ROBINS CLOUD LUBEL & GREENWOOD |
| 394 | SANDERS, LEELAND | HEARD ROBINS CLOUD LUBEL & GREENWOOD |
| 395 | BONNEVAL, ALBERT | HENINGER GARRISON DAVIS |
| 396 | BACON, FRED W | HISSEY KIENTZ & HERRON PLLC |
| 397 | BURGESS, CHARLIE | HOBSON & BRADLEY |
| 398 | KELLER, KERRY | HOBSON & BRADLEY |
| 399 | PRICE, PHILLIP | HOBSON & BRADLEY |
| 400 | OBRIEN, LARRY | HORWITZ HORWITZ & ASSOCIATES LTD. |
| 401 | WHITMAN, CARL A | HOWARD BRENNER & NASS |
| 402 | CALFO, AUGUSTINE | JACOBS & CRUMPLAR |
| 403 | FIORAVANTI, JULIO SR | JACOBS & CRUMPLAR |
| 404 | HELSEL, ROBERT CHARLES SR | JACOBS & CRUMPLAR |
| 405 | HUBBARD, CHARLES PORTER | JAMES F HUMPHREYS & ASSOCIATES |
| 406 | KIGER, GERALD MCCLELLAN | JAMES F HUMPHREYS & ASSOCIATES |
| 407 | WALKER, CURTIS T | JAMES F HUMPHREYS & ASSOCIATES |
| 408 | SHETLER, ROLAND & ROSE | JAMES PAUL COSTELLO LTD |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 409 | GEORGE, CHARLES | JOHN D KASSEL_ ATTORNEY AT LAW LLC |
| 410 | BARKER, TIMOTHY P | KAZAN MCCLAIN LYONS GREENWOOD & HARLEY |
| 411 | MILLER, RALPH | KELLER FISHBACK & JACKSON LLP |
| 412 | BLARE, BRADLEY | KELLEY & FERRARO |
| 413 | BORNS, MARY LOU | KELLEY & FERRARO |
| 414 | DEOMA, MARY D | KELLEY & FERRARO |
| 415 | ECKARDT, KURT B | KELLEY & FERRARO |
| 416 | HANNA, ROGER D | KELLEY & FERRARO |
| 417 | SCOTT, JAMES | KELLEY & FERRARO |
| 418 | STARK, LOUIS E SR | KELLEY & FERRARO |
| 419 | WALCHER, ROSEANNA | KELLEY & FERRARO |
| 420 | NOKYOS, JEFFREY | KIESEL BOUCHER & LARSON LLP |
| 421 | REEVES, ROBERT L | KIRKSEY & ASSOCIATES |
| 422 | MOCK, LOREN EDWARD | KOREIN TILLERY |
| 423 | PASQUALE, AMERICO | KOREIN TILLERY |
| 424 | TROSS, OWEN | LAKIN & HERNDON |
| 425 | PATROLIA, HENRY | LANDRY & SWARR |
| 426 | HELLER, AUREL N | LAW OFFICE OF NICHOLAS J. VOGELZANG |
| 427 | PAULAUSKY, GEORGE | LAW OFFICE OF NICHOLAS J. VOGELZANG |
| 428 | SCANLON, MYRA | LAW OFFICES OF GLENN D FEAGAN |
| 429 | SCAGGS, GUY STEPHEN | LAW OFFICES OF MICHAEL B SERLING P.C. |
| 430 | JOPPA, DOLORES J | LAW OFFICES OF MICHAEL R BILBREY P.C. |
| 431 | LILEY, CLYDE | LAW OFFICES OF MICHAEL R BILBREY P.C. |
| 432 | LITTLE, CHARLIE E | LAW OFFICES OF MICHAEL R BILBREY P.C. |
| 433 | SCHOENFELD, RONALD JR | LAW OFFICES OF MICHAEL R BILBREY P.C. |
| 434 | SIMMONS, MYRON KAY | LAW OFFICES OF MICHAEL R BILBREY P.C. |
| 435 | BURNS, ROBERT | LAW OFFICES OF PETER G ANGELOS |
| 436 | GRAVES, ALFRED | LAW OFFICES OF PETER G ANGELOS |
| 437 | HAMILTON, ELIZABETH F | LAW OFFICES OF PETER G ANGELOS |
| 438 | HAMILTON, JAMES C | LAW OFFICES OF PETER G ANGELOS |
| 439 | LIMERICK, ENEVER EUGENE | LAW OFFICES OF PETER G ANGELOS |
| 440 | LIRAKIS, STEVE | LAW OFFICES OF PETER G ANGELOS |
| 441 | MANNING, THOMAS J | LAW OFFICES OF PETER G ANGELOS |
| 442 | MATETICH, WILLIAM | LAW OFFICES OF PETER G ANGELOS |
| 443 | MATSAGO, JAMES M | LAW OFFICES OF PETER G ANGELOS |
| 444 | MCKEMY, BERNICE | LAW OFFICES OF PETER G ANGELOS |
| 445 | NAY, JAMES M. | LAW OFFICES OF PETER G ANGELOS |
| 446 | NORDAAS, BETTY | LAW OFFICES OF PETER G ANGELOS |
| 447 | NOVAK, THEODORE | LAW OFFICES OF PETER G ANGELOS |
| 448 | PANETTIERE, ANTHONY SR | LAW OFFICES OF PETER G ANGELOS |
| 449 | ROWE, THOMAS R | LAW OFFICES OF PETER G ANGELOS |
| 450 | SCHOBER, LINDA C | LAW OFFICES OF PETER G ANGELOS |
| 451 | WATERS, WALTER D | LAW OFFICES OF PETER G ANGELOS |
| 452 | WELSHANS, PAUL LOUIS | LAW OFFICES OF PETER G ANGELOS |
| 453 | WESCOAT, PAUL | LAW OFFICES OF PETER G ANGELOS |
| 454 | WHEELER, THEODORE E | LAW OFFICES OF PETER G ANGELOS |
| 455 | BREAUX, CLAIBORNE | LEBLANC & WADDELL - C/O BARON & BUDD, P.C. |
| 456 | ULIBARRI, THOMAS J | LEVIN PAPANTONIO |
| 457 | WEBB, GEORGE FRANK | LEVIN PAPANTONIO |
| 458 | BALLERT, MILDRED | LEVIN SIMES KAISER & GORNICK |
| 459 | BROWN, HAROLD | LEVIN SIMES KAISER & GORNICK |
| 460 | CALANDE, WILLIAM | LEVIN SIMES KAISER & GORNICK |
| 461 | ENGLISH, MICHAEL | LEVIN SIMES KAISER & GORNICK |
| 462 | GARDETTO, JOHN | LEVIN SIMES KAISER & GORNICK |
| 463 | HATLAN, VASILY | LEVIN SIMES KAISER & GORNICK |
| 464 | INCE, ALICE FAYE | LEVIN SIMES KAISER & GORNICK |
| 465 | KIM, YOUNG HONG | LEVIN SIMES KAISER & GORNICK |
| 466 | KLEVE, HAROLD | LEVIN SIMES KAISER & GORNICK |
| 467 | LENT, FRANK | LEVIN SIMES KAISER & GORNICK |
| 468 | MONTGOMERY, ROBERT | LEVIN SIMES KAISER & GORNICK |
| 469 | QUINTINO, LEOPOLD | LEVIN SIMES KAISER & GORNICK |
| 470 | RADEBAUGH, JACQUELINE | LEVIN SIMES KAISER & GORNICK |
| 471 | SAMORA, LOYD | LEVIN SIMES KAISER & GORNICK |
| 472 | SASSOUNIAN, HAROUTIOUN | LEVIN SIMES KAISER & GORNICK |
| 473 | SMITH, JAMES LOUIS JR | LEVIN SIMES KAISER & GORNICK |
| 474 | STAYTON, EDWARD | LEVIN SIMES KAISER & GORNICK |
| 475 | VALDEZ, EMILIO | LEVIN SIMES KAISER & GORNICK |
| 476 | CORK, JEAN | LEVY PHILLIPS & KONIGSBERG |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 477 | CORTHELL, OTIS | LEVY PHILLIPS & KONIGSBERG |
| 478 | ELLIS, GRACE ANN DARNELL | LEVY PHILLIPS & KONIGSBERG |
| 479 | FREY, GENE SR | LEVY PHILLIPS & KONIGSBERG |
| 480 | GREENE, DONALD | LEVY PHILLIPS & KONIGSBERG |
| 481 | HARLEY, CLAUDE DAVID | LEVY PHILLIPS & KONIGSBERG |
| 482 | HART, ROBERT D | LEVY PHILLIPS & KONIGSBERG |
| 483 | JOCKERS, DONALD F | LEVY PHILLIPS & KONIGSBERG |
| 484 | JOHNSON, WILLIAM J | LEVY PHILLIPS & KONIGSBERG |
| 485 | JONES, LARRY DALE | LEVY PHILLIPS & KONIGSBERG |
| 486 | KELLY, DAVID LINUS | LEVY PHILLIPS & KONIGSBERG |
| 487 | LANE, HARVEY REGINALD JR | LEVY PHILLIPS & KONIGSBERG |
| 488 | LELL, ROBERT J | LEVY PHILLIPS & KONIGSBERG |
| 489 | LOBAITO, BENNIE | LEVY PHILLIPS & KONIGSBERG |
| 490 | MELLACE, JOSEPHINE | LEVY PHILLIPS & KONIGSBERG |
| 491 | MOLLOY, EVELYN C | LEVY PHILLIPS & KONIGSBERG |
| 492 | NAPOTNIK, JACOB | LEVY PHILLIPS & KONIGSBERG |
| 493 | RICKERT, FREDERICK | LEVY PHILLIPS & KONIGSBERG |
| 494 | ROCKMAKER, GORDON | LEVY PHILLIPS & KONIGSBERG |
| 495 | WEBSTER, BILLIE FRANK | LEVY PHILLIPS & KONIGSBERG |
| 496 | LUDWIG, HARRY C | LEWIS DAVIDSON & HETHERINGTON |
| 497 | CUBITT, ERIC R | LIPSITZ & PONTERIO |
| 498 | GOLDPENNY, ELMER F | LIPSITZ & PONTERIO |
| 499 | GROETSCH, KENNETH G | LIPSITZ & PONTERIO |
| 500 | PRINZI, CARL J | LIPSITZ & PONTERIO |
| 501 | SMITH, LAWRENCE M | LIPSITZ & PONTERIO |
| 502 | HEIZER, JAMES | LIPTON LAW LLC |
| 503 | BAPTISTE, FRANCIS | LOCKS LAW FIRM |
| 504 | CLARK, JOHN J JR | LOCKS LAW FIRM |
| 505 | CONLON, ROBERT W | LOCKS LAW FIRM |
| 506 | MAFFEI, ALBERT M SR | LOCKS LAW FIRM |
| 507 | STITT, WILMER C JR | LOCKS LAW FIRM |
| 508 | BORDELON, BURTON | LUNDY LUNDY SOILEAU & SOUTH LLP |
| 509 | HANSEN, MICHAEL | LYONS & RANTA |
| 510 | MCGLOTHLIN, MECOM | MADEKSHO LAW FIRM |
| 511 | ROSS, SCOTT | MADEKSHO LAW FIRM |
| 512 | BURCHFIELD, VIRGINIA GRACE | MARTIN & JONES |
| 513 | FOWLER, DAVID RAY | MARTIN & JONES |
| 514 | GOINS, PARILEE ANN | MARTIN & JONES |
| 515 | MORGAN, ELMER LEE | MARTIN & JONES |
| 516 | SALEEBY, MITCHELL NAMAN JR (DE | MARTIN & JONES |
| 517 | WALLACE, ALBERT ROY | MARTIN & JONES |
| 518 | WATLINGTON, HENRY CECIL | MARTIN & JONES |
| 519 | WOODALL, JOHN JAMES | MARTIN & JONES |
| 520 | ROYAL, DONALD SR | MARTZELL & BICKFORD |
| 521 | HULTGREN, ROY C | MAUNE RAICHLE HARTLEY FRENCH & MUDD |
| 522 | MILLER, JOHN C | MAUNE RAICHLE HARTLEY FRENCH & MUDD |
| 523 | COVIN, COY H | MAZUR & KITTEL |
| 524 | GEPFERT, BONNIE | MAZUR & KITTEL |
| 525 | HYDUKE, ANDREW T | MAZUR & KITTEL |
| 526 | JONES, ALVARETTA MAE | MAZUR & KITTEL |
| 527 | LABAERE, HENRY RICHARD | MAZUR & KITTEL |
| 528 | MILLER, EMMA J | MAZUR & KITTEL |
| 529 | MILLS, WAYNE E | MAZUR & KITTEL |
| 530 | SELF, LOIS JEAN | MAZUR & KITTEL |
| 531 | SMETANKA, CATHERINE | MAZUR & KITTEL |
| 532 | TILOCCO, JEANNETTE MARIE | MAZUR & KITTEL |
| 533 | VENDITTI, ANTHONY | MAZUR & KITTEL |
| 534 | WHITE, VIRGIL E | MAZUR & KITTEL |
| 535 | BRADLEY, JACK BYRL | MCDERMOTT & CLAWSON |
| 536 | VANAKION, LEONARD FRANK | MICHAEL B SERLING |
| 537 | CHANDLER, ALDEN H | MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL |
| 538 | LINK, RUBY H | MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL |
| 539 | MARCUS, HENRY F JR | MICHIE HAMLETT LOWRY RASMUSSEN & TWEEL |
| 540 | ADAMS, BRUCE | MOTLEY RICE |
| 541 | BLOMBERG, KENNETH | MOTLEY RICE |
| 542 | COLLINS, BETTY J | MOTLEY RICE |
| 543 | DEPRIEST, DONALD | MOTLEY RICE |
| 544 | GREENWOOD, JESSE CLIFFORD | MOTLEY RICE |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 545 | HOGARTH, JOHN EDWARD | MOTLEY RICE |
| 546 | JOHNSON, JONI L | MOTLEY RICE |
| 547 | JOHNSON, KENNETH | MOTLEY RICE |
| 548 | KAUTZ, DALE M | MOTLEY RICE |
| 549 | LUND, MAURICE | MOTLEY RICE |
| 550 | NIELSEN, INGEMANN | MOTLEY RICE |
| 551 | OVERMAN, HARVEY L | MOTLEY RICE |
| 552 | PARNELL, THOMAS R | MOTLEY RICE |
| 553 | PRUDEN, ALLAN FRANK | MOTLEY RICE |
| 554 | REID, DONALD | MOTLEY RICE |
| 555 | RODGERS, HOMER | MOTLEY RICE |
| 556 | ROGERS, CLINTON M | MOTLEY RICE |
| 557 | SING, GEORGE | MOTLEY RICE |
| 558 | SONNENBERG, LEANDE | MOTLEY RICE |
| 559 | TROUP, GLENN | MOTLEY RICE |
| 560 | WILLIAMS, ROBERT LEO | MOTLEY RICE |
| 561 | YOUNG, WILLIAM | MOTLEY RICE |
| 562 | WILLIAMS, DAVID JR | MURRAY LAW FIRM |
| 563 | BYER, ROBERT M | NICHOLL, PETER T |
| 564 | WILLS, BARBARA A | NICHOLL, PETER T |
| 565 | ASHER, URA R | O'BRIEN LAW FIRM L.L.C |
| 566 | BANYCKY, HELEN | O'BRIEN LAW FIRM L.L.C |
| 567 | BROUGHTON, JAMES | O'BRIEN LAW FIRM L.L.C |
| 568 | CHILDRESS, CHARLES J | O'BRIEN LAW FIRM L.L.C |
| 569 | CUNNINGHAM, PATRICIA | O'BRIEN LAW FIRM L.L.C |
| 570 | DINNEEN, JAMES F | O'BRIEN LAW FIRM L.L.C |
| 571 | FUWELL, BUFORD R | O'BRIEN LAW FIRM L.L.C |
| 572 | GREER, CHARLES W | O'BRIEN LAW FIRM L.L.C |
| 573 | MEYER, WILLIAM | O'BRIEN LAW FIRM L.L.C |
| 574 | NELSON, VICTOR F | O'BRIEN LAW FIRM L.L.C |
| 575 | PINE, GEORGE I | O'BRIEN LAW FIRM L.L.C |
| 576 | REISENLEITER, PHILIP A | O'BRIEN LAW FIRM L.L.C |
| 577 | RILEY, JUANITA | O'BRIEN LAW FIRM L.L.C |
| 578 | TRAPP, LESLIE W | O'BRIEN LAW FIRM L.L.C |
| 579 | WHITTEN, TERRY C | O'BRIEN LAW FIRM L.L.C |
| 580 | WINTERMANN, MAURICE | O'BRIEN LAW FIRM L.L.C |
| 581 | WOODS, DENNIS L | O'BRIEN LAW FIRM L.L.C |
| 582 | BURRIS, WILLIAM O | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 583 | CROCKER, JAMES BERNARD | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 584 | FLETCHER, ROBERT W | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 585 | HOGGE, JOHN IVERSONN JR | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 586 | LANDS, BOBBY L | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 587 | LANKES, JOHN M | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 588 | MASON, LAWRENCE R | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 589 | MINTON, RUBERT E | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 590 | POSEY, THOMAS E SR | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 591 | SHELTON-SAVAGE, FLORENCE | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 592 | TURNER, GENE M SR | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 593 | WALKER, ROBERT L | PATTEN WORNOM HATTEN & DIAMONSTEIN |
| 594 | BARNETT, WAYNE | PAUL & HANLEY |
| 595 | BJERKE, STANLEY | PAUL & HANLEY |
| 596 | CLARK, GEORGE S | PAUL & HANLEY |
| 597 | MITCHELL, DANIEL L | PAUL & HANLEY |
| 598 | NIELSEN, JOHN C | PAUL & HANLEY |
| 599 | SMITH, THAD CARROLL | PAUL & HANLEY |
| 600 | TIPTON, RONALD K | PAUL & HANLEY |
| 601 | CAROTHERS, LARRY EXT FIGART,AN | PAUL REICH & MYERS |
| 602 | STOOR, JOHN D | PETERSEN PARKINSON & ARNOLD PLLC |
| 603 | HALL, JAMES ERNEST | PRIM LAW FIRM PLLC |
| 604 | HOWELL, STACEY RENEE | PRIM LAW FIRM PLLC |
| 605 | LIVELY, BOYD C | PRIM LAW FIRM PLLC |
| 606 | MCALLISTER, NANCY JANE | PRIM LAW FIRM PLLC |
| 607 | BERG, FRED HERMAN JR | PROVOST UMPHREY LAW FIRM |
| 608 | BOMBEK, FRANK CHARLES | PROVOST UMPHREY LAW FIRM |
| 609 | BRISTER, GEORGE E | PROVOST UMPHREY LAW FIRM |
| 610 | DUROUSSEAU, MERLIN | PROVOST UMPHREY LAW FIRM |
| 611 | GROS, ANDREW ANTHONY | PROVOST UMPHREY LAW FIRM |
| 612 | PAGE, J C | PROVOST UMPHREY LAW FIRM |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 613 | SANDELLA, JAMES | PROVOST UMPHREY LAW FIRM |
| 614 | SMART, HAROLD L | PROVOST UMPHREY LAW FIRM |
| 615 | WAGNER, BOYD L | PROVOST UMPHREY LAW FIRM |
| 616 | LINDER, JOHNNIE MELVIN | REAUD MORGAN & QUINN |
| 617 | BELLOMY, JOHN | REYES O'SHEA & COLOCA |
| 618 | WEAVER, ALBERT L | REYES O'SHEA & COLOCA |
| 619 | BONDONI, JAMES MARTIN | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 620 | ESTES, GRADY O | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 621 | FRANCIS, ALEXANDER L JR | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 622 | HAMMOND, DEBORAH S | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 623 | JONES, MICHAEL A | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 624 | JORDAN, RAYMOND | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 625 | LOVE, WILLIAM F | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 626 | MOSIER, JOHN L | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 627 | SENICK, JOHN N | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 628 | SHERER, ROBERT C | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 629 | SIKES, IMOGENE | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 630 | SYDNOR, MARVIN E | RICHARDSON PATRICK WESTBROOK & BRICKMAN |
| 631 | BUNDE, LOUISE | ROBERT E SWEENEY COMPANY |
| 632 | ERKKILA, RAYMOND W. & JIMMIE L | ROBERT E SWEENEY COMPANY |
| 633 | HAYES, WILLIAM A | ROBERT E SWEENEY COMPANY |
| 634 | MISSIG, KENNETH J | ROBERT E SWEENEY COMPANY |
| 635 | STIDHAM, LEE | ROBERT E SWEENEY COMPANY |
| 636 | TURNER, JOHN J | ROBERT E SWEENEY COMPANY |
| 637 | MILLER, CLIFFORD | ROBERT PEIRCE & ASSOCIATES |
| 638 | MANDEL, SHIRLEY | ROBLES_ LOUIS S |
| 639 | MOORE, ROBERT L | ROGER B LANE_ ATTORNEY AT LAW, P.C. |
| 640 | SELLERS, GLORIA C | ROGER B LANE_ ATTORNEY AT LAW, P.C. |
| 641 | MARCHAND, DUDLEY L JR | ROUSSEL & CLEMENT |
| 642 | ROME, ELODIE GRANIER | ROUSSEL & CLEMENT |
| 643 | FINNEY, BENJAMIN | SALES TILLMAN & WALLBAUM |
| 644 | KAZEE, ORA | SALES TILLMAN & WALLBAUM |
| 645 | BROOKSHIRE, FLORENE | SAVILLE & FLINT |
| 646 | HALTERMAN, RODNEY D | SAVILLE & FLINT |
| 647 | MILANO, JOHN | SAVILLE & FLINT |
| 648 | TORRES-PADRON, AMADO | SAVILLE & FLINT |
| 649 | TUCKER, CHARLES D | SAVILLE & FLINT |
| 650 | GENTILE, THEODORE L | SAVINIS D'AMICO & KANE |
| 651 | LILLIQUIST, CARL W | SAVINIS D'AMICO & KANE |
| 652 | PINI, A JOHN | SAVINIS D'AMICO & KANE |
| 653 | FARROW, MICHAEL | SCHROETER GOLDMARK & BENDER |
| 654 | SPALDING, ROBERT | SCHROETER GOLDMARK & BENDER |
| 655 | TANNER, LEON CRAIG | SCOTT & SCOTT |
| 656 | KIERU, WALTER | SEEGER WEISS LLP |
| 657 | PASCH, HARVEY LEWIS | SEEGER WEISS LLP |
| 658 | LANSDOWNE, ELMAN | SHEIN LAW CENTER |
| 659 | PFEIFER, ALBERT F | SHEIN LAW CENTER |
| 660 | SMITH, ROBERT M JR | SHEIN LAW CENTER |
| 661 | HULTGREN, CARL H | SHIVERS GOSNAY & GREATREX L.L.C. |
| 662 | WARFEL, GEORGIANA | SHIVERS GOSNAY & GREATREX L.L.C. |
| 663 | HADLEY, BILLY R | SHRADER & ASSOCIATES |
| 664 | ROQUE, EDWARD | SHRADER & ASSOCIATES |
| 665 | JACKSON, BRUCE | SIEBEN POLK LAVERDIERE JONES & HAWN |
| 666 | KIEFFER, MARJORIE | SIEBEN POLK LAVERDIERE JONES & HAWN |
| 667 | CERROS, GUADALUPE | SILBER PEARLMAN C/O BARON & BUDD |
| 668 | ADAMS, LEONARD | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 669 | ADAMS, ROSEMARY | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 670 | ALLEN, LAWRENCE | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 671 | ARMSTRONG, STANLEY R | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 672 | ARTHUR, ARMAND D | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 673 | BEALL, PAUL RICHARD | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 674 | BILBROUGH, WILLIAM G JR | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 675 | BLAUVELT, WAYNE E | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 676 | BOLLIGER, DONALD | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 677 | BOYD, DONALD JAWARD SR | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 678 | BROWN, ROY | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 679 | BUCKINGHAM, TIM | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 680 | BUNJAC, JOHN | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |

## SETTLEMENT PAYMENT SAMPLE

| Plaintiff Name | Law firm |
|---|---|
| 681 | CAMPBELL, MARCY | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 682 | CAVE, EDWARD | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 683 | DIETRICH, RICHARD ALLAN | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 684 | DONELY, ALLEN | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 685 | FEHRIBACH, KENNETH | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 686 | FORRESTER, JEFF JR | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 687 | FROLICHSTEIN, ROBERT | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 688 | GRINKO, DONALD M | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 689 | HARRIS, WILLIAM | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 690 | HELSBY, WILLIAM | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 691 | HERSEL, HENRY | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 692 | HOLT, CHERYL | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 693 | HORSLEY, DONALD EDWARD | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 694 | JACOBSEN, OLEY | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 695 | JONES, BOBBY LEE | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 696 | KEAN, RAY | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 697 | KNOTEK, HOWARD B | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 698 | LEE, ALFRED | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 699 | LEE, HOLLIS | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 700 | MCLOUGHLIN, JOSEPH SR | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 701 | MILESKI, ROBERTA | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 702 | MONTEZ, MARK | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 703 | MOREHOUSE, ALMOND | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 704 | MULLENS, DWIGHT | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 705 | NIEDER, ROBERT | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 706 | NOTTOLI, VICTOR | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 707 | OLIVIERI, JOSEPH | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 708 | PIKAART, MICHAEL | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 709 | PORTER, WESLEY L | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 710 | REDLINE, ERNEST | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 711 | RICCARDI, LEON | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 712 | RITSEMA, GERHARD | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 713 | ROSE, DAVID M | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 714 | SCHROEDER, CHARLES | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 715 | STATEN, TIVES | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 716 | TREVINO, FRANCISCO | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 717 | TROWBRIDGE, JERALD | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 718 | TURNER, CHARLES JACKSON | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 719 | WAGES, ELDORIS | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 720 | WALLER, ROBERT E. | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 721 | WARD, ROBERT CARROLL | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 722 | WARREN, NATHAN | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 723 | WARREN, WILLIAM | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 724 | WARSZAWSKI, JOHN J | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 725 | WHITE, NEIL | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 726 | WILLIAMS, ERIC | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 727 | WILLIAMS, URAL | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 728 | WISEMAN, JOHN SR | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 729 | WITTES, JAMES | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 730 | WRIGHT, LARRY WAYNE | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 731 | YOUNG, JAMES ROWLAND | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 732 | ZEIT. RUTH M. | SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD |
| 733 | ALLEN, JOHN EDWARD | SIMON GREENSTONE PANATIER BARTLETT |
| 734 | COATES, MERTON H | SIMON GREENSTONE PANATIER BARTLETT |
| 735 | CURRY, CHARLES | SIMON GREENSTONE PANATIER BARTLETT |
| 736 | DAVIS, CHESTER LLOYD | SIMON GREENSTONE PANATIER BARTLETT |
| 737 | DEMKO, BRUNO A | SIMON GREENSTONE PANATIER BARTLETT |
| 738 | DYER, JERRY | SIMON GREENSTONE PANATIER BARTLETT |
| 739 | EVANS, DAVID ROBERT | SIMON GREENSTONE PANATIER BARTLETT |
| 740 | GALBERAITH, JAMES ROY | SIMON GREENSTONE PANATIER BARTLETT |
| 741 | GARVER, CHARLES RICHARD | SIMON GREENSTONE PANATIER BARTLETT |
| 742 | MASSEY, WALLACE M. | SIMON GREENSTONE PANATIER BARTLETT |
| 743 | PARKEY, LAWRENCE JAMES | SIMON GREENSTONE PANATIER BARTLETT |
| 744 | PUTMAN, RONNIE | SIMON GREENSTONE PANATIER BARTLETT |
| 745 | REASONER, ROSS | SIMON GREENSTONE PANATIER BARTLETT |
| 746 | SMART, CHARLES WILLIAM | SIMON GREENSTONE PANATIER BARTLETT |
| 747 | SOMMERFELD, MYRON | SIMON GREENSTONE PANATIER BARTLETT |
| 748 | SORBOM, NILS | SIMON GREENSTONE PANATIER BARTLETT |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 749 | SINGLETON, DON M | SMITH_ RUSSELL A |
| 750 | HILL, EUGENE A & SHIRLEY | TERRELL HOGAN |
| 751 | WHATLEY, JAMES JR | THE BOGDAN LAW FIRM |
| 752 | BURGESS, CHARLES R | THE CALWELL PRACTICE |
| 753 | WILSON, KENNETH R | THE COADY LAW FIRM |
| 754 | CARVER, CHARLES RICHARD | THE DEATON LAW FIRM |
| 755 | CARY, LAWSON JR | THE DEATON LAW FIRM |
| 756 | MEDINA, SECUNDINO | THE FARRISE LAW FIRM |
| 757 | WILMOT, GERALD R | THE FARRISE LAW FIRM |
| 758 | BRITT, CHARLOTTE M | THE FERRARO LAW FIRM |
| 759 | DOSTIE, ROLAND G  HELEN | THE FERRARO LAW FIRM |
| 760 | GIESE, WALTER R | THE FERRARO LAW FIRM |
| 761 | HOSS, WILLIAM | THE FERRARO LAW FIRM |
| 762 | KAMINSKI, ARTHUR C | THE FERRARO LAW FIRM |
| 763 | PISZ, JOHN C | THE FERRARO LAW FIRM |
| 764 | SCHUSTER, DONALD | THE FERRARO LAW FIRM |
| 765 | AGUILAR, ANTONIO N | THE LANIER LAW FIRM |
| 766 | ANDERSON, CLIFFORD L | THE LANIER LAW FIRM |
| 767 | ANTILL, PAUL | THE LANIER LAW FIRM |
| 768 | AZIZI, NARIMAN | THE LANIER LAW FIRM |
| 769 | BAGLIO, MAURICE | THE LANIER LAW FIRM |
| 770 | BAILEY, EVELYN MAE | THE LANIER LAW FIRM |
| 771 | BATEMAN, CLIFTON B | THE LANIER LAW FIRM |
| 772 | BAUMBACH, STANLEY | THE LANIER LAW FIRM |
| 773 | BEASLEY, MALCOLM | THE LANIER LAW FIRM |
| 774 | BEEKMAN, LARRY | THE LANIER LAW FIRM |
| 775 | BELL, WILLIAM | THE LANIER LAW FIRM |
| 776 | BENARD, HOWARD L | THE LANIER LAW FIRM |
| 777 | BESS, NED E | THE LANIER LAW FIRM |
| 778 | BLAND, CRAIG MARSHALL | THE LANIER LAW FIRM |
| 779 | BOGGS, GWEN | THE LANIER LAW FIRM |
| 780 | BRAESE, RICHARD | THE LANIER LAW FIRM |
| 781 | BRAUN, EVART A | THE LANIER LAW FIRM |
| 782 | BROOKSHIRE, MARGARET | THE LANIER LAW FIRM |
| 783 | BROWNE, WILLIAM H | THE LANIER LAW FIRM |
| 784 | BURCH, ROBERT | THE LANIER LAW FIRM |
| 785 | CLEMENTS, JESSE W | THE LANIER LAW FIRM |
| 786 | COOK, DOUGLAS | THE LANIER LAW FIRM |
| 787 | COOKE, PATRICIA | THE LANIER LAW FIRM |
| 788 | CORDY, LEE L | THE LANIER LAW FIRM |
| 789 | COWE, ROY | THE LANIER LAW FIRM |
| 790 | CRIPPEN, BASIL | THE LANIER LAW FIRM |
| 791 | D'AMELIO, ALFRED | THE LANIER LAW FIRM |
| 792 | DAVIS, CARL J | THE LANIER LAW FIRM |
| 793 | DAVIS, GEORGE W | THE LANIER LAW FIRM |
| 794 | DAVIS, NORMAN C | THE LANIER LAW FIRM |
| 795 | DERRY, VIRGINIA | THE LANIER LAW FIRM |
| 796 | DERUSSON, DANIEL | THE LANIER LAW FIRM |
| 797 | DICKENS, FRANK G | THE LANIER LAW FIRM |
| 798 | DOIG,  RONALD W | THE LANIER LAW FIRM |
| 799 | DUCKWORTH, JOHNNY JR | THE LANIER LAW FIRM |
| 800 | DUNNAM, RAYFORD | THE LANIER LAW FIRM |
| 801 | ESTERLUND, WILLIAM H | THE LANIER LAW FIRM |
| 802 | FLURY, DONALD | THE LANIER LAW FIRM |
| 803 | FOSTER, DAVID S | THE LANIER LAW FIRM |
| 804 | GARNETT, OSCAR WILLIAM | THE LANIER LAW FIRM |
| 805 | GIRARD, FRANK | THE LANIER LAW FIRM |
| 806 | GOBIN, PHILLIP | THE LANIER LAW FIRM |
| 807 | GRETLER, MAX JR. | THE LANIER LAW FIRM |
| 808 | HAILE, THOMAS | THE LANIER LAW FIRM |
| 809 | HARRIS, DAVID E | THE LANIER LAW FIRM |
| 810 | HARRIS, VIOLA RUBY | THE LANIER LAW FIRM |
| 811 | HARRISON, JAMES T | THE LANIER LAW FIRM |
| 812 | HEID, JOSEPH G | THE LANIER LAW FIRM |
| 813 | HENCK, MICHAEL C | THE LANIER LAW FIRM |
| 814 | HENDERSHOTT, AMOS | THE LANIER LAW FIRM |
| 815 | HEROLD, DAVID FRANCIS | THE LANIER LAW FIRM |
| 816 | HICKEY, PATRICK W | THE LANIER LAW FIRM |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 817 | JONES, OLIVER WAYNE | THE LANIER LAW FIRM |
| 818 | JONES, RAYMOND | THE LANIER LAW FIRM |
| 819 | JOSEPHSON, RICHARD | THE LANIER LAW FIRM |
| 820 | KATTERHEINRICH, SUSAN | THE LANIER LAW FIRM |
| 821 | KENNEDY, ROBERT | THE LANIER LAW FIRM |
| 822 | KILLEBREW, RONALD | THE LANIER LAW FIRM |
| 823 | KILMAN, MARK | THE LANIER LAW FIRM |
| 824 | KINSEY, WALTER LEON SR | THE LANIER LAW FIRM |
| 825 | KOVALESKI, ALEX J | THE LANIER LAW FIRM |
| 826 | KRAKOWSKI, ALFRED | THE LANIER LAW FIRM |
| 827 | LABOVE, LIONEL J | THE LANIER LAW FIRM |
| 828 | LONON, BARBARA A | THE LANIER LAW FIRM |
| 829 | LORENZ, RAYMOND J | THE LANIER LAW FIRM |
| 830 | LOUTENSOCK, JOHN L | THE LANIER LAW FIRM |
| 831 | MARINI, JOHN | THE LANIER LAW FIRM |
| 832 | MARTIN, JIMMY SR | THE LANIER LAW FIRM |
| 833 | MATHEWS, DOLORES JEAN | THE LANIER LAW FIRM |
| 834 | MCCLURE, MICHAEL | THE LANIER LAW FIRM |
| 835 | MCCORMICK, THOMAS F | THE LANIER LAW FIRM |
| 836 | MCDANIELS, LARRY | THE LANIER LAW FIRM |
| 837 | MCGINN, STANLEY | THE LANIER LAW FIRM |
| 838 | MENKEE, ALFRED | THE LANIER LAW FIRM |
| 839 | METEVIA, JOSEPH E | THE LANIER LAW FIRM |
| 840 | MONKMAN, CLIFFORD J JR | THE LANIER LAW FIRM |
| 841 | MOONEY, JOHN | THE LANIER LAW FIRM |
| 842 | MOORE, JERRY A | THE LANIER LAW FIRM |
| 843 | MORROW, JOHNIE | THE LANIER LAW FIRM |
| 844 | MOSLEY, DAVID | THE LANIER LAW FIRM |
| 845 | MULLEN, BENJAMIN | THE LANIER LAW FIRM |
| 846 | MURDZIA, RODNEY | THE LANIER LAW FIRM |
| 847 | MYERS, WANDA MAY | THE LANIER LAW FIRM |
| 848 | MYNATT, DEBORAH | THE LANIER LAW FIRM |
| 849 | NOEL, RAYMOND | THE LANIER LAW FIRM |
| 850 | NOLL, WILLIAM G | THE LANIER LAW FIRM |
| 851 | NUISLL, CARL | THE LANIER LAW FIRM |
| 852 | PANIAGUA, ELIAS | THE LANIER LAW FIRM |
| 853 | PARKER, HOWARD | THE LANIER LAW FIRM |
| 854 | PARROTT, ROBERT | THE LANIER LAW FIRM |
| 855 | POTCHOIBA, WILLIAM | THE LANIER LAW FIRM |
| 856 | POWELL, JOSEPH | THE LANIER LAW FIRM |
| 857 | PRESTON, WILLIE H | THE LANIER LAW FIRM |
| 858 | RENDON, EMILIO | THE LANIER LAW FIRM |
| 859 | ROGERS, JIMMIE | THE LANIER LAW FIRM |
| 860 | SCHABILION, OTTO | THE LANIER LAW FIRM |
| 861 | SCHROEDER, GERALD S | THE LANIER LAW FIRM |
| 862 | SCOTT, JOHN F | THE LANIER LAW FIRM |
| 863 | SELF, PAUL L | THE LANIER LAW FIRM |
| 864 | SHAFFER, FLORENCE | THE LANIER LAW FIRM |
| 865 | SHANKUS, WILLIAM E | THE LANIER LAW FIRM |
| 866 | SHREVE, GLENN F SR | THE LANIER LAW FIRM |
| 867 | SIMS, LARRY C | THE LANIER LAW FIRM |
| 868 | SMALARZ, JOHN F | THE LANIER LAW FIRM |
| 869 | SOUCY, LIONEL | THE LANIER LAW FIRM |
| 870 | STARNA, HENRY | THE LANIER LAW FIRM |
| 871 | STAUCH, DORIS | THE LANIER LAW FIRM |
| 872 | STRICKLER, BARRY E | THE LANIER LAW FIRM |
| 873 | SWEARINGEN, ROBERT C | THE LANIER LAW FIRM |
| 874 | THERIOT, ROBERT E | THE LANIER LAW FIRM |
| 875 | TURNER, LOWELL | THE LANIER LAW FIRM |
| 876 | UNGARO, ROCCO | THE LANIER LAW FIRM |
| 877 | VAN DRESS, MICHAEL G | THE LANIER LAW FIRM |
| 878 | VIETMEIER, LEO J | THE LANIER LAW FIRM |
| 879 | VILLONT, JACK L | THE LANIER LAW FIRM |
| 880 | WALKER, LEROY | THE LANIER LAW FIRM |
| 881 | WALLER, WILLIS B | THE LANIER LAW FIRM |
| 882 | WELLS, RICHARD A | THE LANIER LAW FIRM |
| 883 | WHITTINGTON, JERRY | THE LANIER LAW FIRM |
| 884 | YBARRA, JAMES | THE LANIER LAW FIRM |

## SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 885 | YOUNG, JAMES E | THE LANIER LAW FIRM |
| 886 | ZBYLUT, FRANK | THE LANIER LAW FIRM |
| 887 | FRANCOIS, LOUNEDA | THE LIPMAN LAW FIRM |
| 888 | GLOBE, CAROLE ANN | THE LIPMAN LAW FIRM |
| 889 | GRAF, MAXINE L | THE LIPMAN LAW FIRM |
| 890 | KNIGHT, CURTIS | THE LIPMAN LAW FIRM |
| 891 | LORENZ, DAVID LARRY | THE LIPMAN LAW FIRM |
| 892 | PEAVEY, HOWARD | THE LIPMAN LAW FIRM |
| 893 | RICHRATH, HANS | THE LIPMAN LAW FIRM |
| 894 | RODRIGUEZ, SOLEDAD | THE LIPMAN LAW FIRM |
| 895 | SLATER, ROBERT W | THE LIPMAN LAW FIRM |
| 896 | SOBOV, MORIZ | THE LIPMAN LAW FIRM |
| 897 | VIOLETT, DONALD R | THE LIPMAN LAW FIRM |
| 898 | WOOD, ROBERT D | THE LIPMAN LAW FIRM |
| 899 | HAYS, WILLIAM | THE RUCKDESCHEL LAW FIRM LLC |
| 900 | BISGAARD, SOREN | THE SHEPARD LAW FIRM |
| 901 | DAVIS, GUY | THE SHEPARD LAW FIRM |
| 902 | MARTINEZ, CECILIO S | THE SHEPARD LAW FIRM |
| 903 | SNOW, JAMES J | THE SHEPARD LAW FIRM |
| 904 | JOHNSON, CLYDE L | THE SUTTER LAW FIRM |
| 905 | ANTOINE, FRANCIS | THOMAS ALKON P.C. |
| 906 | KASPRICK, ERNEST F | THOMPSON_ DAVID C |
| 907 | BARR, EMILE | THORNTON & NAUMES |
| 908 | BOLDUC, FERNAND | THORNTON & NAUMES |
| 909 | BOYLE, J MICHAEL | THORNTON & NAUMES |
| 910 | BROOKS, DOROTHY | THORNTON & NAUMES |
| 911 | COLE, HAROLD B JR | THORNTON & NAUMES |
| 912 | DAVIS, JOHN E | THORNTON & NAUMES |
| 913 | RICHELLI, AIDO J | THORNTON & NAUMES |
| 914 | WIRWICZ, ROBERT | THORNTON & NAUMES |
| 915 | WISE, CLIFFORD R SR | THORNTON & NAUMES |
| 916 | ZAJAC, ALPHONSE J | THORNTON & NAUMES |
| 917 | DOBELL, JUDY | TRINE & METCALF |
| 918 | ADLER, SANDRA | WATERS & KRAUS |
| 919 | CARDEN, EDWARD WILLIAM | WATERS & KRAUS |
| 920 | CHALER, CHARLES | WATERS & KRAUS |
| 921 | CHRISTOPHER, PHILLIP | WATERS & KRAUS |
| 922 | DELLINGER, DOUGLAS | WATERS & KRAUS |
| 923 | DEMERSSEMAN, CLEON J | WATERS & KRAUS |
| 924 | DUNCAN, CHARLES | WATERS & KRAUS |
| 925 | HENSLEY, EARL D | WATERS & KRAUS |
| 926 | KOEBERLE, JOHN H | WATERS & KRAUS |
| 927 | MITCHELL, JUDITH | WATERS & KRAUS |
| 928 | TAVAGLIONE, ROBERT | WATERS & KRAUS |
| 929 | THORNTON, TAMMY RENA | WATERS & KRAUS |
| 930 | WEST, KEITH SR | WATERS & KRAUS |
| 931 | WICKER, BENJAMIN | WATERS & KRAUS |
| 932 | ZERDA, KENNETH V | WATERS & KRAUS |
| 933 | ALLEN, ROBERT CURTIS | WEISS & SAVILLE P.A. |
| 934 | BIGMAN, TOM | WEISS & SAVILLE P.A. |
| 935 | BRATTON, KENT ALLAN | WEISS & SAVILLE P.A. |
| 936 | DOUGHTY, WILLIAM MYATT | WEISS & SAVILLE P.A. |
| 937 | FANCHER, WILLIAM HARRY SR | WEISS & SAVILLE P.A. |
| 938 | HANSON, KATHERINE LOUISE | WEISS & SAVILLE P.A. |
| 939 | HARRISON, KENNETH NEIL | WEISS & SAVILLE P.A. |
| 940 | HAWKS, CONWAY HAWKS | WEISS & SAVILLE P.A. |
| 941 | KING, JAMES NEWTON | WEISS & SAVILLE P.A. |
| 942 | KNAPP, LAWRENCE LEE | WEISS & SAVILLE P.A. |
| 943 | KRITZER, HENRY RAYMOND | WEISS & SAVILLE P.A. |
| 944 | MCKINNIS, DARRELL KEITH | WEISS & SAVILLE P.A. |
| 945 | PINEO, RAYMOND A | WEISS & SAVILLE P.A. |
| 946 | SENG, EDWARD WILLIAM JR | WEISS & SAVILLE P.A. |
| 947 | SMITH, EILEEN VIVIAN | WEISS & SAVILLE P.A. |
| 948 | TALLENT, CHRISTINE DEAL | WEISS & SAVILLE P.A. |
| 949 | TAYLOR, DONALD ROBERT | WEISS & SAVILLE P.A. |
| 950 | WESSON, CHARLES D SR | WEISS & SAVILLE P.A. |
| 951 | WHEELER, LOUIS EDWARD | WEISS & SAVILLE P.A. |
| 952 | AUCOIN, THOMAS ROBERT | WEITZ & LUXENBERG |

# SETTLEMENT PAYMENT SAMPLE

| | Plaintiff Name | Law firm |
|---|---|---|
| 953 | BEMESDERFER, LILLIAN A | WEITZ & LUXENBERG |
| 954 | BLANK, CLIFFORD A | WEITZ & LUXENBERG |
| 955 | BOGERMAN, RONALD | WEITZ & LUXENBERG |
| 956 | COPPOLA, FRANK J | WEITZ & LUXENBERG |
| 957 | DEVINE, HARRY | WEITZ & LUXENBERG |
| 958 | DOBSON, GILBERT | WEITZ & LUXENBERG |
| 959 | FRASIER, CLYDE | WEITZ & LUXENBERG |
| 960 | GONZALEZ, ISMENIA | WEITZ & LUXENBERG |
| 961 | HAUCK, EDWARD J | WEITZ & LUXENBERG |
| 962 | HEYMAN, MALCOLM | WEITZ & LUXENBERG |
| 963 | HOVERMALE, HUGH L | WEITZ & LUXENBERG |
| 964 | KLIMBACK, JAMES F | WEITZ & LUXENBERG |
| 965 | LOZIER, ALFRED LEO | WEITZ & LUXENBERG |
| 966 | NEUBIG, NORMAN SR | WEITZ & LUXENBERG |
| 967 | O'CONNOR, GEORGE | WEITZ & LUXENBERG |
| 968 | PALZER, KARL | WEITZ & LUXENBERG |
| 969 | PICINICH, IVAN | WEITZ & LUXENBERG |
| 970 | PUZA, STANLEY R | WEITZ & LUXENBERG |
| 971 | RUDDELL, DENNIS | WEITZ & LUXENBERG |
| 972 | RUGGLES, WILLIAM A | WEITZ & LUXENBERG |
| 973 | RYAN, WILLIAM F | WEITZ & LUXENBERG |
| 974 | RYBICKI, RONALD J | WEITZ & LUXENBERG |
| 975 | SANTOMAURO, ALEXANDER G | WEITZ & LUXENBERG |
| 976 | SMITH, KENNETH ALTON JR | WEITZ & LUXENBERG |
| 977 | STEINBERG, LEON L | WEITZ & LUXENBERG |
| 978 | TORRES, ROSA | WEITZ & LUXENBERG |
| 979 | TOULANTIS, TERRY | WEITZ & LUXENBERG |
| 980 | VIKELIS, JOHN S | WEITZ & LUXENBERG |
| 981 | VILLAFLOR, JUAN JOSE CADENA | WEITZ & LUXENBERG |
| 982 | WADDELL, RICHARD S | WEITZ & LUXENBERG |
| 983 | WHITAKER, DONALD | WEITZ & LUXENBERG |
| 984 | ZIMBERG, SHELDON | WEITZ & LUXENBERG |
| 985 | CINQUEMANI, SALVATORE | WILENTZ GOLDMAN & SPITZER |
| 986 | FOGARTY, ROBERT | WILENTZ GOLDMAN & SPITZER |
| 987 | JONES, WEBSTER C | WILENTZ GOLDMAN & SPITZER |
| 988 | RODRIGUEZ, JUAN | WILENTZ GOLDMAN & SPITZER |
| 989 | SCORE, DOMINICK | WILENTZ GOLDMAN & SPITZER |
| 990 | SHAW, ROBERT A | WILENTZ GOLDMAN & SPITZER |
| 991 | SIEGEL, NORMAN | WILENTZ GOLDMAN & SPITZER |
| 992 | WOOD, ALLEN | WILENTZ GOLDMAN & SPITZER |
| 993 | BERRYHILL, GROVER L | WILLIAMS KHERKHER LAW FIRM |
| 994 | GARCIA, NASARIO | WILLIAMS KHERKHER LAW FIRM |
| 995 | HOWARD, ROBERT L | WILLIAMS KHERKHER LAW FIRM |
| 996 | ODONNELL, VENCIL E | WILLIAMS KHERKHER LAW FIRM |
| 997 | SLAUGHTER, JOHNNIE E | WILLIAMS KHERKHER LAW FIRM |
| 998 | DONN, ALAN H | WILSON ELSER MOSKOWITZ EDELMAN & DICKER |
| 999 | SCOTT, JAMES B | WISE & JULIAN |
| 1000 | COTTRELL, RICHARD E | ZAMLER MELLEN & SHIFFMAN |

Case 20-31607   Doc 2338   Filed 06/29/22   Entered 06/29/22 10:26:51   Desc Main
Document   Page 34 of 38

# EXHIBIT C

**EXHIBIT C.1 TO ORDER AUTHORIZING DEBTORS TO ISSUE SUPPLEMENTAL
SETTLEMENT PAYMENT QUESTIONNAIRE AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSES**

**Re:** *In re Garlock Sealing Technologies LLC, et al.,*
**Case No. 10-BK-31607 (Jointly Administered)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>*Instructions*</u>: *This Acknowledgment must be executed by an authorized representative of any corporation, partnership, company, or firm required to execute an Acknowledgment pursuant to paragraph 5.e. of the above-referenced Order.*

# A C K N O W L E D G E M E N T

On behalf of my employer, _____ [*write in name of employer*] ("**Employer**"), I and other employees, agents, and representatives of Employer may be given access to Questionnaire Responses. Each and every Questionnaire Response constitutes confidential and protected information in connection with the above- referenced Order Authorizing Debtors to Issue Supplemental Settlement Payment Questionnaire and Governing Confidentiality of Information Provided in Responses (the "**Questionnaire Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced jointly-administered Chapter 11 cases. Capitalized terms used in this Acknowledgment but not otherwise defined herein shall have the meanings ascribed to them in the Questionnaire Order.

I have read the Questionnaire Order on behalf of Employer as part of performing its duties to _____ [*write in name of the Estimation Party or other client for whom Employer is rendering services in connection with the Estimation Proceeding*]. I understand the conditions and obligations of confidentiality, and use restrictions, that the Questionnaire Order makes applicable to Questionnaire Responses. By my signature below, Employer, for itself and all of its employees, agents, and representatives who receive access to Questionnaire Responses, hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and restrictions. On Employer's behalf, I represent that Employer has made, or will make the Questionnaire Order and this Acknowledgment known in advance to all of Employer's employees, agents, and representatives who are to receive access to Questionnaire Responses, so that they will be on notice of Employer's duties in connection therewith and their own responsibilities to ensure compliance with the Questionnaire Order.

Employer, its employees, agents, and representatives will not disclose any Questionnaire Responses to any person not authorized by the Questionnaire Order, or further order of the Bankruptcy Court, to receive such information. They will not use Questionnaire Responses for any purpose other than the Estimation Proceeding, except as may be specifically authorized by further order of the Bankruptcy Court pursuant to paragraph 18 of the Questionnaire Order.

Case 20-30608   Doc 2358   Filed 08/28/20   Entered 08/28/20 14:02:35   Desc Main
Document    Page 236 of 238

Pursuant to paragraph 17 of the Questionnaire Order, Employer will destroy or cause to be destroyed all Questionnaire Responses within one year of the date of substantial consummation of a confirmed Chapter 11 plan of reorganization for the Debtors (the "**Plan**"), and will promptly certify such destruction in writing to counsel of record for the Debtors, the Committee, and the FCR, unless relieved of that obligation by a specific provision of the Plan authorizing Employer to turn over Questionnaire Responses to an asbestos settlement trust created pursuant to the Plan.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Questionnaire Order and this Acknowledgment and for no other purposes.

I represent that I am duly authorized to execute this Acknowledgment on behalf of Employer.

By: _____
Print Name: _____
Title: _____
Employer: _____
Address: _____
_____
Dated: _____
Relationship to Employer: _____

**EXHIBIT C.2 TO ORDER AUTHORIZING DEBTORS TO ISSUE SUPPLEMENTAL
SETTLEMENT PAYMENT QUESTIONNAIRE AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSES**

**Re:** *In re Garlock Sealing Technologies LLC, et al.,*
**Case No. 10-BK-31607 (Jointly Administered)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

*<u>Instructions</u>: This Acknowledgment must be executed by any individual required to execute
an Acknowledgment in his or her individual capacity pursuant to the paragraph 5.e. of the
above-referenced Order (for example, a self-employed expert or a witness).*

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced Order Authorizing Debtors to Issue Supplemental Settlement Payment
Questionnaire and Governing Confidentiality of Information Provided in Responses (the
"**Questionnaire Order**"), entered by the United States Bankruptcy Court for the Western
District of North Carolina (the "**Bankruptcy Court**") in the above-referenced jointly-
administered Chapter 11 cases.

I have read the Questionnaire Order. Capitalized terms used in this Acknowledgment but
not otherwise defined herein shall have the meanings ascribed to them in the Questionnaire
Order. I understand the conditions and obligations of confidentiality, and use restrictions, that the
Questionnaire Order makes applicable to Questionnaire Responses and hereby accept and agree
to be bound by, and to abide by, those conditions, obligations, and restrictions.

I will not disclose any Questionnaire Responses to any person not authorized by the
Questionnaire Order, or further order of the Bankruptcy Court, to receive such information. I will
not use Questionnaire Responses for any purpose other than the Estimation Proceeding, except as
may be specifically authorized by further order of the Bankruptcy Court pursuant to paragraph
18 of the Questionnaire Order.

Pursuant to paragraph 17 of the Questionnaire Order, I will destroy all Questionnaire
Responses within one year of the date of substantial consummation of a confirmed Chapter 11
plan of reorganization for the Debtors (the "**Plan**"), and will promptly certify such destruction in
writing to counsel of record for the Debtors, the Committee, and the FCR, unless relieved of that
obligation by a specific provision of the Plan authorizing me to turn over Questionnaire
Responses to an asbestos settlement trust created pursuant to the Plan.

Case 20-30608   Doc 2297   Filed 06/29/20   Entered 06/29/20 14:02:35   Desc Main
Document   Page 238 of 238

       I consent to the jurisdiction of the Bankruptcy Court for any action to enforce the terms of the Questionnaire Order and this Acknowledgment and for no other purposes.

By: _____

Print Name: _____

Title: _____

Address: _____

_____

Dated: _____