

FILED & JUDGMENT ENTERED
Steven T. Salata

February 15 2022

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| ALDRICH PUMP LLC, *et al.*,[1] | : : : | No. 20-30608 (JCW) |
| Debtors, | : : | (Jointly Administered) |
| | : : | |

## ORDER AUTHORIZING THE DEBTORS TO ESTABLISH A QUALIFIED SETTLEMENT FUND FOR PAYMENT OF ASBESTOS CLAIMS

This matter coming before the Court on the *Motion of the Debtors for an Order Authorizing Establishment of a Qualified Settlement Fund for Payment of Asbestos Claims* (the "Motion"),[2] filed by the Debtors; the Court having reviewed the Motion and the Trust Agreement attached hereto as Annex 1 and having heard the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (c) this is a

---

.

[1]    The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Aldrich Pump LLC (2290) and Murray Boiler LLC (0679). The Debtors' address is 800- E Beaty Street, Davidson, North Carolina 28036.

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

core proceeding pursuant to 28 U.S.C. § 157(b)(2), (d) notice of the Motion and the Hearing was

sufficient under the circumstances, (e) establishment and funding of the QSF Trust pursuant to

the Trust Agreement is a sound exercise of the Debtors' business judgment and (f) the Trust

Agreement is fair and reasonable and in the best interests of the Debtors' estates and parties in

interest; and the Court having determined that the legal and factual bases set forth in the Motion

and at the Hearing establish just cause for the relief granted herein;

                    IT IS HEREBY ORDERED THAT:

    1.      The Motion is GRANTED.

    2.      The Debtors are hereby authorized to enter into the Trust Agreement, and

the Trust Agreement is hereby approved as binding on all parties thereto.

    3.      The QSF Trust shall be established in accordance with and governed by

the terms of the Trust Agreement so that it may constitute a "qualified settlement fund" under

section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulations

§ 1.468B-1, *et seq.* The QSF Trust will be funded and used to resolve or satisfy current and

future asbestos-related claims asserted against or related to the Debtors as provided in the Trust

Agreement. The Trust Funds shall be earmarked for and only used for the purposes provided in

the Trust Agreement.

    4.      This Court shall be the supervisory court with respect to the QSF Trust

and shall retain jurisdiction over the QSF Trust for the entire life of the QSF Trust.

    5.      The Debtors are authorized and empowered to take all actions necessary

or appropriate to implement the relief granted in this Order.

6.      This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the 14-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

7.      For the avoidance of doubt, the entry of this Order shall not constitute any determination regarding (a) the adequacy of the amount of funds contained in the QSF Trust to resolve or satisfy current and future asbestos-related claims that are the subject of these bankruptcy cases, or (b) the relevance of the entry of this Order to any other issue in these cases, whether currently pending or that may be presented in the future.

8.      This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.                          United States Bankruptcy Court

**ANNEX 1**

**ALDRICH/MURRAY SETTLEMENT
FACILITY AGREEMENT**

*By and Among*

**TRANE TECHNOLOGIES COMPANY LLC,**

**TRANE U.S. INC.,**

**ALDRICH PUMP LLC,**

**MURRAY BOILER LLC**

*and*

**U.S. BANK NATIONAL ASSOCIATION, as the Trustee**

**Dated as of [●], 202[●]**

# TABLE OF CONTENTS

**Page**

ARTICLE 1    AGREEMENT OF TRUST ................................................................. 1

    1.1    Creation and Name ................................................................. 1

    1.2    Purpose ................................................................................... 2

    1.3    Transfer of Assets ................................................................. 2

    1.4    Acceptance of Appointment and Contributions ...................... 4

    1.5    Release Conditions ................................................................. 4

ARTICLE 2    TRUSTEE ................................................................................... 4

    2.1    Appointment ........................................................................... 4

    2.2    Term of Service ....................................................................... 4

    2.3    Appointment of Successor Trustee(s) ..................................... 5

    2.4    Liability of Trustee and Representatives ................................. 5

    2.5    Compensation and Expenses of Trustee ................................. 5

    2.6    Trustee's Employment of Professionals ................................. 5

    2.7    Trustee Qualifications and Independence ............................... 6

    2.8    Bond ....................................................................................... 6

ARTICLE 3    POWERS, TRUST ADMINISTRATION, AND REPORTING ......... 6

    3.1    Powers ................................................................................... 6

    3.2    General Administration and Obligations of the Trustee ......... 9

    3.3    Indemnification of the Trustee ............................................... 11

ARTICLE 4    ACCOUNTS, INVESTMENTS, AND PAYMENTS ...................... 12

    4.1    Accounts ............................................................................... 12

    4.2    Investments ........................................................................... 12

    4.3    Payments ............................................................................... 13

ARTICLE 5    OBLIGATIONS OF TTC AND TUI .......................................... 13

    5.1    Settlement Contributions ....................................................... 13

    5.2    Condition Precedent ............................................................... 13

ARTICLE 6    GENERAL PROVISIONS ......................................................... 13

    6.1    Irrevocability ......................................................................... 13

    6.2    Termination ........................................................................... 13

    6.3    Amendments ........................................................................... 14

    6.4    Severability ........................................................................... 14

    6.5    Notices ................................................................................... 15

### TABLE OF CONTENTS
### (Continued)

**Page**

6.6     Successors and Assigns ................................................................................ 16

6.7     Entire Agreement; No Waiver ....................................................................... 17

6.8     Headings ....................................................................................................... 17

6.9     Governing Law .............................................................................................. 17

6.10    Dispute Resolution ........................................................................................ 17

6.11    Counterpart Signatures .................................................................................. 17

ARTICLE 7    DEFINITIONS ..................................................................................... 17

## ALDRICH/MURRAY SETTLEMENT FACILITY AGREEMENT

This Aldrich/Murray Settlement Facility Agreement (this "***Settlement Facility Agreement***") is entered into on this [●] day of [●], 202[●] by and among Trane Technologies Company LLC ("***TTC***"), Trane U.S. Inc. ("***TUI***"), Aldrich Pump LLC ("***Aldrich***"), Murray Boiler LLC ("***Murray***"), and the Trustee named on the signature pages of this Settlement Facility Agreement.  Capitalized terms used in this Settlement Facility Agreement have the meanings set forth in Article 7.

## RECITALS

A.    TTC and Aldrich executed that certain Second Amended and Restated Funding Agreement, dated as of June 15, 2020 (the "***TTC/Aldrich Funding Agreement***"), pursuant to which TTC agreed to provide funding to Aldrich for the purpose of defending and resolving Asbestos Claims against and related to Aldrich ("***Aldrich Asbestos Claims***"), and TUI and Murray executed that certain Second Amended and Restated Funding Agreement, dated as of June 15, 2020 (the "***TUI/Murray Funding Agreement***" and, together with the TTC/Aldrich Funding Agreement, the "***Funding Agreements***"), pursuant to which TUI agreed to provide funding to Murray for the purpose of defending and resolving Asbestos Claims against and related to Murray ("***Murray Asbestos Claims***").

B.    On June 18, 2020, each of Aldrich and Murray filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Cases.

C.    TTC, TUI, Aldrich, and Murray desire to create the Settlement Facility as a trust to resolve or satisfy Asbestos Claims as provided herein, with TTC to provide the Settlement Facility with immediate funding of $178,200,000 in Cash (the "***TTC Settlement Contribution***") and TUI to provide the Settlement Facility with immediate funding of $91,800,000 in Cash (the "***TUI Settlement Contribution***").

D.    The Parties now desire to provide for the creation, funding, and administration of the Settlement Facility in accordance with the terms of this Settlement Facility Agreement.

E.    The Parties intend that the Settlement Facility (1) constitute a Qualified Settlement Fund and, as such, be supervised by the Bankruptcy Court, (2) be created as a North Carolina trust, (3) be managed by a trustee meeting specified independence criteria requirements, (4) be established to resolve or satisfy, within the meaning of Treas. Reg. § 1.468B-1(c)(2), Asbestos Claims, and (5) be funded with the TTC Settlement Contribution and the TUI Settlement Contribution immediately upon its creation.

NOW, THEREFORE, it is agreed as follows:

## ARTICLE 1

## AGREEMENT OF TRUST

**1.1**    **Creation and Name**. TTC and TUI, as grantors, hereby create, effective as of the Effective Date and with the consent of Aldrich and Murray, a North Carolina trust that shall be

known as the "Aldrich/Murray Settlement Facility" and that shall be managed by the Trustee.  The Trustee shall transact the business and affairs of the Settlement Facility in the name "Aldrich/Murray Settlement Facility."

     1.2     **<u>Purpose</u>**.  The purposes of the Settlement Facility are as follows:

     (a)     to resolve or satisfy Asbestos Claims in accordance with the Release Conditions set forth in <u>Section 1.5</u>;

     (b)     to collect, invest, and distribute the Trust Funds in accordance with the terms of this Settlement Facility Agreement;

     (c)     to pay Settlement Facility Expenses and any and all other liabilities of the Settlement Facility in accordance with the terms of this Settlement Facility Agreement;

     (d)     at all times to qualify as a Qualified Settlement Fund; and

     (e)     otherwise administer the Settlement Facility pursuant to the express provisions of this Settlement Facility Agreement and any other agreements entered into by the Trustee or the Settlement Facility in accordance with the terms of this Settlement Facility Agreement.

     1.3     **<u>Transfer of Assets</u>**.

     (a)     <u>Immediate Cash Funding</u>.  On the Effective Date, (i) TTC shall deliver the TTC Settlement Contribution to the Settlement Facility and (ii) TUI shall deliver the TUI Settlement Contribution to the Settlement Facility.  Each of the TTC Settlement Contribution and the TUI Settlement Contribution shall be so delivered by wire transfer of immediately available funds to the Settlement Facility Accounts, as directed in writing by the Trustee.  The Trustee shall segregate and separately account for use of the TTC Settlement Contribution and the TUI Settlement Contribution as set forth in this Settlement Facility Agreement.

     (b)     <u>TTC/Aldrich Funding Agreement</u>.  TTC and Aldrich acknowledge and agree that:  (i) TTC has no obligation to deliver the TTC Settlement Contribution to the Settlement Facility, as provided in <u>Section 1.3(a)</u>, under the existing terms of the TTC/Aldrich Funding Agreement; (ii) notwithstanding the lack of any existing obligation to do so, on the Effective Date, as requested by Aldrich, TTC shall deliver the TTC Settlement Contribution to the Settlement Facility, under the TTC/Aldrich Funding Agreement, as provided in <u>Section 1.3(a)</u>; (iii) each of TTC and Aldrich hereby waives any requirement or limitation set forth in Section 2 of the TTC/Aldrich Funding Agreement to the extent necessary to permit (A) the delivery of the TTC Settlement Contribution to the Settlement Facility, under the TTC/Aldrich Funding Agreement, as provided in <u>Section 1.3(a)</u>, and (B) the release of the Trust Funds as provided in <u>Section 1.5</u> or as otherwise provided in this Settlement Facility Agreement; (iv) TTC hereby waives, for any and all purposes of the TTC/Aldrich Funding Agreement (including the satisfaction of the conditions of Section 2.d of the TTC/Aldrich Funding Agreement in connection with any future request by Aldrich for funding under the Funding Agreement), any breach of the TTC/Aldrich Funding Agreement (including Section 5 thereof) resulting from (A) the delivery of the TTC Settlement Contribution to the Settlement Facility, under the TTC/Aldrich Funding Agreement, as provided

- 2 -

in Section 1.3(a), or (B) the release of the Trust Funds as provided in Section 1.5 or as otherwise provided in this Settlement Facility Agreement; (v) the establishment of the Settlement Facility shall not affect in any way the obligations of TTC under the TTC/Aldrich Funding Agreement except to the extent that TTC shall not be obligated to fund a Permitted Funding Use (as such term is defined in the TTC/Aldrich Funding Agreement) under the TTC/Aldrich Funding Agreement to the extent there are funds available for release under this Settlement Facility to pay such Permitted Funding Use; and (vi) the TTC Settlement Contribution shall be considered as pre-funding for Permitted Funding Uses, including funding for a Section 524(g) Trust included in a Chapter 11 524(g) Plan in the Chapter 11 Cases, and, to the extent permissible under the terms of this Settlement Facility Agreement, a Permitted Funding Use, including funding for a Section 524(g) Trust included in a Chapter 11 524(g) Plan in the Chapter 11 Cases, shall first be paid by the disbursement of funds from the Settlement Facility to the full extent such funds are available therefor before additional funds are sought by Aldrich under the TTC/Aldrich Funding Agreement for such Permitted Funding Use.

(c)     TUI/Murray Funding Agreement.  TUI and Murray acknowledge and agree that:  (i) TUI has no obligation to deliver the TUI Settlement Contribution to the Settlement Facility, as provided in Section 1.3(a), under the existing terms of the TUI/Murray Funding Agreement; (ii) notwithstanding the lack of any existing obligation to do so, on the Effective Date, as requested by Murray, TUI shall deliver the TUI Settlement Contribution to the Settlement Facility, under the TUI/Murray Funding Agreement, as provided in Section 1.3(a); (iii) each of TUI and Murray hereby waives any requirement or limitation set forth in Section 2 of the TUI/Murray Funding Agreement to the extent necessary to permit (A) the delivery of the TUI Settlement Contribution to the Settlement Facility, under the TUI/Murray Funding Agreement, as provided in Section 1.3(a), and (B) the release of the Trust Funds as provided in Section 1.5 or as otherwise provided in this Settlement Facility Agreement; (iv) TUI hereby waives, for any and all purposes of the TUI/Murray Funding Agreement (including the satisfaction of the conditions of Section 2.d of the TUI/Murray Funding Agreement in connection with any future request by Murray for funding under the TUI/Murray Funding Agreement), any breach of the TUI/Murray Funding Agreement (including Section 5 thereof) resulting from (A) the delivery of the TUI Settlement Contribution to the Settlement Facility, under the TUI/Murray Funding Agreement, as provided in Section 1.3(a), or (B) the release of the Trust Funds as provided in Section 1.5 or as otherwise provided in this Settlement Facility Agreement; (v) the establishment of the Settlement Facility shall not affect in any way the obligations of TUI under the TUI/Murray Funding Agreement except to the extent that TUI shall not be obligated to fund a Permitted Funding Use (as such term is defined in the TUI/Murray Funding Agreement) under the TUI/Murray Funding Agreement to the extent there are funds available for release under this Settlement Facility to pay such Permitted Funding; and (vi) the TUI Settlement Contribution shall be considered as pre-funding for Permitted Funding Uses, including funding for a Section 524(g) Trust included in a Chapter 11 524(g) Plan in the Chapter 11 Cases, and, to the extent permissible under the terms of this Settlement Facility Agreement, a Permitted Funding Use, including funding for a Section 524(g) Trust included in a Chapter 11 524(g) Plan in the Chapter 11 Cases, shall first be paid by the disbursement of funds from the Settlement Facility to the full extent such funds are available therefor before additional funds are sought by Murray under the TUI/Murray Funding Agreement for such Permitted Funding Use.

NAI-1514651303

**1.4**  **Acceptance of Appointment and Contributions**.  In connection with and in furtherance of the purposes of the Settlement Facility, the Trustee hereby expressly accepts its appointment as trustee of the Settlement Facility and, in such capacity, accepts the delivery of the TTC Settlement Contribution and the TUI Settlement Contribution to the Settlement Facility.

**1.5**  **Release Conditions**.  Subject to <u>Section 4.1</u> and <u>Section 4.3</u>, the Trustee shall release the Trust Funds to resolve or satisfy Asbestos Claims in accordance with, and upon satisfaction of, either of the following conditions (the "***Release Conditions***"), unless, in the case of Aldrich Trust Funds, TTC, in its sole discretion, or, in the case of Murray Trust Funds, TUI, in its sole discretion, waives the requirement (in whole or in part) that either of the Release Conditions be met:

(a)  <u>Release Pursuant to Chapter 11 524(g) Plan</u>.  Subject to <u>Section 4.1</u> and <u>Section 4.3</u>, the Trustee shall release Trust Funds, in whole or in part as necessary, to resolve or satisfy Asbestos Claims by providing funding for a Section 524(g) Trust included in a Chapter 11 524(g) Plan in the Chapter 11 Cases, upon the effectiveness of the Chapter 11 524(g) Plan.  For the avoidance of doubt, the Trust Funds shall not be used to fund costs of administering the Chapter 11 Cases.

(b)  <u>Release Without Chapter 11 524(g) Plan.</u>  Subject to <u>Section 4.1</u> and <u>Section 4.3</u>, if no Chapter 11 524(g) Plan has become effective, then, at any time when neither of the Chapter 11 Cases is pending, the Trustee shall release the Trust Funds, as necessary, to resolve or satisfy Asbestos Claims by paying to the holder of any Asbestos Claim the amount of such Asbestos Claim upon establishment of the amount thereof, by either (i) a Final Order of a court of competent jurisdiction or (ii) a final settlement.

## ARTICLE 2

## TRUSTEE

**2.1**  **Appointment**.  The initial Trustee shall be U.S. Bank National Association.

**2.2**  **Term of Service**.

(a)  <u>Initial Trustee</u>.  The initial Trustee shall serve from the Effective Date, and each successor Trustee named to fill a vacancy shall serve from the date of appointment, until the earlier of (i) its resignation pursuant to <u>Section 2.2(b)</u>, (ii) its removal pursuant to <u>Section 2.2(c)</u>, or (iii) the termination of the Settlement Facility pursuant to <u>Section 6.2</u>.

(b)  <u>Resignation</u>.  The Trustee may resign at any time by written notice to TTC, TUI, Aldrich, and Murray.  Such notice shall specify a date on which such resignation shall take effect, which date shall not be (i) less than ninety (90) days after the date such notice is given, where practicable, or (ii) more than one hundred eighty (180) days after such notice.

(c)  <u>Removal</u>.  The Trustee may be removed in the event that it becomes unable or unwilling to discharge its duties under this Settlement Facility Agreement, or for other good cause.  For such purposes, good cause shall be deemed to include failure to comply with <u>Section 3.2</u>, a consistent pattern of neglect or failure with respect to the performance of the duties

- 4 -

of the Trustee under this Settlement Facility Agreement, or repeated non-attendance at scheduled meetings related to the administration of the Settlement Facility, including those contemplated by Section 3.2(f). Such removal shall be made only by order of the Bankruptcy Court, upon motion by TTC, TUI, Aldrich, or Murray (after consultation with the others).

**2.3** **Appointment of Successor Trustee(s)**.

(a) Vacancy. In the event of a vacancy in the position, TTC, TUI, Aldrich, and Murray, acting jointly, shall nominate a successor Trustee for appointment by the Bankruptcy Court, after notice and opportunity for hearing. Any successor Trustee must meet the qualification requirements of Section 2.7.

(b) Vesting of Powers on Appointment. Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers, and authority of the predecessor Trustee under this Settlement Facility Agreement shall be vested in, and undertaken by, the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of its predecessor Trustee.

**2.4** **Liability of Trustee and Representatives**. None of the Trustee, the Portfolio Manager, the Adviser, or their respective Representatives shall be liable to the Settlement Facility or any other Person in the absence of gross negligence or willful misconduct, determined by a Final Order. The Trustee shall have no liability for any action taken or failure to act by the Portfolio Manager or the Adviser with respect to the investment and reinvestment of the Trust Funds (it being understood that the delegation of authority to the Portfolio Manager does not otherwise alter the Trustee's obligations with respect to holding, administering, and distributing the Trust Funds).

**2.5** **Compensation and Expenses of Trustee**.

(a) Compensation. The Settlement Facility shall pay the Trustee, from the Trust Funds, compensation for its services as a Trustee in the amount and on the terms set forth in Exhibit B. Any adjustment to the Trustee Fees shall require the express written consent of TTC, TUI, Aldrich, and Murray and approval of the Bankruptcy Court; provided, however, that in no event shall the Trustee Fees exceed reasonable compensation, as determined by an independent compensation consultant.

(b) Reimbursement. The Settlement Facility shall reimburse the Trustee, from the Trust Funds, on a monthly basis for all Settlement Facility Expenses incurred and documented by the Trustee.

(c) Report of Amounts Paid. The Trustee shall cause a description of the amounts paid under this Section 2.5 to be included in reports Filed pursuant to Section 3.2(b)(i) of this Settlement Facility Agreement.

**2.6** **Trustee's Employment of Professionals**. The Trustee may, but shall not be required to, retain, or cause the Settlement Facility to retain, and consult with competent counsel, accountants, and other Representatives as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement

NAI-1514651303

Facility in accordance with this Settlement Facility Agreement, including (i) in connection with the release of Trust Funds in accordance with, and upon satisfaction of, the Release Conditions and (ii) the use of Trust Funds to pay Settlement Facility Expenses and other liabilities of the Settlement Facility, including obligations in respect of indemnification and the advancement of expenses under Section 3.3. The written opinion of any such Person on any matter the Trustee reasonably believes is within such Person's professional competence shall be full and complete authorization and protection in respect of any action taken or failure to act by the Trustee under this Settlement Facility Agreement in good faith and in accordance with such opinion, in the absence of gross negligence or willful misconduct by the Trustee, determined by a Final Order.

      2.7    **Trustee Qualifications and Independence**.

      (a)    Qualifications. The Trustee, including the initial Trustee, shall be a Person (and, if an individual, someone over the age of 35) (i) with the appropriate experience and background for the responsibilities of the Trustee under this Settlement Facility Agreement, and (ii) at the time of appointment and at all times during the term of service, independent.

      (b)    Independence. For purposes of this Settlement Facility Agreement, a Person is not independent if such Person (i) is or was an officer, director, employee, or agent of TTC, TUI, Aldrich, Murray, or an Affiliate of TTC, TUI, Aldrich, or Murray, or otherwise is or was an "insider" (as such term is defined in the Bankruptcy Code) with respect to TTC, TUI, Aldrich, Murray, or an Affiliate of TTC, TUI, Aldrich, or Murray; or (ii) is or was an investment banker, financial advisor, counsel, accountant, or other professional advisor for TTC, TUI, Aldrich, Murray, or an Affiliate of TTC, TUI, Aldrich, or Murray, or an officer, director, employee, or agent of any Person that provides or provided investment banking, financial advisory, legal, accounting, or other professional services to TTC, TUI, Aldrich, Murray, or an Affiliate of TTC, TUI, Aldrich, or Murray. For the avoidance of doubt, U.S. Bank National Association, or any successor trustee, and U.S. Bancorp  Asset Management, Inc. may provide other unrelated commercial banking services to TTC, TUI, Aldrich, Murray, or an Affiliate of TTC, TUI, Aldrich, or Murray except as expressly prohibited in this Section 2.7(b) and still be independent for purposes of this Settlement Facility Agreement.

      2.8    **Bond**. The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## ARTICLE 3

## POWERS, TRUST ADMINISTRATION, AND REPORTING

      3.1    **Powers**.

      (a)    Duties and Powers. The Trustee is and shall serve as trustee to the Settlement Facility in accordance with the provisions of this Settlement Facility Agreement and North Carolina Uniform Trust Code, N.C.G.S. Sections 36C-1-101 et seq. The Trustee shall, at all times, administer the Settlement Facility in accordance with this Article 3. Subject to the limitations set forth in this Settlement Facility Agreement, the Trustee shall have the power to take any and all actions that, in its reasonable judgment, are necessary, advisable, or appropriate to

NAI-1514651303

effectuate the purposes of the Settlement Facility, including each power expressly granted in this Section 3.1, any power reasonably incidental to each such power, and any power of the Trustee now or hereafter permitted under applicable law.

(b)    Court Approval Not Required.  Except as required by applicable law or as otherwise specified in this Settlement Facility Agreement, the Trustee need not obtain an order or approval of the Bankruptcy Court or any other court in the exercise of any power or discretion conferred under this Settlement Facility Agreement.

(c)    Administrator.  The Trustee (i) shall be, or shall appoint a third party to be, the "administrator" of the Settlement Facility within the meaning of Treas. Reg. § 1.468B-2(k), (ii) shall ensure that the Settlement Facility meets all requirements to qualify as a QSF, and (iii) shall take no action that would cause, or could reasonably be expected to cause, the Settlement Facility to fail to qualify as a QSF.

(d)    Powers.  Without limiting the generality of Section 3.1(a), and except as otherwise expressly limited in this Settlement Facility Agreement, the Trustee shall have the power to:

(i)    hold, administer, and distribute the Trust Funds in accordance with the terms of this Settlement Facility Agreement, including the release of Trust Funds in accordance with Section 1.5 to resolve or satisfy Asbestos Claims;

(ii)    subject to Section 4.1 and Section 4.2:  (A) invest and reinvest the Trust Funds in accordance with the terms of this Settlement Facility Agreement; (B) delegate authority with respect to the investment and reinvestment of all or any portion of the Trust Funds in accordance with the terms of this Settlement Facility Agreement; (C) pay, from the Trust Funds, compensation to, and reimburse, from the Trust Funds, reasonable out-of-pocket administrative and other expenses, costs, and fees (including reasonable attorneys' fees and costs) incurred by, the Portfolio Manager, and the Adviser, which amounts payable shall constitute Settlement Facility Expenses, and (D) cause the Portfolio Manager and/or the Adviser to liquidate invested Trust Funds as necessary to make distributions of, and payments from, the Trust Funds in accordance with this Settlement Facility Agreement;

(iii)    administer the Settlement Facility in accordance with this Settlement Facility Agreement;

(iv)    pay, from the Trust Funds, subject to Section 4.1, any and all Settlement Facility Expenses and any and all other liabilities of the Settlement Facility in accordance with this Settlement Facility Agreement;

(v)    adopt and amend by-laws and other rules and procedures not inconsistent with this Settlement Facility Agreement as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement Facility;

- 7 -

(vi)    subject to <u>Section 4.1</u>, establish such accounts and reserves within the Trust Funds as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement Facility;

(vii)    sue, defend, and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding or legal action related in any way to the Settlement Facility or this Settlement Facility Agreement and, subject to the terms of <u>Section 3.3</u>, defend, and pay, from the Trust Funds, subject to <u>Section 4.1</u>, all expenses, costs, and fees (including reasonable attorneys' fees and costs) for the defense of any and all claims, proceedings, and legal actions against the Trustee or the Settlement Facility related to the administration of the Settlement Facility and the actions of the Trustee;

(viii)    retain, or cause the Settlement Facility to retain, counsel, accountants, and other Representatives of the Settlement Facility as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement Facility and pay, from the Trust Funds, subject to <u>Section 4.1</u>, such counsel, accountants, and other Representatives reasonable compensation, including compensation for services rendered before the execution of this Settlement Facility Agreement;

(ix)    receive, from the Trust Funds, compensation and reimbursement of Settlement Facility Expenses, and indemnification and advancement of expenses, in accordance with the terms of this Settlement Facility Agreement;

(x)    execute and deliver, or cause the Settlement Facility to execute and deliver, such agreements, instruments, and other documents as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement Facility;

(xi)    enter into, or cause the Settlement Facility to enter into, such arrangements with third parties as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration the Settlement Facility;

(xii)    cause the Settlement Facility to indemnify and advance expenses to Indemnified Persons in accordance with <u>Section 3.3</u> using the Trust Funds, subject to <u>Section 4.1</u>, and, if applicable, insurance;

(xiii)    purchase, using Trust Funds, subject to <u>Section 4.1</u>, insurance for the Settlement Facility and Indemnified Persons;

(xiv)    consult with TTC, TUI, Aldrich, and Murray in accordance with <u>Section 3.2(f)</u> and otherwise at such times and with respect to such issues as the Trustee, in its reasonable judgment, deems necessary, desirable, or appropriate in connection with the administration of the Settlement Facility;

(xv)    establish claims handling agreements and other arrangements as may be appropriate with respect to the Release Conditions;

- 8 -

(xvi) cause the Settlement Facility to obtain a federal employer identification number and relevant state tax identification numbers, communicate with the IRS and state and local taxing authorities on behalf of the Settlement Facility, cause the Settlement Facility to pay, from the Trust Funds, subject to Section 4.1, required taxes, and cause the Settlement Facility to file all required tax returns;

(xvii) if applicable, establish procedures for Medicare reporting and to protect the Settlement Facility from Medicare reimbursement claims; and

(xviii) do all other acts and things consistent with the provisions of this Settlement Facility Agreement, a Chapter 11 524(g) Plan, and applicable law as the Trustee, in its reasonable judgment, deems necessary, desirable, or appropriate in connection with the administration of the Settlement Facility.

No provision in this Settlement Facility Agreement shall be construed to require the Trustee to expend or risk its own funds or otherwise incur personal financial liability in the performance of its duties and obligations or in the exercise of its rights and powers.

(e)     Certain Prohibitions.  The Trustee shall not have the power to borrow money or guarantee any debt of any other Person or exercise any common law or statutory right (e.g., decanting, merger, or otherwise) to effectuate a modification or amendment of this Settlement Facility Agreement except as specifically permitted by Section 6.3.

**3.2     General Administration and Obligations of the Trustee.**

(a)     Tax Returns and Reports.

(i)     The Trustee shall cause the Settlement Facility to obtain a federal employer identification number and relevant state tax identification numbers, and to file all tax returns and pay, from the Trust Funds, subject to Section 4.1, all taxes as required under the Code and Treasury Regulations and any state, local, or other law.  The Trustee shall cause the Settlement Facility to comply with the provisions of Treas. Reg. § 1.468B-2 and all reporting and withholding obligations applicable to the Settlement Facility under the Code, Treasury Regulations, and any state, local, or other law.  The Trustee shall provide a draft of any required tax returns of the Settlement Facility to TTC, TUI, Aldrich, and Murray at least thirty (30) days before such returns are to be filed, and shall consider any reasonable comments or suggestions made by TTC, TUI, Aldrich or Murray before filing such tax return.

(ii)     The Trustee shall cause the Settlement Facility, within seventy-five (75) days after the end of each calendar year (or earlier if required by law), to prepare and deliver, including by electronic means, such information as required by law to enable payees to complete and file each of their respective federal, state, and local income and other tax returns.

(iii)     The Trustee and all parties to this Settlement Facility Agreement agree to reasonably cooperate in conducting any matters involving taxes, including the preparation of any necessary tax returns or reports, the prompt furnishing of information

- 9 -

necessary to timely prepare tax returns or reports, the administration of any tax audit or review, and the conduct of any tax contest. A party required to provide any tax document or information shall do so as soon as possible within fifteen (15) business days of such request, unless there are extenuating circumstances reasonably preventing delivery of such information within fifteen (15) business days.

(b)    <u>Financial and Claim Reports</u>.  The Trustee shall cause to be prepared and Filed with the Bankruptcy Court the following reports:

(i)    <u>Financial Reports</u>.  As soon as available, but no later than one hundred twenty (120) days following the end of each calendar year, the Trustee shall cause to be prepared an annual report containing financial statements of the Settlement Facility (including a balance sheet of the Settlement Facility as of the end of such calendar year, a statement of operations for such calendar year, and the information required by <u>Section 2.5(c)</u>) audited by a firm of independent registered public accountants selected by the Trustee and accompanied by an opinion of such firm that such financial statements present fairly in all material respects the financial position of the Settlement Facility as of such year end and the results of its operations as of the year then ended in conformity with accounting principles generally accepted in the United States.

(ii)    <u>Claim Reports</u>.  As soon as available, but, in any event, no less frequently than quarterly, the Trustee shall cause to be prepared a report that provides a summary of the number and amount of payments in respect of Asbestos Claims requested from and paid by the Settlement Facility during such quarter, if any, with all such information classified by disease type and designated as being in respect of Aldrich Asbestos Claims or Murray Asbestos Claims, as applicable.

(c)    <u>Filing of Financial and Claim Reports</u>.  Pursuant to section 107(a) of the Bankruptcy Code, and so long as the Chapter 11 Cases are pending, all materials required by <u>Section 3.2(b)</u> shall be served on TTC, TUI, Aldrich, and Murray and Filed in the Chapter 11 Cases on the docket of the Bankruptcy Court and, except for redactions reasonably necessary to comply with applicable privacy laws, shall be public records and open to examination by any Person at reasonable times without charge.  Subsequent to the closing of the Chapter 11 Cases, all materials required by <u>Section 3.2(b)</u> shall be Filed with Bankruptcy Court in such manner as the Bankruptcy Court shall order.

(d)    <u>Trust Fund Summary</u>.  Each calendar quarter, the Trustee shall cause to be prepared and delivered to TTC, TUI, Aldrich, and Murray a summary of the Trust Funds and their then current value, with such summary separately showing Aldrich Trust Funds and Murray Trust Funds.  For so long as the Chapter 11 Cases are pending, Aldrich and Murray shall, upon their receipt of any such summary, deliver a copy thereof to counsel for any official committee of asbestos claimants and any future claimants' representative appointed in the Chapter 11 Cases on a confidential basis under the protective order entered in the Chapter 11 Cases.

(e)    <u>Budget and Cash Flow Projections</u>.  Before the commencement of each calendar year, the Trustee shall cause to be prepared and delivered to TTC, TUI, Aldrich, and Murray a budget and cash flow projections for the Settlement Facility covering such calendar year.

- 10 -

For so long as the Chapter 11 Cases are pending, Aldrich and Murray shall, upon their receipt of any such budget or cash flow projections, deliver a copy thereof to counsel for any official committee of asbestos claimants and any future claimants' representative appointed in the Chapter 11 Cases on a confidential basis under the protective order entered in the Chapter 11 Cases.

(f)    Consultation with TTC, TUI, Aldrich, and Murray.    The Trustee shall consult with TTC, TUI, Aldrich, and Murray on the administration of the Settlement Facility.  The Trustee shall meet with TTC, TUI, Aldrich, and Murray not fewer than four (4) times each calendar year, on such dates and at such times as mutually agreed to by the Trustee, TTC, TUI, Aldrich, and Murray, to discuss general matters regarding the administration of the Settlement Facility and to review payments in respect of Asbestos Claims requested from and paid by the Settlement Facility and the value of the Trust Funds.

### 3.3    Indemnification of the Trustee.

(a)    Indemnification.  The Settlement Facility shall defend, indemnify, and hold harmless, using the Trust Funds, subject to Section 4.1, and, if applicable, insurance, the Trustee, any former Trustee, the Portfolio Manager, the Adviser, and any Representative of the Trustee, the Settlement Facility, the Portfolio Manager, or the Adviser (collectively, the "***Indemnified Persons***") to the fullest extent available under law against any and all liabilities, expenses, claims, damages, or losses (including reasonable attorneys' fees and costs) incurred by such Indemnified Person in connection with any judicial, administrative, arbitrative, or other proceeding or legal action on account of any act or failure to act in such Indemnified Person's capacity as trustee of the Settlement Facility or the Representative of such trustee, as applicable; provided, however, that the Settlement Facility shall not be obligated to so indemnify any such Indemnified Person for any liabilities, expenses, claims, damages, or losses (including reasonable attorneys' fees and costs) due to any act or failure to act by such Person constituting gross negligence or willful misconduct, determined by Final Order.

(b)    Costs and Expenses.  Reasonable expenses, costs, and fees (including reasonable attorneys' fees and costs) incurred by or imposed on any Indemnified Person in connection with any proceeding or legal action contemplated by this Section 3.3 shall be paid by the Settlement Facility, using the Trust Funds, subject to Section 4.1, and, if applicable, insurance, in advance of the final disposition thereof; provided, however, that such reasonable expenses, costs, and fees (including reasonable attorneys' fees and costs) shall not be advanced until such Indemnified Person shall have delivered a written undertaking to the Settlement Facility to repay such reasonable expenses, costs, and fees (including reasonable attorneys' fees and costs) so advanced in the event that it shall be determined by Final Order that such Indemnified Person is not entitled to be indemnified by the Settlement Facility with respect thereto.

(c)    Insurance.  The Trustee, using the Trust Funds, subject to Section 4.1, shall purchase and maintain reasonable amounts and types of insurance for the Settlement Facility and any Indemnified Person.

(d)    Payment.  Any claim for indemnification or advancement of expenses from the Settlement Facility pursuant to Section 3.3 shall be satisfied from the Trust Funds, subject to

- 11 -

<u>Section 4.1</u>, and, if applicable, insurance. Nothing in this Settlement Facility Agreement is intended to be, nor shall it be construed as, an admission as to the validity or enforceability of any particular claim for indemnification or advancement of expenses. The indemnification provided by this <u>Section 3.3</u> shall survive termination of this Settlement Facility Agreement and resignation or removal of the Trustee, Portfolio Manager, or Adviser.

**ARTICLE 4**

**<u>ACCOUNTS, INVESTMENTS, AND PAYMENTS</u>**

**4.1    <u>Accounts</u>**.   The Trustee may, from time to time, establish and maintain such accounts and reserves within the Trust Funds as the Trustee, in its reasonable judgment, deems necessary, desirable, or appropriate in connection with the administration of this Settlement Facility, and may restrict the use of Trust Funds in any such account or reserve in any manner consistent with the provisions of this Settlement Facility Agreement.  Without limiting the generality of the foregoing, the Trustee shall at all times segregate the Aldrich Trust Funds and the Murray Trust Funds and, notwithstanding anything contained in this Settlement Facility Agreement to the contrary, shall restrict the use of the Aldrich Trust Funds and Murray Trust Funds as follows:

(a)    <u>Aldrich Trust Funds</u>.   The Aldrich Trust Funds shall be used solely to (i) resolve or satisfy Aldrich Asbestos Claims in accordance with <u>Section 1.5</u> or (ii) pay the Aldrich Share of any and all Settlement Facility Expenses and other liabilities of the Settlement Facility.

(b)    <u>Murray Trust Funds</u>.   The Murray Trust Funds shall be used solely to (i) resolve or satisfy Murray Asbestos Claims in accordance with <u>Section 1.5</u> or (ii) pay the Murray Share of any and all Settlement Facility Expenses and other liabilities of the Settlement Facility.

**4.2    <u>Investments</u>**.

(a)    <u>Investment Decisions</u>.   Pursuant to North Carolina Uniform Trust Code Section 36C-8-807(a), the Trustee shall retain the Portfolio Manager, for reasonable compensation and expense reimbursement to be negotiated with the Trustee, to manage the Trust Funds and make all investment decisions with respect to the Trust Funds unless and until the Trust Funds (i) are released, as and to the extent provided in <u>Section 1.5</u>, or (ii) revert to TTC or TUI, as and only to the extent provided in <u>Section 6.2(b)</u> and <u>Section 6.2(c)</u>.  The Portfolio Manager shall be governed by, and act in accordance with, the Prudent Investor Rule.

(b)    <u>Investment Guidelines</u>.   The Trust Funds shall be invested in accordance with the investment guidelines set forth on <u>Exhibit A</u> (the "***Investment Guidelines***").  The Parties agree that the Investment Guidelines requirements comply with the Prudent Investor Rule.

(c)    <u>Delegation</u>.   Notwithstanding anything contained in this Settlement Facility Agreement to the contrary, as of the Effective Date, the authority of the Trustee to invest and reinvest the Trust Funds shall be delegated to the Portfolio Manager pursuant to this <u>Section 4.2</u> and such delegation of authority to the Portfolio Manager shall not be modified or amended except in accordance with <u>Section 6.3</u>.  The Portfolio Manager shall be entitled to retain the Adviser to assist the Portfolio Manager in discharging its delegated authority hereunder.  The Trustee shall

- 12 -

have no liability for any action taken or failure to act by the Portfolio Manager or the Adviser with respect to the investment and reinvestment of the Trust Funds (it being understood that the delegation of authority to the Portfolio Manager or the Adviser does not otherwise alter the Trustee's obligations with respect to holding, administering, and distributing the Trust Funds).

**4.3** **Payments**.  All Settlement Facility Expenses, and any and all other liabilities of the Settlement Facility, shall be payable from the Trust Funds, subject to Section 4.1, and, if applicable, insurance.  Prior, and as a condition, to releasing Trust Funds under Section 1.5, Section 6.2(b), or Section 6.2(c), the Trustee shall receive written instructions for such release: (a) in the case of Aldrich Trust Funds, from Aldrich for any release pursuant to Section 1.5(a) or from TTC for any other release; or (b) in the case of Murray Trust Funds, from Murray for any release pursuant to Section 1.5(a) or from TUI for any other release.  The Trustee may not release Trust Funds without receiving such written instructions.  Any such instructions shall specify (i) the amount to be released, (ii) the basis for such release, and (iii) the name of, and wire transfer instructions for, each payee.  The Trustee shall have no obligation to verify the information contained in such written instruction and shall have no liability for releasing Trust Funds in reliance on such written instruction.  The foregoing shall not, in any way, alter, modify, or limit the terms or conditions pursuant to which Trust Funds shall be released under Section 1.5, Section 6.2(b), or Section 6.2(c).

## ARTICLE 5

## OBLIGATIONS OF TTC AND TUI

**5.1** **Settlement Contributions**.  In accordance with Section 1.3, on the Effective Date: (a) TTC shall be required to pay the TTC Settlement Contribution to the Settlement Facility and (b) TUI shall be required to pay the TUI Settlement Contribution to the Settlement Facility.

**5.2** **Condition Precedent**.  Notwithstanding anything contained in this Settlement Facility Agreement to the contrary, TTC shall have no obligation to fund the TTC Settlement Contribution and TUI shall have no obligation to fund TUI Settlement Contribution unless and until the Effectiveness Condition shall have been satisfied; provided, however, that TTC and TUI jointly, in their sole discretion, may waive (in whole or in part) the requirement that the Effectiveness Condition be satisfied.

## ARTICLE 6

## GENERAL PROVISIONS

**6.1** **Irrevocability**.  The trust created by this Settlement Facility Agreement is irrevocable and may only be amended or modified pursuant to Section 6.3.

**6.2** **Termination**.

(a) Automatic Termination.  The Settlement Facility shall automatically terminate on the date ninety (90) days after the first to occur of the following events (the "***Termination Date***"):

- 13 -

(i)      a determination by the Bankruptcy Court that all Asbestos Claims have been paid or otherwise satisfied; or

(ii)     the issuance by the Bankruptcy Court of an order dissolving or otherwise terminating the Settlement Facility.

(b)      <u>Reversion on Termination</u>.  As promptly as reasonably practicable after the Termination Date, after (i) payment of all Settlement Facility Expenses and any and all other liabilities of the Settlement Facility, and after allowing for reserves for final trust administration expenses, including indemnity, in each case subject to <u>Section 4.1</u>, and (ii) liquidation of all investments then held by the Settlement Facility, all remaining Aldrich Trust Funds in the Settlement Facility estate shall revert to TTC and all Murray Trust Funds in the Settlement Facility estate shall revert to TUI.  Notwithstanding any other provision of this Settlement Facility Agreement, this <u>Section 6.2(b)</u> cannot be modified or amended.

(c)      <u>Partial Reversion Prior to Termination</u>.  If, at any time prior to the Termination Date, a determination is made by the Bankruptcy Court that all Aldrich Asbestos Claims have been paid or otherwise satisfied, after payment of all Settlement Facility Expenses and any and all other liabilities of the Settlement Facility incurred through the date of such determination, and after allowing for reserves for final trust administration expenses, including indemnity, accrued through the date of such determination, in each case subject to <u>Section 4.1</u>, then, after liquidation of all investments of Aldrich Trust Funds held by the Settlement Facility, all remaining Aldrich Trust Funds in the Settlement Facility shall revert to TTC.  Similarly, if, at any time prior to the Termination Date, a determination is made by the Bankruptcy Court that all Murray Asbestos Claims have been paid or otherwise satisfied, after payment of all Settlement Facility Expenses and any and all other liabilities of the Settlement Facility incurred through the date of such determination, and after allowing for reserves for final trust administration expenses, including indemnity, accrued through the date of such determination, in each case subject to <u>Section 4.1</u>, then, after liquidation of all investments of Murray Trust Funds held by the Settlement Facility, all remaining Murray Trust Funds in the Settlement Facility shall revert to TUI.  Notwithstanding any other provision of this Settlement Facility Agreement, this <u>Section 6.2(c)</u> cannot be modified or amended.

**6.3     <u>Amendments</u>**.  The Bankruptcy Court, upon a motion of the Trustee, with the express written consent of TTC, TUI, Aldrich, and Murray, may modify or amend this Settlement Facility Agreement, other than <u>Section 6.2(b)</u> and <u>Section 6.2(c)</u>, if such modification or amendment is necessary to achieve the purposes of the Settlement Facility.  Except as modified or amended by an order of the Bankruptcy Court, no modification or amendment of this Settlement Facility Agreement may be made.  No modification or amendment of this Settlement Facility Agreement shall limit any obligations of TTC under the TTC/Aldrich Funding Agreement or of TUI under the TUI/Murray Funding Agreement, except to the extent such limitation is consistent with the limitation on such obligations set forth in <u>Section 1.3(b)(v)</u> or <u>Section 1.3(c)(v)</u>, as applicable.

**6.4     <u>Severability</u>**.  Should any provision in this Settlement Facility Agreement, other than <u>Section 1.5</u>, <u>Section 4.3</u>, <u>Section 6.2(b)</u>, and <u>Section 6.2(c)</u>, be determined to be

- 14 -

unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Settlement Facility Agreement.

      **6.5**    **Notices**.  Any notices or other report required or permitted by this Settlement Facility Agreement must be in (a) writing and is deemed given (i) when delivered personally to the recipient, (ii) five (5) days after deposit in the U.S. mail, mailed by registered or certified mail, return receipt requested, postage prepaid, (iii) if sent by email, when the communication is received at the designated addresses, or (iv) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); and (b) addressed to the other Persons at the addresses set forth below, or at such other address as such Person now designates from time to time in writing in accordance with this Section 6.5.

      To the Settlement Facility through the Trustee:

          U.S. Bank National Association
          60 Livingston Ave
          Saint Paul, MN 55107-2292
          Attention:  Timothy G. Pillar, Senior Vice President
          Email:  timothy.pillar@usbank.com

      With a copy to:

          Greenberg Traurig, LLP
          90 South Seventh Street, Suite 3500
          Minneapolis, MN 55402
          Attention:  Michael B. Fisco
          Email:  fiscom@gtlaw.com

      To TTC:

          Trane Technologies Company LLC
          800-E Beaty Street
          Davidson, North Carolina 28036
          Attention:  Richard E. Daudelin, Treasurer
          Email:  richard_daudelin@tranetechnologies.com

      With a copy to:

          McCarter & English LLP
          Worldwide Plaza
          825 Eighth Ave., 31st Floor
          New York, New York 10019
          Attention:  Gregory J. Mascitti
          Email:  gmascitti@mccarter.com

      To TUI:

          Trane U.S. Inc.
          800-E Beaty Street

- 15 -

Davidson, North Carolina 28036
Attention:  Richard E. Daudelin, Treasurer
Email:  richard_daudelin@tranetechnologies.com

With a copy to:

McCarter & English LLP
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, New York 10019
Attention:  Gregory J. Mascitti
Email:  gmascitti@mccarter.com

To Aldrich:

Aldrich Pump LLC
800-E Beaty Street
Davidson, North Carolina 28036
Attention:  Amy Roeder, Chief Financial Officer and Treasurer
Email:  amy_roeder@tranetechnologies.com

With a copy to:

Jones Day
77 West Wacker
Chicago, Illinois 60601
Attention:  Brad B. Erens
Email:  bberens@jonesday.com

To Murray:

Murray Boiler LLC
800-E Beaty Street
Davidson, North Carolina 28036
Attention:  Amy Roeder, Chief Financial Officer and Treasurer
Email:  amy_roeder@tranetechnologies.com

With a copy to:

Jones Day
77 West Wacker
Chicago, Illinois 60601
Attention:  Brad B. Erens
Email:  bberens@jonesday.com

**6.6    Successors and Assigns**.  The provisions of this Settlement Facility Agreement shall be binding upon and inure to the benefit of the Trustee, TTC, TUI, Aldrich, and Murray and their respective successors and assigns, except that the Trustee may not assign or otherwise transfer

- 16 -

any of the Trustee's rights or obligations under this Settlement Facility Agreement other than in accordance with <u>Article 2</u>.

      **6.7**    <u>**Entire Agreement; No Waiver**</u>.  The entire agreement of the Parties relating to the subject matter of this Settlement Facility Agreement is contained in this Settlement Facility Agreement, including the Exhibits attached to this Settlement Facility Agreement, and this Settlement Facility Agreement and such Exhibits supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power, or privilege under this Settlement Facility Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege under this Settlement Facility Agreement preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies in this Settlement Facility Agreement are cumulative and are not exclusive of rights under law or in equity.

      **6.8**    <u>**Headings**</u>.  The headings used in this Settlement Facility Agreement are inserted for convenience only, shall not constitute a portion of this Settlement Facility Agreement, and shall not in any manner affect the construction of the provisions of this Settlement Facility Agreement.

      **6.9**    <u>**Governing Law**</u>.  This Settlement Facility Agreement shall be governed by, and construed in accordance with, the laws of the State of North Carolina without regard to its conflict of laws principles.

      **6.10**    <u>**Dispute Resolution**</u>.  Any disputes that arise under this Settlement Facility Agreement shall be resolved by the Bankruptcy Court, except as otherwise expressly provided in this Settlement Facility Agreement.

      **6.11**    <u>**Counterpart Signatures**</u>.  This Settlement Facility Agreement may be executed in any number of counterparts, each of which shall constitute an original, and all such counterparts shall together constitute one and the same instrument.

**ARTICLE 7**

<u>**DEFINITIONS**</u>

      "***Adviser***" means an investment manager retained and appointed by the Portfolio Manager to assist the Portfolio Manager with its exercise of its delegated authority hereunder to invest and reinvest Trust Funds pursuant to <u>Section 4.2</u> of this Settlement Facility Agreement.  The initial Adviser shall be U.S. Bancorp Asset Management, Inc.

      "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code.

      "***Aldrich***" has the meaning set forth in the recitals.

      "***Aldrich Asbestos Claims***" has the meaning set forth in the recitals.

      "***Aldrich Share***" means an amount, expressed as a percentage, equal to (a) the TTC Settlement Contribution, divided by (b) the sum of the TTC Settlement Contribution and the TUI Settlement Contribution.

- 17 -

"***Aldrich Trust Funds***" means the TTC Settlement Contribution together with (a) any future contributions to the Settlement Facility designated for use to resolve or satisfy Aldrich Asbestos Claims in accordance with Section 1.5 and (b) any earnings on the TTC Settlement Contribution or such future contributions.

"***Asbestos Claim***" means current and future asbestos-related claims asserted against or related to Aldrich or Murray, as applicable, including any claim of death or injury in any way related to asbestos or asbestos-containing materials used, stored, installed, or handled in connection with the operations of such entity or any of its predecessors or otherwise present at any premises owned or operated at any time by such entity or any of its predecessors, whether such claim is brought by the injured party, his, her or its estate or personal representative, or his or her family members based on any theory of liability, including loss of consortium, wrongful death, premises liability, or similar theories.

"***Bankruptcy Code***" means title 11 of the United States Code, sections 101–1532, as now in effect or as hereafter amended.

"***Bankruptcy Court***" means the United States Bankruptcy Court for the Western District of North Carolina, or, if such court ceases to exercise jurisdiction, the court or adjunct of that court that exercises jurisdiction over the Chapter 11 Cases.

"***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of Title 28 of the United States Code, together with (a) the Rules of Practice and Procedures of the United States Bankruptcy Court for the Western District of North Carolina as now in effect or as the same may from time to time hereafter be amended and (b) the *Amended Standing Order of Reference* from the United States District Court for the Western District of North Carolina dated as of April 14, 2014.

"***Business Day***" means any day that is not a Saturday, Sunday, or "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"***Cash***" means lawful currency of the United States.

"***Chapter 11 524(g) Plan***" means a Section 524(g) Plan (as defined in the TTC/Aldrich Funding Agreement or the TUI/Murray Funding Agreement, as applicable, and including all exhibits and supplements of such plan of reorganization).

"***Chapter 11 Cases***" means the jointly administered cases pending for Aldrich and Murray under chapter 11 of the Bankruptcy Code in the Bankruptcy Court under case numbers 20-30608 (JCW) and 20-30609 (JCW); provided, however, that, where the context requires, "***Chapter 11 Cases***" shall be deemed to refer to the individual chapter 11 case of Aldrich or Murray, as appropriate.

"***Code***" means the Internal Revenue Code of 1986, as amended.

"***District Court***" means the United States District Court for the Western District of North Carolina.

"***Effectiveness Condition***" means (a) an order has been entered by the Bankruptcy Court approving this Settlement Facility Agreement, establishing the Settlement Facility, and acknowledging and determining that the Bankruptcy Court shall be the supervisory court with respect to the Settlement Facility and shall retain jurisdiction over the Settlement Facility for the life of the Settlement Facility and (b) such order has become a Final Order.

"***Effective Date***" means the date determined by TUI and TTC following the date on which the Effectiveness Condition shall have been (a) satisfied or (b) waived by TTC and TUI; provided, however, that the date so determined shall be on or before: (i) if the date on which the Effectiveness Condition is so satisfied or waived occurs on or before January 14, 2022, January 31, 2022 or (ii) if the date on which the Effectiveness Condition is so satisfied or waived occurs after January 14, 2022, the date that is 10 Business Days after the date on which the Effectiveness Condition is so satisfied or waived.

"***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"***File***," "***Filed***," or "***Filing***" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"***Final Order***" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court, the District Court, or any state, provincial, or other federal court or other tribunal having jurisdiction over the subject matter of such judgment, order, ruling, or other decree, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (a) the time to appeal or petition for review, rehearing, or certiorari or move for reargument has expired or shall have been waived in writing in form and substance satisfactory to TTC and TUI or the Trustee, as applicable, and as to which no appeal or petition for review, rehearing, or certiorari or motion for reargument is pending; or (b) any appeal or petition for review, rehearing, certiorari, or reargument has been finally decided and no further appeal or petition for review, rehearing, certiorari, or reargument can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

"***Funding Agreements***" has the meaning set forth in the recitals.

"***Indemnified Persons***" has the meaning set forth in Section 3.3(a).

"***Investment Guidelines***" has the meaning set forth in Section 4.2(b).

"***Murray***" has the meaning set forth in the recitals.

"***Murray Asbestos Claims***" has the meaning set forth in the recitals.

"***Murray Share***" means an amount, expressed as a percentage, equal to (a) the TUI Settlement Contribution, divided by (b) the sum of the TTC Settlement Contribution and the TUI Settlement Contribution.

- 19 -

"***Murray Trust Funds***" means the TUI Settlement Contribution together with (a) any future contributions to the Settlement Facility designated for use to resolve or satisfy Murray Asbestos Claims in accordance with <u>Section 1.5</u>  and (b) any earnings on the TUI Settlement Contribution or such future contributions.

"***Parties***" or "***Party***" means, collectively or individually, as applicable, TTC, TUI, Aldrich, Murray, and the Trustee.

"***Person***" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit or other Entity, and any successors or assigns of any of the foregoing.

"***Portfolio Manager***" means TTC or its designee, which may be an Affiliate of TTC.

"***Prudent Investor Rule***" means the "prudent investor rule" set forth in North Carolina Uniform Trust Code Section 36C-9-901 et seq., as amended.

"***Qualified Settlement Fund***" or "***QSF***" means a qualified settlement fund that satisfies the requirements of Treas. Reg. § 1.468B-1(c).

"***Release Conditions***" has the meaning set forth in <u>Section 1.5</u>.

"***Representatives***" means, when used with respect to the Trustee, the Settlement Facility, or the Portfolio Manager, (a) any Person retained by it in connection with this Settlement Facility Agreement, and its successors and assigns, but only in their capacities as such; and (b) the past, present, and future managers, directors, members, shareholders, affiliates, trustees, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, and other agents, representatives, and professionals of it or any Person identified in clause (a), and their respective successors and assigns, in each case solely in their capacities as such.

"***Section 524(g) Trust***" means a trust established under a Chapter 11 524(g) Plan, which trust must be a new trust the transfer of Trust Funds to which would be treated as a transfer to resolve or satisfy Asbestos Claims within the meaning of Treas. Reg. § 1.468B-1(c).

"***Settlement Facility***" means the North Carolina trust created as a QSF pursuant to this Settlement Facility Agreement.

"***Settlement Facility Accounts***" means such accounts established by the Trustee pursuant to <u>Section 4.1</u> or the Portfolio Manager pursuant to <u>Section 4.2</u>.

"***Settlement Facility Agreement***" has the meaning set forth in the introductory paragraph.

"***Settlement Facility Expenses***" means the reasonable out-of-pocket administrative and other expenses, costs, and fees (including reasonable attorneys' fees and costs) incurred by the Trustee or the Settlement Facility in connection with the administration of the Settlement Facility, which shall include, without limitation, the Trustee Fees and compensation payable to and

- 20 -

permitted expenses incurred by the Portfolio Manager and the Adviser.  For the avoidance of doubt, Settlement Facility Expenses shall not include any expenses, costs, or fees associated with administering the Chapter 11 Cases.

"***Termination Date***" has the meaning set forth in <u>Section 6.2(a)</u>.

"***Treasury Regulations***" means, and all "***Treas. Reg. §***" references are to, the Treasury regulations promulgated under the Code.

"***Trustee***" means the Person named on the signature page of this Settlement Facility Agreement, and any Person appointed as successor trustee pursuant to the provisions of this Settlement Facility Agreement.

"***Trustee Fees***" has the meaning set forth in <u>Section 2.5(a)</u>.

"***Trust Funds***" means collectively the Aldrich Trust Funds and the Murray Trust Funds.

"***TTC***" has the meaning set forth in the recitals.

"***TTC/Aldrich Funding Agreement***" has the meaning set forth in the recitals.

"***TTC Settlement Contribution***" has the meaning set forth in the recitals.

"***TUI***" has the meaning set forth in the recitals.

"***TUI/Murray Funding Agreement***" has the meaning set forth in the recitals.

"***TUI Settlement Contribution***" has the meaning set forth in the recitals.

*[Signature page follows.]*

**IN WITNESS WHEREOF**, the parties have executed this Settlement Facility Agreement as of the date first written above.

**TRANE TECHNOLOGIES LLC**, a Delaware limited liability company

By: _____
Name: _____
Title: _____


**TRANE U.S. INC.**, a Delaware corporation

By: _____
Name: _____
Title: _____


**ALDRICH PUMP LLC**, a North Carolina limited liability company

By: _____
Name: _____
Title: _____


**MURRAY BOILER LLC**, a North Carolina limited liability company

By: _____
Name: _____
Title: _____


**U.S. BANK NATIONAL ASSOCIATION**, as Trustee

By: _____
Name: _____
Title: _____

\*      \*      \*

## EXHIBIT A TO SETTLEMENT FACILITY AGREEMENT

### INVESTMENT GUIDELINES

### Permitted Investments

a.   Direct obligations of the United States Government or of agencies of the U.S. Government backed by the full faith and credit of the U.S. Government.

**Diversification requirements:**        None

b.   Money Market Funds:

   i.    Money Market Funds or Institutional Liquidity Funds that carry a rating of AAA/Aaa by either Standard and Poor's or Moody's, or carry a comparable rating issued by a leading local credit rating agency.

   ii.   U.S. Money Market Funds must meet the guidelines established under United States Securities and Exchange Commission (SEC) Rule 2a-7 of the Investment Company Act of 1940.

**Diversification requirements:** Lesser of $100 million or 2 ½ % of assets under management in a single fund.  US Treasury funds shall be limited to 5% of assets under management.

### Asset Types/Vehicles Explicitly Prohibited

- Non-USD Denominated

- Foreign Currency

- Repo and Reverse Repurchase Agreements (except as may be included in Permitted Investments)

- Derivatives

- The debt of any Person who is related to TTC or TUI within the meaning of section 267(b) or section 707(b)(1) of the Internal Revenue Code of 1986, as amended.

- Any asset the acquisition or holding of which would cause the Aldrich/Murray Settlement Facility to fail to qualify as a QSF.

## EXHIBIT B TO SETTLEMENT FACILITY AGREEMENT

**TRUSTEE FEE AGREEMENT**

**See attached.**

NAI-1514651303