## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| ALDRICH PUMP LLC, *et al.*, | Case No. 20-30608 (JCW) |
| Debtors. | (Jointly Administered) |

### THE FUTURE ASBESTOS CLAIMANTS' REPRESENTATIVE'S RESPONSE TO PROPOSED CASE MANAGEMENT ORDERS FOR ESTIMATION

Joseph W. Grier, III, the representative for future asbestos claimants in the above-captioned cases (the "FCR"), through counsel, hereby responds to the *Motion of the Debtors for an Order Approving the Debtors' Proposed Case Management Order for Estimation* [Dkt. No. 1205] and *The Official Committee of Asbestos Personal Injury Claimants' Motion for Entry of an Order Establishing Case Management Procedures for Estimation* [Dkt. No. 1207].

First, the Debtors propose a six-month schedule for completing written discovery and the PIQs. The ACC proposes a year, not tied to completion of the PIQs. Experience in this and other asbestos cases pending before this Court teaches us that the parties are unlikely to complete discovery in six months.[1] Having said that, the FCR is deeply troubled by the lack of progress in these cases. We are two years in, and tens of millions of dollars have been spent in professional fees. But individuals with valid asbestos personal injury claims are no closer to receiving payment from an asbestos trust than when the cases were filed on June 18, 2020. Instead, those individuals

---

[1] For example, the Court entered its *Order Authorizing Estimation of Asbestos Claims* on April 18, 2022 [Dkt. No. 1127]. The Order required the submission of an agreed or proposed case management orders within three weeks. Two months later, despite being given additional time to do so, the parties were unable to agree on a case management order. At this juncture, it is unlikely there will be a case management order for estimation before July 2022.

are pushed to the sidelines, waiting helplessly for reason to prevail, and, in too many instances, dying.  This is unacceptable, particularly given the fact that the FCR, who represents the vast majority of asbestos claims,[2] moved quickly to complete his due diligence and agree with the Debtors on a section 524(g) plan and plan funding of $545 million [Dkt. No. 831].[3]  A QSF has already been established and approved by the Court [Dkt. No. 994].  It is noteworthy that the proposed plan funding, which exceeds the $480 million funding in *Garlock* that involved similar encapsulated products and was confirmed years prior, was determined by reference to the Debtors' prepetition settlement history.  Indeed, the Debtors' prepetition database is available to all parties.  Further, the proposed plan and related trust documents in these cases are modelled on the same documents from the *Garlock* case, which was approved by this Court and agreed to by many of the same law firms that sit on the ACC here.  ACC counsel in *Garlock,* Caplin & Drysdale, submitted a declaration to this Court attesting to the fairness of those plan documents.[4]  But in this case, the plaintiff law firms— through the same ACC counsel— have made it clear to the Court that they are opposed to any plan on principle, regardless of the merits.  With the principle being that no solvent entity, with one glaring exception (*Paddock*), should ever be permitted to use valid

---

[2] Counsel for the ACC has acknowledged that the ACC's constituency is a "tiny little population" as compared to the future claims:

> In the, in the scheme of the debtors' long history and in the scheme of the anticipated future litigation, this [current claims] is a tiny little population that does not uniquely or specially inform the issue of what it is that the trust is likely to need.  The real issue here is the futures.  As Mr. Guy said, the currents are, are, you know, a small percentage of the money that is going to be required in order to fully pay all of the asbestos claims against these debtors."

Jan. 28, 2021 Hr'g Tr. at 139:8-18 [Dkt. No. 575].

[3] ACC counsel were repeatedly invited by both the FCR and the Debtors to join in substantive settlement discussions.  They declined.

[4] *See* Declaration of Elihu Inselbuch, *In re Garlock Technologies, LLC, et al.,* Case No. 10-31607 (Bankr. W.D.N.C.), Dkt. No. 5916 (the "Inselbuch Declaration").  The Inselbuch Declaration was also attached as an exhibit to *The Future Asbestos Claimants' Representative's Reply in Support of the Joint Bar Date Motion* filed in these cases (Dkt. No. 552).

2

state corporate restructuring law and the Bankruptcy Code to address asbestos liabilities.[5] The FCR, for his part, cannot reconcile more unnecessary delay with his fiduciary duty to ensure all valid claimants receive prompt and fair payment.[6] The FCR therefore respectfully proposes a firm nine-month schedule for completing written discovery and PIQs, which all parties must abide by. Absent willful refusal to comply with the PIQ Order, as occurred in *Bestwall* but we trust will not be repeated here, that deadline is readily achievable.

Second, the Debtors propose use of a categorical privilege log [Dkt. No. 1206]. That makes sense here. Requiring the individual logging of privileged documents would impose an unnecessary burden on all parties and, inevitably, the Court. The endless disputes about the individualized privilege logs in *Bestwall* demonstrate that point. The categories, however, must be sufficiently detailed to be informative. The FCR encourages the Debtors and the ACC to agree on those categories before the hearing set for this matter on June 30. They are in the best position to determine them.

Third, the FCR encourages the parties to agree on a protocol for a random, limited sampling of both the PIQs and the Debtors' privileged claimant files. Absent agreement, the FCR respectfully requests that the Court order appropriately corralled sampling. There is no need for

---

[5] In stark comparison, the plaintiff law firms quickly agreed, on behalf of their clients some of whom may have claims against the Debtors, to a section 524(g) plan in *Paddock*, a big dusty, with trust funding of $610 million, *i.e.*, a similar amount to the proposed funding here but with a friable amosite asbestos product, Kaylo. *Paddock* involved the **same** prepetition corporate restructuring, albeit under Delaware law, as used by the Debtors here and in *Bestwall* and *DBMP*. The parent of Paddock is happily solvent just like the parents of the Debtors before this Court. The *Paddock* case was recently confirmed by Judge Silverstein. (*See In re Paddock Enterprises, LLC*, Case No. 20-10028, Bankr. D. Del., Dkt. No. 1406, May 26, 2022). In contrast, these cases, *Bestwall,* and *DBMP* are up to their necks in quagmire, with no principled reason having been given to the Court for such a disparate approach.

[6] *But see, e.g.,* Memorandum Opinion, *In re LTL Mgmt., LLC*, No. 21-30589 (Bankr. D. N.J. Feb. 25, 2022), at 15 ("[T]his Court has little trouble finding that the chapter 11 filing serves to maximize the property available to satisfy creditors by employing the tools available under the Bankruptcy Code to ensure that all present and future tort claims will share distributions through the court-administered claims assessment process . . . . a successful reorganization and implementation of a settlement trust will dramatically reduce costs and ensure balanced recoveries for present and future claimants.").

all PIQ responses or a large sample to be used by the Debtors to make their case for legal liability. Nor for that matter does the ACC need to review each claimant file or a large sample to make its case for settlement liability. The FCR further submits that the ACC is entitled to review the sample claim files, including electronic data, in full, with no privileged documents being withheld. In turn, of course, the Debtors are entitled to certainty that provision of those files will, under no circumstances, result in a waiver of privilege. With those parameters, estimation discovery can be streamlined and efficient, without prejudice to any party.

Fourth, the ACC proposes that the Debtors make certain "initial disclosures." The Debtors oppose those disclosures. The Court and the parties, however, need not strain to determine what initial disclosures are required. The answer is found in Federal Rule of Civil Procedure 26(a)(1) and, by reference, Bankruptcy Rule 7026.

| | |
|---|---|
| Dated: June 23, 2022<br>Charlotte, North Carolina | Respectfully submitted,<br><br>*/s/ A. Cotten Wright*<br>A. Cotten Wright (State Bar No. 28162)<br>GRIER WRIGHT MARTINEZ, PA<br>521 E Morehead Street, Suite 440<br>Charlotte, NC 28202<br>Telephone: (704) 332-0207<br>Facsimile: (704) 332-0215<br>Email: cwright@grierlaw.com<br><br>-and- |

Jonathan P. Guy, Esq. (admitted *pro hac vice*)
Debbie L. Felder, Esq. (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
Email: jguy@orrick.com
 dfelder@orrick.com

COUNSEL FOR JOSEPH W. GRIER, III,
FUTURE CLAIMANTS' REPRESENTATIVE

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| ALDRICH PUMP LLC, *et al.*, | Case No. 20-30608 (JCW) |
| Debtors. | (Jointly Administered) |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that copies of *The Future Asbestos Claimants' Representative's Response to Proposed Case Management Orders for Estimation* were served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina, electronic case filing system to receive notices in this case.

This is the 23d day of June, 2022.

*/s/ A. Cotten Wright*
A. Cotten Wright (N.C. State Bar No. 28162)
Grier Wright Martinez, PA
521 E Morehead Street, Suite 440
Charlotte, North Carolina 28202

6