UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| ALDRICH PUMP LLC, *et al.*,[1] | : | Case No. 20-30608 |
| Debtors. | : | (Jointly Administered) |

**DEBTORS' RESPONSE TO THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS' MOTION FOR ENTRY OF AN ORDER ESTABLISHING CASE MANAGEMENT PROCEDURES FOR ESTIMATION**

Aldrich Pump LLC ("Aldrich") and Murray Boiler LLC ("Murray"), as debtors and debtors in possession (together, the "Debtors"), hereby submit this Response to the Official Committee of Asbestos Personal Injury Claimants' ("ACC") Motion for Entry of an Order Establishing Case Management Procedures for Estimation [Dkt. 1207] (the "ACC Motion").

**PRELIMINARY STATEMENT**

On April 18, 2022, this Court entered the *Order Authorizing Estimation of Asbestos Claims* [Dkt. 1127] (the "Estimation Order") that ordered the instant proceeding for estimation of asbestos claims (the "Estimation Proceeding"). On June 9, 2022, the Debtors and the ACC filed motions seeking entry of proposed case management orders to govern aspects of the upcoming Estimation Proceeding. See Dkt. 1205, *Motion of the Debtors for an Order Approving the Debtors Proposed Case Management Order* ("Debtors' Motion"), Exhibit A to Debtors' Motion, *Debtors' Proposed Case Management Order* ("Debtors' Proposed CMO");

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Aldrich Pump LLC (2290) and Murray Boiler LLC (0679). The Debtors' address is 800-E Beaty Street, Davidson, North Carolina 28036.

1

Exhibit A to ACC Motion, *ACC's Proposed Case Management Order for Estimation of Mesothelioma Claims* ("ACC Proposed CMO").

"The scheduling order is the critical path chosen by the trial judge and the parties in securing the just, speedy, and inexpensive determination of every action[.]" Medibill of Md., Inc. v. Anesthesia Bus. Consultants, LLC, No. 04-cv-4015, 2005 WL 8174469, at *3 (D. Md. Dec. 23, 2005); Sullivan v. Glock, Inc., 175 F.R.D. 497, 505 (D. Md. 1997) (noting that the "very purpose" of the pretrial scheduling order includes "the important goal of setting a specific and limited period for discovery").  The Debtors' Proposed CMO attempts to advance these purposes, with a specific focus on addressing two issues that have proved problematic in the Bestwall estimation process.  First, the Debtors' Proposed CMO sets forth an appropriate, yet more expeditious, schedule than the ACC for both the completion of Written Discovery and the PIQ process, along with any disputes arising therefrom.  Second, the Debtors' Proposed CMO employs a number of well-established procedures designed to streamline certain aspects of that Written Discovery process, in an effort to limit some of the: (1) mammoth burden and expense likely to be imposed on the Debtors by the ACC's discovery demands; and (2) litigation about ancillary discovery issues that has plagued the Bestwall estimation process and resulted in multiple extensions of the estimation schedule there.

The ACC's Proposed CMO, on the other hand, does nothing to advance these goals.  Instead, the ACC advocates adopting many of the discovery management procedures it advanced as appropriate in Bestwall, in many cases adding requirements to make them even more burdensome on the Debtors.  While the ACC claims that its Proposed CMO "is the only proposal that would provide the parties with certainty about the estimation schedule and allow them (and the Court) to plan accordingly" (see ACC Motion at 8), this is not the case.  The

2

experience in Bestwall proves the point. In that case, the schedule for estimation is already over a year behind the schedule that was provided for in the original case management order, which included many of the same features that the ACC proposes the Court adopt here. Those delays were occasioned, in large part, by the fact that in Bestwall:

- The ACC and FCR serially advanced discovery tactics—discovery for the sake of discovery and discovery about discovery—that focused on issues with little or no relation to the merits of this Estimation Proceeding. See, e.g., Bestwall Dkt. 1967, 2277, 2530.

- The ACC and FCR imposed mammoth discovery costs and burdens, including nearly unprecedented privilege logging burdens that were met only with wholesale privilege log challenges. The Bestwall debtor recently estimated that the costs to the estate in responding to the discovery propounded by the ACC and FCR in that case exceeded $15 million. See Bestwall Dkt. 2602 at ¶ 45. These challenges continue today, as the Bestwall ACC and FCR have asked that Judge Beyer reconsider her prior order rejecting their continued attack on the debtor's privilege log. See Bestwall Dkt. 2530.

- The claimants' delayed compliance in responding to PIQs, delays which resulted in Judge Beyer being forced to issue sanctions orders. See Bestwall Dkt. 1996, 2095.

The Debtors seek to avoid, not replicate, the delays that have occurred in Bestwall.

Below, the Debtors discuss: (a) areas of agreement between the Parties' proposed case management orders; (b) new proposals in the ACC's Proposed CMO that the Debtors had not seen until the ACC filed its Motion, but that may provide opportunities for compromise; and (c) continued areas of disagreement between the Parties' proposed CMOs and accompanying discovery plans, some of which the Debtors already addressed in their own Motion.

For the reasons stated in the Debtors' Motion and below, the Debtors request the Court enter the Debtors' Proposed CMO.

NAI-1531549049v4

# ARGUMENT

## A. Areas that The Parties Agree.

The Parties' respective proposed case management orders reflect that they do agree on certain key items concerning the case management order process:

- The Parties both propose that, at this time, the Court only set a schedule for Written Discovery,[2] completing that process and resolving all disputes concerning Written Discovery, before setting a schedule for the next stage of the Estimation Proceeding. See Debtors' Proposed CMO at ¶ 12; ACC Proposed CMO at ¶ 13.

- The Parties both propose that any motions to compel or motions directed at compliance with Written Discovery be served no later than 60 days after the close of Written Discovery, and that to the extent any such motions remain pending, the Court extend the deadlines for Written Discovery. See Debtors' Proposed CMO at ¶¶ 10-11; ACC Proposed CMO at ¶¶ 11-12.

- The Parties both propose expanding the limitations on interrogatories contained in Rule 33 to allow the parties to propound 50 interrogatories. See Debtors Proposed CMO at ¶ 4; ACC Proposed CMO at ¶ 6.[3]

- The Parties both propose utilizing a Joint Discovery Plan and ESI Protocol, albeit they disagree on the form of the discovery plan to be utilized. See Section C.6 infra; see also Debtors' Motion at Exhibit B ("Debtors' Discovery Plan"); ACC Proposed CMO at Exhibit 1 (ACC Discovery Plan").

The Debtors respectfully request that the Court adopt these proposals that both Parties agree on as part of the final case management order to be entered in this case.[4]

---

[2] The Debtors also propose that the conclusion of the PIQ process, including raising disputes concerning the same, follow the same schedule as Written Discovery, as discussed further in Section C.2, infra.

[3] The ACC further proposes expanding the number of depositions that the Parties may take to 30. Given that neither party has set out any schedule for fact depositions in their proposed case management orders, the Debtors simply propose that the issue of the number of depositions be deferred until such time as a deposition schedule is discussed.

[4] The Debtors previously noted in their Motion their agreement, along with the agreement of Trane Technologies Company, LLC and Trane U.S., Inc., to the ACC's proposal that those entities be added as parties to both the Estimation Proceeding and to the Proposed CMO.

  B.  **Areas of Potential Compromise.**

  As noted in the Debtors' Motion, on June 9, 2022, shortly before the Parties were due to file their proposed CMOs, counsel for the ACC communicated to counsel for the Debtors that the ACC's Proposed CMO that was to be filed later that day would contain certain changes from drafts previously provided to the Debtors.  See Debtors' Motion at 5, n. 4.  At least two of the ACC's changes, which the Debtors did not have a chance to consider in any detail before filing their own Proposed CMO, are, with the minor modifications set forth below, areas where the Parties may be able to reach agreement.

  1.  **Fact Witness Disclosures.**

  In paragraph 4 of the ACC's Proposed CMO, the ACC proposes that the parties shall serve preliminary disclosures of "fact witnesses" 90 days following entry of the case management order, to be supplemented on a rolling basis until 90 days before the completion of written discovery.  The Debtors are agreeable to paragraph 4 of the ACC's Proposed CMO so long as those fact witness disclosures specifically <u>exclude</u> expert witnesses who will be called pursuant to Fed. R. Civ. P. 26(a)(2).[5]

  2.  **Identification of Resolved Mesothelioma Claims Where the Debtors Lacked Complete Information.**

  In paragraph 8 of the ACC's Proposed CMO, the ACC now proposes that, 90 days before the completion of Written Discovery, the Debtors identify all resolved mesothelioma claims where they allege there was incomplete disclosure, whether as to product identification, alternative exposures, or undisclosed claims.

---

[5] The Debtors' position on expert disclosures in discussed in Section C.4 <u>infra</u>.

The Debtors are generally agreeable to answering discovery on this subject, but propose instead that: (a) the ACC issue a discovery request, in the form of an interrogatory, seeking this information; (b) the Debtors be given until the close of Written Discovery and the PIQ process to provide any supplementation to its responses to such an interrogatory; and (c) the ACC is given a period <u>after</u> the Debtors' final identification of such claims (or supplementation thereof) to seek additional Written Discovery specifically as to those particular claims. The Debtors' modification of the ACC's proposal will accomplish three things. First, it will give the Debtors time to obtain responses to the PIQs and the trust discovery, both of which are efforts by the Debtors to obtain information directly relevant to answering these questions posed by the ACC. Second, it will ensure the ACC has sufficient time to pursue any Written Discovery concerning any identified resolved claims where the Debtors allege they had incomplete information. Third, it will allow for all other Written Discovery to be completed pursuant to the proposed schedule, and limit any follow-on Written Discovery to this discrete sets of issues.

C. **Areas of Continued Disagreement.**

This leaves six essential areas where the Parties continue to disagree:

(a) the length of Written Discovery;

(b) whether the case management order will incorporate the PIQ process;

(c) whether the Debtors will be required to make burdensome "initial disclosures" not provided for in either the Bankruptcy Rules or Civil Rules;

(d) whether the Parties will be required to make expert witness disclosures <u>before</u> receiving any Written Discovery;

(e) the manner in which the parties will log privileged documents; and

(f) certain issues in the Parties' Proposed Discovery Plans.

6

1.	**The Time For Written Discovery.**

First, the parties disagree about how long the Written Discovery period should last.  The Debtors proposed a 180-day period for Written Discovery.   The ACC proposes a 365-day Written Discovery period and complains that the Debtors' proposal is "unrealistically short."  ACC Motion at 2.

The Debtors' goal here is to move to an Estimation Proceeding as expeditiously as possible.  See Sullivan, 175 F.R.D. at 505 (noting that the "very purpose" of the pretrial scheduling order includes "the important goal of setting a specific and limited period for discovery").  Both Parties require information to get there – the ACC through Written Discovery and the Debtors through the PIQ process (as well as through the trust discovery the Court recently ordered).  The Debtors believe that Written Discovery, pursuant to the procedures the Debtors have suggested in other portions of their Proposed CMO, can be completed within six months, with another 60 days to raise any remaining disputes with compliance concerning the same.  If that belief turns out to be incorrect, the Debtors anticipate that both the ACC and the Debtors will come to the Court to request additional time; indeed, the flexibility presented by the Debtors' Proposed CMO provides for that.  See Medibill, 2005 WL 8174469 at *3 (noting that the Court may "modify the schedule on a showing of good cause if the deadline cannot reasonably be met despite the diligence of the party seeking the extension").

What the Debtors are certain of, however, is that if the Written Discovery period is ordered to take one year, the Parties will take all of that one year, regardless of whether or not it is needed.  The Debtors suggest the better course is to adopt the Debtors' proposal, set 180 days for Written Discovery and, if it turns out additional time is needed as the ACC claims it will be, the Parties can approach the Court for an extension.

7

2.  **The Role of the PIQ in the Case Management Order.**

Second, the parties disagree about the role of the PIQ in the case management order. In its Motion, the ACC claims that the Debtors' Proposed CMO "needlessly incorporates the parallel process of the [PIQs] including tying deadlines regarding 'motions to compel or other motions directed at compliance' to the same deadline regardless of whether the motions relate to the PIQs or Written Discovery." ACC Motion at 2. The ACC claims that tying motions directed to PIQ compliance to the same deadlines as motions directed to Written Discovery "serves no apparent purpose." Id.

The ACC is incorrect. The PIQs are one of the Debtors' primary tools of obtaining written discovery in this Estimation Proceeding. It makes perfect sense that the deadlines for both completing the PIQ process, and for any motions directed at compliance with the same, would be tied to those same deadlines for Written Discovery, which is the ACC's primary discovery vehicle in this Estimation Proceeding. This Court has already described the PIQs as "necessary" and "certainly relevant" to this Estimation Proceeding in granting the Debtors' motion seeking their issuance. See Hearing of January 27, 2022 at 32. Further, the Parties have already agreed that the deadline for submission of PIQs will be October 17, 2022, well within the 180-day period the Debtors propose for Written Discovery.

The importance of tying the PIQ process to the Written Discovery process has only been amplified by the events in Bestwall. In that case, despite authorizing the PIQ process and overruling claimants' various objections to completing the PIQs, Judge Beyer was still forced to sanction a material number of claimants for their refusal to comply with responding to those PIQs. See Bestwall Dkt. 1996, 2095. Given the importance of the information sought by the PIQs to the Estimation Proceeding and the past non-compliance by certain groups of

Document    Page 9 of 20

claimants in providing full responses to PIQs, addressing the PIQs as part of the case management order is the appropriate course.

### 3. "Initial Disclosure" Requirements.

The ACC continues to propose imposing burdensome "initial disclosure" requirements on the Debtors. See ACC Proposed CMO at ¶ 3. The ACC proposes that Rule 26(a)(1) of the Federal Rules of Civil Procedure "shall apply in this Estimation Proceeding"[6] and then further proposes that the Debtors' "initial disclosures" include: (1) disclosure of various potential sources of information, including "no less than 20 custodians" and "no less than 10 non-custodial data sources" (see ACC Proposed CMO at ¶¶ 3(a)-3(c)); and (2) disclosure of all "asbestos-containing products that are subject of the Estimation Proceeding," including more than a dozen details concerning each of these asbestos-containing products.[7] Id. at ¶ 3(d).

Despite the ACC's label, these disclosures the ACC proposes in its Proposed CMO are not among the "initial disclosures" provided for under Rule 26(a)(1), nor are they appropriate to impose in these cases. First, neither category of disclosures falls within the scope of initial disclosures provided for under Fed. R. Civ. P. 26(a)(1), despite the ACC's apparent suggestion otherwise. See Advisory Committee Notes, 2000 Amendment to Fed. R. Civ. P. 26 ("The Rule 26(a)(1) initial disclosure provisions are amended to establish a nationally uniform practice. The scope of the disclosure obligation is narrowed to cover only information that the disclosing party may use to support its position."). The ACC's Motion also fails to identify any

---

[6] The Debtors note that in contested matters like this one, Rule 26(a)(1) does not apply unless the Court directs otherwise. See Fed. Bankr. R. 9014.

[7] Among the details the ACC demands disclosure of is: "product name, other product name(s), year(s) manufactured containing asbestos, type and use of product, formulation, type(s) and source(s) of asbestos contained, manufacturing facilities location(s), date first sold by Old Trane or Old IRNJ, date last sold by Old Trane or Old IRNJ, site or location if known, serial number, photograph or other identifying information, names of all distributors and installers, copies of all purchase and sales records regarding products, and all testing records." ACC Proposed CMO at ¶ 3(d).

9

authority upon which to impose these burdensome "initial disclosure" requirements on the Debtors, as opposed to seeking such information in standard discovery requests, subject to the protections of that process provided for in the Civil Rules.

Second and more importantly, there is no reason to impose these burdensome disclosure requirements on the Debtors. As to the first category of disclosures, concerning potential sources of discovery, both Parties have already agreed to a process to exchange information about custodial and noncustodial data sources within their Discovery Plans. See ACC Proposed Discovery Plan at §§ 2.1-2.2; Debtors Proposed Discovery Plan at §§ 2.1-2.2. And there is simply no valid reason to impose a requirement to disclose some arbitrary minimum number of data sources, where there is no basis to suggest that there will be that many sources of relevant information in any case.

As to the second category – concerning "asbestos containing products" – this information is more properly the subject of interrogatories and document requests, not an initial disclosure requirement, with the rights for the Debtors to respond and object accordingly. As explained in the Debtors' Motion, there is a reason the scope of Rule 26(a)(1) is narrow. It should not include what amount to burdensome discovery requests in the guise of "initial disclosures." See, e.g., Fetrow-Fix v. Harrah's Ent., No. 2:10-cv-00560-RLH-PAL, 2011 WL 2446324, at *3 (D. Nev. June 15, 2011) (rejecting Plaintiff's argument that Defendants should have disclosed complete personnel files and payroll records for all named Plaintiffs pursuant to their initial disclosure obligations, as such records are beyond the scope of initial disclosures); Smith v. Elva Grp., LLC, No. 1:13-cv-00028-DS-DBP, 2015 WL 2384037, at *1 (D. Utah May 19, 2015) (rejecting Plaintiff's motion to compel additional initial disclosures that would list any

employee with "information relevant to Plaintiff's case," as Rule 26 only requires disclosure of witnesses that a party may use at trial).

    4.    **The Schedule for Expert Witness Disclosures.**

As previewed in the Debtors' Motion, the ACC continues to insist that the Parties exchange early expert witness disclosures, beginning just 90 days after the entry of the case management order, with final expert disclosures due 90 days <u>before</u> completion of Written Discovery.  <u>See</u> ACC Proposed CMO at ¶ 5.  In short, the ACC proposes disclosing all experts <u>before</u> Written Discovery is even concluded, and before fact depositions even begin.  This is a highly irregular proposal that is both inconsistent with the Federal Rules of Civil Procedure and completely unnecessary in these cases.

Expert discovery generally begins after fact discovery ends because the experts are charged with forming their opinions based on the facts disclosed during fact discovery.  Indeed, the Federal Rules of Civil Procedure require expert disclosures to include a listing of "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(2).

Because under the ACC's Proposed CMO, both Parties would be making expert disclosures without the benefit of fact discovery, the only option is for the Parties to include every conceivable expert they might consider needing.  This will only encourage more discovery and delay, as each side attempts to be prepared to counter a theory that might not even appear in the Estimation Proceeding.  One reason these types of early expert disclosures are typically saved for later in discovery is so this kind of waste can be avoided.

In short, the ACC's proposal on expert disclosures is not consistent with the normal course of expert discovery, likely leads to waste and further expansion of discovery, and creates potential problems that otherwise would not exist.  The Court should adopt the Debtors'

proposal, which would have the Court set a schedule for expert discovery after the completion of Written Discovery.

     5.    **Privilege Logging.**

On the surface there appears to be no dispute – the Parties each agree, in principle, that categorical privilege logs are appropriate for the Estimation Proceeding.  Compare Motion of the Debtors for an Order Authorizing the Parties to Use Categorical Privilege Logs When Claiming Material Is Privileged or Otherwise Protected From Discovery [Dkt 1206] (the "Debtors' Categorical Privilege Log Motion") with ACC Motion at 9 (noting the ACC "may be amenable to discussing a categorical privilege log"); ACC Proposed Discovery Plan at § 4.2 (setting out proposal for categorical privilege log).  And with good reason.  This is the very type of case that calls for a categorical privilege log, where voluminous privileged documents are likely to be responsive to the ACC's discovery requests.  District Courts within the Fourth Circuit recognize their propriety,[8] as do other courts across the country.[9]  National recognition of

---

[8]    See Asghari-Kamrani v. United Servs. Auto. Ass'n, No. 2:14-cv-478, 2016 WL 8243171, at *3-*4, (E.D. Va. Oct. 21, 2016) (approving use of a categorical privilege log covering just 439 privileged documents, which were then grouped into 11 categories.); RLI Ins. Co. v. Nexus Servs., Inc., No. 5:18-cv-66, 2020 WL 674454, at *3 (W.D. Va. Feb. 11, 2020) ("[T]he court finds persuasive [defendant's] argument that a categorical privilege log would serve the purpose of asserting privilege and explaining redactions without imposing undue burden on the parties, given the number of documents produced and discoverable in this case.")

[9]    See e.g., **First Circuit**: Neelon v. Krueger, No. 12-cv-11198-IT, 2015 WL 1037992, at *3 (D. Mass. Mar. 10, 2015); **Second Circuit**: City of New York v. FedEx Ground Package Sys., Inc., 13 Civ. 9173 (ER), 2016 WL 1718261, at *5 (S.D.N.Y. Apr. 27, 2016); **Third Circuit**: United States v. Coburn, No. 2:19-cr-00120 (KM), 2022 WL 357217, at *5 (D.N.J. Feb. 1, 2022); **Fifth Circuit**: Mfrs. Collection Co., LLC v. Precision Airmotive, No. 3:12-cv-853-L, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014); **Sixth Circuit**: First Nat'l Horizon Corp. v. Certain Underwriters at Lloyd's, No. 2:11-cv-02608-SHM-DKV, 2013 WL 11090763, at *7 (W.D. Tenn. Feb. 27, 2013); **Seventh Circuit**: Fed. Deposit Ins. Corp. v. Crowe Horwath LLP, No. 17-cv-04384, 2018 WL 3105987, at *6 (N.D. Ill. June 25, 2018); **Eighth Circuit**: Patterson Dental Supply, Inc. v. Pace, No. 19-cv-1940 (JNE/LIB), 2020 WL 13032906, at *9 (D. Minn. Apr. 2, 2020); **Ninth Circuit**: In re Imperial Corp. of Am., 174 F.R.D. 475, 479 (S.D. Cal. 1997); **Tenth Circuit**: Raymond v. Spirit AeroSystems Holdings, Inc., 319 F.R.D. 334, 341 (D. Kan. 2017); **Eleventh Circuit**: Teledyne Instruments, Inc. v. Cairns, No. 6:12-cv-854-Orl-28TBS, 2013 WL 5781274, at *16 (M.D. Fla. Oct. 25, 2013); and **DC Circuit**: United States v. KPMG LLP, 237 F.Supp.2d 35, 37-38 (D.D.C. 2002).

NAI-1531549049v4

categorical privilege logs is not surprising given that their use was endorsed by the 1993 Advisory Committee to the Federal Rules of Civil Procedure to deal with the very situation presented by this case.  See Fed. R. Civ. P  26 Advisory Committee Note, 1993 Amendment ("Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.").

Yet, the categorical privilege log the ACC proposes in its Motion and Proposed Discovery Plan does not reduce the burden on the Debtors, and, incredibly, is likely to increase that burden beyond a standard document-by-document privilege log.  The ACC's proposal for categorical logging is flawed in two significant ways.

First, the ACC's proposal only permits categorical privilege logging for documents within a few narrow categories, which will likely leave the vast majority of privileged documents to be individually logged.  This seems to defeat the entire purpose of categorical logging.  As this Court is aware, the ACC will likely seek production of litigation files for several thousand asbestos product liability lawsuits spanning a decade or more, including files maintained by numerous lawyers and law firms (both in-house and outside counsel) who have represented the Debtors and their predecessors-in-interest in the asbestos litigation.  One could reasonably expect that each litigation case file will contain confidential, non-final draft legal documents, including but not limited to draft pleadings, motions, stipulations and discovery responses.  Such documents are obviously privileged and protected by attorney work-product, something the ACC's proposal implicitly accepts.  Nevertheless, the ACC, without explanation, proposes to limit categorical privilege logging of such non-final draft documents to only: (i) standard interrogatory requests, and (ii) motions to compel interrogatory responses regarding a

claimant's alleged asbestos exposure. See ACC's Discovery Plan at § 4.1, Categories 1-2. Therefore, under the ACC's proposal, all other confidential, non-final drafts of legal documents would need to be individually logged. The ACC's Motion offers no rationale for its position or justification for the incredible burden that would be imposed upon the Debtors by this proposal.

Similarly, the ACC proposes allowing categorical privilege logging for memoranda, emails, summaries and/or analyses of (i) claimants' alleged exposure to asbestos or (ii) medical science issues. See ACC Discovery Plan at § 4.2, Categories 3-4. But one would expect a host of other confidential work-product and/or privileged memoranda, summaries and/or analyses on similar issues, including, among other things: legal research, case trends, investigative reports, general and case-specific causation, alternative exposures, product identification, deposition and trial testimony, expert and trial witness analysis, evidentiary issues, company documents, and jury, jurisdictional and verdict research. Under the ACC's proposal, those documents would have to be individually logged, document-by-document, even though they share all of the same characteristics of the other categories where they would permit categorical logging. There is no reason why categories could not be developed and implemented that adequately describe these documents and avoid the undue burden of individualized logging, and this should be done.[10]

Second, even for those documents where the ACC proposes allowing categorical logs, the ACC proposes that the Debtors should still be required to provide numerous additional fields of information for each individual document that go well beyond those (i) proposed by the Debtors, and (ii) set by most (if not all) courts ordering use of categorical privilege logs

---

[10] The balance of the ACC's proposed categories is similarly narrow, meaning hundreds of thousands of documents would have to be individually logged if the ACC's Motion were granted. See ACC Discovery Plan §4.2, Categories 5-9.

14

nationwide. The ACC proposes that for <u>every document categorically logged</u>, the Debtors not only identify the names of the authors and recipients (something the Debtors already have agreed to do assuming that information is contained in the document's Metadata),[11] but also specifically identify: (a) attorneys for the Debtors, Old IRNJ, or Old Trane with an asterisk; (b) attorneys for third parties with a common interest with a double asterisk; and (c) for any authors/recipients not employed by the Debtors, Old IRNJ, or Old Trane, a description each person's "relevant relationships." <u>See</u> ACC Proposed Discovery Plan at Attachment C. But this is neither something required by the cases endorsing use of categorical privilege logs, nor does it advance the purpose behind categorical logs – to avoid unnecessary and undue burden upon the disclosing party. <u>See</u> Fed. R. Civ. P 26 Advisory Committee Note, 1993 Amendment; Debtors' Categorical Privilege Log Motion at Exhibit H (attaching categorical privilege log from <u>Asghari-Kamrani</u>, No. 2:14-cv-478, 2016 WL 8243171, at *3-*4, (E.D. Va. Oct. 21, 2016)); <u>see also RLI Ins. Co. v. Nexus Servs., Inc.</u>, No. 5:18-cv-66, 2020 WL 674454, at *3 (W.D. Va. Feb. 11, 2020) ("[T]he court finds persuasive [defendant's] argument that a categorical privilege log would serve the purpose of asserting privilege and explaining redactions without imposing undue burden on the parties, given the number of documents produced and discoverable in this case.")

The Debtors suggest there is a better process, as provided for in the Debtors' Categorical Privilege Log Motion. First, the Debtors respectfully submit that this Court should – as the Parties mutually do – recognize that categorical privilege logging is appropriate for use in the Estimation Proceeding. Second, after service of document requests by the ACC, the Parties can meet and confer in an attempt to agree on categories that both: (i) inform the requesting party generally regarding the subject matter of withheld documents, and (ii) avoid an

---

[11] <u>See</u> Debtors' Proposed Discovery Plan at 8.

unnecessary level of burden upon the disclosing party.[12]  Many of the categories identified by the ACC in its Proposed Discovery Plan are likely proper ones for inclusion on a categorical privilege log.  But there are many more, and the discovery sought by the ACC will help identify them.  The Parties are in the best position to assess that after discovery is served.  If the Parties cannot fully agree on categories, they can approach this Court for guidance.

Regardless, given the unquestioned volume of privileged documents that are likely to be responsive to the ACC's discovery requests, and the Parties' mutual recognition of the appropriateness of categorical privilege logs, the Debtors respectfully request that the Court approve of their use in these cases.

6.  **The ACC's Proposed Changes to the Court Approved Discovery Plan.**

In addition to the form of a categorical privilege log, there remain a handful of other disagreements between the Parties' respective Proposed Discovery Plans.  The Debtors' suggest that the best course is to utilize the Joint Discovery Plan and Report (ESI Protocol) <u>that the Parties</u> already agreed to and this Court already approved for use in these chapter 11 cases.  [Dkt. No. 415] ("<u>Court Approved Discovery Plan</u>").  Nevertheless, the Debtors address each of the ACC's proposed changes to the Court Approved Discovery Plan, all of which create significant additional burden on the Debtors, with no legal justification supporting the same.

First, as it relates to privilege logging, the ACC proposes that the Debtors should be required to:  (1) log documents created after the petition date of June 18, 2020; (2) create a

---

[12]  The ACC's Motion refers to Judge Beyer's initial finding the debtor's document-by-document privilege logs in <u>Bestwall</u> to be insufficient.  ACC Motion at 3.  But that observation is of little value here because (i) Judge Beyer ultimately found that the debtor's revised document-by-document privilege log was sufficient, and (ii) it does not address the appropriateness and requirements of a categorical privilege log.  See <u>Bestwall</u>, Transcript for Hearing/Trial Held on March 17, 2022 [Dkt. 2480] at 15 (Judge Beyer:  "[T]he debtor's log is sufficient to make the necessary *prima facie* showing that the documents in question are protected from production by the attorney-client privilege, work product doctrine, or common interest doctrine.").

16

"Players List" containing detailed information concerning every single person who is either an author or recipient of a privileged document, including their title(s) within every organization they worked, dates of employment, email addresses appearing on the log that correspond to the individual and user names associated with the same; and (3) make additional detailed disclosures, beyond those in a normal document by document privilege log, for every document where common interest or joint defense is asserted, including identifying the parties to the common interest or joint defense arrangement, whether that arrangement was oral, written, or implied, the date the common interest or joint defense began, the specific common interest of joint legal objectives, and specific facts concerning the subject matter of the document with "sufficient particularity" to demonstrate that the document was exchanged for a common interest or joint defense purpose.  See ACC Proposed Discovery Plan at §§ 4.2-4.4.

All of the ACC's proposals share four things in common.  First, none of them are contained in the Court Approved Discovery Plan.  Second, none of them are required under the Federal Rules of Civil Procedure or the case law interpreting the same.  Third, all of them create significant additional burden on the Debtors.  Indeed, the Debtors believe the ACC's proposal concerning common interest and joint defense assertions likely could fill months of additional attorney time.  Fourth and finally, none of this additional burden is going to further illuminate the central issues of privilege in this case – as noted from the outset, and as the ACC even appears to acknowledge, there are a handful of issues that will be disputed concerning privilege in this case. Those issues are likely to be clearly defined, and, if the Parties cannot agree on how they will be handled, will be raised to the Court for decision.  Whether the Debtors identify the precise date a common interest arose between themselves and a related party or whether that common interest

was documented in writing or orally will not further illuminate the right answer to the privilege dispute. It simply creates undue burden on the Debtors where none is justified.

Second, the ACC now proposes changing the Court Approved Discovery Plan to require the collection of information from mobile devices unless the custodian associated with the mobile device certifies "under penalty of perjury" that he or she does not use the mobile device for work purposes, or that all data on the mobile device is otherwise stored elsewhere. See ACC Proposed Discovery Plan at § 2.1.3. Of course, the ACC, less than two years ago, agreed that mobile devices were not reasonably accessible and need not be collected, without any such certification. See Court Approved Discovery Plan at § 2.1.3. The ACC offers no explanation for the change of heart. Further, the ACC's proposed requirement that custodians certify "under penalty of perjury" is completely unworkable, as: (1) many of the custodians are either no longer employed by the Debtors or their affiliates, and/or otherwise \outside the control of the Debtors; and (2) many of the custodians likely do not have personal knowledge as to the backup systems of the Debtors, let alone have the personal knowledge to certify under "penalty of perjury" if or how the information is backed up.

The third significant difference from the Court Approved Discovery Plan is that the ACC now seeks to shorten the objection deadline for discovery-related motions. See ACC Proposed Discovery Plan at §7.1. As noted in the Debtors' Motion, there is no basis for why the Court should entertain this. Given both the importance of the issues and the length of many of the discovery-related motions, a departure from the standard objection deadline would be unwise. See Debtors' Motion at ¶¶ 38-40.

## **CONCLUSION**

For the foregoing reasons, the Debtors respectfully request this Court enter the Debtors' Proposed CMO.

18

<table>
<tr><td>

Dated: June 23, 2022
      Charlotte, North Carolina

</td><td>

Respectfully submitted,

*/s/ John R. Miller, Jr.*
C. Richard Rayburn, Jr. (NC 6357)
John R. Miller, Jr. (NC 28689)
RAYBURN COOPER & DURHAM, P.A.
227 West Trade Street, Suite 1200
Charlotte, North Carolina  28202
Telephone:  (704) 334-0891
Facsimile:  (704) 377-1897
E-mail:   rrayburn@rcdlaw.net
         jmiller@rcdlaw.net

-and-

Brad B. Erens (IL Bar No. 06206864)
Mark A. Cody (IL Bar No. 6236871)
Morgan R. Hirst (IL Bar No. 6275128)
Caitlin K. Cahow (IL Bar No. 6317676)
JONES DAY
110 North Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585
E-mail:  bberens@jonesday.com
        macody@jonesday.com
        mhirst@jonesday.com
        ccahow@jonesday.com
(Admitted *pro hac vice*)

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

-and-

C. Michael Evert, Jr.
EVERT WEATHERSBY HOUFF
3455 Peachtree Road NE, Suite 1550
Atlanta, Georgia 30326
Telephone: (678) 651-1200
Facsimile: (678) 651-1201
E-mail: cmevert@ewhlaw.com
(Admitted pro hac vice)

</td></tr>
</table>

NAI-1531549049v4

SPECIAL ASBESTOS LITIGATION
COUNSEL FOR DEBTORS AND DEBTORS
IN POSSESSION

20