## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| ALDRICH PUMP LLC, *et al.*,[1] | : | Case No. 20-30608 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

### OBJECTION OF THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS TO MOTION OF THE DEBTORS FOR AN ORDER APPROVING THE DEBTORS' PROPOSED CASE MANAGEMENT ORDER FOR ESTIMATION

The Official Committee of Asbestos Personal Injury Claimants (the "Committee") respectfully submits this objection (the "Objection") to the *Motion of the Debtors for an Order Approving the Debtors' Proposed Case Management Order for Estimation* filed by the above-captioned Debtors [Dkt. No. 1205] (the "Debtors' CMO Motion").

### PRELIMINARY STATEMENT

The Debtors have proposed a case management order (the "Debtors' Proposed CMO") that is simultaneously overambitious and underinclusive, providing for estimation discovery on an unrealistic timeline without providing necessary parameters or guidelines. The Debtors' Proposed CMO also forces into the process any PIQ-related disputes, which should be governed by separate procedures.

The Committee's proposed case management order (the "Committee's Proposed CMO"),[2] in contrast, includes realistic timelines and tailored procedures to appropriately address certain

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Aldrich Pump LLC (2290) and Murray Boiler LLC (0679). The Debtors' address is 800-E Beaty Street, Davidson, North Carolina 28036.

[2] The Debtors' Proposed CMO and the Committee's Proposed CMO are referred to together as the "Proposed CMOs."

25174865-v10

aspects of estimation discovery, including privilege issues and other disputes that may arise during this complex process. In addition, the Committee has made the concerted decision not to include PIQ-related matters in its Proposed Order.

Accordingly, and as discussed further in *The Official Committee Of Asbestos Personal Injury Claimants' Motion for Entry of an Order Establishing Case Management Procedures for Estimation* ("the Committee's CMO Motion") [Dkt. No. 1207] and *The Official Committee Of Asbestos Personal Injury Claimants' Brief in Response to Motion of the Debtors for an Order Authorizing the Parties to Use Categorical Privilege Logs When Claiming Material is Privileged or Otherwise Protected from Discovery* (the "Committee's Categorical Privilege Objection"), filed contemporaneously herewith, the Committee hereby requests that this Court reject the Debtors' CMO Motion, and enter an order approving the Committee's Proposed CMO.

## RESPONSE

**I.     The Material Differences Between the Proposed CMOs.**

1.     The Debtors' CMO Motion refers to a draft "Committee CMO" that is significantly different than the Committee's Proposed CMO—i.e., the proposed CMO actually attached to the Committee's CMO Motion. *See* Debtors' CMO Motion, ¶¶ 13, 20.  While last-minute modifications were discussed with Debtors' counsel prior to filing, the Debtors did not review a final draft of the Committee's Proposed CMO prior to filing of the Parties' respective Proposed CMOs.

2.     The Proposed CMOs share a fair amount of common ground.  For example, the Committee's Proposed CMO incorporates the Debtors' request to limit the scope to Written Discovery.  Unlike the Debtors' Proposed CMO, however, the Committee's Proposed CMO fills in gaps left by the Debtors' form, laying out timelines and requirements for specific subparts

designed to minimize litigation and avoidable extensions or delay. Thus, while the Debtors correctly assert that the two Proposed CMOs include "material differences," the Committee believes that the Proposed CMOs are identical in several ways. Specifically:

a. Each includes a 60-day resolution period after expiration of Written Discovery to compel compliance with discovery obligations.[3] *Compare* Debtors' Proposed CMO ¶ 10 *with* Committee's Proposed CMO ¶ 11.

b. Each proposes to expand the completion schedule if compliance motions are pending upon completion of Written Discovery. *Compare* Debtors' Proposed CMO ¶ 11 *with* Committee's Proposed CMO ¶ 11.

c. Each proposes negotiation and ultimate entry of a joint discovery plan. *Compare* Debtors' Proposed ¶ 2 *with* Committee's Proposed CMO ¶ 2.

d. Each considers the possibility of categorical privilege logging. *Compare* Debtors' Proposed CMO ¶ 4.1 *with* Committee's Proposed CMO ¶ 4.2. The Committee's Proposed CMO includes nine initial categories, "as may be amended by agreement of the Parties." Committee's Proposed CMO § 4.2.

**II.     The Debtors' Proposed CMO Fails to Account for Issues That Arose in *Bestwall*.**

3.     The Committee's Proposed CMO reflects experience from the *Bestwall* estimation case management order and process. The Debtors' Proposed CMO, however, would create the very confusion, delay, and issues the parties are presently experiencing in *Bestwall*.

---

[3] The Committee objects, as noted in Part II.B, to the inclusion of motions regarding PIQ compliance in this 60-day window.

3

4. The limited commonalities between the *Bestwall* CMO and the Committee's Proposed CMO are not "recycle[d]" (Debtors' CMO Motion ¶ 18), but instead account for both the successes and challenges gleaned from counsel's experiences in *Bestwall*:

 a. The fact that *Bestwall* included "multiple extensions of the schedule," as the Debtors describe it, supports the Committee's more realistic initial proposed timeline of 365 days. *See supra* Part II.A.

 b. Contrary to the Debtors' assertion, *Bestwall* does not provide a sound basis for pre-emptive approval of a categorical privilege log. Indeed, as discussed in more detail in the Committee's Categorical Privilege Objection, which is incorporated herein by reference and made a part of this Objection, document-specific detail is necessary to ascertain whether a particular document is privileged in a large-scale asbestos bankruptcy case. *See* Categorical Privilege Objection ¶ 16. The fact that a privilege log will require the commitment of resources should not excuse the Debtors' compliance. *Id.* at ¶ 15.

 c. The PIQ process in *Bestwall* has been a source of contention and delay, and tying the PIQ process into estimation discovery will create similar issues here. The Committee's maintenance of the PIQ process as separate and distinct, subject to its own timeline, will prevent any potential PIQ issues from derailing or delaying the broader estimation discovery. *See infra* Part II.B.

 d. Finally, the Committee's proposed Initial Disclosures are similar to those incorporated into the Bestwall estimation case management order and will

assist the Committee with identifying the products subject to estimation and the custodians with information, as well as provide the Committee with an opportunity to appropriately tailor or appropriately direct its subsequent requests. *See infra* Part II.C.

**A.    *The Timeline of the Debtors' Proposed CMO Ignores the Needs of the Case.***

5.    <u>Deadline for Written Discovery.</u> The Debtors' Proposed CMO provides for a timeline untethered to the realities of litigation and lacking any incremental milestones. The Debtors propose completion of Written Discovery within 180 days of entry of an order despite the fact that *Bestwall* has demonstrated the need for more time in estimation proceedings of this type and scale. Debtors' Proposed CMO ¶ 7. Under even the best of circumstances, a single 180-day window of time will improperly limit the Written Discovery, no doubt necessitating litigation as the parties attempt to resolve numerous issues all at once rather than over the course of a year.

6.    The Committee's Proposed CMO, by contrast, contemplates a full year—a more appropriate time period for the Parties to conduct thorough Written Discovery—while laying out milestones that will ensure the continued, organized progress of the estimation proceeding. The Committee's time frame will also enable the Parties to focus on discovery rather than being distracted by the need for negotiations regarding the next CMO (which negotiations themselves might lead to further delay).

7.    <u>Timeline for Resolution of Disputes.</u> The Debtors' CMO Motion reflects multiple incorrect statements concerning the timeline of the Committee's Proposed CMO. First, the Debtors state that the Committee's Proposed CMO "does not provide any period for the parties to raise or resolve any disputes concerning the responses received" (Debtors' CMO Motion ¶ 18). In fact, the Committee plans the same 60-day window following the close of Written Discovery that

5

the Debtors propose. *Compare* Debtors' Proposed CMO ¶ 10 *with* Committee's Proposed CMO ¶ 11. Second, the Debtors describe as a "material difference" the "Debtors' proposal that dates not be set beyond the conclusion of Written Discovery." Debtors' CMO Motion ¶ 20. However, in an effort to alleviate the Debtors' concerns about planning an entire estimation start-to-finish at one time, the Committee has already limited the scope of its Proposed CMO to include only Written Discovery.

8. The Debtors also contend that the Committee's proposed timeline for resolving disputes is unnecessarily expedited. However, they cite a single outlier example in support of a general rule. *See* Debtors' CMO Motion ¶ 39. Further, to import the notice timelines from the *Order Establishing Certain Notice, Case Management, and Administrative Procedure* [Dkt. No. 123] is irreconcilable with the Debtors' proposed 180-day window for Written Discovery. Longer notice time periods would cause increased delay with every dispute. Even under the Committee's timeline, the expedited notice provided for in the Committee's Proposed CMO provides the better approach; the Committee believes that the majority of discovery disputes involve discrete issues that can appropriately be resolved on the Committee's proposed timeline, particularly since the Committee's dispute resolution includes a good-faith meet and confer requirement. This will alert the Parties to the scope of a potential issue and permit expansion of timelines, either by consent or order of the Court, if merited for a given issue.

9. <u>Timeline for Disclosures.</u>  The Debtors' CMO Motion also mischaracterizes the nature of the Committee's proposed disclosure of fact witnesses, as well as expert testimony and fields of expertise. In the case of fact witnesses, supplementation in light of information gleaned from discovery is permitted to extend beyond the deadline for Written Discovery if necessary. ("[T]o the extent that any written discovery directed to a Party has not been completed, the Party

propounding such discovery shall have 30 days from completion of the discovery to supplement these disclosures with individuals identified by reason of such discovery responses." Committee's Proposed CMO ¶ 5.)

10. Including the fact witness disclosures and the ability for the parties to issue discovery in light of those disclosures will enable the parties to more efficiently proceed to the next steps of discovery concerning depositions and related productions. This progression is, despite the Debtors' professed disbelief to the contrary, exactly "how litigation is ordinarily staged." *Cf.* Debtors' CMO Motion ¶ 36. In most litigation, parties conduct fact discovery, the results of which are shared with experts for use in drafting reports. To adopt the Debtors' Proposed CMO and close Written Discovery before the Parties identify witnesses would prevent the Committee from conducting a complete Written Discovery. Among other issues, the Debtors' Proposed CMO would prevent the Committee from seeking relevant documents from historical asbestos defense counsel, because identifying the relevant counsel depends not only on which claimant files are disputed (*see* Part II.D) but also the identification of fact witnesses.

11. Similarly, for expert testimony and witnesses, the Committee's disclosure timeline is intended to ensure continued progress toward an estimation, informed by the increasing information the parties will acquire through the Written Discovery. Discovery concerning expert testimony will proceed pursuant to a future CMO (*see* Committee's Proposed CMO ¶ 13).

12. A complex estimation proceeding requires a clear roadmap. The Committee is agreeable to an initial CMO for Written Discovery, but only if it includes deadlines and parameters intended to promote efficiency and guide the Parties seamlessly to the next stage. The Debtors' Proposed CMO, replete with generalities and vagaries, fails to do this. The Committee's Proposed CMO, by contrast, is designed to ensure consistent progress.

> B. *The PIQ Process Should Remain Separate from This Part of Estimation Discovery.*

13. Although the PIQ process is subject to its own heavily-negotiated and court-approved orders, the Debtors seek to unnecessarily tie the deadlines for the PIQ and Written Discovery together. Debtors' Proposed CMO ¶¶ 7, 10, 11. By their own acknowledgment, "[t]he deadline to respond to the PIQ's [sic] will be set by the order governing the same." *Id.* at ¶ 7.

14. Because both the PIQ and the estimation itself are subjects of independent orders, the inclusion of the PIQ elements in the Debtors' Proposed CMO is improper. Any linking of the PIQ process to the Written Discovery (or other, future estimation discovery) improperly disadvantages the Committee. In addition to providing the Debtors with the unusually expanded timeframe for compliance motions described above, the Debtors can acquire additional information from compelled PIQ responses. The Committee, under the Debtors' Proposed CMO, would not be able to seek related discovery from the Debtors in response.

15. The Debtors also express vague concerns about the information gathered from the PIQ affecting the subjects of expert testimony. *See* Debtors' CMO Motion ¶ 36. While it is unclear exactly what scenario they envision, prompt completion of the PIQ process—not delaying compliance motions until Written Discovery is complete—will minimize any chance of this occurring. Further, the Committee's Proposed CMO provides for the Parties to supplement disclosures regarding expert subject matter and fields of expertise through 60 days before the completion of Written Discovery—335 days after entry of an order. Committee's Proposed CMO ¶ 5.[4] This will give all the Parties sufficient time to review and assess PIQ submissions for their impact on the expert disclosures contemplated in the Committee's Proposed CMO.

---

[4] The Committee's 365-day deadline for the completion of Written Discovery runs not from the date of an order but from the completion of Initial Disclosures, which are due 30 days after entry of the order. Committee's Proposed CMO ¶ 3.

C.    *The Committee CMO Includes Fair and Reasonable Initial Disclosures.*

16.    The Initial Disclosures included in the Committee's Proposed CMO are far from an effort to "make the Debtors prove aspects of their case." Debtors' CMO Motion ¶ 28. Instead, they reflect the realities of the informational mismatch among the Parties.

17.    It is unclear why the Debtors view the Initial Disclosures as "not provided under Bankruptcy Rule 9014, FRCP 26(a)(1), or any other legal authority." Debtors' CMO Motion ¶ 32. Bankruptcy Rule 9014 specifically authorizes the Court to apply Civil Rule 26's initial disclosure requirement to contested matters. This was also the approach taken by Judge Beyer in *Bestwall*. *Case Management Order for Estimation of the Debtor's Liability for Mesothelioma Claims* at ¶ 3, *In re Bestwall LLC*, Case No. 17-31795 [Dkt. No. 1685] ("Bestwall Estimation CMO"). The Debtors characterize the Initial Disclosures as "essentially discovery requests" (Debtors' CMO ¶ 32) even though the content of the Initial Disclosures is simply a particularized description of Civil Rule 26(a)(1)(A)(i) and (ii): identifying individuals with discoverable information, and the information (or location of the information) the disclosing party—here, the Debtors—will use in support of their claims or defenses.

18.    Of the four (4) initial disclosures in the Committee's Proposed CMO, three (3) are purely logistical, requiring: (i) identification of custodians; (ii) non-custodial data sources; and (iii) shared repositories or drives reasonably likely to contain discoverable information. The Committee's requests for identification of 20 custodians and 10 non-custodial (i.e. non-Debtor) data sources are not arbitrary, but reflect the nature of these cases.[5] The Debtors and their predecessors have employed national and numerous local asbestos defense counsel. Because non-

---

[5] The definition of "non-custodial data sources" includes "systems or containers that store information that the Debtors do not, and their predecessors "Old Trane" and "Old IRNJ" did not, organize, manage, or maintain. Committee's CMO Motion at 2.

9

custodial data sources, as defined in the Committee's Proposed CMO, would include law firms and other outside consultants, it seems unlikely that the Debtors and their predecessors would not be able to identify 10 such sources.[6] *Cf.* Debtors' CMO Motion ¶ 30.

19. The single "substantive" initial disclosure proposed would be the identification of "asbestos-containing products that are the subject of the Estimation Proceeding," a key piece of information. Committee's Proposed CMO ¶ 3(d). This provision—and indeed the entire Initial Disclosures Provision proposed by the Committee here—is modeled on the initial disclosures agreed to among the parties in *Bestwall*. *See* Bestwall Estimation CMO ¶ 3(d). The difference here is that, in these cases, the Debtors have yet to provide the Committee with initial discovery regarding product identification for asbestos-containing products at issue. If anything, this demonstrates an even greater need for such information in these cases than in *Bestwall* for such an initial disclosure.

    **D.** ***Disclosure of the Disputed Claimant Files Prevents a One-Sided Process Favoring the Debtors.***

20. The Committee's Proposed CMO does not include, in the 30-day Initial Disclosures, disclosure of claim files.[7] Instead, disclosure of certain claimant files is due 90 days before the conclusion of Written Discovery—305 days after entry of an order.[8] These claim files epitomize the disadvantage the Committee faces in preparing for estimation: while the Debtors

---

[6] Based upon a review of declarations filed by ordinary course professionals at the outset of these cases, at least 21 law firms appear to be asbestos defense firms further retained in the bankruptcy to address the immediate effects of the bankruptcy petitions on pending state court litigation.

[7] The Debtors cite to ¶ 3(e) of a proposed CMO that does not exist; the Committee explicitly informed the Debtors during a meet and confer that the claimant file disclosure would not be included as part of the Initial Disclosures.

[8] A review of the fee applications filed by the Debtors' retained professionals, including Evert Weathersby Houff, indicates that a significant amount of time under the "Asbestos Matters" task code involves review/analysis of, and confers with Bates White and unnamed consultants regarding, "historical asbestos documents," "historical claims data," "asbestos claimant data," and similar descriptions.

10

would have been able to commence review of their records as soon as the decision was made to request estimation—or even before—the Committee has been forced to wait.

21. By including this disclosure in the CMO from the start (even though the materials are not immediately deliverable), the Committee seeks to avoid future allegations of any untimely or unduly burdensome requests. The Debtors' preparation for this disclosure could begin upon entry of an order and be conducted on a rolling basis. This will avoid later inefficiency, and will give Committee counsel time to review the large volume of discovery that the claim files will entail.

### III. Other Issues with the Debtors' Proposed CMO.

#### A. *The Debtors' Proposed CMO Invites Avoidable Litigation.*

22. Although the Debtors' Proposed CMO addresses only Written Discovery and the PIQs, it lacks detail even as to these limited items. These omissions likely will necessitate further litigation, including motion practice, to resolve questions that could be properly addressed within a court-approved Estimation CMO—and, indeed, are addressed in the Committee's Proposed CMO.

23. For example, the Debtors' Proposed CMO provides for meet and confers to resolve the entirety of a potential categorical privilege log, rather than submitting an actual proposal with their Proposed CMO. Debtors' Proposed CMO ¶ 9. The combination of unwillingness to articulate specific steps within the discovery process and overreliance on generalized meet and confers will unnecessarily increase ambiguities and will only increase the time and effort required to resolve them.

24. In contrast, the Committee's Proposed CMO includes provisions to avoid unnecessary discovery disputes and litigation. For example, rather than leaving open the potential

categories of documents that would be appropriate for a categorical privilege log, the Committee has suggested specific categories. *See* Committee's Joint Discovery Protocol § 4.2; *see also* Committee's Categorical Privilege Objection ¶ 11.

### B. *The Debtors' Proposed CMO Appears to Contradict the Estimation Order.*

25. The Debtors' Proposed CMO includes language concerning specific unresolved aspects of the estimation, notably the fill-in-the-blanks for the formula that will be used to calculate the non-mesothelioma claims. Not only is this unnecessary in the context of an order limited to setting out the Written Discovery stage of the proceeding, it appears to contravene the Court's *Order Authorizing Estimation of Asbestos Claims* ("Estimation Order") [Dkt. No. 1127], which requires that, "[s]hould the parties not be able to agree on a formula for the calculation of the non-mesothelioma claims, the parties may submit proposals and the Court will determine the formula." Estimation Order ¶ 2. No attempt has been made to reach agreement on this calculation; its consequences are significant in the determination of the Debtors' liability, and it should not be shoehorned into a narrow procedural order. Indeed, the entirety of paragraph 3 of the Debtors' Proposed CMO is unnecessary, as it appears to merely restate—with less clarity—the Estimation Order.

### **CONCLUSION**

26. Overall, the Debtors' CMO proposes to compromise the integrity of the discovery process in the asserted interests of efficiency and avoiding burden on the Debtors. The Committee, however, has proposed an estimation CMO that permits sufficient time in the initial form of order, together with a proposed process that is sufficiently shaped so as to promote efficiency, while still creating avenues to prompt resolution of disputes. This Court should deny the Debtors' CMO Motion, and enter the Committee's Proposed CMO.

WHEREFORE, the Committee respectfully requests that the Court grant the Committee's CMO Motion; deny the Debtors' CMO Motion; and grant such other and further relief as the Court may deem just and proper.

*[Signature on following page]*

Dated: June 23, 2022
      Charlotte, North Carolina

HAMILTON STEPHENS STEELE
+ MARTIN, PLLC

*/s/ Robert A. Cox, Jr.*
Glenn C. Thompson (Bar No. 37221)
Robert A. Cox, Jr. (Bar No. 21998)
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 344-1117
Facsimile: (704) 344-1483
gthompson@lawhssm.com
rcox@lawhssm.com

*Local Counsel for the Official Committee of Asbestos Personal Injury Claimants*

Natalie D. Ramsey (admitted *pro hac vice*)
Davis Lee Wright (admitted *pro hac vice*)
Robinson & Cole, LLP
1201 N. Market Street, Suite 1406
Wilmington, DE 19801
Tel: (302) 516-1700
Fax: (302) 516-1699
nramsey@rc.com
dwright@rc.com

-and-

Kevin C. Maclay, Esq. (admitted *pro hac vice*)
Todd E. Phillips, Esq. (admitted *pro hac vice*)
Kevin M. Davis, Esq. (admitted *pro hac vice*)
Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 862-5000
Fax: (202) 429-3301
kmaclay@capdale.com
tphillips@capdale.com
kdavis@capdale.com

*Co-Counsel to the Official Committee of Asbestos Personal Injury Claimants*