# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| ALDRICH PUMP LLC, *et al.*,[1] | : | Case No. 20-30608 (JCW) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS'
BRIEF IN OPPOSITION TO THE MOTION OF THE DEBTORS FOR AN ORDER
AUTHORIZING THE PARTIES TO USE CATEGORICAL PRIVILEGE
LOGS WHEN CLAIMING MATERIAL IS
PRIVILEGED OR OTHERWISE PROTECTED FROM DISCOVERY**

The Official Committee of Asbestos Personal Injury Claimants (the "Committee") respectfully submits this brief in opposition to the *Motion of the Debtors for an Order Authorizing the Parties to Use Categorical Privilege Logs When Claiming Material is Privileged or Otherwise Protected from Discovery* (the "Motion") [Dkt. No. 1206].[2] In opposition to the Motion, the Committee states as follows:

**PRELIMINARY STATEMENT**

The Debtors' Motion seeks broad and open-ended authorization of the Court to use categorical privilege logs as opposed to the document-by-document privilege logs that are traditionally utilized under the Federal Rules of Civil Procedure, in connection with the estimation proceeding.[3] While categorical privilege logs may be appropriate in certain instances, it is wholly

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Aldrich Pump LLC (2290) and Murray Boiler LLC (0679). The Debtors' address is 800-E Beaty Street, Davidson, North Carolina 28036.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Committee's *Motion for Entry of an Order Establishing Case Management Procedures for Estimation* [Dkt. No. 1207] (the "Committee's CMO Motion").

[3] The Committee's response herein and the willingness to allow for the use of categorical logs, in certain instances, are limited solely to discovery sought in the estimation proceeding. The Committee does not agree at this time to the

25178529-v7

inappropriate for the Debtors to seek an unrestrained order allowing the use of such logs without first identifying the categories. Indeed, while the Debtors go to great lengths to explain the format of such logs, they have failed to identify a single category of privilege that they intend to use. In contrast, the Committee has identified nine types of documents in its Proposed Case Management Order (the Committee's Proposed CMO") where categorical logging would be appropriate. The Court should deny the Debtors' Motion and enter a case management order allowing categorical privilege logs for the nine discrete categories identified by the Committee.

## ARGUMENT

**I.    The Debtors Seek Overly Broad Authorization to Use Categorical Privilege Logs Without Identifying any Examples of Appropriate Categories.**

1.    The Debtors' Motion and the Proposed CMO, Ex. B, ¶ 9 both seek unfettered authorization to use categorical privilege logs without identifying any of the actual categories of documents that they intend to use. While the Debtors identify the format for a categorical privilege log and note that their anticipated privilege claims likely will "fall into one of a handful of relatively discrete categories" (*see* Motion at 2), the Debtors have not identified a single category or group of documents that would be subject to a single privilege assertion.

2.    As district courts in the Fourth Circuit have readily acknowledged, "document-by-document privilege logging is the norm"; however, "[c]ourts have allowed categorical logging when a document-by-document log would be unduly burdensome or when 'the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded.'" *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-CV-01300-JMC, 2016 WL 6539344, at *2

---

use categorical logs for discovery in any other litigation, including litigation pertaining to the Corporate Restructuring and resulting bankruptcy.

(D.S.C. Nov. 3, 2016) (citing *S.E.C. v. Thrasher*, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996)). This inquiry requires the Court to review the number of documents, the burden of creating a more detailed log, and the type of the privilege asserted. *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-66, 2020 WL 674454, at *3 (W.D. Va. Feb. 11, 2020).

3. While the Debtors provide detail as to the format for such a categorical log, they fail to provide any of the specific categories that they intend to use. Instead, the Debtors speculate that the Committee "likely" will seek production of documents related to the Debtors' litigation files, that such requests are "likely" to cover "hundreds of thousands of documents", and there can be "little doubt" that the "overwhelming majority of this material will be privileged and/or protected from disclosure." *See* Motion at 2, 16-17. Such assertions do not provide a basis for the Court to render the wholesale finding in the Proposed Order that "individually logging presumptively privilege materials on a document-by-document basis . . . would be unduly burdensome and provide little material benefit." *See* Ex. A to Motion (Proposed Order), ¶ 2. For some types of documents, individual logging may be unduly burdensome. But for other types of documents, it will be necessary for the Debtors to provide document-level detail in order to test the assertion of privilege. Resolving the issues as to which categories should be used may prevent a scenario where the Debtors prepare a wholly inadequate categorical privilege log and then must re-review documents to prepare a sufficient log.

4. None of the cases relied upon by the Debtors involved preemptive and widescale use of categorical privilege logs. Each of *Thrasher*, *Asghari-Kamrani*, and *RLI* involved a situation where the claims of privilege had already been asserted and the Court could analyze both the burden and the material benefit of requiring a party to produce a document-by-document privilege log. *See RLI Ins. Co.,* 2020 WL 674454, at *3 (court allowed categorical privilege log after defendant produced 100,000 pages of redacted documents); *Asghari-Kamrani v. United*

3

*Servs. Auto. Ass'n*, No. 2:15-CV-478, 2016 WL 8243171, at *2 (E.D. Va. Oct. 21, 2016) (evaluating sufficiency of categorical privilege log after log was created); *Thrasher*, 1996 WL 125661, at *1 (evaluating categorical privilege after plaintiff had already sought production of communications between defense counsel). All of the other cases cited by the Debtors similarly involve situations where discovery had been served and the court could adequately assess the need for a document-by-document privilege log. Thus, none of the cases cited support the type of relief sought by the Debtors.

**II.    The Committee Has Identified Nine Types of Documents That Should Be Categorized on the Privilege Log.**

5.    The Debtors' Motion states that the Committee "declined to agree to the use of any type of categorical privilege log, instead insisting on the use of a document-by-document privilege log." Motion at 4. This is incorrect. The topic of categorical privilege logs was discussed at length and the Committee has been amenable to categorical privilege logs for <u>some</u> types of documents relevant to the estimation proceeding. The Committee simply opposes allowing the Debtors free rein to make their own determination on what categories are appropriate and to use overly generalized categories that leave no room to test whether the documents withheld are actually protected.

6.    Indeed, the Committee's Proposed CMO (attached as Exhibit A to the Committee's CMO Motion), identifies nine types of documents where privilege can be asserted on a categorical basis:

- <u>Category 1</u>: Confidential non-final drafts of standard interrogatory requests prepared by outside counsel for Old IRNJ or Old Trane for the purpose of defending asbestos-personal injury claim asserted against Old IRNJ or Old Trane by [claimant first and last name] on [date].

- <u>Category 2</u>: Confidential non-final drafts of motions to compel production of responses to interrogatory responses regarding identification of [claimant first and last name's] exposure to other asbestos products prepared by outside counsel for Old IRNJ or Old Trane

4

for the purpose of defending asbestos-personal injury claim asserted against Old IRNJ or Old Trane by [claimant first and last name] on [date].

- <u>Category 3</u>: Confidential [memorandum, email communication, summary, or analysis] prepared by [name of counsel] regarding [claimant first and lastname's] exposure to [Old IRNJ or Old Trane's or other entities'] asbestos containing products.

- <u>Category 4</u>: Confidential [memorandum, email communication, summary, or analysis] prepared by [name of counsel] regarding medical science issues for purpose of asbestos-personal injury claim asserted against Old IRNJ or Old Trane by [claimant first and last name] on [date].

- <u>Category 5</u>: Confidential email communications among outside counsel for Old IRNJ or Old Trane and personnel for Old IRNJ or Old Trane made for the purpose of [obtaining legal advice or reflecting legal advice regarding] [evaluation of or potential settlement of] the asbestos-personal injury claim(s) asserted against Old IRNJ or Old Trane by [claimant(s) first and last name] on [date].]

- <u>Category 6</u>: Confidential compilation of otherwise non-privileged documents prepared by outside counsel between [date] and [date] for the purpose of defending asbestos-personal injury claim asserted against Old IRNJ or Old Trane by [claimant first and last name] on [date] and withheld solely on the basis that the attorneys' selection of the documents for inclusion in the compilation constitutes work product.

- <u>Category 7</u>: Confidential email communications among outside counsel for Old IRNJ or Old Trane and personnel of Old IRNJ or Old Trane and outside counsel for [[name of entity(ies) counsel represents] made for the purpose of [obtaining legal advice or reflecting legal advice] regarding identification of [claimant first and last name's] exposure to other asbestos products made pursuant to the common interest agreement dated [date] between and among Old IRNJ or Old Trane, [name of entity(ies)], in furtherance of Old IRNJ or Old Trane and [name of entity(ies)] joint medical science defense, and for the purpose of defending asbestos-personal injury claim asserted against Old IRNJ or Old Trane and [name of entity(ies)] by [claimant first and last name] on [date].

- <u>Category 8</u>: Confidential email communications among outside counsel for Old IRNJ or Old Trane and personnel of Old IRNJ and Old Trane and outside counsel for [name of entity(ies) counsel represents] made for the purpose of [obtaining legal advice or reflecting legal advice] related to medical science related defense, and for the purpose of defending asbestos-personal injury claim asserted against Old IRNJ or Old Trane and [name of entity(ies)] by [claimant first and last name] on [date].

- <u>Category 9</u>: Confidential email communications among outside counsel for Old IRNJ or Old Trane and personnel of Old IRNJ and Old Trane and outside counsel for [name of entity(ies) counsel represents] made for the purpose of [obtaining legal advice or reflecting legal advice] related to tort reform.

Committee's Proposed CMO § 4.2 (proposing categorical privilege for specific topics of documents). The Committee agrees that privileged documents falling within the above nine groups could be categorically logged without the need for document-by-document detail, at this time.[4]

### III. With the Exception of the Nine Categories Identified in the Committee's Proposed CMO, the Debtors Should Be Required to Produce a Document-by-Document Privilege Log.

7. Without identifying a single category of privileged materials, the Debtors seek the widespread use of categorical privilege logs simply because the debtor in *Bestwall* incurred substantial costs in estimation discovery. But such an argument misstates the appropriate legal standard. Courts do not simply look to whether a document-by-document privilege log will be costly, but rather whether it will be unduly burdensome and will provide little material benefit to the resolution of a privilege dispute. *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15-CV-478, 2016 WL 8243171, at *3 (E.D. Va. Oct. 21, 2016). As the Debtors have failed to set forth any categories in the Motion, the Court should order that document-by-document logs be produced for all but the nine categories identified in the Committee's Proposed CMO.

8. In evaluating "undue burden," the Court cannot simply consider the cost to the Debtors' estates in a vacuum. Instead, the Court needs to consider the specific facts and circumstances of this case. <u>First</u>, this is a complex case seeking the resolution of tens of thousands of claims and potentially billions of dollars in liabilities. The Debtors voluntarily filed the petition with the stated purpose of bringing "about a rational resolution to the asbestos litigation against them in a manner beneficial to both the Debtors and legitimate claimants." Informational Br. at

---

[4] For avoidance of doubt, the Committee expressly reserves the right to challenge the sufficiency and detail of the Debtors' privilege log.

32-33 [Dkt. No. 5]. According to the Debtors, they "routinely [are] named in over 2,500 mesothelioma claims every year" and pay "approximately $70 million per year in asbestos-related settlements." *Id.* at 5, 7. Thus, present and future claimants likely exist well into the five figures, with total potential liabilities in the billions of dollars, the resolution of which requires significant discovery.

9. Second, the Court should ignore the Debtors' argument that a document-by-document privilege log will somehow constitute a "drain on estate resources." Motion at 2, 9 (noting that "the debtor used enormous estate resources" in *Bestwall*) and 10 ("It would be hard to imagine how the costs to the estate for this effort did not run into the millions of dollars."). The Debtors' argument is disingenuous. The Debtors purport to be fully supported by funding agreements and claim that they will be able to fund 100% of a bankruptcy trust under Bankruptcy Code section 524(g). Informational Br. at 8 (Debtors intend to "fund a 524(g) asbestos trust in an amount that will fully compensate all legitimate asbestos claimants" [emphasis added]). Any costs incurred by the production of a privilege log will be borne by, and any savings incurred pursuant to an order granting the Debtors' motion will be realized by, Trane Technologies Company LLC and Trane U.S. Inc., the two non-debtor counterparties to the Debtors' funding agreements. *See id.* at 33-35 (discussing funding agreement structure).

10. Third, the reference to "estate resources" improperly suggests that there are classes of creditors who will suffer from the costs of creating a privilege log. In reality, the Debtors have carefully ensured, through the Corporate Restructuring, that the only creditors subject to, and potentially harmed by, the bankruptcy are present and future asbestos claimants. As the Court found in its Findings of Fact and Conclusions of Law, the Debtors were expressly created as North Carolina limited liabilities companies in order to file for bankruptcy in this jurisdiction. *See* Adv. Pro. Dkt. No. 308 ¶¶ 48, 56 and 59, Adv. Pro. No. 20-03041. After the case was filed, the Debtors

7

moved for an estimation and indicated their intent to attack the significance and value of thousands of asbestos settlements that were voluntarily entered into over the course of decades. *See* Mot. for Estimation at 2-5 [Dkt. No. 833]. With these factors in mind, the Debtors should not be able to claim undue burden from having to engage in basic discovery, including the need to produce a document-by-document privilege log to the extent necessary.

11. <u>Fourth</u>, the Debtors cite repeatedly to *Bestwall* in support of their undue burden argument; however, the procedural history in that case actually undermines the use of a categorical privilege log. In *Bestwall*, the ACC and the FCR filed a Motion to Compel Production of Documents Listed on the Debtor's Privilege Log. After briefing and argument, Judge Beyer ordered the Bestwall debtor to revise its privilege log to include document-by-document detail because she concluded that such detail was necessary to properly evaluate the claims of privilege. Specifically, the Court stated:

> Let me give you my thoughts about where we are on that and start by recognizing, I think, right out of the gate that the debtor has provided a tremendous amount of information on the privilege logs. There is no dispute about that. However, I agree with many of the deficiencies that were pointed out in the log and problems with the log that were pointed out by the ACC and the FCR in their pleadings and at today's hearing, ***I think the most obvious one being the one that [ACC counsel] specifically focused on, which is the 188,000 identical descriptions for those, that many entries. And that strikes the Court as problematic and those descriptions need to be cleaned up and made more specific so one can determine from the face of the description if the privilege has been properly alleged.*** I think, as [FCR counsel] pointed out in her argument, the descriptions in some of the cases cited by [Bestwall counsel] are ***far more detailed and would be more along the lines of what the Court thinks is appropriate and what the Court would be looking for***, you know. The, there was reference to a description of draft settlement documents, for example, and the ***debtor's log doesn't plead any description with that amount of specificity***.

Hr'g Tr. at 188-190, *In re Bestwall LLC*, Case No. 17-31795 (Bankr. W.D.N.C. Jan. 20, 2022) (emphasis added) (excerpts of the transcript are attached hereto). In short, the *Bestwall* debtor had attempted to use a type of categorical privilege—asserting the same generalized privilege for 188,000 documents—and Judge Beyer expressly found that such privilege descriptions were

8

inadequate. The Court required the debtor to revise its privilege log in order to provide document-level detail as necessary to evaluate whether "the privilege has been properly alleged." *Id.* Accordingly, the history in *Bestwall* does not provide the support for the use of broad and unrestrained categorical privilege logs that the Debtors here now seek.

WHEREFORE, the Committee respectfully requests that the Court deny the Debtors' Motion and grant such other and further relief as the Court may deem just and proper.

Dated: June 23, 2022
Charlotte, North Carolina

HAMILTON STEPHENS STEELE + MARTIN, PLLC

/s/ Robert A. Cox, Jr.
Glenn C. Thompson (Bar No. 37221)
Robert A. Cox, Jr. (Bar No. 21998)
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 344-1117
Facsimile: (704) 344-1483
gthompson@lawhssm.com
rcox@lawhssm.com
*Local Counsel for the Official Committee of Asbestos Personal Injury Claimants*

Natalie D. Ramsey (admitted *pro hac vice*)
Davis Lee Wright (admitted *pro hac vice*)
Robinson & Cole, LLP
1201 N. Market Street, Suite 1406
Wilmington, DE 19801
Tel: (302) 516-1700
Fax: (302) 516-1699
nramsey@rc.com
dwright@rc.com

-and-

Kevin C. Maclay, Esq. (admitted *pro hac vice*)
Todd E. Phillips, Esq. (admitted *pro hac vice*)
Kevin M. Davis, Esq. (admitted *pro hac vice*)
Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 862-5000
Fax: (202) 429-3301
kmaclay@capdale.com
tphillips@capdale.com
kdavis@capdale.com

*Co-Counsel to the Official Committee of Asbestos Personal Injury Claimants*

10