UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|   |   |   |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| ALDRICH PUMP LLC, *et al.*,[1] | : | Case No. 20-30608 |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**DEBTORS' REPLY IN SUPPORT OF THEIR MOTIONS FOR
ENTRY OF ORDERS ESTABLISHING CASE MANAGEMENT PROCEDURES
FOR ESTIMATION AND APPROVING USE OF CATEGORICAL PRIVILEGE LOGS**

Aldrich Pump LLC ("Aldrich") and Murray Boiler LLC ("Murray"), as debtors and debtors in possession (together, the "Debtors"), hereby submit this Reply in support of their: (a) *Motion of the Debtors for an Order Approving the Debtors' Proposed Case Management Order for Estimation* [Dkt. 1205] (the "Debtors' Proposed CMO Motion") and (b) *Motion of the Debtors for an Order Authorizing the Parties to Use Categorical Privilege Logs When Claiming Material Is Privileged or Otherwise Protected From Discovery* [Dkt 1206] (the "Debtors' Categorical Privilege Log Motion", and with the Debtors' Proposed CMO Motion, the "Debtors' Motions").

In advance of the upcoming hearing on the Debtors' Motions, set for June 30, 2022, the Debtors can report the following to the Court:

- The Debtors and the Official Committee of Asbestos Personal Injury Claimants ("ACC") do agree on many key fundamental items concerning the case management procedures to govern the Estimation Proceeding, as described in detail in the *Debtors' Response to the Official Committee of Asbestos Personal Injury Claimants' Motion for Entry of an Order*

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Aldrich Pump LLC (2290) and Murray Boiler LLC (0679). The Debtors' address is 800-E Beaty Street, Davidson, North Carolina 28036.

{00364798 v 1 }    1
NAI-1531939233v3

*Establishing Case Management Procedures for Estimation* (the "Debtors' Response"). See Dkt. 1221 at 4-5.

- The Debtors and the ACC have continued to engage on issues concerning the case management procedures, including scheduling a meet and confer to take place on June 28. In advance of that meeting, the Debtors sent an additional proposal in an attempt to further narrow certain of the parties' remaining disagreements on the form of the case management order. In addition to the items referred to in Debtors' Response, included in the Debtors' most recent proposal was an agreement that the Written Discovery and PIQ process would run for 270 days (splitting the difference between the Debtors' original proposal of 180 days and the ACC's proposal of 365 days).

- With this Reply, the Debtors submit as Exhibit 1 a revised proposed case management order (the "Debtors' Revised Proposed CMO"). This proposal reflects those areas of agreement that the parties have reached since the original filing of the Debtors' Motions (as described in Debtors' Response), and further reflects those additional proposals made by the Debtors earlier today.

That leaves five essential areas of remaining disagreement between the parties concerning the case management order:

1. Categorical Privilege Logging;

2. The PIQ process;

3. The ACC's demand for certain detailed "initial disclosures" well beyond what is provided for in Rule 26;

4. Expert witness disclosures; and

5. The Discovery Plans.

The Debtors have already provided detailed information on each of these topics in the Debtors' Motion and the Debtors' Response. The Debtors hereby provide additional detail on the first three of those topics to address arguments made by the ACC in its response briefs. [Dkts. 1222-1223] (collectively, the "ACC Response Briefs").[2]

---

[2] The ACC did not advance any arguments in the ACC Response Briefs justifying either its proposal concerning early expert disclosures or its proposed Discovery Plan. The Debtors stand on the arguments in

## ARGUMENT

1. **The Categorical Privilege Log**

The briefing demonstrates that the parties agree that categorical privilege logging is appropriate. With good reason; this is exactly the type of case for which the Federal Rules of Civil Procedure ("Civil Rules") and the case law envision the use of categorical logging. See, e.g., Fed. R. Civ. P. 26 Advisory Committee Note, 1993 Amendment (detailed privilege logs "may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories"); see also, Sec. & Exch. Comm'n v. Thrasher, 1996 WL 125661, at*1-2 (S.D.N.Y. Mar. 20, 1996) (leading case nationally regarding categorical privilege logs; denying requesting party's motion to compel traditional document-by-document privilege log in favor or categorial log where "extremely voluminous" number of privilege documents).

There is disagreement between the Parties, however, on what the categorical privilege log in this case will consist of. The Debtors propose using categorical privilege logging for this Estimation Proceeding, including providing individual metadata for each document logged, based on categories determined after document requests are served. See Debtors' Categorical Privilege Log Motion at Exhibit A, ¶ 3. This is consistent, and, indeed, beyond the requirements for categorical privilege logging set by cases within this Circuit. See Asghari-Kamrani v. U.S. Auto. Ass'n, 2016 WL 8243171, at *1, *3-*4 (E.D. Va. Oct. 21, 2016) (no advance determination of form of categorical privilege log);[3] RLI Ins. Co. v. Nexus Servs.,

---

the Debtors' Response as to why neither proposal from the ACC should be adopted. See Debtors' Response at 11, 16-18.

[3] A copy of the publicly filed categorical privilege log approved by the Asghari-Kamrani court is annexed as Exhibit H to the Debtors' Categorical Privilege Log Motion.

Inc., 2016 WL 8243171, at *3 (W.D. Va. Feb. 11, 2020) (same).  The ACC, on the other hand, suggests a sort of piecemeal categorical log, limited to a set of narrow, pre-selected categories determined even before document requests are served, with the Debtors forced to:  (a) manually provide detailed and burdensome information for each document logged (whether categorically or not) and (b) individually log any documents not categorically logged (which likely will account for the majority of privileged or otherwise protected documents, given the narrow categories for categorical logging proposed by the ACC).  Moreover, the ACC's proposal does not attempt to justify, or even address, how the burden it seeks to impose by requiring individual logging for the vast majority of documents would meaningfully assist in assessing the privilege of such documents.[4]

The ACC's proposal is not what the case law provides, and it is striking that the ACC provides no case law authority supporting its position.  Rather, the ACC's proposal would defeat a primary purpose of adopting categorical privilege logging, which is to relieve undue burden on the party producing the documents.  See, e.g., Asghari-Kamrani, 2016 WL 8243171, at *4 ("the Court finds that requiring Plaintiffs to separately list each of the 439 documents separately would be unduly burdensome for no meritorious purpose"); RLI Ins. Co., 2020 WL 674454, at * 3 ("categorical privilege log would serve the purpose of asserting privilege and explaining redactions without imposing undue burden on the parties"); see also, Debtors' Categorical Privilege Log Motion, ¶¶ 22-35.

---

[4] For example, the ACC proposes that confidential, non-final drafts of motions to compel interrogatory responses regarding identification of asbestos exposure can be logged by category.  But the ACC's proposal would require any other confidential, non-final draft motion to compel discovery to be individually logged, document-by-document.  See *The Official Committee of Asbestos Personal Injury Claimants' Brief In Opposition to the Motion of the Debtors for an Order Authorizing the Parties to Use Categorical Privilege Logs When Claiming Material is Privileged or Otherwise Protected From Discovery*, Dkt. 1223 at 4-5.

Instead, what the case law tells us is that courts ask two questions in determining whether or not to permit categorical privilege logging:

(i) Would "a document-by-document listing . . . be unduly burdensome" to prepare?; and

(ii) Would "the additional information to be gleaned from a more detailed log . . . be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded"?

Thrasher, 1996 WL 125661, at *1.  Here, the answers are clear, and ACC does not suggest otherwise.  Undeniably, a document-by-document log would be tremendously burdensome to prepare and would provide no material benefit to the ACC in assessing claims of privilege and work-product protection.

If categorical privilege logging is approved, the next step is for the requesting party to serve discovery requests.  See Debtors' Categorical Privilege Log Motion, ¶¶ 22-30.  Nothing in the case law suggests what the ACC demands here — that it, as the party seeking the discovery, can in advance dictate the form of the categorical log.  Similarly nothing in the case law suggests that the Debtors should be required to provide the detailed individualized, information the ACC seeks <u>for each document</u> on the categorical log.  That requirement would, in large part, defeat the very purpose of the categorical log itself.

The Debtors respectfully request that this Court order that documents withheld for privilege in this Estimation Proceeding be categorically logged in the format proposed in the Debtors' Categorical Privilege Log Motion, and allow the Parties to work together once document requests are served to attempt to reach agreement on the remaining aspects of the categorical log.

2. **The PIQ Process**

The Debtors continue to be perplexed by the ACC's insistence that the PIQ process not be included in the case management order governing the Estimation Proceeding. The PIQ process is part of the Estimation <u>case</u>, and therefore is properly subject of the Estimation <u>case management order</u>.  The Debtors hope that the PIQ process will run quickly and efficiently, with compliance by the responding claimants without the need for motions to compel.  But the Debtors are well aware of the massive delays in the PIQ process in the <u>Bestwall</u> case.  The Debtors do not want to find themselves in the situation where Written Discovery has been completed, the Parties have moved on to fact depositions and expert discovery, and the Debtors are still being required to obtain compliance by claimants in responding to the PIQ. That is what the Debtors' Proposed CMO is designed to prevent, and the ACC's refusal to accept that provision only leads the Debtors to conclude that this is the result the ACC is hoping occurs.

The ACC's arguments against inclusion of the PIQ in its Response Briefs are unavailing.  The ACC claims that including the PIQ "disadvantages" the ACC in that the "Debtors can acquire additional information from compelled PIQ responses" while the ACC "would not be able to seek related discovery from the Debtors in response."  ACC Response Brief, Dkt. 1222, ¶ 14.  But that argument is nonsensical on two fronts:  (1) the claimants are the ACC's constituency, and it is that constituency that has access to the information that will be disclosed in response to the PIQs; and (2) the Debtors' Proposed CMO places the ACC on at least as generous a timeline as the Debtors in regard to pursuit of Written Discovery, so it is difficult to understand how the Debtors' can seek discovery while the ACC cannot.

The PIQ is an aspect of this Estimation case and should be included as part of the Estimation case management order.

3. **The Initial Disclosures**

In one of the ACC Response Briefs, the ACC continues to seek to require that the Debtors (and only the Debtors) provide extensive information as "initial disclosures" without any basis in the law for such position. Yet these proposed disclosures are not "simply a particularized description of Civil Rule 26(a)(1)(A) (i) and (ii)." ACC Response Brief, Dkt. 1222, ¶ 17.[5] They are detailed discovery requests that have absolutely nothing to do with Civil Rule 26(a)(1), which is designed to have both parties provide information the disclosing party may use to support its case. To the contrary, the ACC's proposal constitutes a series of one-sided interrogatories and document requests seeking information from the Debtors, designed to do an end-around the discovery rules and protections in the Civil Rules.

The information the ACC seeks can, pursuant to the Civil Rules, only be obtained through discovery requests subject to the Civil Rules that apply to such requests. Nevertheless, in an effort to try to narrow the ultimate discovery required on at least one of the issues for which the ACC seeks an "initial disclosure," later this week the Debtors will provide basic information and documents regarding the Debtors' relevant equipment. This will include discovery responses served by the Debtors in the tort system, along with product brochures and similar documents. Hopefully this, along with the extensive list of brand names identified in the PIQ, will provide the ACC initial information that allows it, if necessary, to serve more detailed discovery requests in accordance with the Civil Rules and after the entry of a case management order.

---

[5] Nor is the "initial disclosure" typical, as the ACC implies. While the provisions the ACC seeks for some reason were agreed to in <u>Bestwall</u>, they were not in the estimation proceedings in <u>Garlock</u>, nor <u>Bondex</u>, nor are the Debtors are aware that they have been approved in any other estimation proceedings.

## **CONCLUSION**

For the foregoing reasons, the Debtors respectfully request that this Court enter the Debtors' Revised Proposed CMO in the form attached as <u>Exhibit 1</u> to this Reply.

|  |  |
|---|---|
| Dated: June 27, 2022<br>Charlotte, North Carolina | Respectfully submitted,<br><br>*/s/ John R. Miller, Jr.*<br>C. Richard Rayburn, Jr. (NC 6357)<br>John R. Miller, Jr. (NC 28689)<br>RAYBURN COOPER & DURHAM, P.A.<br>227 West Trade Street, Suite 1200<br>Charlotte, North Carolina  28202<br>Telephone:  (704) 334-0891<br>Facsimile:   (704) 377-1897<br>E-mail:   rrayburn@rcdlaw.net<br>             jmiller@rcdlaw.net<br><br>-and-<br><br>Brad B. Erens (IL Bar No. 06206864)<br>Mark A. Cody (IL Bar No. 6236871)<br>Morgan R. Hirst (IL Bar No. 6275128)<br>Caitlin K. Cahow (IL Bar No. 6317676)<br>JONES DAY<br>110 North Wacker Drive<br>Chicago, Illinois  60606<br>Telephone:  (312) 782-3939<br>Facsimile:   (312) 782-8585<br>E-mail:  bberens@jonesday.com<br>            macody@jonesday.com<br>            mhirst@jonesday.com<br>            ccahow@jonesday.com<br>(Admitted *pro hac vice*)<br><br>ATTORNEYS FOR DEBTORS<br>AND DEBTORS IN POSSESSION<br><br>-and-<br><br>C. Michael Evert, Jr.<br>EVERT WEATHERSBY HOUFF<br>3455 Peachtree Road NE, Suite 1550<br>Atlanta, Georgia 30326<br>Telephone: (678) 651-1200<br>Facsimile: (678) 651-1201<br>E-mail: cmevert@ewhlaw.com<br>(Admitted pro hac vice) |

SPECIAL ASBESTOS LITIGATION
COUNSEL FOR DEBTORS AND DEBTORS
IN POSSESSION

# **EXHIBIT 1**

Debtors' Revised Proposed Case Management Order

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| ALDRICH PUMP LLC, *et al.*,[6] | : | Case No. 20-30608 (JCW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**[PROPOSED REVISED] CASE MANAGEMENT ORDER FOR ESTIMATION OF**
<u>**MESOTHELIOMA CLAIMS**</u>

On September 24, 2021, Aldrich Pump LLC ("<u>Aldrich</u>") and Murray Boiler LLC ("<u>Murray</u>"), the debtors and debtors in possession in the above-captioned chapter 11 cases (the "<u>Debtors</u>"), filed a motion pursuant to section 502(c) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), seeking authorization of an estimation of mesothelioma claims against the Debtors that manifested disease prior to the petition date (the "<u>Estimation Motion</u>").

On January 27, 2022, the Court announced that it was granting the Estimation Motion, but expanded the scope of the estimation to cover all asbestos-related claims

---

[6] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Aldrich Pump LLC (2290) and Murray Boiler LLC (0679).  The Debtors' address is 800-E Beaty Street, Davidson, North Carolina 28036.

against the Debtors, both prepetition and postpetition. The Court entered its formal order confirming the same on April 18, 2022.

This Order sets forth the initial schedule and procedures that shall apply to the contested matter (the "Estimation Proceeding").

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1. Each of the Debtors, the Official Committee of Asbestos Claimants (the "Committee"), the Future Claimants Representative (the "FCR"); Trane U.S. Inc, and Trane Technologies Company LLC (and, together with the Debtors, the Committee, the FCR, and Trane U.S. Inc., the Parties," or each individually a "Party") shall be the parties to the Estimation Proceeding.

2. The Joint Discovery Plan and Report (ESI Protocol) (the "Discovery Plan"), attached hereto as Exhibit 1, shall govern discovery of electronically stored information ("ESI") among the Parties to the Estimation Proceeding.

3. The Parties shall serve preliminary disclosures of the identities of fact witnesses (not including any expert witnesses who will be disclosed pursuant to Rule 26(a)(2) under a separate schedule to be later determined) they plan to call in their cases-in-chief no later than 90 days following the entry of this Order. These disclosures shall be timely supplemented on a rolling basis until 60 days before the completion of deadlines set forth in Paragraph 8. Following this latter date, no further supplements will be permitted without permission of the Court; provided, however, that the disclosures may be supplemented up until 60 days before the expiration of any extensions to the deadlines set forth in Paragraph 8, including extensions of that schedule ordered under Paragraph 8.

4.      The limitations on discovery found in Civil Rules 30, 31, and 33, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7030, 7031, 7033, and 9014, are applicable to this case. The Parties agree that each side may serve no more than 50 interrogatories, including all discrete subparts. The Parties reserve the right to modify, either through stipulation or further order from this Court the number of interrogatories permitted by Rule 33 and this Order.

5.      Any Party may pursue non-party discovery (including requests made by subpoenas *duces tecum*) at any time subject to the rules applicable to contested matters ("Non-Party Discovery").

6.      Each Party may serve interrogatories, requests for production of documents, or requests for admission, on any other Party (collectively "Written Discovery") at any time subject to the deadlines for Written Discovery.

7.      The ACC will serve the Debtors with an interrogatory asking the Debtors to identify all resolved mesothelioma claims against Old Trane, Old IRNJ, or the Debtors (i) for which the Debtors contend that the plaintiff's identification of Old Trane's or Old IRNJ's product was false, incomplete, or misleading, (ii) for which the Debtors contend that the plaintiff did not disclose, or did not fully disclose, their potential exposure to asbestos-containing products of other manufacturers, (iii) for which the Debtors contend that the plaintiff did not disclose, or did not fully disclose, claims made to asbestos personal injury trusts, (iv) that the Debtors (or any counsel or expert for the Debtors) have reviewed to date in connection with this Estimation Proceeding, and (v) that the Debtors' counsel or experts have requested. Within 90 days of the close of discovery, the Debtors shall respond to the interrogatory described above. The Debtors will have the right to supplement its responses until the close of Written Discovery. For any claims identified

in the last 90 days of the Written Discovery Period, the ACC shall be given an additional 90 days after such disclosure to seek Written Discovery as it relates to those newly disclosed claims.

8. All Written Discovery shall be served such that the response time for said discovery expires no later than 270 days after the entry of this Order. Similarly, by separate order, the Court has granted the Debtors' request for the issuance of a Personal Injury Questionnaire ("PIQ") in connection with this Estimation Proceeding. The deadline to respond to the PIQ's will be set by the order governing the same, but it is anticipated that the deadline for completion of all PIQ's will be no later than 270 days after the entry of this Order.

9. Within 10 days of service of a written response to a request for production, the Parties shall meet and confer concerning an estimated time for substantial completion of any responsive document production.

10. The Parties agree that for Written Discovery, given the likely volume of privileged documents, logging of privileged documents on a document-by-document basis would be unduly burdensome and would likely provide no material benefit to the discovering party in assessing whether the privilege claim is well grounded. Therefore, for Written Discovery the Parties agree to utilize a categorical privilege log which shall contain descriptions sufficient to permit the assessment of, and potential challenge to, the validity of privilege claims without imposing undue burden on the Parties. The parties shall meet and confer to discuss the categories of privilege to be included therein.

11. Any motion to compel or other motions directed at compliance with Written Discovery and/or PIQ's must be served no later than 60 days after the expiration of the 270 day period described in Paragraph 8.

12. To the extent any motions directed at compliance with Written Discovery or PIQ's, whether in this Court or other courts, remain pending, or to the extent any additional responses to Written Discovery or PIQ's resulting from orders, whether in this Court or other courts, remain outstanding after the deadlines set forth in Paragraph 8, this Court will extend the deadlines set forth in Paragraph 8.

13. A schedule for fact witness depositions and associated productions, expert reports, depositions, and associated productions, and the estimation trial and related pretrial activities will be set by the Court after completion of the PIQ's and Written Discovery.

14. Upon a showing of good cause by any Party, after notice and hearing, the Court may alter or extend any of the deadlines specified herein.

15. This Court shall retain jurisdiction to hear and determine all matters involving the interpretation, implementation, or enforcement of this Order.

This Order has been signed electronically.　　　　　　　　United States Bankruptcy Court
The Judge's signature and Court's seal appear
at the top of the Order.