UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.: 20-30608 |
| | ) | |
| ALDRICH PUMP LLC, *et al.*,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**MOTION FOR ORDER DIRECTING PARTIES TO MANDATORY MEDIATION AND ESTABLISHING MEDIATION PROCEDURES**

The United States Bankruptcy Administrator for the Western District of North Carolina (the "Bankruptcy Administrator") moves the Court (the "Motion") for an order (i) appointing a mediator to be agreed by the parties or otherwise proposed by the Bankruptcy Administrator to mediate any and all issues necessary to reach a comprehensive resolution of the Debtors' liability to present and future asbestos claimants, (ii) referring such matters to mandatory mediation, (iii) establishing mediation procedures, and (iv) granting related relief. In support of this Motion, the Bankruptcy Administrator respectfully states as follows:

**JURISDICTION**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Aldrich Pump LLC (2290) and Murray Boiler LLC (0679). The Debtors' address is 800-E Beaty Street, Davidson, North Carolina 28036.

2. The statutory predicates for the relief sought in this Motion are sections 105 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u> and Local Rule 9019-2 of the Rules of Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina (the "<u>Local Rules</u>").

## BACKGROUND

3. The Debtors initiated these bankruptcy cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on June 18, 2020 (the "<u>Petition Date</u>").

4. On July 7, 2020, the Court entered the Order Appointing Official Committee of Asbestos Personal Injury Claimants [ECF No. 147]. The members of the Official Committee of Asbestos Personal Injury Claimants ("<u>ACC</u>") are individual plaintiffs with asbestos claims against the Debtors, represented by counsel.

5. On October 14, 2020, the Court entered the Order Appointing Joseph W. Grier, III as Legal Representative for Future Asbestos Claimants [ECF No. 389], pursuant to which Joseph W. Grier, III was appointed by this Court as the "<u>FCR</u>" to protect the interests of the "<u>Future Claimants</u>," defined as "persons who may, subsequent to confirmation of a plan of reorganization for the Debtors, hold claims against one or both of the Debtors based on, arising out of, or related to asbestos-related injury, disease, or death that has not manifested, become evident, or been diagnosed as of the date an order is entered confirming such a plan of reorganization in these cases by both the bankruptcy court and a district court." *Id*. at ¶2.

2

6. On September 24, 2021, the Debtors filed a joint plan of reorganization with the support of the FCR [ECF Nos. 831, 832] and simultaneously filed a motion to estimate their asbestos claims [ECF No. 833]. On April 18, 2022, the Court entered its Order Authorizing Estimation of Asbestos Claims (the "Order Authorizing Estimation") [ECF No. 1127]. In the Order Authorizing Estimation, the Court ruled that it would estimate the Debtors' aggregate liability for all current and future asbestos personal injury claims. All parties have expressly preserved their rights with respect to the subsequent use of the Court's estimation, including the terms of any plan of reorganization.

7. Since that time, the parties have submitted competing estimation case management orders as contemplated by the Order Authorizing Estimation, and the Court has ordered the parties to engage in further negotiations consistent with the Court's comments at today's hearing.

## RELIEF REQUESTED

8. By this Motion, the Bankruptcy Administrator requests entry of an order pursuant to section 105(a) of the Bankruptcy Code and Local Rule 9019-2 directing the parties to mediate any and all issues necessary to reach a comprehensive resolution of the Debtors' liability to present and future asbestos claimants.

9. The Bankruptcy Administrator has approached the Debtors, the ACC, and the FCR regarding possible mediators simultaneously with the filing of this Motion. To the extent that the parties agree on a proposed mediator, the Bankruptcy

Administrator requests that the Court appoint the agreed mediator(s) (the "Mediator"). To the extent that the parties are unable to agree on a mediator, the Bankruptcy Administrator requests that the Court appoint as Mediator the individual(s) proposed by the Bankruptcy Administrator by supplement to this Motion.

10. The Bankruptcy Administrator requests that the following parties be directed to participate in the mediation (collectively, the "Mediation Parties"): (i) the Debtors, (ii) the ACC, (iii) the FCR, (iv) the non-debtor affiliates, including new Trane Technologies Company LLC and new Trane U.S. Inc, (v) applicable insurers under one or more insurance policies that afford coverage to the Debtors or their non-debtor-affiliates with respect to claims that are the subject of the mediation, and (vi) any other parties the Court, the Mediator, and/or the Mediation Parties agree in the future should participate in the mediation process.

11. The Bankruptcy Administrator proposes the following mediation procedures in addition to those contemplated by Local Rule 9019-2:

   a. No communication of any type, whether oral or written, related in any way to the mediation may be used by any party for any purpose, including impeachment, in any proceeding and may not be disclosed to any non-party to the mediation;

   b. To the extent that any Mediation Party is in possession of privileged or confidential information provided pursuant to the terms and conditions of the Agreed Protective Order Governing Confidential Information (the

"<u>Protective Order</u>") [ECF No. 345] or other similar agreement executed or agreed to via email with the Debtors, such information may be disclosed to the Mediator; provided, however, that confidential, but not privileged, information may be disclosed to another Mediation Party that is also subject to the Protective Order. Any Mediation Party may provide documents and/or information to the Mediator that are subject to privilege or other protection, provided, however, the producing party must designate such documents and/or information as privileged. By providing privileged information solely to the Mediator and no other party, no Mediation Party or its respective professionals intends to, or shall, waive the attorney-client privilege, the work-product doctrine, or any other privilege, right, or immunity they may be entitled to claim or invoke. The Mediator shall not provide privileged information to any person, entity, or Mediation Party without the written consent of the producing party;

c. The Mediator shall determine the schedule and location of the mediation sessions, but such sessions shall begin no later than 60 days following entry of an order approving this Motion unless extended by further order of the Court;

d. The mediator's proposed compensation shall be set forth in a supplemental filing prior to the hearing on this Motion. The mediator may periodically submit a bill for services to the Debtors, who shall pay

5

        for the mediator's services, provided that such services are within a cap agreed to by the parties or proposed by the Bankruptcy Administrator in advance of the hearing on this Motion; and

    e. Such other procedures as may be agreed to in advance of the hearing on this Motion.

12.     The Bankruptcy Administrator requests that the mediation be non-binding unless the applicable Mediation Parties otherwise agree. Any resolution that is reached at the Mediation that involves the Debtors or their estates will be subject to Court approval after notice and opportunity for hearing, to the extent required under Rule 9019 of the Federal Rules of Bankruptcy Procedure or as may be reflected in a plan.

## BASIS FOR RELIEF REQUESTED

13.     Local Rule 9019-2 states that the Court may order parties to any contested matter to attend a pre-trial mediated settlement conference. Section 105 of the Bankruptcy Code further provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *see also In re Atl. Pipe Corp.*, 304 F.3d 135, 140 (1st Cir. 2002) ("There are four potential sources of judicial authority for ordering mandatory non-binding mediation of pending cases, namely (a) the court's local rules, (b) an applicable statute, (c) the Federal Rules of Civil Procedures, and (d) the court's inherent powers."); *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 85 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order a party to settle, this

Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis."), *rev'd on other grounds*, 452 B.R. 374 (S.D.N.Y. 2011).

14. If successful, mediation would result in a global resolution of these cases, minimizing the costs of litigating, preserving the assets available to claimants, and accelerating the speed with which payments could be made to present asbestos claimants. If unsuccessful, mediation would still inform parties as to the key issues (and potentially narrow such issues) before the parties proceed with litigation. Mediation, therefore, has little downside and may prove beneficial even if unsuccessful. *See, e.g., Garland v. Rockford Mfg. Co.*, Case No. 18-cv-00277, 2019 U.S. Dist. LEXIS 154292, at *5, 2019 WL 4264375, at *2 (E.D. Tenn. Aug. 20, 2019) ("[E]ven if the parties' dispute is not settled during the mediation process, mediation often forces the parties to reevaluate their claims and positions and serves to narrow and classify issues.") (internal quotations omitted). Mediation will not prejudice any of the Mediation Parties' rights if it fails to produce a resolution, and the Mediation Parties can (and should) continue to prepare for litigation in parallel with the mediation.

15. Nothing herein is intended to request an extension of the deadlines as may be set in the estimation case management order; rather, the Bankruptcy Administrator's expectation is that the parties have the resources available to mediate and prepare for litigation in parallel.

16. These bankruptcy cases have not been the subject of any previous mediation.

For the foregoing reasons, the Bankruptcy Administrator respectfully requests that the Court enter an order (i) granting this Motion, (ii) directing the Mediation Parties to mediate on the terms and conditions set forth in this Motion and as may be otherwise agreed by the parties in advance of the hearing on this Motion, (iii) appointing the Mediator as may be agreed or as otherwise proposed by the Bankruptcy Administrator, and (iv) granting such other and further relief as the Court deems just and proper.

Dated: July 7, 2022.

/s/ Shelley K. Abel
Shelley K. Abel
U.S. Bankruptcy Administrator
402 W. Trade Street, Suite 200
Charlotte, NC 28202-1669
N.C. Bar No. 34370
Telephone: (704) 350-7587
Email: shelley_abel@ncwba.uscourts.gov